**THE UNITED STATES DISTRICT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CRAIGVILLE TELEPHONE CO. d/b/a | ) | |
| ADAMSWELLS; and CONSOLIDATED | ) | |
| TELEPHONE COMPANY d/b/a CTC | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:19-cv-07190 |
| | ) | |
| vs. | ) | Judge John Z. Lee |
| | ) | |
| T-MOBILE USA, INC.; and | ) | |
| INTELIQUENT, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO INTELIQUENT, INC.'S**
**MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

David T.B. Audley (Bar No. 6190602)
Mia D. D'Andrea (Bar No. 6307966)
**CHAPMAN AND CUTLER LLP**
111 West Monroe Street
Chicago, IL 60603-4080
Tel. 312-845-2971
Email: audley@chapman.com
Email: dandrea@chapman.com

Cathy A. Hinger (*pro hac vice*)
G. David Carter (*pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
1200 19th Street, NW, Suite 500
Washington, DC 20036
Tel.: 202-857-4489
Email: cathy.hinger@wbd-us.com
Email: david.carter@wbd-us.com

Kurt D. Weaver (*pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: 919-755-8163
Email: kurt.weaver@wbd-us.com

*Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

LEGAL STANDARDS ................................................................................................ 1

LAW AND ARGUMENT ......................................................................................... 1

I.    DEFENDANTS DO NOT ESTABLISH THAT ANY CLAIMS ARE BARRED AS A MATTER OF LAW BY THE STATUTE OF LIMITATIONS. .................................... 1

    A.    Accurate Application Of The Discovery Rule Establishes That None Of Plaintiffs' Claims Are Time Barred. ................................................................... 1

    B.    Equitable Tolling Prevents Resolution Of Defendants' Statute Of Limitations Arguments. ............................................................................................ 4

II.    PLAINTIFFS HAVE SUCCESSFULLY PLEADED CLAIMS FOR VIOLATIONS OF THE COMMUNICATIONS ACT (COUNTS II AND III) AGAINST INTELIQUENT. ............................................................................................ 6

    A.    The Complaint Clearly Alleges That Inteliquent Violated Sections 201(b) And 202(a) Based On The FCC's *2012 Declaratory Ruling* ......................................... 6

    B.    The Complaint Pleads Unjust, Unreasonable, And Discriminatory Conduct By Inteliquent. ........................................................................................ 7

III.    PLAINTIFFS' RICO CLAIMS (COUNTS IV AND V) ARE PROPERLY PLEADED AGAINST INTELIQUENT.............................................................................. 9

    A.    Plaintiffs Have Pleaded Sufficient Facts To Satisfy The Conduct Element Of § 1962(c). ......................................................................................... 9

    B.    Plaintiffs Adequately Pleaded That Inteliquent Committed Two Predicate Acts Of Racketeering. ..................................................................................... 11

    C.    Plaintiffs' § 1962(d) Claim Against Inteliquent Is Adequately Pleaded For The Same Reasons Stated In Plaintiffs' T-Mobile Opposition. ................................... 13

IV.    THERE IS NO BASIS TO DISMISS PLAINTIFFS' ILLINOIS CONSUMER FRAUD ACT CLAIM (COUNT VII) AGAINST INTELIQUENT........................................... 13

## TABLE OF AUTHORITIES

Cases

*Am. Inmate Phone Sys., Inc. v. US Sprint Commc'ns Co.*,
    787 F. Supp. 852 (N.D. Ill. 1992) ............................................................. 14
*Bastien v. AT&T Wireless Servs., Inc.*,
    205 F.3d 983 (7th Cir. 2000) ........................................................... 13, 14
*Blankenship v. Pushpin Holdings, LLC*,
    157 F. Supp. 3d 788 (N.D. Ill. 2016) .................................................... 2, 3
*Brouwer v. Raffensperger, Hughes & Co.*,
    199 F.3d 961 (7th Cir. 2000) ............................................................. 9, 10
*Brown v. SBC Commc'ns, Inc.*,
    No. 05-cv-777, 2007 WL 684133 (N.D. Ill. Mar. 1, 2007) ........................ 15
*Bruss Co. v. Allent Commc'n Servs, Inc.*,
    606 F. Supp. 401 (N.D. Ill. 1985) ......................................................... 14
*Cada v. Baxter Healthcare Corp.*,
    920 F.2d 446 (7th Cir. 1990) ................................................................. 4
*Cellular Dynamics, Inc. v. MCI Telecomms. Corp.*,
    No. 94-C-3126, 1995 WL 221758 (N.D. Ill. Apr. 12, 1995) ...................... 14
*Chapple v. Nat'l Starch & Chem. Co. & Oil*,
    178 F.3d 501 (7th Cir. 1999) ................................................................. 4
*Clark v. City of Braidwood*,
    318 F.3d 764 (7th Cir. 2003) ............................................................. 4, 5
*Commc'ns Vending Corp. v. Citizens Commc'ns Co.*,
    Mem. Op. & Order, 17 FCC Rcd. 24201 (2002) ...................................... 2
*Cty. Of Cook v. HSBC N. Am. Holdings, Inc.*,
    314 F. Supp. 3d 950 (N.D. Ill. 2014) .................................................... 4
*Elward v. Electrolux Home Prods., Inc.*
    264 F. Supp. 3d 877 (N.D. Ill. 2017) ................................................... 1, 2
*Emery v. Am. Gen. Fin. Inc.*,
    134 F.3d 1321 (7th Cir. 1998) .............................................................. 15
*Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*,
    831 F.3d 815 (7th Cir. 2016) ........................................................... 11, 12
*Fifth Third Bank ex rel. Tr. Officer v. CSX Corp.*,
    415 F.3d 741 (7th Cir. 2005) ................................................................ 13
*Forth v. Walgreen Co.*,
    No. 17-cv-2246, 2018 WL 1235015 (N.D. Ill. Mar. 9, 2018) ...................... 4
*Glob. Crossing Telecomms., Inc. v. Metrophones Telecomms., Inc.*,
    550 U.S. 45 (2007) ............................................................................... 7
*Goren v. New Vision Int'l., Inc.*,
    156 F.3d 721 (7th Cir. 1998) ................................................................ 10
*Gulley v. Moynihan*,
    No. 10-C-4435, 2011 WL 2461813 (N.D. Ill. June 17, 2011) ...................... 5
*Heastie v. Cmty. Bank of Greater Peoria*,
    690 F. Supp. 716 (N.D. Ill. 1988) ......................................................... 15

*Hoffman v. Rashid*,
    388 Fed. App'x. 121 (3d Cir. 2010).................................................................. 7
*In re Rural Call Completion*, Declaratory Ruling,
    27 FCC Rcd. 1351 (2012)............................................................... 3, 6, 7, 8
*In re Rural Call Completion*, Notice of Proposed Rulemaking,
    28 FCC Rcd. 1569 (2013).......................................................................... 8, 9
*In re Rural Call Completion*, Order on Recons.,
    29 FCC Rcd. 14026 (2014)........................................................................... 7
*In re Rural Call Completion*, Rep. & Order & Further Notice of Rulemaking,
    28 FCC Rcd. 16154 (2013)................................................................. 2, 3, 8
*In re Rural Call Completion*, Third Rep. & Order & Order,
    33 FCC Rcd. 8400 (2018)............................................................................ 6
*Inteliquent, Inc. v. Free Conferencing Corp.*,
    No. 16-cv-6976, 2017 WL 1196957 (N.D. Ill. 2017)............................... 11
*Jovic v. L-3 Srvs., Inc.*,
    69 F. Supp. 3d 750 (N.D. Ill. 2014) ........................................................... 1
*Limestone Dev. Corp. v. Vill. Of Limestone, Ill.*,
    520 F.3d 797 (7th Cir. 2008) ..................................................................... 3
*Morrison v. YTB Int'l., Inc.*,
    649 F.3d 533 (7th Cir. 2011) ............................................................ 14, 15
*N. Cnty. Commc'ns Corp. v. Cal. Catalog & Tech.*,
    594 F.3d 1149 (9th Cir. 2010) ................................................................... 7
*R.E. Davis Chem. Corp. v. Nalco Chem. Co.*,
    757 F. Supp. 1499 (N.D. Ill. 1990) ......................................................... 11
*Reiser v. Residential Funding Corp.*,
    380 F.3d 1027 (7th Cir. 2004) ............................................................... 1, 5
*Resnick v. Schwartz*,
    No. 17-C-04944, 2018 WL 4191525 (N.D. Ill. Sept. 3, 2018).................. 5
*Reves v. Ernst & Young*,
    507 U.S. 170 (1993).................................................................................. 10
*Stemm v. Tootsie Roll Indus., Inc.*,
    374 F. Supp. 3d 734 (N.D. Ill. 2019) ....................................................... 13
*Thelen v. Marc's Big Boy Corp.*,
    64 F.3d 264 (7th Cir. 1995) ....................................................................... 4
*United States v. Sheneman*,
    682 F.3d 632 (7th Cir. 2012) ................................................................... 12


Statutes

18 U.S.C. § 1962(c) ......................................................................................... 9, 11
18 U.S.C. § 1962(d) ....................................................................................... 11, 13
47 U.S.C. § 153(11) ............................................................................................... 6
47 U.S.C. § 201(b) ...................................................................................... 2, 6, 7, 9
47 U.S.C. § 202(a) ...................................................................................... 2, 6, 7, 9
47 U.S.C. § 206 ...................................................................................................... 7
47 U.S.C. § 207 ...................................................................................................... 7

47 U.S.C. § 332(c)(3)(A) ........................................................................................................... 14

47 U.S.C. § 414 ........................................................................................................................ 14

Regulations

47 C.F.R. § 64.2201 .................................................................................................................. 2

Craigville Telephone Co. d/b/a AdamsWells and Consolidated Telephone Company d/b/a CTC, on behalf of themselves and a class of similarly-situated companies, submit this Opposition to Inteliquent, Inc.'s Motion to Dismiss First Amended Class Action Complaint and incorporate by reference their introductory comments set forth in their Opposition to T-Mobile USA, Inc.'s Motion to Dismiss First Amended Class Action Complaint filed simultaneously herewith.

## LEGAL STANDARDS

Plaintiffs incorporate by reference the standards section of their Opposition to T-Mobile USA, Inc.'s Motion to Dismiss First Amended Class Action Complaint.

## LAW AND ARGUMENT

**I.  DEFENDANTS DO NOT ESTABLISH THAT ANY CLAIMS ARE BARRED AS A MATTER OF LAW BY THE STATUTE OF LIMITATIONS.**

Both Defendants ask the Court to dismiss claims based on the applicable statute of limitations.  T-Mobile asserts that the Communications Act claims are barred while Inteliquent goes so far as to assert that *all* of Plaintiffs' claims against it should be dismissed.  Defendants, however, fail to present any persuasive argument as to why this case warrants deviation from the well-recognized principle that "the statute of limitations is an affirmative defense typically unsuitable for consideration at the motion to dismiss stage."  *Jovic v. L-3 Srvs., Inc.*, 69 F. Supp. 3d 750, 765 (N.D. Ill. 2014) (Lee, J.) (citing *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004)); *see also Elward v. Electrolux Home Prods., Inc.*, 264 F. Supp. 3d 877, 887 (N.D. Ill. 2017) (Lee, J.).

### A.  Accurate Application Of The Discovery Rule Establishes That None Of Plaintiffs' Claims Are Time Barred.

T-Mobile asserts that the conduct described in the *Consent Decree* ceased by 2016, and that, therefore, the statute of limitations started by that time.  (T-Mobile's Mem. in Supp. of Mot.

to Dismiss ("T-Mobile Mem.") 18, ECF No. 55.)  Inteliquent asserts that, because the FAC discusses events reflecting rural call completion problems experienced by Plaintiffs as early as 2013, all of the claims accrued at that time and are now time-barred.  (Inteliquent's Mem. in Supp. of Mot. to Dismiss ("Inteliquent Mem.") 7-8, ECF No. 48.)  Defendants' arguments fail in their application of the discovery rule.[1]  Contrary to T-Mobile's argument, Defendants' commission of the wrong does not start the statute of limitations clock.  The discovery rule focuses not on the date of the wrong, but when it was reasonably discoverable by Plaintiffs.  And, contrary to Inteliquent's argument, Plaintiffs' discovery of *limited* instances of rural call completion problems emanating from T-Mobile's network is also not the relevant date.  Instead, "the obligation of inquiry does not begin until after 'a party knows or reasonably should know both that an injury occurred *and* that is was wrongfully caused.'"  *Blankenship v. Pushpin Holdings, LLC*, 157 F. Supp. 3d 788, 793 (N.D. Ill. 2016) (quoting *Knox College v. Celotex Corp.*, 430 N.E. 2d 976, 980 (Ill. 1981) (emphasis in original)); *see also Elward*, 264 F. Supp. 3d at 889 ("[D]iscovery [of the injury] was delayed because they did not know and could not have known at that time that their injury was caused by the defect."); *Commc'ns Vending Corp.*, 17 FCC Rcd. at 24222 ¶ 51 ("If the injury is not readily discoverable, the cause of action accrues when the litigant discovers the injury.").

Each time a fake ring tone was used it was an unjust and unreasonable practice that violated 47 C.F.R. § 64.2201 (Count I), reflected the provision of degraded service in violation of Section 201(b) of the Communications Act (Count II), and was discriminatory in violation of Section 202(a) of the Communications Act (Count III).  (*See In re Rural Call Completion*, Rep. & Order & Further Notice of Proposed Rulemaking, 28 FCC Rcd. 16154, 16200-03 ¶¶ 111-16 (2013)

---

[1] It is undisputed that Plaintiffs' claims are subject to the discovery rule.  *See* Inteliquent Mem. 6-7; T-Mobile Mem. 18 (citing *Commc'ns Vending Corp. v. Citizens Commc'ns Co.*, Mem. Op. & Order, 17 FCC Rcd. 24201, 24222 (2002)).

("2013 Order"); *In re Rural Call Completion*, Declaratory Ruling, 27 FCC Rcd. 1351, 1355-56 ¶¶ 12, 14, & n.35 (2012) ("*2012 Declaratory Ruling*").) As Plaintiffs have described, they had little chance of learning about calls that do not reach their switches. (FAC ¶¶ 271-72, 290, 301, 373.) Plaintiffs and the class they seek to represent had no notice about the multitude of calls that T-Mobile subscribers tried to make to Plaintiffs' customers, but which failed due to technological issues or because T-Mobile's customers hung-up (2013 Order, ¶ 111), until the FCC revealed T-Mobile's massive fraud in the *Consent Decree* in April 2018.[2] It takes more than a few bricks to build a home. *See Limestone Dev. Corp. v. Vill. of Limestone, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008) (explaining that, where the first instances of unlawful conduct are "too trivial" on their own to constitute an actionable offense, the statute of limitations will not begin to run "until a series of wrongful acts blossoms into an injury on which suit can be brought"). Thus, the statute of limitations for these claims did not begin to run until April 16, 2018.

Regarding Plaintiffs' ICFA claim, Plaintiffs' injury was not discoverable until they learned consumers were being deceived by fake ring tones inserted into T-Mobile's traffic to mask degraded service. *See, e.g., Blankenship*, 157 F. Supp. 3d at 792-94 (ICFA claim did not accrue until plaintiff learned of defendants' alleged deceptive acts of forgery and reliance on the forged documentation). Thus, the statute of limitations for this claim also did not begin to run until the *Consent Decree*'s release on April 16, 2018.

Plaintiffs assert the limitations period on their claims for violations of RICO (Counts IV and V), tortious interference (Count VI), and civil conspiracy (Count VIII) began to run later, in

---

[2] Even today, while Plaintiffs have demonstrated their good faith belief that they are among the OCNs impacted by T-Mobile's practices, the identity of all of the local exchange carriers that have been injured remains unknown. T-Mobile has successfully prevented the FCC from releasing its Form 480 reports or any other information that would reveal the identity of the injured carriers.

August 2018, when some discovery in the *Inteliquent v. Free Conferencing* litigation was unsealed and revealed that Defendants were engaged jointly in a scheme to suppress traffic to high-cost areas to improve profit margins. (*See* FAC ¶¶ 219-23.) Those materials were filed with the FCC for the first time on August 7, 2018, after Free Conferencing successfully had them unsealed. (*Id.* Ex. 16, at 1.) Before that time, Plaintiffs could not have discovered the conspiratorial wrongful conduct because critical details regarding Defendants' combined effort to reduce traffic volumes was not public. (*Id.* Ex. 16, at 5 (noting that, in March 2016, Defendants were pursuing ways to "more aggressively … contain the volume of traffic to high costs codes")).) Accordingly, Plaintiffs pleaded all claims well within the statutory period.

### B. Equitable Tolling Prevents Resolution Of Defendants' Statute Of Limitations Arguments.

Even if the Court were to conclude that one or more of Plaintiffs' claims were discoverable at a date earlier than those set forth above, that alone would not entitle Defendants to dismissal. Rather, because dismissal "at the pleading stage … is typically disfavored," *Cty. of Cook v. HSBC N. Am. Holdings, Inc.*, 314 F. Supp. 3d 950, 969 (N.D. Ill. 2014), "[i]f there is '*any* set of facts that if proven would establish a defense to the statute of limitations,' then a motion to dismiss should be denied." *Forth v. Walgreen Co.*, No. 17-cv-2246, 2018 WL 1235015, at *15 (N.D. Ill. Mar. 9, 2018) (Lee, J.) (quoting in part *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003) (emphasis in original)).

Equitable tolling is directly implicated by Plaintiffs' claims. It applies when a party has been injured but "cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). It also applies where the defendant actively concealed its role. *See, e.g.*, *Chapple v. Nat'l Starch & Chem. Co. & Oil*, 178 F.3d 501, 506 (7th Cir. 1999); *Thelen v. Marc's*

*Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995). Where equitable tolling appears as a possible defense, the question of "whether a plaintiff will be able to respond to the statute of limitations defense with equitable estoppel or tolling will require evidence that is not required at the motion to dismiss stage." *Gulley v. Moynihan*, No. 10-C-4435, 2011 WL 2461813, at *4 (N.D. Ill. June 17, 2011) (citing *Reiser*, 380 F.3d at 1030); *see also Clark*, 318 F.3d at 767 ("[P]laintiff is not required to negate an affirmative defense in his complaint."); *Resnick v. Schwartz*, No. 17-C-04944, 2018 WL 4191525, at *6 (N.D. Ill. Sept. 3, 2018) ("[T]he facts underlying the fraud-or-concealment exception need not be pled in the Amended Complaint *at all*." (emphasis added)).

Even though Plaintiffs had no duty to do so, they pleaded substantial facts about T-Mobile's and Inteliquent's efforts to hide their joint enterprise. (FAC ¶¶ 219-38, 247-48, 283, 299, 301, 372.) Those allegations demonstrate Plaintiffs could not have reasonably detected the nature and extent of the scheme absent the *Consent Decree* and the critical revelations from the *Inteliquent v. Free Conferencing* litigation. Even then, Defendants continue to actively restrict access to critical information relevant to Plaintiffs' pre-filing investigation. Even after the Complaint was filed, T-Mobile has blocked access to important information regarding the expanded use of fake ring tones in September 2015 and the identity of the impacted carriers. (*Id.* ¶¶ 229-33.) The "myriad sealing motions in the Inteliquent Litigation [and] obscuring [of] information about the *Consent Decree* investigation from public view" has limited access to critical information regarding T-Mobile's and Inteliquent's conspiracy. (*Id.* ¶¶ 373.) The parties have many miles to travel before statute of limitations defenses can be resolved.

## II. PLAINTIFFS HAVE SUCCESSFULLY PLEADED CLAIMS FOR VIOLATIONS OF THE COMMUNICATIONS ACT (COUNTS II AND III) AGAINST INTELIQUENT.

### A. The Complaint Clearly Alleges That Inteliquent Violated Sections 201(b) And 202(a) Based On The FCC's *2012 Declaratory Ruling*.

Count II alleges that Inteliquent violated Section 201(b) of the Communications Act based on the FCC's pronouncement in 2012 that a carrier commits a violation when it "knows or should know that calls are not being completed to certain areas, and [] engages in acts (or omissions) that allow or effectively allow these conditions to persist," or where it "knows or should know that it is providing degraded service to certain areas [and] fail[s] to correct the problem or [] to ensure that intermediate providers, least-cost routers, or other entities acting for or employed by the carrier are performing adequately." (*Id.* ¶¶ 93, 337-41 (quoting *2012 Declaratory Ruling*, ¶¶ 11-12).) Count III alleges that Inteliquent "adopt[ed] or perpetuat[ed] routing practices that result[ed] in lower quality service to rural or high-cost localities than like service to urban or lower cost localities" constituting unjust or unreasonable discrimination in violation of Section 202(a). (*Id.* ¶ 95 (quoting *2012 Declaratory Ruling*, ¶ 14).)

Inteliquent's Motion rests on the flawed premise that "intermediate providers did not have *any* specific duty under federal law to complete calls until the FCC created rules in March 2019 in response to the Improving Rural Call Quality and Reliability Act of 2017." (Inteliquent Mem. 8-9.) This argument ignores the critical fact that Inteliquent is not simply an intermediate provider, but also a carrier within the meaning of the Communications Act. *See* 47 U.S.C. § 153(11). While the FCC has recognized that "intermediate providers" may be carriers or non-carriers, (*In re Rural Call Completion*, Third Rep. & Order & Order, 33 FCC Rcd. 8400, 8409-10 ¶ 23 (2018)), Inteliquent has repeatedly presented itself to the FCC as a carrier. (*See, e.g.,* FAC Exs. 11, 12 (describing itself as a "competitive local exchange carrier").) As a carrier, therefore, Inteliquent

6

was fully bound by the FCC's *2012 Declaratory Ruling* and can be held liable for violating Sections 201(b) and 202(a).

Inteliquent also argues that "[t]he very existence of the FCC's March 2019 Order confirms that there were no [] standards before its promulgation, as the complaint incorrectly suggests." (Inteliquent Mem. 9.) This argument is simply wrong. It ignores the *2012 Declaratory Ruling*, which articulated that liability would be imposed for providing degraded or lower quality service and provided clear examples of the types of service that would create liability. (*See, e.g., 2012 Declaratory Ruling*, ¶ 12 nn.35-37.) Inteliquent also ignores that the FCC already rejected an identical argument, concluding in 2014 that its *2012 Declaratory Ruling* provided sufficient clarity regarding the standard for liability. (*See In re Rural Call Completion*, Order on Recons., 29 FCC Rcd. 14026, 14040-41 ¶ 38 (2014); *id.* ¶ 38 n.104 (concluding that the *2012 Declaratory Ruling* provides the relevant standard.) Inteliquent's Motion is without merit and should be denied.[3]

### B. The Complaint Pleads Unjust, Unreasonable, And Discriminatory Conduct By Inteliquent.

By declaring that call failures or the provision of degraded service to certain areas are unjust and unreasonable practices that violate Sections 201(b) and 202(a), the Commission authorized carriers to pursue damages in federal court. *See* 47 U.S.C. §§ 206-07; *Glob. Crossing Telecomms., Inc. v. Metrophones Telecomms., Inc*., 550 U.S. 45 (2007); *N. Cnty. Commc'ns Corp. v. Cal. Catalog & Tech.*, 594 F.3d 1149, 1160, 1162 (9th Cir. 2010); *Hoffman v. Rashid*, 388 Fed. App'x. 121, 123 (3d Cir. 2010). Because the FAC alleges that Inteliquent's routing practices led to repetitive call failures, degraded service, and/or lower quality service, Plaintiffs have properly pled Counts II and III against Inteliquent.

---

[3] It appears Inteliquent may be trying to offer the FCC's 2019 standards as something of a defense. No affirmative defenses, however, have been pleaded at this time, and they certainly have not been established.

Plaintiffs established through their FOIA request that T-Mobile's admitted expansion of fake ring tones to cover all SIP-routes began in September 2015; this is precisely the same time Inteliquent, which operates an all-SIP network, became the nearly exclusive routing provider for T-Mobile's out-of-network traffic. (FAC ¶¶ 165-170, 252.) The FCC has declared that, when unreasonable delay is manifested by fake ring tones, the carrier is providing degraded service. (*2012 Declaratory Ruling*, ¶ 12 n.35.) That is, fake ring tones are used to hide "***excessive*** set-up time" (2013 Order, ¶ 114 (emphasis added); *see also Consent Decree*, ¶ 11.) Therefore, by pleading facts showing that T-Mobile's decision to route traffic through Inteliquent also resulted in the expanded use of fake ring tones, which masked excessive set-up times, Plaintiffs have pled a *prima facie* case that Inteliquent "provid[ed] degraded service to certain areas" and "adopt[ed] or perpetuat[ed] routing practices that result[ed] in lower quality service." (FAC ¶ 93, 95, 338 (quoting *2012 Declaratory Ruling*, ¶¶ 12, 14).)

Moreover, Inteliquent has publicly acknowledged that it encountered situations in which some of its customers were "unable to take back a call that [it] is unable to complete." (2013 Order, ¶ 58 (quoting *In re Rural Call Completion,* WC Docket No. 13-39, Reply Comments of Inteliquent, at 10 (June 11, 2013)).)[4] This admission is significant in light of the FCC's conclusion that when an intermediate provider conveys fake ring tones, the intermediate provider is no longer able to hand back the call to the originating carrier for re-routing. (*See In re Rural Call Completion*, Notice of Proposed Rulemaking, 28 FCC Rcd. 1569, 1581-82 ¶ 39 (2013) ("2013

---

[4] Because AT&T and other carriers are able to take their calls back if their intermediate providers cannot deliver them, and ensure that they are delivered through another provider, this suggests that Inteliquent is not operating in a manner consistent with industry practice. (*See 2012 Declaratory Ruling*, ¶ 12 n.36.)

NPRM").)[5]  In other words, injecting fake ring tones prevents an Intermediate Provider from being able to hand the call back to the preceding provider and directly results in call failures.  While proof of call failures is not necessary to establish Section 201(b) and 202(a) violations, these statements nevertheless elucidate precisely why it is highly plausible that the expanded use of fake ring tones in September 2015 masked not only degraded service (*i.e.*, excessive call setup), but also call failures resulting from both technological failure and people hanging up.  Neither Count II nor III should be dismissed.

## III.  PLAINTIFFS' RICO CLAIMS (COUNTS IV AND V) ARE PROPERLY PLEADED AGAINST INTELIQUENT.

### A.  Plaintiffs Have Pleaded Sufficient Facts To Satisfy The Conduct Element Of § 1962(c).

Count IV asserts Inteliquent violated 18 U.S.C. § 1962(c), which makes it unlawful for any person associated with an enterprise "to conduct or *participate … in the conduct* of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c) (emphasis added).  (*See* FAC ¶¶ 360-61.)  The elements of a claim under subsection (c) are (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity.  *See Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 963 (7th Cir. 2000).  Inteliquent takes issue with the sufficiency of Plaintiffs' pleading of the conduct element by arguing that the FAC does not adequately plead that Inteliquent "operated or managed" a RICO enterprise, and because the FAC does not allege Inteliquent inserted the fake ring tones.  (Inteliquent Mem. 11.)  This argument is based on a

_____

[5] Plaintiffs have yet to discover where the fake ring tones were inserted after September 2015 when Inteliquent became primarily responsible for delivering T-Mobile's traffic.  (*See* FAC ¶¶ 251-52.)  However, the FCC concluded that *if* fake ring tones are conveyed by an intermediate provider, such as Inteliquent, who is then unable to deliver the call to its intended destination, that in itself *causes* a call failure.  (*See* 2013 NPRM, ¶ 39.)  As the FCC explains, injecting fake ring tones prevents the intermediate provider from being able to hand the call back to the preceding provider to attempt an alternative route.

jumbled recitation of the law that overstates Plaintiffs' pleading burden, and ignores that Inteliquent's routing practices were central to the success of the fake ring tone scheme.

Inteliquent's contention that Plaintiffs had to plead that Inteliquent "operated or managed" the enterprise is inaccurate. (*Id.*) Liability may attach to "any person associated with an enterprise who ***participates in the operation*** or management of the enterprise." *Brouwer,* 199 F.3d at 964. In *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993), the Supreme Court held that, to plead the conduct element, a plaintiff must allege:

> that the defendant "participated in the operation or management of the enterprise itself," and that the defendant played "***some part*** in directing the enterprise's affairs."

*Goren v. New Vision Int'l., Inc.*, 156 F.3d 721, 727 (7th Cir. 1998) (quoting *Reves*, 507 U.S. at 179). Liability for participating in the conduct of the affairs of an enterprise is not limited to upper management of the enterprise, as suggested by Inteliquent. *See Brouwer*, 199 F.3d at 963. An enterprise may be operated not just by upper management, but also by lower rung participants in the enterprise who are under the direction of upper management. *See Reves*, 507 U.S. at 184.

Plaintiffs sufficiently allege that Inteliquent *participated* in the operation of the fake ring tone enterprise and played "some part" in directing its affairs. The FAC alleges in multiple sections that Inteliquent's primary participation in the enterprise was its administration of the call routing practices underlying T-Mobile's admission in the *Consent Decree* that it failed to correct problems with its intermediate providers' delivery of calls to consumers in certain rural areas. (FAC ¶¶ 154, 156, 183, 357, 361, 367, 370.) The FAC describes the scheme as a combination of "the failure to deliver calls to rural areas and the effort to mask these failures by the expanded use of fake ring tones," with Inteliquent's predominant participation being the direction and operation of call delivery failures to avoid access charges. (*Id*. ¶ 155.) As the almost exclusive intermediary

for T-Mobile, as the master of the routing strategies for T-Mobile's subscribers' calls, and as the carrier of as much as 21.8 billion minutes of traffic for T-Mobile in 2015 alone, Inteliquent had the power, dominance, and control to administer the call routing and access charge avoidance activities that were central to the fake ring tone scheme. (*Id.* ¶¶ 155, 170-72, 176, 196.) The FAC also alleges the enterprise would not have successfully achieved its purpose of reducing Inteliquent's and T-Mobile's liability for high cost access fees without Inteliquent's participation. (*Id.* ¶¶ 366, 370.)[6] The foregoing allegations fully satisfy the minimum pleading requirements of the conduct element.

### B. Plaintiffs Adequately Pleaded That Inteliquent Committed Two Predicate Acts Of Racketeering.

Plaintiffs agree Inteliquent "must have committed at least two predicate acts in order to be held liable under § 1962(c)." *R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499, 1509 (N.D. Ill. 1990).[7] However, Inteliquent "need not have personally mailed the letter or placed

---

[6] The FAC also alleges myriad other facts evidencing Inteliquent's participation in the operations of the affairs of the enterprise, including advocating publicly for the use of fake ring tones (*id.* ¶¶ 166, 202), failing to correct the grossly disproportional number of calls it failed to connect to high-cost rural areas (*id.* ¶¶ 184, 189), participating in weekly calls with T-Mobile to devise ways to reduce the quantity of "high cost traffic" completed by Inteliquent (*id.* ¶¶ 196-99), working with T-Mobile on the call completion reports it was required to submit to the FCC which fraudulently avoided disclosure of their poor call completion rates to rural areas (*id.* ¶¶ 203-04, 253), coordinating with T-Mobile in other litigation to block discovery of Inteliquent's role in the fake ring tone scheme (*id.* ¶¶ 224), failing to complete calls masked by fake ring tones that were placed to an AdamsWells customer (*id.* ¶¶ 289), and porting hundreds of CTC's commercial customers' phone numbers to itself to artificially reduce its and T-Mobile's liability for high-cost access charges (*id.* ¶¶ 308, 316-17).

[7] Much of the relevant district court discussions of this issue can be traced back to *R.E. Davis*, which used the phrase "personally committed" to distinguish a defendant who had committed predicate acts of racketeering (and was therefore liable under § 1962(c)) from a purely passive defendant who merely agreed that one of his coconspirators would commit predicate acts of racketeering (and was thus liable only under § 1962(d)). *See R.E. Davis*, 757 F. Supp. at 1509-10, 1515. Beyond that simple distinction, the phrase is meaningless; the defendant at issue need not have used the mails or interstate wires itself. It is sufficient that their use by others was reasonably foreseeable. *See Empress*, 831 F.3d at 827; *see also Inteliquent, Inc. v. Free Conferencing Corp.*, No. 16-cv-6976, 2017 WL 1196957, at *11 (N.D. Ill. 2017) (same).

the telephone [call] which supplies the basis for liability … if use of the mails or wires in connection with the scheme was known or reasonably foreseeable to him or her." *Id.* at 1513; *see also, e.g.*, *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 827 (7th Cir. 2016) ("Each use of the wires … would count, as long as [the defendant] agreed to it or it was foreseeable."). "Moreover, it is not necessary for the use of the wires to contain any false or fraudulent material, and even a routine or innocent use of the wires may satisfy this element so long as that use is part of the execution of the scheme." *Empress*, 831 F.3d at 827 (quoting *United States v. Sheneman*, 628 F.3d 623, 629-30 (7th Cir. 2012)). Thus, Inteliquent again argues, erroneously, for application of a higher RICO pleading burden than required.

Even though Plaintiffs need not allege Inteliquent personally made use of wire communications in furtherance of the fake ring tone scheme, they do so in at least the following ways: transmitting call detail records to T-Mobile via wires (FAC ¶ 189); preparing T-Mobile's Form 480 reports, exchanging drafts of the reports with T-Mobile via wires, and submitting these reports (which ultimately contained false information) to the FCC via wires every quarter (*id.* ¶¶ 203-04, 253, 372(e)); and employing unlawful routing practices by blocking and degrading certain T-Mobile customers' calls to avoid paying high-cost termination fees (*id.* ¶¶ 151, 154-56, 183, 361, 367, 273-89); *see also generally* FAC ¶¶ 372 (alleging additional foreseeable uses of wires or mail in furtherance of the scheme)). *See Empress*, 831 F.3d at 827.

Inteliquent argues that "[t]here is *no* allegation that Inteliquent made *any* misrepresentation to either of the named plaintiffs (or anyone)." (Inteliquent Mem. 13) (alteration in original). However, as discussed above, "it is not necessary for the use of the wires to contain any false or fraudulent material," although Plaintiffs have alleged that Form 480 reports did contain false information. *Empress*, 831 F.3d at 827 (quoting *Sheneman*, 628 F.3d at 629-30). (*See also* FAC

12

¶ 253.)   Nor is the FAC insufficient for lack of pleading the precise date, time, place, etc. of each use of wires or mail in furtherance of the scheme for the same reasons discussed in Plaintiffs' T-Mobile Opposition (Section III.B), which is incorporated herein by reference.

For all of these reasons, Plaintiffs have sufficiently pleaded that Inteliquent committed at least two predicate acts of racketeering.

### C. Plaintiffs' § 1962(d) Claim Against Inteliquent Is Adequately Pleaded For The Same Reasons Stated In Plaintiffs' T-Mobile Opposition.

Plaintiffs' arguments in their T-Mobile Opposition (Section III.D) showing the FAC sufficiently alleges the agreement element of a § 1962(d) claim apply equally to Inteliquent's § 1962(d) arguments, (*see* Inteliquent Mem. 14), and are incorporated by reference.   And, with respect to Inteliquent's contention that the FAC does not allege injury caused by any predicate act, Plaintiffs' arguments in their T-Mobile Opposition (Section III.A) apply equally here and are also incorporated by reference.   Whether the predicate act is the insertion of fake ring tones, or the unlawful routing practices of Inteliquent that T-Mobile admitted it failed to correct in the *Consent Decree*, the class-wide resulting injury adequately pleaded is the same – loss of access charges sought to be avoided by the acts of racketeering.

### IV.   THERE IS NO BASIS TO DISMISS PLAINTIFFS' ILLINOIS CONSUMER FRAUD ACT CLAIM (COUNT VII) AGAINST INTELIQUENT.

Inteliquent first argues that dismissal of Plaintiffs' ICFA claim is preempted by the Communications Act.   "[P]reemption is an affirmative defense on which [the defendant]—not [the plaintiff]—bears the burden of proof."   *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 742 (N.D. Ill. 2019) (citing *Fifth Third Bank ex rel. Tr. Officer v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005) ("Federal preemption is an affirmative defense upon which the defendants bear the burden of proof.")).   Despite this, Inteliquent's sole support for its preemption argument is *Bastien*

13

*v. AT&T Wireless Servs., Inc.*, 205 F.3d 983 (7th Cir. 2000), in which an AT&T Wireless subscriber attempted to challenge AT&T Wireless's rates based on state law theories. There, the Seventh Circuit agreed that the claims were preempted by 47 U.S.C. § 332(c)(3)(A), an express preemption clause that prevents state and local governments from regulating wireless carrier's rates or market entry. *See id.* at 986-90. Plaintiffs' claims against Inteliquent – which is a carrier, but not a *wireless* carrier – have nothing to do with regulation of a wireless carrier's rates or market entry. Count VII in no way implicates 47 U.S.C. § 332(c)(3)(A) and *Bastien* is inapposite.

Inteliquent also argues Plaintiffs' ICFA claim is preempted because the conduct underlying it is duplicative of the Communications Act claims. This argument is meritless, as Congress expressly stated that the Communications Act does not "in any way abridge or alter the remedies now existing at common law or by statute" and, instead, provides remedies "in addition to such remedies." 47 U.S.C. § 414. Thus, courts have repeatedly concluded that ICFA claims are not preempted. *See, e.g., Am. Inmate Phone Sys., Inc. v. US Sprint Commc'ns Co.*, 787 F. Supp. 852, 856 (N.D. Ill. 1992) ("[A] claim under the Illinois Consumer Fraud and Deceptive Business Practices Act is preserved by § 414 of the [] Act."); *Cellular Dynamics, Inc. v. MCI Telecomms. Corp.*, No. 94-C-3126, 1995 WL 221758, at *3 (N.D. Ill. Apr. 12, 1995) ("The court has little trouble finding that plaintiff's consumer fraud claim is not pre-empted by the [] Act."); *Bruss Co. v. Allent Commc'n Servs, Inc.*, 606 F. Supp. 401, 409-11 (N.D. Ill. 1985) (determining the Act did not preempt state law claims, including the ICFA). Inteliquent has not met its burden of establishing preemption.

Inteliquent also echoes one of T-Mobile's meritless arguments by asserting that Count VII should be dismissed because "non-resident plaintiffs lack ICFA standing." (Inteliquent Mem. 15.) Plaintiffs address the issue fully in their opposition to T-Mobile's Motion; the response can be

summarized thusly: the complaint "does not *defeat* application of Illinois law." *See Morrison v. YTB Int'l., Inc.*, 649 F.3d 533, 537-38 (7th Cir. 2011) (emphasis in original). Discovery is essential to understanding the facts and events regarding the expanded use of fake ring tones in September 2015 and what events transpired here in Illinois related to that expansion. Accordingly, dismissal is unwarranted.

Finally, the ICFA allegations against Inteliquent sufficiently allege its participation in the fraudulent scheme to use fake ring tones to deceive consumers and mask call routing choices that were made to reduce the amounts paid in access charges. *See Heastie v. Cmty. Bank of Greater Peoria*, 690 F. Supp. 716, 722 (N.D Ill. 1988) (an ICFA claim against two defendants arising from a fraudulent mortgage scheme was pleaded with adequate particularity where plaintiff alleged how the scheme operated); *Brown v. SBC Commc'ns, Inc.*, 05-cv-777, 2007 WL 684133, at **5-6 (N.D. Ill. Mar. 1, 2007) (ICFA claim was adequately pleaded against billing vendor who participated in the scheme to defraud consumers through fake charges on telephone bills). To the extent that Inteliquent seeks to hide from discovery because of Rule 9(b)'s pleading standard, it is merely seeking to benefit from the Catch-22 situation that the Seventh Circuit counseled against in *Emery v. Am. Gen. Fin. Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998) ("We don't want to create a Catch–22 situation in which a complaint is dismissed because of the plaintiff's inability to obtain essential information without pretrial discovery (normally of the defendant, because the essential information is in his possession and he will not reveal it voluntarily) that she could not conduct before filing the complaint. But Rule 9(b) is relaxed upon a showing of such inability.").

## CONCLUSION

For the foregoing reasons, Inteliquent's Motion to Dismiss First Amended Class Action Complaint should be denied in its entirety.

Submitted on this 10th day of February 2020.

/s/ David T.B. Audley
David T.B. Audley (Bar No. 6190602)
Mia D. D'Andrea (Bar No. 6307966)
Chapman and Cutler LLP
111 West Monroe Street
Chicago, IL 60603-4080
Tel. 312-845-2971
Fax: 312-516-3971
Email: audley@chapman.com
Email: dandrea@chapman.com

Cathy A. Hinger (*pro hac vice*)
G. David Carter (*pro hac vice*)
Womble Bond Dickinson (US) LLP
1200 19th Street, NW, Suite 500
Washington, DC 20036
Tel.: 202-857-4489
Fax: 202-261-0029
Email: cathy.hinger@wbd-us.com
Email: david.carter@wbd-us.com

Kurt D. Weaver (*pro hac vice*)
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: 919-755-8163
Facsimile: 919-755-6770
Email: kurt.weaver@wbd-us.com

*Counsel for Plaintiffs*

16

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this the 10th day of February, 2020, I served the foregoing **Plaintiffs' Opposition to Inteliquent, Inc.'s Motion Dismiss First Amended Class Action Complaint** via the ECF system on parties that have consented to the same in accordance with applicable Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Northern District of Illinois.


By:      */s/ David T.B. Audley*