**IN THE UNITED STATES DISTRICT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CRAIGVILLE TELEPHONE CO. d/b/a ADAMSWELLS; and CONSOLIDATED TELEPHONE COMPANY d/b/a CTC | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:19-cv-07190 |
| vs. | ) ) | Judge John Z. Lee |
| T-MOBILE USA, INC.; and INTELIQUENT, INC. | ) ) ) | |
| Defendants. | ) ) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**T-MOBILE USA, INC.'S MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I. THE FAC SHOULD BE DISMISSED BECAUSE PLAINTIFFS DO NOT
PLAUSIBLY ALLEGE ANY INJURY RESULTING FROM TMUS'S
CONDUCT. ........................................................................................................... 2

II. COUNTS II-III FAIL AS NO FCA VIOLATION IS PLAUSIBLY ALLEGED. ............. 4

    A. The 2018 Order Clarified the Law and Applies Here. ......................................... 4

    B. Plaintiffs Fail to State a Claim Under the 2012 Order or 2018 Order. ............... 5

    C. Plaintiffs Cannot Use the Consent Decree to Allege a Violation of the
FCA. ..................................................................................................................... 5

    D. Plaintiffs Cannot Proceed to Discovery Without Alleging a Plausible
Claim. ................................................................................................................... 6

III. COUNT IV, FOR ALLEGED RICO VIOLATION, SHOULD BE DISMISSED. ........... 7

    A. Plaintiffs Fail to Adequately Allege Proximate Cause. ..................................... 7

    B. Count IV Should Also Be Dismissed Because Plaintiffs Fail to
Adequately Plead Predicate Acts of Wire Fraud. .............................................. 9

        1. Plaintiffs Fail To Plead Fraud With Particularity Under Rule 9(b). ............... 9

        2. Plaintiffs Fail to Allege an Intent to Deprive Anybody of Property or
Money. ........................................................................................................... 10

IV. COUNT V SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO
PROPERLY ALLEGE A RICO CONSPIRACY UNDER § 1962(D). ......................... 10

V. IN THE ALTERNATIVE, PLAINTIFFS' PRAYER FOR PUNITIVE
DAMAGES IN COUNTS IV AND V SHOULD BE DISMISSED. .............................. 11

VI. COUNT VI, ALLEGING TORTIOUS INTERFERENCE WITH CONTRACT,
SHOULD BE DISMISSED. ...................................................................................... 11

VII. COUNT VII, FOR VIOLATION OF THE ICFA, SHOULD BE DISMISSED. ............. 13

VIII. COUNT VIII, ALLEGING CIVIL CONSPIRACY, SHOULD BE DISMISSED. ......... 15

CONCLUSION ................................................................................................................... 15

## TABLE OF AUTHORITIES

**CASES**                                                          **PAGE(S)**

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006)................................................................................7, 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................1, 3

*ATC Healthcare Servs. v. RCM Techs., Inc.*,
   282 F. Supp. 3d 1043 (N.D. Ill.2017) ......................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................7

*Beller v. Health & Hosp. Corp.*,
   703 F.3d 388 (7th Cir. 2012) ....................................................................4

*Berarov v. Archers-Daniels-Midland Co.*,
   No. 16 C 7355, 2019 WL 277717 (N.D. Ill. Jan. 22, 2019) ...................14

*Bingham v. Zolt*,
   823 F. Supp. 1126 (S.D.N.Y. 1993), *aff'd*, 66 F.3d 553 (2d Cir. 1995) .................................11

*Boothe v. Sherman*,
   66 F. Supp. 3d 1069 (N.D. Ill. 2014) ......................................................15

*Brouwer v. Raffensberger, Hughes & Co.*,
   199 F.3d 961 (7th Cir. 2000) ...................................................................10

*Buckley v. Peak6 Invs., LP*,
   827 F. Supp. 2d 846 (N.D. Ill. 2011) ......................................................12

*Chicago Bd. Options Exch., Inc. v. Conn. Gen. Life Ins. Co.*,
   95 F.R.D. 524 (N.D. Ill. 1982).................................................................6

*City of Evanston v. N. Ill. Gas Co.*,
   229 F. Supp. 3d 714 (N.D. Ill. 2017) ......................................................15

*Conboy v. AT&T Corp.*,
   241 F.3d 242 (2d Cir. 2001).................................................................3, 4

*Conditioned Ocular Enhancement, Inc. v. Bonaventura*,
   458 F. Supp. 2d 704 (N.D. Ill. 2006) ......................................................14

*Conn. Gen. Life Ins. Co. v. Sw. Surgery Ctr.*,
    349 F. Supp. 3d 718 (N.D. Ill. 2018) .................................................................14

*Cosmetique, Inc. v. ValueClick, Inc.*,
    753 F. Supp. 2d 716 (N.D. Ill. 2010) .................................................................14

*CustomGuide v. CareerBuilder, LLC*,
    813 F. Supp. 2d 990 (N.D. Ill. 2011) .................................................................14

*Empress Casino Joliet Corp. v. Johnston*,
    763 F.3d 723 (7th Cir. 2014) .....................................................................8, 9, 10

*Gelco Corp. v. Major Chevrolet, Inc.*,
    No. 01-cv-9719, 2002 WL 31427027 (N.D. Ill. 2002) .......................................14

*George A. Fuller Co. v. Chicago Coll. of Osteopathic Med.*,
    719 F.2d 1326 (7th Cir. 1983) ...........................................................................12

*Glob. Total Office L.P. v. Glob. Allies, LLC*,
    No. 10-cv-1896, 2011 WL 3205487 (N.D. Ill. July 28, 2011) ...........................14

*Greene v. Sears Prot. Co.*,
    No. 15-cv-2546, 2017 WL 1134484 (N.D. Ill. Mar. 27, 2017) ..........................14

*GTC Fin. Servs., Ltd. v. Asset Builders Assocs., LLC*,
    No. 13-cv-08605, 2014 WL 3610989 (N.D. Ill. July 22, 2014) ..........................12

*Haught v. Motorola Mobility, Inc.*,
    No. 12-cv-2515, 2012 WL 3643831 (N.D. Ill. Aug. 23, 2012) ..........................14

*Hobbs v. Gerber Prods. Co.*,
    No. 17-cv-3534, 2018 WL 3861571 (N.D. Ill. Aug. 14, 2018) .............................3

*In re Polar Bear Endangered Species Act Listing & 4(d) Rule Litig.*,
    794 F. Supp. 2d 65 (D.D.C. 2011), *aff'd*, 709 F.3d 1 (D.C. Cir. 2013)................6

*In re VMS Sec. Litig.*,
    752 F. Supp. 1373 (N.D. Ill. 1990) ....................................................................11

*Indep. Tr. Corp. v. Stewart Info. Servs.*,
    665 F.3d 930 (7th Cir. 2012) .............................................................................15

*Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*,
    29 F. Supp. 2d 801 (N.D. Ohio 1998)................................................................11

*Kinney v. City of Waukegan*,
    No. 12-cv-6810, 2015 WL 996611 (N.D. Ill. Mar. 3, 2015) ..............................15

*McClure v. Owens Corning Fiberglas Corp.*,
188 Ill. 2d 102, 720 N.E.2d 242 (1999) .................................................................15

*Mineral Res., Inc. v. Classic Coal Corp.*,
115 Ill. App. 3d 114, 450 N.E.2d 379 (1983) .......................................................13

*Morrison v. YTB Int'l, Inc.*,
649 F.3d 533 (7th Cir. 2011) ...............................................................................13

*Muir v. Nature's Bounty, Inc.*,
2017 WL 4310650 (N.D. Ill. Sept. 28, 2017) .......................................................14

*Patel v. Zillow, Inc.*,
No. 17-cv-4008, 2018 WL 2096453 (N.D. Ill. May 7, 2018), *aff'd*, 915 F.3d
446 (7th Cir. 2019) ..........................................................................................13, 14

*PharMerica Corp. v. Advanced Healthcare Sols.*,
No. 10-cv-349, 2010 WL 1417460 (N.D. Ill. Apr. 5, 2010) ....................................3

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) ...............................................................................15

*Powell v. City of Berwyn*,
68 F. Supp. 3d 929 (N.D. Ill. 2014) .....................................................................15

*R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.*,
895 F.2d 279 (7th Cir. 1989) ...............................................................................12

*Resolution Tr. Corp v. S & K Chevrolet*,
868 F. Supp. 1047 (C.D. Ill. 1994) ......................................................................11

*Rumpke of Indiana, Inc. v. Cummins Engine Co.*,
107 F.3d 1235 (7th Cir. 1997) ...............................................................................6

*Sgouros v. Transunion Corp.*,
No. 14-cv-1850, 2016 WL 4398032 (N.D. Ill. Aug. 18, 2016) .............................14

*Smith v. Short Term Loans, LLC.*,
No. 99-cv-1288, 2001 WL 127303 (N.D. Ill. Feb. 9, 2001) ....................................3

*Sroga v. Hondzinski*,
No. 16-cv-5796, 2017 WL 3278916 (N.D. Ill. Aug. 2, 2017) ...............................15

*Standard Chlorine v. Sinibaldi*,
821 F. Supp. 232 (D. Del. 1992) ..........................................................................11

*Sunny Handicraft Ltd. v. Envision This!, LLC*,
No. 14-cv-1512, 2015 WL 231108 (N.D. Ill. Jan. 16, 2015) ................................12

*Tarzian v. Kraft Heinz Foods Co.*,
    No. 18-cv-7148, 2019 WL 5064732 (N.D. Ill. Oct. 9, 2019) ..................................................14

*Tile Unlimited, Inc. v. Blanke Corp.*,
    788 F. Supp. 2d 734 (N.D. Ill. 2011) ........................................................................................14

*Walsh Chiropractic, Ltd. v. StrataCare, Inc.*,
    752 F. Supp. 2d 896 (S.D. Ill. 2010) ........................................................................................14

*Webb v. Frawley*,
    906 F.3d 569 (7th Cir. 2018) .....................................................................................................13

*Wells Fargo Bank v. Leafs Hockey Club, Inc.*,
    No. 13-cv-2247, 2014 WL 1017211 (N.D. Ill. Mar. 14, 2014) ..............................................15

**STATUTES**

42 U.S.C. § 1983 ....................................................................................................................................14

Racketeering Influenced and Corrupt Organizations Act,
    18 U.S.C. § 1961-1968 ................................................................................................... passim

**OTHER AUTHORITIES**

47 C.F.R. § 69.5(b) ...............................................................................................................................13

Fed. R. Civ. P. 8 ................................................................................................................................1, 3

Fed. R. Civ. P. 9(b) ...............................................................................................................1, 9, 14, 15

Statement of Comm'r Carr Re: *Rural Call Completion*, WC Dkt. No. 13-39...............................4

## PRELIMINARY STATEMENT[1]

Plaintiffs' opposition (ECF No. 66 ("Opposition" or "Opp.")) concedes that Plaintiffs have not pled any specific cognizable instance of loss. Plaintiffs attribute this to a purported lack of information and argue that discovery will fix things for them. This turns the pleading requirements on their head. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 689 (2009) (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," and Rule 9(b) is not a "license to evade the . . . strictures of Rule 8"). Moreover, unlike the typical case, Plaintiffs have received pre-complaint discovery of TMUS's documents from at least two other proceedings. Plaintiffs also have access to whatever consumer complaints they received and admit they tested their own networks for call issues concerning TMUS. Yet the FAC fails to identify any instance of an actual injury. Like a mantra, the Opposition repeatedly states that Plaintiffs suffered injury in the form of "lost access charges," but the FAC does not allege a single access charge they lost because of TMUS's use of LRBT.

Nor does the FAC allege facts that make Plaintiffs' theory of lost access charges plausible. Indeed, Plaintiffs do not dispute that LRBT did not itself delay, block, degrade, or prevent calls from reaching Plaintiffs' customers. Even if callers who heard LRBT were more likely to hang up prematurely than callers who heard dead air (something that does not make sense to begin with), it would not make the lost access charge theory plausible. No facts are alleged to support the notion that such a caller would not try to call again and succeed in connecting with the called party, thereby earning the "lost" access fee for the LEC. Plaintiffs do not dispute this.

Plaintiffs' plea for discovery is even more nonsensical when it comes to their claims regarding discounts, monetary concessions, reputational harm, and time responding to consumer

---

[1] Capitalized terms used but not defined herein have the meaning given to them in TMUS's moving brief.

complaints. Each such purported injury would necessarily involve Plaintiffs' own customers complaining to them. Plaintiffs hardly need discovery about that, but in any event, they do not plead a single instance of having to give a discount, make a concession, suffer reputational harm, or spend time and resources handling a customer complaint as a result of TMUS's use of LRBT.

Plaintiffs also argue that their theories of harm are supported by FCC pronouncements. But they fail to cite any FCC order that actually does so. Plaintiffs also mischaracterize the language of the Consent Decree to claim injury, including by asserting that the phrase "*certain*" rural areas actually means "*all*" rural areas, and by summarily deeming TMUS's limited purpose admissions concerning two separate acts to be a single "coterminous" act. The plain language of the Decree does not support either conclusion. Nor does it reference Plaintiffs or their service regions or make any findings that they (or *any* LEC) suffered injury from TMUS's use of LRBT.

In short, whatever the implications of TMUS's use of LRBT were for TMUS's own customers, Plaintiffs were simply not impacted by them. With no facts to connect an activity (use of LRBT) directed solely to TMUS's customers to hypothetical but implausible claimed injuries to Plaintiffs, the FAC should be dismissed in its entirety. Moreover, Plaintiffs' arguments against dismissal specific to each of their counts fail for the additional reasons discussed below.

**ARGUMENT**

I. **THE FAC SHOULD BE DISMISSED BECAUSE PLAINTIFFS DO NOT PLAUSIBLY ALLEGE ANY INJURY RESULTING FROM TMUS'S CONDUCT.**

Plaintiffs have no answer to the points raised in TMUS's moving brief that the FAC does not allege any particular instance of "call blocking," delayed calls, or calls not completing to Plaintiffs' customers as a result of the use of LRBT. Plaintiffs also ignore that their theory depends on implausible assumptions, including that: (i) hearing LRBT would cause a TMUS subscriber to hang up sooner than if that subscriber heard dead air; and (ii) a TMUS subscriber who heard LRBT

2

would try to call only once.[2]  Plaintiffs have also failed to explain how *callers*—customers of TMUS, *not* Plaintiffs—complaining about or blaming Plaintiffs for call completion problems injured them.  *See generally* Mem. at 11–12.  Instead, Plaintiffs argue that conclusory references to "access charges," descriptions of "other economic harms," and general (and mischaracterized) material from a 2013 FCC Order are sufficient to plead a plausible claim of harm.  None of these arguments are availing.

Legal conclusions or conclusory allegations need not be accepted as true and do not, standing alone, meet the requirements of Rule 8.  *Iqbal*, 556 U.S. at 667–68.  Plaintiffs' repeated invocation of the term "access charges" does not itself plead a plausible theory of injury.  It is instead an example of the "unadorned, the-defendant-unlawfully-harmed-me accusation" that does not survive a motion to dismiss under *Iqbal*.  *Id*. at 667.  Just saying the words "lost access charges" or "call blocking" does not entitle that allegation to the presumption of truth.

The cases Plaintiffs cite in their Opposition (at 6, 7) are not to the contrary because they are merely examples of where a plaintiff *was* able to plead a plausible theory of injury[3] (and one case where a plaintiff failed to do so, resulting in dismissal).[4]  Similarly, Plaintiffs' attempts to distinguish *Conboy v. AT&T Corp.* (*id*. at 6) on the grounds that the damages alleged there included recovery for mental or emotional distress miss the point because the court there found that the

---

[2] As explained in TMUS's moving brief (ECF No. 55 ("Mem.") at 11–12), if a call in which LRBT were used failed to reach a Plaintiff's network, Plaintiff would still collect the access charge if the caller attempted to call again and successfully connected.

[3] *See, e.g., Hobbs v. Gerber Prods. Co.*, 2018 WL 3861571 at *10 (N.D. Ill. Aug. 14, 2018) (plaintiffs alleged that purported misrepresentation about product caused them to pay more than they would have but for the misrepresentation); *PharMerica Corp. v. Advanced Healthcare Sols.*, 2010 WL 1417460 at *4 (N.D. Ill. Apr. 5, 2010) (plaintiff alleged that defendants' inducing a third party to breach services contract with plaintiff injured it because it did not receive the contract benefits it would have otherwise received).

[4] *See Smith v. Short Term Loans, LLC.*, 2001 WL 127303, at *6 (N.D. Ill. Feb. 9, 2001) (dismissing ICFA claim where plaintiff had not alleged that defendant's conduct injured plaintiff).

plaintiffs also failed to allege economic injury. 241 F.3d 242, 249 (2d Cir. 2001).

Plaintiffs also cite to selected portions of the FCC's 2013 Order that purportedly demonstrate the plausibility of their theory of harm. Opp. at 7. But what they cite to merely (i) reports on what "rural associations posit[ed]" or "argue[d]," not what the FCC found (2013 Order ¶ 16), (ii) recites the unremarkable proposition that businesses have incentives to reduce their expenses[5] (*id*. ¶ 17), and (iii) discusses how the proposed rule prohibiting early ring tones aligns with consumer expectations that ring tones mean the call is ringing on the receiving end (*id*. ¶¶ 114, 117). Nothing in the 2013 Order cures Plaintiffs' failure to allege facts connecting TMUS's use of LRBT to lost access charges and the other forms of claimed harm.

## II. COUNTS II–III FAIL AS NO FCA VIOLATION IS PLAUSIBLY ALLEGED.[6]

### A. The 2018 Order Clarified the Law and Applies Here.

At pages 14–15 of its moving brief, TMUS explained why, based on applicable law and the FCC's guidance, including the 2018 FCC Order, the FAC fails to state a claim for violation of the FCA. In response, Plaintiffs argue that the 2018 Order does not apply because it did not clarify the 2012 Order on which Plaintiffs base their FCA claims. This is belied by the explicit text of the 2018 Order, which repeatedly states that it "clarified" the 2012 Order. 2018 Order at ¶¶ 24 & n.85, 25, 37 n.133, 54; Statement of Comm'r Carr Re: *Rural Call Completion*, WC Dkt. No. 13-39. An agency's "expressed intent that a regulation be deemed a clarification" is entitled to deference "unless the prior interpretation of the regulation is 'patently inconsistent' with the later one." *Beller v. Health & Hosp. Corp.*, 703 F.3d 388, 391 (7th Cir. 2012) (citation omitted). The 2018

---

[5] To the extent Plaintiffs rely on portions of the 2013 Order discussing least cost routing, they ignore that the FCC has not prohibited it; instead, it has prohibited *specific conduct* (*id*. ¶ 17 ("blocking or degrading traffic")), *none* of which is plausibly alleged to have occurred in connection with TMUS's use of LRBT.

[6] TMUS also joins Inteliquent's statute of limitations arguments as to the FCA claims arising out of failure to ensure call delivery. Inteliquent's Reply at 2.

Order is not inconsistent with the 2012 Order. Thus, it applies.

In any event, Plaintiffs' FCA claims fail even under the 2012 Order, as explained at pages 15–18 of TMUS's moving brief and the following sections of this Reply.

### B. Plaintiffs Fail to State a Claim Under the 2012 Order or 2018 Order.

Plaintiffs do not seriously contend they have alleged a "pattern" of call failures (2012 Order at 1353). Nor have they alleged TMUS had a relatively low percentage of call completion (*id*. at 1356 n.37), despite purportedly running tests to investigate (FAC ¶¶ 305, 307). Similarly, Plaintiffs do not allege that TMUS failed to promptly resolve call issues (2018 Order ¶ 25). They also do not deny that the two episodes they describe in the FAC are isolated, non-actionable call failures (*id*. ¶ 26 n.89), or that TMUS chose a solution "reasonably calculated to be effective"— the very remedy required by the 2018 Order (*id*. ¶ 28). Instead, Plaintiffs claim that these are "needles in the proverbial haystack." Opp. at 11. But Plaintiffs do not cite to anything else that would qualify as actionable conduct under either the 2012 or 2018 Order.[7]

### C. Plaintiffs Cannot Use the Consent Decree to Allege a Violation of the FCA.

Plaintiffs argue that because TMUS admitted to certain prohibited conduct in the Consent Decree, that is enough to state a claim for violating the FCA. However, they nowhere come to grips with the fact that the Consent Decree does not: name Plaintiffs; refer to the areas they service; or state that use of LRBT deprived Plaintiffs (or any LEC) of "access charges."

Instead, they resort to mischaracterizing the Decree in ways inconsistent with its plain language. First, Plaintiffs ask the Court to infer that TMUS's admission in the Decree about not correcting problems with delivery of calls for "*certain* rural" carriers (FAC, Ex. 1 ("CD") ¶ III.17)

---

[7] Citing the 2012 Order (at n. 35), Plaintiffs imply that "prolonged ringing" may violate the FCA. Opp. at 10. But in the Consent Decree, the FCC did not find that LRBT are "prolonged." Early ring tones and prolonged ringing are different things. Nor did the FCC find that 4 or 5 seconds of call set-up time constitutes an "unreasonable delay."

actually means that TMUS failed to correct call delivery problems for "*all* rural carriers" (Opp. at 10). But replacing "*certain*" with "*all*" impermissibly rewrites the Decree. *See Rumpke of Indiana, Inc. v. Cummins Engine Co.*, 107 F.3d 1235, 1243 (7th Cir. 1997) (rejecting interpretation inconsistent with "plain meaning"). The Consent Decree mentions particular geographic areas (CD ¶ II.12) and nowhere states or implies that call delivery problems existed for every single rural LEC in the country. As is obvious, if the FCC and TMUS had meant "all," the Consent Decree would not have used the limiting term "certain." *Id*. ¶ III.17

Second, Plaintiffs claim the implication of the Consent Decree is that the failure to correct call delivery problems is "coterminous" with the use of LRBT. Opp. at 10. This conflates two different things. LRBT *can* be used on calls that do not have completion problems (again, the FCC has not found that a 4 or 5 second delay is such a problem),[8] and call completion problems *can* occur without LRBT. Indeed, in the Decree they are discussed in two separately lettered clauses (a) and (b), and divided by a semicolon. *See* CD ¶ III.17. The very first paragraph of the FCC's Order describes the agency's investigation as involving two distinct issues: "whether [TMUS] conveyed false ring tones on its customers' telephone calls, *and* whether it corrected problems with delivery of calls to consumers in rural areas" (emphasis added).

### D.    Plaintiffs Cannot Proceed to Discovery Without Alleging a Plausible Claim.

In a string of bullet points, Plaintiffs argue they have amassed all the facts they can with respect to the FCA claims, which supposedly entitles them to discovery. But "Plaintiffs' allegations either do or do not state a cause of action, and discovery does not seem to bear on that determination at all." *Chicago Bd. Options Exch., Inc. v. Conn. Gen. Life Ins. Co.*, 95 F.R.D. 524,

---

[8] The Decree itself nowhere states that a mere 4-5 second delay before LRBT were played violates the FCA. *See In re Polar Bear Endangered Species Act Listing & 4(d) Rule Litig.*, 794 F. Supp. 2d 65, 96 n.38 (D.D.C. 2011) (deferring to agency's implicit rejection of theory), *aff'd*, 709 F.3d 1 (D.C. Cir. 2013).

525 (N.D. Ill. 1982). "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).

Plaintiffs' argument that the information they need is exclusively in TMUS's control does not help them meet their pleading burden. First, while Plaintiffs claim they have no way of knowing if a call fails to reach their switches, this is belied by their allegations that they tested calls to their switches. FAC ¶¶ 305–07. In fact, even though they ran such tests, Plaintiffs do not allege that TMUS's call completion rates were, comparatively, lower than those of other carriers. *See* 2012 Order ¶ 12 n.37.[9] Second, Plaintiffs' assertion that callers would be "unlikely to ever report their suspicions" that calls were not connecting (Opp. at 12) is contradicted by their pleading, which explicitly alleges such complaints. FAC ¶¶ 274, 294; *see also* ECF No. 60 at 13:5–8. Their entire (implausible) theory of reputational injury assumes callers blame Plaintiffs for call connection problems. *See* Opp. at 7. Third, Plaintiffs exaggerate their lack of information. If LRBT really caused the harms complained of, there would have been a decrease in access charge revenue and an increase in customer complaints when its use was expanded by TMUS in 2015. Plaintiffs do not allege that happened, however.

## III.   COUNT IV, FOR ALLEGED RICO VIOLATION, SHOULD BE DISMISSED.

### A.   Plaintiffs Fail to Adequately Allege Proximate Cause.

Plaintiffs attempt to distinguish *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) on the basis that "squelch[ing] rural LECs' collection of terminating access fees was not the scheme's byproduct; it was the primary purpose." Opp. at 14; *see also id.* at 15 ("[T]he scheme was devised for the primary purpose of fraudulently avoiding . . . access fees."). *Anza* is clear, however, that

---

[9] Indeed, Plaintiffs are fully aware that TMUS's call completion rates to rural areas were significantly higher than the aggregate call completion rates to rural areas for all carriers. *See* FAC, Ex. 18 at 4–5.

the issue is not the *purpose* of the racketeering activity, but rather whether the *injury claimed* is a *direct result* of it. Indeed, in *Anza* the RICO plaintiff contended that the defendants' "goal, which they achieved," was to give the defendants' company a competitive advantage over the plaintiff. 547 U.S. at 454–55. But the Court held that the alleged purpose was not enough to plead proximate causation. *Id.* at 460. What matters, the Court said, is whether or not the plaintiff was the "direct victim" of the racketeering activity: "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the *alleged violation led directly to the plaintiff's injuries*." *Id*. at 461 (emphasis added).

Here, the racketeering activity complained of is TMUS's former use of LRBT. Plaintiffs do not plead facts showing a direct link between that conduct and their alleged injuries (*e.g.*, lost access fees and reputational harm). Nor could they, since Plaintiffs' theory of harm is not that LRBT caused calls not to connect to their switches, but rather that it was used to "mask" purported blocked or delayed delivery of calls to rural areas. The alleged "masking" was, by definition, directly targeted at *consumers*, not Plaintiffs. The alleged impact on Plaintiffs, then, would necessarily have been caused by the behavior of the *consumers* who heard the LRBT. In other words, even assuming, for the sake of argument, that Plaintiffs' theory of injury is plausible (and it is not), their claimed injuries were the direct result of the *behavior of consumers* (the ones who actually heard LRBT, and thus were the direct "victims"), not the alleged racketeering activity.

*Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723 (7th Cir. 2014) does not lead to a contrary result. There, because the plaintiffs "suffered *the only injury resulting from*" the alleged RICO activity, there was enough evidence of proximate cause between the alleged activity and the plaintiffs' injury. *Id*. at 734 (emphasis added). Here, Plaintiffs' contention that they "'sat in the center of the target of the conspiracy'" (Opp. at 16 (quoting *Empress*)) ignores the Seventh

8

Circuit's express statement in *Empress* that "only persons injured *directly by the defendant's misconduct* may recover under RICO." *Empress*, 763 F.3d at 733 (emphasis added). Indeed, the court found significant that "[t]here was no more directly injured party standing between the [plaintiffs] and the alleged wrongdoer[.]" *Id*. at 734. Here, in contrast, LRBT (allegedly) directly impacted *callers*, not LECs such as Plaintiffs.[10] Unlike in *Empress*, any injury Plaintiffs suffered was "derivative" of that impact. *Id*.

### B.  Count IV Should Also Be Dismissed Because Plaintiffs Fail to Adequately Plead Predicate Acts of Wire Fraud.

#### 1.  Plaintiffs Fail To Plead Fraud With Particularity Under Rule 9(b).

Plaintiffs all but concede they have not pled the circumstances of the purported wire fraud with particularity, attributing this deficiency to their purported inability to obtain the necessary information. Opp. at 17–18. But this is belied by their own allegations. Plaintiffs contend that, as a result of the alleged use of LRBT, their own customers blamed them (allegedly injuring their reputations), they were forced to spend time and resources addressing their own customers' complaints, and they had to give discounts and rebates to their own customers. FAC ¶¶ 3, 384, 386. All of the specifics regarding such alleged incidents, if they really happened, would obviously be known to Plaintiffs (since customers would have complained to Plaintiffs about them). That TMUS may have *additional* information about the use of LRBT does not excuse Plaintiffs from complying with Rule 9(b). *See also* pp. 6–7, *supra* (discovery cannot cure defective pleadings).[11]

Plaintiffs also argue they have satisfied Rule 9(b) by referencing "over 40 instances in which [TMUS] subscribers were unable to complete calls to consumers" served by three rural

---

[10] *See, e.g.*, FAC ¶ 208 (LRBT "confused the *caller* and coerce[d] [them] to hang up . . . calls before they were connected").

[11] Although Plaintiffs argue that the predicate acts "are far too numerous to identify the date, time and place of each such instance" (Opp. at 18), Plaintiffs have not alleged such specifics for *any* predicate act.

providers.  Opp. at 16.  However, there is no allegation that any of those incidents *involved Plaintiffs* and, in any case, call connection problems are not alleged to be a predicate act (use of LRBT is).  Moreover, even if it could be fairly inferred that LRBT was used in any of these incidents, Plaintiffs do not allege any specifics from which the Court could infer that any such calls were blocked or delayed.

### 2.  Plaintiffs Fail to Allege an Intent to Deprive Anybody of Property or Money.

To be sure, Plaintiffs allege, in wholly conclusory fashion, that the supposed predicate acts (specifically, the use of LRBT) were intended to save Defendants money.  But the FAC is devoid of facts to support such speculation, and the FAC itself acknowledges an entirely different motivation (a desire on TMUS's part to enhance their customers' calling experience) having nothing to do with depriving anyone of money or property.

### IV.  COUNT V SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PROPERLY ALLEGE A RICO CONSPIRACY UNDER § 1962(D).

To state a claim under § 1962(d), Plaintiffs must adequately allege that Defendants (1) agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) further agreed that someone would commit at least two predicate acts to accomplish these goals.  *See Empress*, 763 F.3d at 734–35. As to the first requirement, Plaintiffs ignore that a defendant must "knowingly agree to perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner."  *Brouwer v. Raffensberger, Hughes & Co.*, 199 F.3d 961, 967 (7th Cir. 2000). The issue with Plaintiffs' RICO conspiracy allegations, thus, is not merely that they are made upon information and belief, but that Plaintiffs fail to allege facts from which the required agreement can be reasonably inferred.  At bottom, all Plaintiffs allege in terms of interactions between the Defendants are communications regarding cost cutting.  Because cost cutting is a goal regularly

discussed by all businesses and such discussions are not inherently illegal, there is no basis for the Court to infer an agreement to commit criminal acts.

## V.     IN THE ALTERNATIVE, PLAINTIFFS' PRAYER FOR PUNITIVE DAMAGES IN COUNTS IV AND V SHOULD BE DISMISSED.

Plaintiffs cite cases in which RICO's treble-damages provision was described as being remedial or "primarily remedial." Opp. at 22–23. However, *classification* of the treble-damages provision as remedial versus punitive does not resolve whether punitive damages are *available* under RICO, and none of the cases Plaintiffs cite as deeming the treble-damages provision remedial address the issue.

Plaintiffs cite two nonbinding appellate cases in which the court "allowed plaintiffs to pursue punitive damages for RICO claims." *Id*. at 23. However, there is no indication in those cases that the defendants disputed the availability of punitive damages under RICO. Thus, those courts did not address the issue. In contrast, this District Court has expressly determined that RICO's "treble damages provisions define the extent of possible recovery[,]" *In re VMS Sec. Litig.*, 752 F. Supp. 1373, 1404 (N.D. Ill. 1990), as have other district courts within the Seventh Circuit and around the country.[12]

## VI.    COUNT VI, ALLEGING TORTIOUS INTERFERENCE WITH CONTRACT, SHOULD BE DISMISSED.[13]

In the FAC, Count VI is clearly labelled "Tortious Interference With Contract." Yet, Plaintiffs do not cite any cases about that tort and, instead, act if is they have sued for tortious

---

[12] *See Resolution Tr. Corp v. S & K Chevrolet*, 868 F. Supp. 1047, 1062 (C.D. Ill. 1994); *see also Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*, 29 F. Supp. 2d 801, 819 (N.D. Ohio 1998); *Bingham v. Zolt*, 823 F. Supp. 1126, 1135 (S.D.N.Y. 1993), *aff'd*, 66 F.3d 553, (2d Cir. 1995); *Standard Chlorine v. Sinibaldi*, 821 F. Supp. 232, 252–53 (D. Del. 1992).

[13] TMUS joins Inteliquent's arguments regarding why Plaintiffs' state law claims are preempted. Inteliquent's Reply at 14–15.

interference with business expectancy (a different, distinct tort). Plaintiffs cannot amend their pleading through their Opposition. *See R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 285 n.6 (7th Cir. 1989). Similarly, plaintiffs may not cite to cases involving tortious interference with *business expectancy* to support their claim for tortious interference with *contract*. *See George A. Fuller Co. v. Chicago Coll. of Osteopathic Med.*, 719 F.2d 1326, 1331 (7th Cir. 1983) (distinguishing *O'Brien v. State St. Bank & Tr. Co.*, 92 Ill. App. 3d 83, 401 N.E. 2d 1356 (Ill. App. 1980), because it involved the wrong tort). In any case, Plaintiffs do not allege the elements of interference with business expectancy, such as the reasonableness of the expectancy, *see GTC Fin. Servs., Ltd. v. Asset Builders Assocs., LLC*, 2014 WL 3610989, at *6 (N.D. Ill. July 22, 2014) (Lee, J.), and malice, *see Sunny Handicraft Ltd. v. Envision This!, LLC*, 2015 WL 231108, at *9–10 (N.D. Ill. Jan. 16, 2015) (Lee, J.).

Plaintiffs' arguments are unavailing with respect to the tort they actually assert— interference with contract. Although they say the contracts allegedly interfered with are tariffs filed with the FCC and that TMUS "is charged with knowledge" of them (Opp. at 24), Plaintiffs do not identify a single tariff, or even which Plaintiff was harmed by a purported breach of a tariff.[14] They likewise fail to explain what provision of any tariff was actually breached, as is required to state a claim for interference with contract. *See Buckley v. Peak6 Invs., LP*, 827 F. Supp. 2d 846, 855 (N.D. Ill. 2011).

Similarly, Plaintiffs do not explain what "interference" was directed at any third party with the intent to induce that party to breach a tariff. The use of LRBT may have impacted those who heard them (TMUS's customers), but that practice could not possibly have caused a party to a filed

---

[14] Plaintiffs make a peculiar assertion that "because discovery is needed to ascertain the class members, it is impossible at this time for Plaintiffs to list *all* tariffs with which [TMUS] interfered." Opp. at 24 (emphasis added). But in the FAC, Plaintiffs do not "list" even *a single tariff*.

tariff to violate the terms of the tariff. Likewise, Plaintiffs' claim that TMUS failed to "adequately supervise" (Opp. at 25) intermediate providers cannot possibly qualify as the required "active persuasion" or "inciting that goes beyond merely providing information in a passive way." *Webb v. Frawley*, 906 F.3d 569, 579 (7th Cir. 2018). Moreover, the very conduct complained of—using LRBT to mask a supposed practice of not connecting calls to rural LECs—cannot cause a breach of a tariff. That is because compensation is "computed and assessed" under a tariff when an LEC "*use[s]*" their switching facilities to terminate a call (*see* 47 C.F.R. § 69.5(b) (emphasis added)). Here, the claim is that TMUS's alleged practices caused calls *not to use* Plaintiffs' switching facilities. There is no claim that a TMUS intermediate carrier failed to compensate Plaintiffs for any *use* of their switching facilities. *See Mineral Res., Inc. v. Classic Coal Corp.*, 115 Ill. App. 3d 114, 450 N.E.2d 379, 387 (1983) (no breach from non-payment of commissions for goods which were "neither paid for nor delivered").

## VII. COUNT VII, FOR VIOLATION OF THE ICFA, SHOULD BE DISMISSED.

"A federal court should not read a state law in a way that makes it self-defeating." *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 538 (7th Cir. 2011). Plaintiffs' attempt to defend their ICFA claim violates this rule. First, Plaintiffs assert that, because "there is a direct nexus between the deceptive practice and Plaintiffs' harm,"[15] their actions are akin to consumers' actions. Opp. at 28. Plaintiffs' reading would enable non-consumer intermediaries to bring ICFA claims, but the law is otherwise. *See, e.g.*, *ATC Healthcare Servs. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1051–52 (N.D. Ill.2017); *see also Patel v. Zillow, Inc.*, 2018 WL 2096453, at *1 (N.D. Ill. May 7, 2018), *aff'd*, 915 F.3d 446 (7th Cir. 2019). Here, Plaintiffs are *not* callers and do not act *like* callers—they are call-routing *intermediaries*. Second, Plaintiffs claim that ICFA relief serves

---

[15] This is incorrect: *TMUS* callers heard LRBT (the alleged misrepresentation), Plaintiffs did not.

consumer interest because some unspecified rural LECs are owned by rural residents.[16]  But all businesses are ultimately owned by people; that does not make the businesses themselves "consumers," and awarding damages to a business does not serve the interests of consumers who were harmed by the allegedly deceptive conduct.  *See Zillow*, 2018 WL 2096453, at \*9.  Third, Plaintiffs' assertions of consumer protection concerns are based solely on the impact on callers who heard LRBT (TMUS subscribers).  An impact on a party's customers is not sufficient under the test.  *See, e.g.*, *Tile Unlimited, Inc. v. Blanke Corp.*, 788 F. Supp. 2d 734, 740 (N.D. Ill. 2011).

Moreover, Plaintiffs have not pled harm to *Illinois* consumers.  *See Gelco Corp. v. Major Chevrolet, Inc.*, 2002 WL 31427027, at \*11 n.7 (N.D. Ill. 2002).[17]  Plaintiffs' cited cases confirm this requirement.[18]  Plaintiffs mischaracterize the holding of *Morrison*.  Opp. at 28.  TMUS joins Inteliquent's explanation of why *Morrison* is factually distinguishable.  Inteliquent's Reply at 15.  Indeed, numerous cases following it have dismissed ICFA claims where the only connection pled was that the defendant resided and performed the purportedly offending conduct in Illinois.[19]

---

[16] Plaintiffs cite to no paragraph in the FAC for support because there is none.

[17] Plaintiffs' string cite (Opp. at 27) fails to appreciate that Rule 9(b) applies here.  *See, e.g.*, *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 711 (N.D. Ill. 2006) (finding no "properly" "pled" nexus "especially when one takes into account the heightened pleading requirements of Rule 9(b)").

[18] In all of Plaintiffs' cited cases, the plaintiff pled an impact on Illinois consumers.  *See Conn. Gen. Life Ins. Co. v. Sw. Surgery Ctr.*, 349 F. Supp. 3d 718, 722 (N.D. Ill. 2018) (Illinois consumers using ambulances in Illinois); *Cosmetique, Inc. v. ValueClick, Inc.*, 753 F. Supp. 2d 716, 720 (N.D. Ill. 2010) (Illinois consumers affected by false promotional ads); *Walsh Chiropractic, Ltd. v. StrataCare, Inc.*, 752 F. Supp. 2d 896, 901 (S.D. Ill. 2010) (Illinois chiropractic patients affected by PPO's fraudulent discounts); *Glob. Total Office L.P. v. Glob. Allies, LLC*, 2011 WL 3205487 (N.D. Ill. July 28, 2011) (trademark confusion impacted Illinois consumers); *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011) (false advertising affected Illinois consumers).

[19] *See, e.g.*, *Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732, at \*3 (N.D. Ill. Oct. 9, 2019); *Berarov v. Archers-Daniels-Midland Co.*, 2019 WL 277717, at \*6 (N.D. Ill. Jan. 22, 2019); *Muir v. Nature's Bounty, Inc.*, 2017 WL 4310650, at \*7 (N.D. Ill. Sept. 28, 2017); *Greene v. Sears Prot. Co.*, 2017 WL 1134484, at \*2 (N.D. Ill. Mar. 27, 2017); *Sgouros v. Transunion Corp.*, 2016 WL 4398032, at \*6 (N.D. Ill. Aug. 18, 2016); *Haught v. Motorola Mobility, Inc.*, 2012 WL 3643831, at \*4 (N.D. Ill. Aug. 23, 2012).

## VIII.   COUNT VIII, ALLEGING CIVIL CONSPIRACY, SHOULD BE DISMISSED.

Plaintiffs err by citing this Court's opinions when they do not apply.  First, Plaintiffs cite

opinions evaluating *federal* conspiracy claims for violations of 42 U.S.C. § 1983, even though this

Court has previously recognized that *state law* civil conspiracy claims present different

circumstances and *do* require "an agreement between two or more persons."  *Kinney v. City of*

*Waukegan*, 2015 WL 996611, at *4 (N.D. Ill. Mar. 3, 2015) (Lee, J.).[20]  Here, the holding in

*Stewart* controls and disposes of the civil conspiracy claim because Plaintiffs do not sufficiently

allege an agreement.  *Indep. Tr. Corp. v. Stewart Info. Servs.*, 665 F.3d 930, 939 (7th Cir. 2012).

Second, *City of Evanston v. Northern Illinois Gas Co.*, 229 F. Supp. 3d 714, 721 (N.D. Ill.

2017) does not support Plaintiffs' argument about pleading on "information and belief."  That case

did not involve civil conspiracy or Rule 9(b).  Here, unlike in *Evanston* and like in *Wells Fargo*

*Bank v. Leafs Hockey Club, Inc.*, 2014 WL 1017211, at *7 (N.D. Ill. Mar. 14, 2014), Plaintiffs

provide no first-hand grounds for suspicions *of an agreement*—indeed, they even plead the

purported *discussion* of LRBT upon information and belief.  *See also Pirelli Armstrong Tire Corp.*

*Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011).   At best, the FAC

alleges instances of parallel conduct that the Illinois Supreme Court and Seventh Circuit have

rejected as insufficient.  *See McClure*, 188 Ill. 2d at 140, 720 N.E.2d at 261; *Indep. Tr.*, 665 F.3d

at 939; *see also Sroga v. Hondzinski*, 2017 WL 3278916, at *9 (N.D. Ill. Aug. 2, 2017).

## <u>CONCLUSION</u>

For these reasons and those in TMUS's moving brief, the FAC should be dismissed.

---

[20] *See also McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 140, 720 N.E.2d 242, 261 (1999) ("[P]arallel conduct alone is insufficient to establish civil conspiracy. . . ."); *Boothe v. Sherman*, 66 F. Supp. 3d 1069, 1078 (N.D. Ill. 2014) (dismissing civil conspiracy for lack of plausibly pled agreement under state law, but sustaining it under federal law); *cf. Powell v. City of Berwyn*, 68 F. Supp. 3d 929, 950 (N.D. Ill. 2014) (Lee, J.) ("While Plaintiff may rely on circumstantial evidence, he is still required to prove an agreement. . . .").

Dated: February 24, 2020

Respectfully submitted,

/s/ *Nigel F. Telman*
Nigel F. Telman
PROSKAUER ROSE LLP
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602
(312) 962-3550
(312) 962-3551 (fax)
ntelman@proskauer.com

Bradley I. Ruskin (admitted *pro hac vice*)
Michael T. Mervis (admitted *pro hac vice*)
Baldassare Vinti (admitted *pro hac vice*)
PROSKAUER ROSE LLP
11 Times Square
New York, New York 10036
(212) 969-3249
(212) 969-2900
bruskin@proskauer.com
mmervis@proskauer.com
bvinti@proskauer.com

## **CERTIFICATE OF SERVICE**

I, Nigel F. Telman, one of the attorneys for Defendants, T-Mobile USA, Inc., certify that I caused a copy of the attached REPLY MEMORANDUM OF LAW IN SUPPORT OF T-MOBILE USA, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT to be served by email via the Court's ECF System, upon counsel for Plaintiffs:

David T.B. Audley
Mia D. D'Andrea
Chapman and Cutler LLP
111 West Monroe Street
Chicago, IL 60603-4080
Email: audley@chapman.com
Email: dandrea@chapman.com

Cathy A. Hinger
G. David Carter
Womble Bond Dickinson (US) LLP
1200 19th Street, NW, Suite 500
Washington, DC 20036
Email: cathy.hinger@wbd.us.com
Email: david.carter@wbd.us.com

Kurt Weaver
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27061
Email: kurt.weaver@wbd-us.com

John Hamill
Michael Pullos
Counsel for Inteliquent, Inc.
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Email: john.hamill@dlapiper.com
Email: michael.pullos@dlapiper.com

this 24th day of February, 2020.

/s/*Nigel F. Telman*