**IN THE UNITED STATES DISTRICT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CRAIGVILLE TELEPHONE CO. d/b/a ADAMSWELLS; and CONSOLIDATED TELEPHONE COMPANY d/b/a CTC | ) ) ) ) | |
| Plaintiff, | ) ) | No. 1:19-cv-07190 |
| vs. | ) ) | Judge John Z. Lee |
| T-MOBILE USA, INC.; and INTELIQUENT, INC. | ) ) ) | |
| Defendants. | ) ) | |

**INTELIQUENT, INC.'S RESPONSE IN OPPOSITION TO THE PLAINTIFF-INTERVENORS' MOTION FOR PERMISSIVE INTERVENTION, OR IN THE ALTERNATIVE, INTERVENTION AS OF RIGHT, OR IN THE ALTERNATIVE, PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

John J. Hamill
john.hamill@dlapiper.com
Michael S. Pullos
michael.pullos@us.dlapiper.com
Devin Carpenter
devin.carpenter@us.dlapiper.com
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Tel: 312.368.7036/2176
Fax: 312.251.5809/312.630.6350

## TABLE OF CONTENTS

Overview ........................................................................................................................... 1

Background ....................................................................................................................... 1

Argument .......................................................................................................................... 3

    I.    The Proper Procedure Is to Designate a Related Case, Not to Intervene or Amend. ...... 4

    II.   The Proposed Complaint Does Not Remedy the Statue of Limitations Defects. ............ 5

    III.  Permissive Intervention is Improper. .................................................................... 7

    IV.  There Are No Grounds for Intervention as of Right. ............................................. 8

    V.    Leave to Amend Should be Denied. ...................................................................... 9

Conclusion ...................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*China Agritech, Inc. v. Resh*,
  138 S. Ct. 1800 (2018)......................................................................................5, 6

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  2015 WL 3988488 (N.D. Ill. June 29, 2015) ..........................................................8

*In re Elscint, Ltd. Secs. Litig.*,
  674 F. Supp. 374 (D. Mass. 1987) ..........................................................................8

*Johnson v. Allstate Ins. Co.*,
  2010 WL 1325272 (S.D. Ill. Mar. 29, 2010) ..........................................................8

*Lindblom v. Santander Consumer USA, Inc*,
  2019 WL 4640684 (E.D. Cal. Sept. 24, 2019).........................................................9

*Poole v. Saddler*,
  2014 WL 585306 (N.D. Ill. Feb. 14, 2014) .............................................................9

*Porter v. Fairbanks Capital Corp.*,
  2003 WL 21210115 (N.D. Ill. May 21, 2003) .......................................................10

*Reid L. v. Illinois State Bd. of Educ.*,
  289 F.3d 1009 (7th Cir. 2002) .................................................................................8

*Rock v. Nat'l Collegiate Athletic Ass'n*,
  2016 WL 1270087 (S.D. Ind. Mar. 31, 2016).........................................................7

*Sanford v. MemberWorks, Inc.*,
  625 F.3d 550, 561 (9th Cir. 2010) ..........................................................................8

*Shea v. Angulo*,
  19 F.3d 343 (7th Cir. 1994) .....................................................................................7

*Sokaogon Chippewa Cmty. v. Babbitt*,
  214 F.3d 941 (7th Cir. 2000) ...............................................................................7, 8

*In the Matter of T-Mobile USA, Inc.*,
  33 F.C.C. Rcd. 3737 (2018).................................................................................10

*Warden v. Crown Am. Realty Tr.*,
  1998 WL 725946 (W.D. Pa. Oct. 15, 1998), *aff'd*, 229 F.3d 1140 (3d Cir.
  2000) .......................................................................................................................7

**Other Authorities**

3 Newberg on Class Actions § 9:62 (5th ed) ...................................................................................4

Northern District of Illinois Local Rule 40.4 .............................................................................1, 4

Fed. R. Civ. Proc. 12(b)(6) .........................................................................................................9

Fed. R. Civ. Proc. 24 .................................................................................................................7, 9

Inteliquent, Inc. ("Inteliquent"), respectfully submits this response in opposition to the pending motion. Inteliquent joins and agrees with the opposition submitted by T-Mobile USA, Inc. ("T-Mobile"), and files this separate opposition only to make the following additional points.[1]

## Overview

Neither "intervention" nor "amendment" is proper. If the proposed "plaintiff-intervenors" wish to file a complaint and designate it as related under Local Rule 40.4(a)(4), then that is their prerogative and the proposed complaint would be dealt with in due course (and surely dismissed for the reasons set forth below and in T-Mobile's response). But they should not be permitted to intervene in these proceedings. Nor should the existing plaintiffs be permitted to amend. The proposed complaint does not allege *any* actionable injury to the proposed intervenors and its suggested amendments would add nothing to the case. The proposed intervenors are not even complaining about false ring tones (or "LRBT," as it is more properly called). The new allegations do not impact the statute of limitations or show any injury within the statutory period, let alone state a claim. They offer nothing to cure the defects identified in the pending motions to dismiss. They do not supply grounds for permissive intervention, mandatory intervention, or amendment. The motion should be denied.

## Background

As described below, the actual contents of the proposed new complaint matter tremendously in determining why this motion should be denied. To set the stage properly, the pending motions to dismiss against the *existing* complaint set forth the grounds as to why the existing complaint does not plead an actionable injury. (ECF 55 at 3, 7, 10-13; ECF 69 at 1-4.) The existing complaint *does* allege, however, that the existing plaintiffs knew well before the

---

[1] Inteliquent joins T-Mobile's opposition in full.

statutory periods the facts that underlie their supposed "injury." (ECF 48 at 7-8.) The motions to dismiss therefore argue that the already-filed claims are squarely time-barred by the applicable statutes of limitations. (*Id.* at 6-8.)

The existing plaintiffs evidently recognize these problems with their existing complaint. They and the proposed intervenors now attempt to use intervention to circumvent these problems, either by having these additional plaintiffs "intervene" or by again amending the existing complaint. The proposed intervenors are represented by the same counsel as the existing plaintiffs, and the proposed new complaint largely repeats the existing allegations.[2] But set forth in the bullets below are the purportedly important allegations in the proposed complaint, supposedly derived from information obtained by a FOIA request out of the *T-Mobile Consent Decree* proceedings. These new allegations do nothing to alter the statute of limitations landscape. If it were even possible, they present a weaker complaint than the already deficient one.

The four proposed intervenors are local exchange carriers that serve rural areas like the existing plaintiffs. The proposed complaint states that an exceedingly small number of T-Mobile cell phone users complained to T-Mobile about a grand total of ten (10) calls supposedly not completing to called parties associated with the proposed intervenors' respective territories in 2016.

- Two (2) complaints were made regarding calls to the area of proposed intervenor Dakota Central in 2016. (¶¶ 50-53).[3]

---

[2] The motion tries to sneak in a couple of tangential allegations that are transparent efforts to try to make a sur-reply to the pending motions to dismiss, as explained in Part V of the argument below.

[3] All paragraph citations are to the proposed intervenors' proposed complaint (ECF 73-1) and all emphasis is added unless stated otherwise.

- ▪ Three (3) customer complaints were made regarding calls to the area of proposed intervenor Pioneer in 2016.  (¶¶ 63-67.)

- ▪ One (1) customer complaint was made regarding a single call to the area of proposed intervenor DTC in 2016.  (¶¶ 80-81.)

- ▪ Four (4) customer complaints were made regarding calls to the area of proposed intervenor Peoples in 2016.  (¶¶ 90-91, 100-03.)

That is it.  In each instance, the proposed intervenors explicitly allege that T-Mobile investigated the customer complaint and determined that calls *were completing*.  (¶¶ 52-53, 64-66, 81, 94, 101-103.)  There are no specific allegations in *any* instance about Inteliquent.  There is only a generic repeated and conclusory description that Inteliquent was T-Mobile's "almost exclusive intermediary provider" during that period.  (¶¶ 54, 68, 82, 104.)

With one minor and unremarkable exception, *none of the instances* involves any allegation of a fake ring tone or "LRBT."  They merely involve equally generic allegations that a very few calls did not complete.  The minor exception is *one* possible instance where a call made by a T-Mobile customer to a number in Peoples' territory might have had ringing without an answer—though it is unclear, as the complaint merely alleges that the caller heard ringing and that the called party did not hear their phone ringing.  (¶ 95.)  But even here there is no allegation that such ringing masked a blocked or delayed call (or any underlying blocked or delayed call at all).[4]

### Argument

These new allegations do not warrant either intervention or amendment for a series of reasons, each set forth below.

---

[4] Peoples also vaguely alleges that, in February 2015, a cell phone user from an "*unknown* carrier" once "hear[d] false ringing[.]"  (¶ 90.)  It does not link this to T-Mobile or Inteliquent, so this allegation is irrelevant.

## I.     The Proper Procedure Is to Designate a Related Case, Not to Intervene or Amend.

The proposed intervention or amendment is procedurally improper.  Proposed intervenors like these cannot request to file a putative class action and seek to intervene in another class action that is already pending.  They instead need to employ any of multiple other options.

First, if the new proposed class action is to be filed in a court where there is already a class action pending on the same issues before the same defendant, parties like these proposed intervenors can file a new action on their own accord and seek to have it transferred as a related case to the courtroom in which the earlier-filed case is being heard.  In this District, this is done under Local Rule 40.4(a)(4), which specifically encompasses "class action suits."  It allows a related case to be reassigned to another judge only where, among other requirements, "both cases are pending in" the Northern District.  The rule also requires that a party move for reassignment.  (LR 40.4(c).)  If these proposed intervenors believe they have better arguments under the statute of limitations, then those arguments would get decided in due course in their matter as to the representative plaintiffs, as in any other litigation.

Second, if the supposed plaintiff were to have filed their new case in a different District, then either they or the defendants could invoke rights under the rules applicable to federal Multi-District Litigation.  Those rules would permit parties to seek to have the case assigned to a centralized MDL court for pre-trial proceedings under MDL processes.

Third, if a particular individual plaintiff wished to bring an action in a situation where a class action is already pending—for example, to provide protection against the running of the statute of limitations—it could do so where class certification has not yet been decided.  *See* 3 Newberg on Class Actions § 9:62 (5th ed).  This would not involve "intervention," however, but merely the filing of another action.  "Intervention" by a new plaintiff in an existing action would be appropriate where a triggering event has occurred, like opposition to or denial of class

certification, that shows the existing plaintiff to be inadequate. When class certification is denied, for example, "members of the failed class [can] timely intervene as individual plaintiffs in the still-pending action, shorn of its class character." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018). No such event has yet occurred here. Those are the options available, not intervention like these parties are trying.

## II. The Proposed Complaint Does Not Remedy the Statue of Limitations Defects.

Leaving aside the procedural mechanisms for the moment (tagging as a related case, permissive intervention, mandatory intervention, or amendment), the sole reason the movants seek relief is to guard against statute of limitations problems. (ECF 73 at 3, 6.) That too (in itself) should compel rejection of this motion, because the proposed complaint cannot solve that problem.

None of the proposed intervenors pleads any cognizable injury. They effectively plead themselves right out of a claim, as the proposed complaint alleges facts showing (i) calls successfully completing, and (ii) the defendants promptly fixing any supposed call-completion issue. (¶¶ 52-53, 64-66, 81, 90-91, 94, 101-03.) The allegations likewise fail to even mention LRBT in any actionable way.

As noted, DTC alleges that a T-Mobile subscriber complained that his call to a DTC customer did not complete. (¶ 80.) But the record of that complaint states that "T-Mobile checked the customer's call logs and found that calls were completing correctly to the terminating number." (¶ 81.) The call completed. That is not actionable.

The records for the three customer complaints that Pioneer alleges similarly all show that the calls ultimately completed. (¶¶ 63-66.) The first and second have records stating that "T-Mobile checked the customer's call logs and found that calls were completing correctly to the terminating number." (¶¶ 64-65.) The third complaint's record states that the "[t]rouble ticket

was closed due to identification of [call detail records] showing successful calls to problem number." (¶ 66.) The calls completed. That too is not actionable.

Dakota Central alleges two equally exculpatory customer complaints. (¶ 51.) The first's record shows that T-Mobile could not even identify the calls that supposedly failed. (¶ 52.) T-Mobile then followed up with the customer and requested he "provide new examples." (*Id.*) No "new examples" are alleged. The second's record states that "T-Mobile checked the customer's call logs and found that calls were completing correctly to the terminating number." (¶ 53.) The calls completed. They too are not actionable.

Every allegation from Peoples related to the defendants shows them fixing any supposed problems or ensuring call-completion. The proposed complaint strains to make those successful efforts sound as though something untoward was going on, but in the end calls were *completed*. Peoples alleges, for example, that "problems would disappear" after they reported them and that it told T-Mobile about a supposed call-completion issue for three siblings who were T-Mobile subscribers. (¶¶ 91-94.) Yet the proposed intervention complaint concedes that Peoples coordinated with T-Mobile, and the siblings "were able to complete call[s] to the Peoples' subscriber without issue" within just a few days. (¶ 94.) The three other quoted customer complaints also show T-Mobile fixing any supposed problems or analyzing records to ensure there were no problems to fix. (¶¶ 101-03.) Completed calls, yet again, are not actionable.

Beyond those allegations, the proposed intervention complaint is mostly a retread of the existing and defective complaint. The movants argue that their claims "not only share common questions of law and fact with [the original plaintiffs'] claims, *they are identical*." (ECF 73 at 8.) This amounts to a concession that all of the defendants' arguments in their motions to dismiss would apply with full force here. In short, there is nothing in the proposed complaint that does

6

anything to shore up the statute of limitations problems in the existing complaint, which vitiates the very premise of this motion.

### III.    Permissive Intervention is Improper.

A request for permissive intervention under Rule 24 must be timely.  Courts assess timeliness under four factors: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; [and] (4) any other unusual circumstances." *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000).  Inteliquent agrees with the analysis that T-Mobile sets forth, and adds the following points.

There should be no prejudice to the proposed intervenors if their motion is denied.  As set forth above, they can try to proceed with a new case (however weak) and file it under proper procedures.  Nothing would have stopped them from filing their own individual action if they are worried that their claims are or would soon be time-barred.  *Rock v. Nat'l Collegiate Athletic Ass'n*, 2016 WL 1270087, at *17 (S.D. Ind. Mar. 31, 2016); *Warden v. Crown Am. Realty Tr.*, 1998 WL 725946, at *4 (W.D. Pa. Oct. 15, 1998), *aff'd*, 229 F.3d 1140 (3d Cir. 2000).  In *Shea v. Angulo*, 19 F.3d 343, 346 (7th Cir. 1994), for example, the Seventh Circuit affirmed the district court's conclusion that the impairment prong had not been met by an intervenor who had "remain[ed] free to initiate his own suit against [the defendant]" regardless of the outcome of the underlying action. If they need (or had needed) to file a complaint to protect themselves from the running of any statute of limitations, then that is (or was) up to them to do within the requisite period.

As to the fourth factor, there are "unusual" circumstances here that work towards denying permissive intervention.  For starters, as shown, intervention is not "the correct procedural vehicle by which to add these new plaintiffs in this case[.]"  *Johnson v. Allstate Ins. Co.*, 2010 WL 1325272, at *2 (S.D. Ill. Mar. 29, 2010).  The proposed intervenors also are not "outsiders" to this

litigation (they would be class members), are not "adversarial to any of the existing plaintiffs," and "are represented by the same counsel." *Id.* Intervention would further be bad policy. It would "condone or encourage attempts to circumvent the statute of limitations by filing a lawsuit without an appropriate plaintiff and then searching for one who can later intervene with the benefit of the tolling rule." *In re Elscint, Ltd. Secs. Litig.*, 674 F. Supp. 374, 378 (D. Mass. 1987). Such "placeholder actions" improperly "give plaintiffs unearned leverage over defendants by artificially raising the stakes while simultaneously buying time to piece together a more formidable lawsuit." *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL 3988488, at *28 (N.D. Ill. June 29, 2015). Intervention is equally improper where "the original named plaintiffs fail[ed] to state a cognizable claim from the outset[.]" *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010). All of these circumstances work against permitting intervention.

## IV. There Are No Grounds for Intervention as of Right.

Nor should the court grant mandatory intervention, which is available only when (i) the motion is timely, (ii) the intervenor claims an interest relating to the property or transaction that is the subject of the action, (iii) disposition of the action may as a practical matter impair or impede the intervenor's ability to protect that interest, and (iv) the existing parties inadequately represent that interest. *Sokaogon Chippewa*, 214 F.3d at 946. The burden is on the movant to show that all four criteria are met. "If not, then the district court must deny intervention of right." *Reid L. v. Illinois State Bd. of Educ.*, 289 F.3d 1009, 1017 (7th Cir. 2002).

None of those factors applies. The motion was not timely, as shown. The proposed intervenors certainly have no legally protectable interest. This is not a case about a disputed property right or transaction where these proposed intervenors are claiming some kind of stakeholder interest that could be adversely impacted without their presence. The notion of their being some kind of property interest in a statute of limitations response is nonsensical—and they

8

do not need to intervene to protect against that defense in *this* litigation anyway, as they could try to file their own individual action. They do not argue and "have not established that their interest in pursuing a particular class action procedure, as opposed to protecting a substantive right, is protectable under Rule 24(a)(2)." *Lindblom v. Santander Consumer USA, Inc*, 2019 WL 4640684, at *7 (E.D. Cal. Sept. 24, 2019). Nor have they shown that the existing plaintiffs are inadequate representatives. To the contrary, they state that "by all rational accounts, [the existing plaintiffs] have already adequately preserved the limitations period for the entire putative class." (ECF 73 at 2.) The movants merely hypothesize that a future decision of this Court might make the existing plaintiffs inadequate. (*Id.* at 14.)

## V. Leave to Amend Should be Denied.

This Court has broad discretion to deny leave to amend where amendment would be futile. *Poole v. Saddler*, 2014 WL 585306, at *7 (N.D. Ill. Feb. 14, 2014). "An amendment is futile if the amended claims could not survive a motion to dismiss pursuant to Rule 12(b)(6)." *Id.* As shown, the proposed amended complaint is fatally deficient and cannot cure the statute of limitation problems.

It also bears mentioning that the motion in this case "is in reality an improper surreply brief and constitutes [the plaintiffs'] attempt to have the last word" on the pending motions to dismiss. *Porter v. Fairbanks Capital Corp.*, 2003 WL 21210115, at *7 (N.D. Ill. May 21, 2003). Their briefing is peppered with arguments plainly directed to shore up their responses to those motions. The movants (wrongly) argue, for example, that one proposed intervenor's "circumstance confirms the meritless nature of [the defendants'] assertion that any LEC could be on notice of these claims before the release of the Consent Decree[.]" (ECF 73 at 4.)

In one of their more egregious mischaracterizations, the movants wrongly state that "T-Mobile *admitted* [in the Consent Decree proceeding] to illegally injecting fake ring tones … to

9

mask call failures and degraded call quality problems caused by its Intermediate Providers." (ECF 73 at 4.) Of course, T-Mobile nowhere admitted that it used fake ring tones to "mask call failures and degraded call quality problems caused by its Intermediate Providers." (*Compare* ECF 73 at 4, *with In the Matter of T-Mobile USA, Inc.*, 33 F.C.C. Rcd. 3737, 3744 ¶ 17 (2018).) That is language the movants have manufactured, not language that T-Mobile ever used or that the FCC included in the Consent Decree. The Court should look to what the FCC actually said and what the *Consent Decree* actually says, not what the movants or their counsel choose to write.

In all events, the immediate point is that the movants are using this motion as a last-ditch opportunity to toss in a few added replies to the motions to dismiss. Their effort ultimately is irrelevant—because their arguments are unpersuasive—but Inteliquent respectfully submits that the Court should see the effort for what it is.

## <u>Conclusion</u>

This Court should deny the motion.

Dated: April 10, 2020                Respectfully submitted,

By:*/s/ John J. Hamill*

John J. Hamill
john.hamill@dlapiper.com
Michael S. Pullos
michael.pullos@us.dlapiper.com
Devin Carpenter
devin.carpenter@us.dlapiper.com
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Tel: 312.368.7036/2176
Fax: 312.251.5809/312.630.6350

*Attorneys for Inteliquent, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney, on oath, certifies that on April 10, 2020, he served the foregoing **Response in Opposition to the Plaintiff-Intervenors' Motion for Permissive Intervention, or in the Alternative, Intervention as of Right, or in the Alternative, Plaintiffs' Motion for Leave to Amend** via the ECF system to all parties that have consented to same in accordance with applicable Federal Rules of Civil Procedure and Local Rules of the U.S. District Court for the Northern District of Illinois.


By: /s/ *John J. Hamill*_____
      John J. Hamill