**IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CRAIGVILLE TELEPHONE CO. d/b/a
ADAMSWELLS; and CONSOLIDATED
TELEPHONE COMPANY d/b/a CTC.,

        Plaintiffs,

    v.

T-MOBILE USA, INC.; and
INTELIQUENT, INC.,

        Defendants.

Hon. John Z. Lee

Case No. 1:19-cv-07190

**MEMORANDUM IN SUPPORT OF INTELIQUENT INC.'S
<u>MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT</u>**

John J. Hamill
john.hamill@dlapiper.com
Michael S. Pullos
michael.pullos@us.dlapiper.com
Devin J. Carpenter
devin.carpenter@us.dlapiper.com
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Tel: 312.368.7036/2176
Fax: 312.251.5809/312.630.6350

## <u>TABLE OF CONTENTS</u>

OVERVIEW ...................................................................................................................1

FACTUAL ALLEGATIONS ASSUMED TRUE (FOR NOW).........................................2

    A. The Parties.....................................................................................................2

    B. The April 2018 Consent Decree ..................................................................3

    C. Allegations About LRBT ..............................................................................3

    D. The "Fake Ring Tone Enterprise".................................................................4

    E. Allegations About "Degraded" Service.........................................................4

    F. The Amended Complaint Again Exonerates Inteliquent...............................5

    G. Extraneous Allegations About the T-Mobile One Cent Policy.....................5

    H. Facts About the Named Plaintiffs ................................................................5

LEGAL STANDARD.......................................................................................................6

ARGUMENT ...................................................................................................................6

    I. The Complaint is an Improper Motion for Reconsideration ........................6

    II. The RICO Claims (Counts IV and V) Fail..................................................7

        A. The complaint fails to plead any access charge injury and
           thus fails to plead any predicate act.................................................7

        B. Inteliquent did not operate or manage a RICO enterprise.................10

        C. The defendants did not conspire to violate RICO ............................11

    III. The Communications Act Claims (Counts II and III) Fail .....................11

    IV. The ICFA Claim (Count VII) Fails .........................................................14

    CONCLUSION...............................................................................................15

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Bastien v. AT&T Wireless Servs., Inc.*,
    205 F.3d 983 (7th Cir. 2000) ..........................................................................................15

*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*,
    90 F.3d 1264 (7th Cir. 1996) ............................................................................................7

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ..........................................................................................15

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
    467 U.S. 837 (1984) ..........................................................................................................9

*Crichton v. Golden Rule Ins. Co.*,
    576 F.3d 392 (7th Cir. 2009) ..........................................................................................11

*Domanus v. Locke Lord LLP*,
    847 F.3d 469 (7th Cir. 2017) ..........................................................................................11

*Ford v. City of Rockford*,
    2019 WL 2011104 (N.D. Ill. May 7, 2019) ......................................................................6

*Fulton D.D.S., P.C. v. Enclarity, Inc.*,
    962 F.3d 882 (6th Cir. 2020) ............................................................................................9

*Goren v. New Vision Int'l*,
    156 F.3d 721 (7th Cir. 1998) ..........................................................................................10

*Illinois Transp. Trade Ass'n v. City of Chicago*,
    2016 WL 1623206 (N.D. Ill. Apr. 25, 2016), *aff'd in part,*
    *rev'd in part on unrelated grounds*, 839 F.3d 594 (7th Cir. 2016)................................6, 7

*Inteliquent, Inc. v. Free Conferencing Corp.*,
    No. 1:16-cv-06976, ECF 722 (N.D. Ill. Nov. 30, 2020)....................................................5

*Martin v. Wendy's Int'l, Inc.*,
    2017 WL 1545684, at *2 (N.D. Ill. Apr. 28, 2017), *aff'd,*
    714 F. App'x 590 (7th Cir. 2018) ..................................................................................6, 7

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)........................................................................................................10

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
    682 F.3d 1043 (D.C. Cir. 2012) ......................................................................................11

*United Food and Com. Workers Union and Emp'rs Midwest Health Benefits Fund*,
   719 F.3d 849 (7th Cir. 2013) ............................................................................11

*United States ex rel. Gray v. UnitedHeatlhcare Ins. Co.*,
   2018 WL 11196387 (N.D. Ill. Oct. 29, 2018) ....................................................6

*Vesely v. Armslist LLC*,
   762 F.3d 661 (7th Cir. 2014) .............................................................................7

### STATUTES

18 U.S.C. § 1962(c) .................................................................................................11

18 U.S.C. § 1962(d) ................................................................................................11

28 U.S.C. § 2342 .......................................................................................................9

### RULES AND REGULATIONS

Fed. R. Civ. P. 12(b)(1) ............................................................................................1

Fed. R. Civ. P. 12(b)(6) ............................................................................................1

47 C.F.R. § 64.1600(f) ............................................................................................14

47 C.F.R. § 64.2101 ................................................................................................12

### OTHER AUTHORITIES

In the Matter of Rural Call Completion, *Report and Order and
   Further Notice of Proposed Rulemaking*,
   FCC 13-135, WC Docket No. 13-39 (rel. Nov. 8, 2013) …...………………….……… 3

In re Rural Call Completion ("2018 Order"),
   33 FCC Rcd. 4199 (2018) …………………………………………………………...12, 13

Inteliquent, Inc. submits this memorandum in support of its Rule 12(b)(1) and (6) motion to dismiss the Second Amended Class Action Complaint ("amended complaint") (ECF 94) filed by Craigville Telephone Co. ("Craigville") and Consolidated Telephone Co. ("CTC"). Inteliquent expressly joins Parts I.A, I.B, II, and III of T-Mobile's memorandum (as grounds to dismiss Inteliquent as well) to avoid undue repetition.

## Overview

The Court ruled that the plaintiffs' allegations against Inteliquent, even when accepted as true, failed for every claim except one (and even that one claim stands on shaky injury grounds).[1] The amended complaint adds nothing that should change that outcome. The Court dismissed the Communications Act claims (Counts II and III) against Inteliquent because it had no duty under the law to fix alleged call completion problems. The RICO claims (Counts IV and V) failed because the complaint did not plausibly allege an intent to defraud anyone. The purported "lost access charge" theory of injury also failed as implausible and for lacking any factual allegations of a lost access charge due to "LRBT." The ICFA claim (Count VII) failed because neither the plaintiffs nor the customers who allegedly heard false ringing were alleged to reside in Illinois. These claims remain fundamentally unchanged. The amended complaint therefore should be dismissed again (as well as for other reasons previously raised but not reached).

The latest version is nothing more than a motion for reconsideration dressed up as an amended complaint. There is nothing new here. The amended complaint has *zero* new factual allegations related to the named plaintiffs. It adds nothing to substantiate its renewed allegation that Inteliquent is a "covered provider"—nor could it for the relevant calls. It adds nothing to substantiate access-charge injury, and it keeps the theory that made this Court find that injury

---

[1] The sole surviving claim against Inteliquent is for civil conspiracy. (ECF 91 at 26.)

implausible. It adds no allegations to establish the requisite link to Illinois. The amended complaint instead (i) repeats arguments that this Court already rejected; (ii) summarizes FCC materials this Court already considered; and (iii) adds conclusory allegations that should be disregarded. This chart shows the continued deficiencies.

| Reason for Dismissing Inteliquent | The Court's Ruling | New Factual Allegations to Cure Deficiencies |
|---|---|---|
| Communication Act claims failed because no allegations that Inteliquent, an intermediate provider, violated any actionable duty. | Expressly agrees that the complaint alleged Inteliquent was an intermediate provider for T-Mobile calls, and none of the FCC rules impose a duty to fix call completion problems on intermediate providers. | None. |
| RICO claims failed because no plausible allegation that the alleged fake ring tone scheme was devised to defraud anyone. | Expressly agrees that the complaint failed to plausibly allege that T-Mobile carried out the alleged scheme to defraud anyone. | None. |
| ICFA claim failed because circumstances of alleged scheme did not occur primarily and substantially in Illinois. | Expressly agrees that Inteliquent's headquarters in Illinois and allegation that fake ring tones may have been inserted from a Chicago-area data center were insufficient. The plaintiffs conceded neither they nor the customers who allegedly heard false ringing reside in Illinois. | None. |

## Factual Allegations Assumed True (For Now)

### A.  The Parties

CTC is a "local exchange carrier" or "LEC" in rural Minnesota, while Craigville is a LEC operating as "AdamsWells" in Indiana. (¶¶ 336, 314.)[2] As an "intermediate" provider, Inteliquent "carries or processes traffic" and "neither originates nor terminates that traffic." (*See, e.g.*, ¶¶ 54, 149; ECF 45 at 3.) T-Mobile is a wireless carrier (¶ 18.) Inteliquent started providing its long-distance services to T-Mobile in the summer of 2015 under a vendor agreement ("2015 MSA").

---

[2] All paragraph citations are to the second amended complaint and all emphasis in citations is added.

(¶¶ 206-07, 231, Ex. 14 ¶ 10.)  This complaint also declares—on information and belief and in the form of a legal conclusion—that Inteliquent is a "covered provider" for T-Mobile's traffic.  But that is also nothing new, as the plaintiffs argued vigorously in opposition to the prior motion to dismiss that Inteliquent was more than an intermediate provider.  (ECF 65 at 11-12.)[3]

## B.    The April 2018 Consent Decree

The FCC has prohibited providers from generating "false" ring tones (often called "local ring back tones" or "LRBT") on phone calls since January 2014.[4]  T-Mobile entered into an April 2018 "Consent Decree" with the FCC.  The Consent Decree remains the linchpin of this complaint.  Inteliquent is not a party to the Consent Decree.

## C.    Allegations About LRBT

The amended complaint still makes no specific factual allegations about Inteliquent and LRBT.  Apart from allusions on information and belief, the amended complaint never alleges that Inteliquent knew about alleged LRBT.  (¶¶ 191, 242-43.)  It still says that "T-Mobile informed the [FCC] that fake ring tones were implemented by *Ericsson* [not Inteliquent] on *Ericsson* Mobile Switching Centers [not Inteliquent's equipment][.]"  (¶¶ 282, 296.)[5]  Inteliquent uses *different* switching equipment for the services it provides.  (¶¶ 220-23.)  The complaint does not allege those

---

[3] It alleges that "Inteliquent is a carrier…, and, depending on whether it 'makes the initial long-distance call path choice' (i.e., the 'static or dynamic selection of the path for a long-distance call based on the called number of the individual call') is also a Covered Provider."  (¶ 146.)  This Court has already determined that Inteliquent is not a "covered provider" for anything relevant to the allegations here.  (ECF 91 at 26-27.)  As shown below, the allegations of Inteliquent being a "covered provider" are (incorrect) legal conclusions and also contradict other allegations.  The complaint also alleges that "it is evident from the 2015 MSA that Inteliquent met the operate definition of Intermediate Provider" for T-Mobile.  (¶ 149.)

[4] In the Matter of Rural Call Completion, *Report and Order and Further Notice of Proposed Rulemaking*, ¶ 116, FCC 13-135, WC Docket No. 13-39 (rel. Nov. 8, 2013).

[5] The amended complaint also continues to hedge and oscillate, alleging "[u]pon *information and belief, whether or not* Inteliquent directly inserted the fake ring tones *or not*, it was Inteliquent's [unspecified] routing practices that T-Mobile sought to mask through its use of illegal fake ring tones."  (¶ 226.)

switches generated the LRBT. Because Inteliquent provided long-distance services to T-Mobile, the complaint muses that LRBT "perhaps" could have been generated by "Inteliquent's servers" and ruminates that Inteliquent's equipment "could be utilized" to create them. (¶¶ 296, 223.)

**D.   The "Fake Ring Tone Enterprise"**

Even after the dismissal, Inteliquent's supposed participation in an "LRBT scheme" still lacks any factual allegation. The amended complaint alleges:

- On information and belief, that Inteliquent had the technical ability to insert LRBT (¶¶ 203, 224-25);

- That Inteliquent was the primary intermediate provider for much (but not all) of T-Mobile's long-distance calls (¶¶ 226-27; ¶¶ 206-07, 219, 279, 281-82);

- On information and belief, that unidentified Inteliquent employees discussed LRBT in unidentified circumstances on unspecified occasions (¶¶ 241-43);

- That the use of LRBT fits Inteliquent's supposed economic motive (¶¶ 9, 262); and

- That T-Mobile supposedly admitted in the Consent Decree that it used LRBT and did not correct unidentified problems with unidentified intermediate providers' delivery of calls to rural areas (¶¶ 189-90, 192, 226, 272, 390, 412).

The "Fake Ring Tone Enterprise's" supposed purpose was to reduce access charges to rural LECs by "confus[ing] the caller and caus[ing] them to prematurely hang up[.]" (¶ 416.) T-Mobile began inserting LRBT in 2007 (eight years before Inteliquent's 2015 MSA with T-Mobile). (¶¶ 178, 206-07.) LRBT allegedly "render[ed] the calls incapable of being handed back" to try another route "when the call was not completed[.]" (¶ 416.)

**E.   Allegations About "Degraded" Service**

The complaint loosely says that T-Mobile calls to rural areas were not properly completed and had degraded quality, though it again provides no detail. It invokes the Consent Decree to suggest that somehow it means that *Inteliquent* engaged in improper call completion. (¶ 226.) But it still does not identify *any* specific unlawful routing practices involving Inteliquent.

**F.     The Amended Complaint Again Exonerates Inteliquent**

The complaint continues to describe events that "reflect a pattern of customer complaints being *resolved* by Inteliquent[.]"  (¶ 279.)  It states that Inteliquent was "routinely the resource T-Mobile relied upon to *resolve* rural call completion failures that its customers were able to identify." (*Id*.)  The Consent Decree likewise states that "actions taken by intermediate providers" had *remedied* call completion problems.  *Consent Decree* ¶ 8.  That shows that intermediate providers took steps to improve call completion – the opposite of what the complaint alleges.

**G.     Extraneous Allegations About the T-Mobile One Cent Policy**

The complaint again tags on allegations about an unrelated charging policy T-Mobile put into place in 2016 that have nothing to do with any issues in this case.  (¶¶ 248-252, 263-268.)  No claim is based on these allegations.  There are no allegations that any of the plaintiffs' customers were impacted by the policy.  Even worse, the baseless allegations remain despite summary judgment being granted in Inteliquent's favor for claims based on this policy in other litigation in this Court before Judge Blakey.  The policy—which imposes a one-cent-per-minute charge on its customers who place calls to high-cost locations—is "lawful, vigorous competition." *Inteliquent, Inc. v. Free Conferencing Corp.*, No. 1:16-cv-06976, ECF 722 at 54-55 (N.D. Ill. Oct. 30, 2020).

**H.     Facts About the Named Plaintiffs**

This complaint does not add a single factual allegation about the plaintiffs or their asserted injuries.  For CTC, it again alleges that a T-Mobile customer reported problems connecting when she tried to call "Louie's Bucket of Bones," a Minnesota restaurant and CTC subscriber.  (¶¶ 339-61.)  It does not link Inteliquent to these problems.  As for Craigville, it again focuses on a T-Mobile subscriber who allegedly had connection problems with calls to her parents who were Craigville subscribers.  (¶¶ 317-18.)  Craigville submitted a rural call completion ticket to the FCC

about those problems. T-Mobile responded that its "engineering is working with a third party, *Incomm* [not Inteliquent] in resolving" the concerns. (¶ 322.) In contrast, the complaint alleges that "some of the T-Mobile subscriber's calls that *did reach* AdamsWells *and were delivered* to [her parents] were carried by Inteliquent as T-Mobile's [Intermediate provider]." (¶ 333.)

### Legal Standard

T-Mobile's brief correctly states the legal standards. The claims again fail under those standards, and (as shown) should also be rejected under the motion for reconsideration standards.

### Argument

### I. The Complaint is an Improper Motion for Reconsideration.

The complaint should be dismissed because it is an improper motion for reconsideration. "When this Court gave [the plaintiffs] leave to file an amended complaint, it was not inviting [them] to file a motion to reconsider its dismissal of the original complaint[.]" *Ford v. City of Rockford*, 2019 WL 2011104, at *1 (N.D. Ill. May 7, 2019) (quoting *Martin v. Wendy's Int'l, Inc.*, 2017 WL 1545684, at *2 (N.D. Ill. Apr. 28, 2017), *aff'd*, 714 F. App'x 590 (7th Cir. 2018)).

That is precisely what the plaintiffs have done. "Although styled as" an amended complaint, "the [plaintiffs] rehash[ ] and reassert[ ] the same arguments that this Court has rejected[.]" *Illinois Transp. Trade Ass'n v. City of Chicago*, 2016 WL 1623206, at *1 (N.D. Ill. Apr. 25, 2016), *aff'd in part, rev'd in part on unrelated grounds*, 839 F.3d 594 (7th Cir. 2016). The plaintiffs did not cure any deficiencies identified by this Court. Even more, they "rely[ ] on the same statutes," regulations, orders, and rulings "that the Court already held are insufficient to plead" their claims. *United States ex rel. Gray v. UnitedHeatlhcare Ins. Co.*, 2018 WL 11196387, at *1 (N.D. Ill. Oct. 29, 2018). In paragraph after paragraph, they improperly "focus[ ] on arguing that the Court should reverse its earlier decision." *Martin*, 2017 WL 1545684, at *2. The Court

therefore should consider this complaint under the reconsideration standard. *See Illinois Transp.*, 2016 WL 1623206, at *1. "Reconsideration is not … appropriate … for rehashing … arguments or arguing matters that could have been heard[.]" *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). It instead requires "a manifest error of law or fact or…newly discovered evidence." *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014).

The complaint fails to meet that standard. It confirms that there was no manifest error of law or fact and presents no newly discovered evidence. Virtually everything this complaint adds is *not new at all*. What plainly occurred here is the plaintiffs used the unlimited pages available in their amended complaint to expand arguments they already made and the Court already rejected. The plaintiffs fill that space with conclusory statements and rehashed legal arguments under FCC precedent, not the factual allegations the Court required. The reconsideration request fails.

## II.     The RICO Claims (Counts IV and V) Fail.

### A.     The complaint fails to plead any access charge injury and thus fails to plead any predicate act.

The Court dismissed the RICO claims because the complaint did not plausibly show that the alleged LRBT scheme was "devised *for the purpose* of defrauding anyone of money or property." (ECF 91 at 20.) The plaintiffs' "loss-of-access-charges" theory defied common sense. (*Id.* at 9.) The theory that "fake ring tones 'influence [callers] to hang up,'" "ignores…that T-Mobile allegedly inserted false ringing *to mask delays associated with connection issues*." (*Id.* at 9, 20.) The Court reasoned that, "[i]f anything, common sense dictates that a caller who encountered ringing would have [to] stay on the line longer than one who met with dead air." (*Id.*) "As a result, fake ring tones *improve*, not worsen, the odds that calls connect[.]" (*Id.* at 9.) This "increase[es] rather than reduc[es the plaintiffs'] opportunity to earn access charges." (*Id.*)

The plaintiffs' nonsensical theory remains and fails for the exact reasons previously

decided.  This complaint likewise continues to be "bereft of any 'factual content' showing that Plaintiffs have lost access charges" from alleged LRBT.  (*Id.*)  As the Court held, "it would be unreasonable, without more, to infer" fraudulent intent because "the alleged scheme in no way tended to deprive [plaintiffs] of access charges[.]"  (*Id.* at 20.)  In fact, the complaint does not add a single fact about how LRBT reduced access charges.  *Not one*.  With no new facts, it contends that the Court must find that the alleged LRBT reduced access charges because the FCC purportedly found that at times LRBT makes it less likely for a call to reach its destination.  (*See, e.g.*, ¶ 2*; see also* ¶¶ 87, 104, 107, 114-18, 202, 245, 380-81, 423(a).)  But these same materials were before the Court—and thoroughly discussed—and the FCC's pronouncements were not based on the alleged theory at stake here.  The plaintiffs made this same argument using the same FCC materials already and have done nothing to make it plausible.  (ECF 66 at 7.)  This Court properly rejected it.  (*See* ECF 91 at 9, 20.)

The plaintiffs also recycle their equally implausible argument that access charges are lost because LRBT can sometimes prevent a call from being handed back for rerouting.  (*Id.* ¶¶ 87, 104, 114.)  Again, this exact same argument was briefed.  (*See* ECF 65 at 8-9.)  This reused theory lacks any factual or legal support, as thoroughly explained in T-Mobile's brief.  The Court ruled the allegations were "bereft of any 'factual content' showing that [plaintiffs] have lost access[ ] charges[.]"  (ECF 91 at 9.)  The plaintiffs provide no fix nor can they.[6]

The complaint does add one new but likewise meritless argument in which it seeks to invoke administrative law principles to obtain deference to (inapplicable) FCC findings.  It asserts that the Hobbs Act and *Chevron* deference require this Court to find the plaintiffs' injury theory

---

[6] The complaint likewise does not substantiate the "vague references to 'call blocking practices'" and continues to "not disclose enough factual details for the Court to assess whether those practices count as predicate acts under RICO, let alone make a plausible showing that they occurred."  (ECF 91 at n.7.)

plausible. But that misapprehends those doctrines and the FCC's statements. (¶ 120.) The Hobbs Act is about collateral attacks against agency orders. *See* 28 U.S.C. § 2342. But no party here is challenging the FCC's rule against false ring tones, so the Hobbs Act is inapplicable. *See Fulton D.D.S., P.C. v. Enclarity, Inc.*, 962 F.3d 882, 888 (6th Cir. 2020). *Chevron* deference is about a court's deference to an agency's reasonable interpretation of an ambiguous statute. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). Whether the plaintiffs have plausibly alleged an injury here has nothing to do with an interpretation of an ambiguous statute.

Even if those doctrines somehow applied (and they do not), the allegations here still compel dismissal. The complaint again alleges that the LRBT was used "to mask delays associated with connection issues" in order to deprive a party of access revenues. (ECF 91 at 9, 20; ¶ 191.) That type of far-fetched theory is unique to this case. It is *not* what the FCC was addressing in the Consent Decree or any other pronouncement, as T-Mobile also explains. And it is why the Court dismissed the case. There was and there is no potential for the plaintiffs to show injury on such an implausible theory. If false ring tones were used—*as the plaintiffs allege*—to mask connection issues, the only plausible reason would be to keep callers on the phone longer as connections were made. That is precisely what the Court ruled in this case, it is *not* at stake in any of the FCC pronouncements for which the plaintiffs (erroneously) invoke the Hobbs Act and *Chevron* deference, and it is unchanged in the amended complaint. (ECF 91 at 9, 20.) The plaintiffs have stuck with a fundamentally flawed theory that failed the first time and fails again.

This Court should likewise dismiss the RICO claims for failure to plead a single predicate act against Inteliquent. (ECF 48 at 12-13.) The complaint improperly alleges fraudulent misrepresentations against "[e]ach of the RICO Defendants," without saying what, if anything, Inteliquent did. (¶¶ 423, 423(a), 423(b).) "[S]uch 'lumping together' of defendants is clearly

insufficient to state a RICO claim[.]" *Goren v. New Vision Int'l*, 156 F.3d 721, 730 (7th Cir. 1998). It makes a blanket allegation that the defendants "insert[ed] hundreds of millions of false messages into telephonic wire transmissions." (¶ 423(a).) But it does not allege that Inteliquent inserted LRBT into even one call. Instead "fake ring tones were implemented by *Ericsson*" on its equipment. (¶¶ 282, 296.)

### B. Inteliquent did not operate or manage a RICO enterprise.

The RICO claims also fail for reasons the Court did not need to reach in the prior round. As briefed, a § 1962(c) complaint must plead facts that each defendant participated in the "operation or management" of the enterprise itself. *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). To "operate or manage" an enterprise "one must have some part in directing those affairs." *Id.* at 179. "[S]imply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability." *Goren*, 156 F.3d at 728.

Inteliquent cannot be found to have "operated" or "managed" the supposed "fake ring tone enterprise." The amended complaint fails to allege that Inteliquent generated LRBT. Stating, as it does, that the "[p]laintiffs believe that each member … played a role … in inserting false ring tones … or conducted or participated in other call blocking practices" and that the insertion "could be performed by Inteliquent" is wholly insufficient. (¶¶ 224, 412.) There are no allegations that Inteliquent operated, planned any operations, or had any decision-making functions of any kind. On top of that, the complaint again pleads that Inteliquent was conducting its own affairs—not "directing" those of an enterprise—and describes a legitimate commercial relationship with T-Mobile. (¶¶ 206, 230.) It fails to allege any conduct by Inteliquent beyond the ordinary provision of services (carrying long-distance traffic and participating in calls with T-Mobile related to fraud

prevention, such as robocalls). When "the activities … are entirely consistent with [defendants] each going about its business" they do not conduct the affairs of the enterprise. *United Food and Com. Workers Union and Emp'rs Midwest Health Benefits Fund*, 719 F.3d 849, 854-55 (7th Cir. 2013); *see also Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009).

### C. The defendants did not conspire to violate RICO.

As the Court held, the underlying § 1962(c) claim fails, and therefore the § 1962(d) conspiracy claim also fails again. (ECF 91 at 21.) The RICO conspiracy claim also fails for independent reasons the Court did not need to reach. A § 1962(d) claim must plausibly allege a conscious agreement among all defendants to commit at least two predicate acts. *Domanus v. Locke Lord LLP*, 847 F.3d 469, 481-82 (7th Cir. 2017). Allegations "that a defendant acted in ways consistent with a conspiratorial agreement, but also equally well explained by legitimate economic incentives, do not suffice to show illegality." *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1051-52 (D.C. Cir. 2012). The complaint merely alleges that Inteliquent acted in its economic interests and operated pursuant to its commercial agreement with T-Mobile. (¶¶ 236, 262, 266.)

### III. The Communications Act Claims (Counts II and III) Fail.

The complaint again does not plead Inteliquent violated any actionable duty. The Court correctly ruled that intermediate providers like Inteliquent did not have a duty to fix call completion problems. (ECF 91 at 27.) The Court held that the 2012 Ruling, which provides the relevant duties, "only 'applies to covered providers.'" (*Id.* at 26.) "Inteliquent, however, is an 'intermediate provider' when it comes to T-Mobile's calls … and the [FCC] has stated that an intermediate provider '[d]oes not … serve as a covered provider in the context of originating or terminating a given call[.]'" (*Id.* at 26-27 (quoting 47 C.F.R. § 64.2101)). The Court also rejected

11

the plaintiffs' argument that the 2012 Ruling applied to all "carriers." (*Id.* at 26.) In reaching its decision, the Court found that the 2018 Order "made clear that it…clarif[ied] the 2012 Ruling." (*Id.* at 12.) The Court thus rejected the plaintiffs' argument that the 2018 Order provided new rules that would only be applied prospectively. (*Id.* at 11-12.)

This complaint adds nothing. It merely rehashes exactly what was previously argued, using materials the Court already considered, without fixing any deficiencies the Court identified. It again contends that the 2012 Ruling's duties apply to Inteliquent because it is a "carrier." (¶ 148; *see also* ¶¶ 146-47, 395-96.) The Court already rejected this argument. (ECF 91 at 26.) It also repeats an argument that the 2018 Order applied prospectively. (¶¶ 138-144.) It alleges that the duties described in the 2012 Order therefore apply to all "carriers," not just "covered providers." (*Id.*) This too has already been rejected. (ECF 91 at 26-27.)

With no new facts, this complaint advises the Court that "close examination [of the 2018 Order] is required to ascertain the Commission's intention." (¶ 138.) That Order was already in front of this Court and the plaintiffs' request is a transparent request for reconsideration. The Court dismissed the claims because they were legally and factually deficient, not because this Court did not do its homework. The plaintiffs have not corrected their errors, but only added unnecessary detail that provide further gloss on points that the Court already considered.

This Court should likewise not credit the plaintiffs' effort to again argue that Inteliquent is a "covered provider." The plaintiffs have represented to this Court more than forty times that Inteliquent is an *intermediate* provider for the alleged calls. (Compl. ¶ 53; *id.* ¶¶ 10, 13, 55, 62, 106, 177, 179, 181, 204, 228, 269, 319, 321, 329, 336; Am. Compl. ¶ 53; *id.* ¶¶ 10, 13, 55, 112, 184, 186, 211, 252, 289, 342, 350; ECF 31 at 2; ECF 32 at 2, 4, 6, 7; ECF 45 at 3, 4, 7; ECF 64 at 1; ECF 65 at 6, 9 n.5, 10, 11; ECF 66 at 3, 7, 14 n.7, 25, 29, ECF 73 at 2.) Based on the same

allegations, this Court already found that Inteliquent is an intermediate provider and not a covered provider for the relevant T-Mobile calls. (ECF 91 at 26-27.)

Even now, the plaintiffs can only muster "[u]pon information and belief, Inteliquent was a Covered Provider with regard to some or all of T-Mobile's traffic[.]" (¶ 150.) But the "facts" on which they base that allegation suggest no such thing. They allege that a "'covered provider may be…an interexchange carrier.'" (¶ 150(a).) This mere possibility does not suggest Inteliquent was a covered provider for T-Mobile calls. They allege that "Inteliquent lists on its website a rural call completion point of contact as FCC rules require for Covered Providers." (¶ 150(b).) But that says nothing about whether Inteliquent is a covered provider for the alleged T-Mobile calls here (and only began after the 2018 Order). They allege that an Inteliquent 10-K reported that it uses a "patented proprietary software tool…to manage…complicated routing scenarios[.]" (¶ 150(c).) They contend that this "strongly suggests that Inteliquent was the party responsible for selecting routes for the delivery of some or all of T-Mobile's calls." (*Id.*) But that is not even the definition of a covered provider, as the complaint itself admits. A covered provider must make the "*initial* long-distance call path choice[.]" (*Id.* ¶ 151.)[7] There are no facts that Inteliquent does.

In any event, Inteliquent cannot be an intermediate provider *and* a covered provider for any call relevant to the claims here, based on the facts alleged. The complaint quotes the definition of intermediate provider as "[a]ny entity that carries or processes traffic….insofar as that entity neither originates nor terminates that traffic." (vii.) (quoting 47 C.F.R. §64.1600(f)) (alteration in original). It recognizes that this definition "*exclude[s]* the originating or terminating entities." (¶

---

[7] The other allegations are similarly deficient. If the 2015 MSA shows that T-Mobile will deliver some traffic but not other traffic to Inteliquent, that does not make Inteliquent a covered provider. (¶ 150(d).) A private agreement that imposes contractual obligations on Inteliquent for routing and reporting likewise does not make it a covered provider. (¶ 150(e), (f), and (g).)

54.) It also recognizes that for an entity to be a "covered provider" for a call it must "make[ ] the initial long-distance call path choice[.]" (vi.) There can only be one "initial" choice, so there cannot be two covered providers for the same call. The complaint concedes (as it must) that T-Mobile *originated* and then *routed* the call to Inteliquent for all the alleged calls. For example, it alleges that T-Mobile makes that initial long-distance call path choice when it routes a call from the "T-Mobile tower to a meet point with Inteliquent[.]" (*Id.* ¶ 59.)[8] Inteliquent thus cannot be a covered provider for the relevant T-Mobile calls.

## IV. The ICFA Claim (Count VII) Fails.

This Court already ruled that ICFA does not apply. (ECF 91 at 22-23.) For a non-resident to invoke ICFA, the "circumstances that relate to the disputed transaction [must have]…occurred primarily and substantially in Illinois." (*Id.*) The Court held that it was not enough to allege that "Inteliquent has its headquarters in Illinois[.]" (*Id.* at 23.) Nor was it enough to also allege that it "may have inserted fake ring tones from a Chicago-area data center." (*Id.*) The Court also recognized that ICFA does not apply even where "misrepresentations were designed in Illinois" and "emanated from servers located in Illinois." (*Id.* at 22-23.) It emphasized that the plaintiffs "conced[ed] that neither they nor the customers who heard false ringing reside" in Illinois. (*Id.*)

This complaint again concedes that neither the plaintiffs nor the customers who allegedly heard false ringing reside in Illinois. There still is no allegation that anyone in Illinois was deceived, that any injury occurred in Illinois, or that any misrepresentation was made in Illinois. Every alleged injury was in Minnesota and Indiana. (¶¶ 16-17, 317, 338-39.) The allegations of

---

[8] Even the Consent Decree states that T-Mobile used multiple intermediate providers to carry calls ("actions taken by *intermediate providers*" remedied call completion problems) which means T-Mobile had to be the covered provider. (*Consent Decree* ¶ 8)

tangential connections to Illinois come up far short.

- Inteliquent's work under its contract with T-Mobile "centers around actions that Inteliquent took largely in … its … Illinois headquarters[.]" (¶ 471.) The Court plainly considered this previously and it is also irrelevant to any claim.

- Inteliquent invoiced T-Mobile from Illinois and received payments to bank accounts in Illinois. (¶ 213-14.) This does not show that the circumstances of the disputed transaction occurred substantially or primarily in Illinois.

- "Upon information and belief, [certain data on call completion reports] would have been maintained primarily in Chicago, Illinois." (*Id.* ¶ 212.) Maintaining data is irrelevant to any claim. The same goes for the alleged data reports. (¶ 210.)

- LinkedIn profiles show that some Inteliquent employees are in Illinois. (¶¶ 208, 149, 150.) Where these employees work is irrelevant to any claim, and this Court already knew that Inteliquent had employees in its headquarters.

These allegations do not come close to showing that the circumstances related to the disputed transaction occurred *primarily* and *substantially* in Illinois. They also do not fix the ICFA claim's glaring deficiency, as the plaintiffs still "concede that neither they nor the customers who heard false ringing reside" in Illinois. (ECF 91 at 23.)

The ICFA claim likewise fails for reasons the Court did not need to reach. If a "complaint … raises regulatory issues preempted by Congress, then the claims … fail as a matter of law [if] they are couched in terms of … state law actions." *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 986 (7th Cir. 2000). The complaint again alleges conduct covered by the Communications Act and FCC regulations on service quality, which also underlies the ICFA claim. It is therefore preempted.[9]

## Conclusion

The amended complaint fails as a matter of law and Counts II – V and VII should again be dismissed against Inteliquent.

---

[9] The ICFA claim is also too nebulous, merely alleging that undifferentiated "'[d]efendants' engaged in deceptive acts about some unsubstantiated scheme." (ECF 48 at 21 (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 738 (7th Cir. 2014)).

Dated: January 12, 2021                          Respectfully submitted,


                                                 By: _/s/ John J. Hamill_____
                                                 John J. Hamill
                                                 john.hamill@dlapiper.com
                                                 Michael S. Pullos
                                                 michael.pullos@us.dlapiper.com
                                                 Devin J. Carpenter
                                                 devin.carpenter@us.dlapiper.com
                                                 DLA PIPER LLP (US)
                                                 444 West Lake Street, Suite 900
                                                 Chicago, Illinois 60606
                                                 Tel: 312.368.7036/2176
                                                 Fax: 312.251.5809/312.630.6350
                                                 *Attorneys for Inteliquent, Inc*

### CERTIFICATE OF SERVICE

The undersigned attorney, on oath, certifies that on January 12, 2021, he served the foregoing **Memorandum in Support of Inteliquent Inc.'s Motion to Dismiss Second Amended Class Action Complaint** via the ECF system to all parties that have consented to same in accordance with applicable Federal Rules of Civil Procedure and Local Rules of the U.S. District Court for the Northern District of Illinois.


By: _/s/ John J. Hamill_____
John J. Hamill