**IN THE UNITED STATES DISTRICT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CRAIGVILLE TELEPHONE CO. d/b/a | ) | |
| ADAMSWELLS; and CONSOLIDATED | ) | |
| TELEPHONE COMPANY d/b/a CTC | ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:19-cv-07190 |
| | ) | |
| vs. | ) | Judge John Z. Lee |
| | ) | |
| T-MOBILE USA, INC.; and | ) | |
| INTELIQUENT, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**T-MOBILE USA, INC.'S PARTIAL MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendant, T-Mobile USA, Inc. ("TMUS"), by and through its attorneys, respectfully submits this Partial Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 94 ("SAC")) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Plaintiffs' SAC is nothing more than a meritless motion for reconsideration of this Court's November 16, 2020 decision (ECF No. 91, the "Decision") dismissing in large part Plaintiffs' First Amended Complaint. Although TMUS denies liability on all claims, this motion seeks the dismissal, with prejudice, of only the reasserted claims that the Court previously dismissed in its Decision.

In the Decision, the Court rejected Plaintiffs' theory that they suffered injury in the form of "lost access charges" due to TMUS's use of local ring back tones ("LRBT" (or what Plaintiffs call "fake ring tones")) generated on calls that took longer than a certain amount of time to connect. As the Court explained:

[C]ommon sense dictates that a caller who encountered ringing would have

> stay[ed] on the line longer than one who met with dead air. As a result, fake ring tones *improve*, not worsen, the odds that calls connect, increasing rather than reducing Plaintiffs' opportunity to earn access charges. Indeed, consistent with that logic, the complaint is bereft of any "factual content" showing that Plaintiffs have lost access[] charges as a result of the alleged false ringing.

Decision at 9 (emphasis in original) (internal citations omitted).

Plaintiffs' SAC ignores this Court's rationale for dismissing Plaintiffs' "lost access charges" theory of injury, and merely repeats the claim without adding anything material. Indeed, as before, the SAC does not identify a single instance when Plaintiffs allegedly lost an access charge as a result of LRBT. Plaintiffs instead mischaracterize FCC documents that they previously raised (both in the First Amended Complaint as well as in Plaintiffs' opposition to the Defendants' previously filed motions to dismiss), in an ill-considered attempt to persuade the Court that its conclusion quoted above was wrong. The FCC documents do not contradict or undermine the reasoning in this Court's Decision. The FCC did not find callers were likely to hang up sooner if they heard LRBT than if they heard dead air. Similarly, Plaintiffs' reliance on an FCC document for the assertion that intermediate providers who insert LRBT are unable to "hand back" a call is meaningless. Among other things, the SAC does not allege a single instance of either Defendant inserting LRBT while acting as an intermediate provider, much less for a call that failed to connect to one of Plaintiff's networks as a result. In fact, the Consent Decree that forms the centerpiece of the SAC talks only about TMUS using LRBT as an *originating* carrier.

In sum, the SAC's renewed claim for access charges is no more plausible than it was in Plaintiffs' prior complaint, and the Court should again dismiss that claim.

Plaintiffs' RICO and RICO conspiracy claims in the SAC (Counts IV-V) fail for the same reasons identified in the Decision – namely, because Plaintiffs do not plausibly allege that TMUS intended to defraud anyone of money or property. *See id.* at 20. As before, Plaintiffs'

conclusory allegations that TMUS inserted LRBT into calls for the purpose of defrauding them out of access charges are implausible in the face of other allegations in the SAC supporting the reasonable inference that TMUS inserted LRBT "either to 'influence' callers to stay on the line, *not* 'to hang up' prematurely . . . or else simply to improve their subscribers' user experience while their calls sought connection." *Id.* (emphasis in original).

Plaintiffs' tortious interference claim (Count VI) must also be dismissed, because, as this Court held in its Decision, Plaintiffs' allegations show that TMUS did not "desire to harm" Plaintiffs, but rather acted with a "desire to minimize its costs." *Id.* at 21-22. The allegations on which the Court based its Decision remain completely unchanged in the SAC, and Plaintiffs do not add any new allegations providing a plausible basis to conclude otherwise.

Finally, Plaintiffs' ICFA claim (Count VII) should be dismissed because Plaintiffs still do not allege a meaningful connection between the purported conduct at issue and the state of Illinois. In its prior complaint, Plaintiffs alleged that Defendant Inteliquent, Inc. ("Inteliquent") "has its headquarters in Illinois." The Court found that was insufficient. Decision at 23. Plaintiffs' new allegations in the SAC – such as the contention that Defendant Inteliquent may have taken actions "in, or at the direction of employees located in, its Chicago, Illinois headquarters," SAC ¶ 471 – does not add anything, as these are merely things associated with having a headquarters in Illinois (which the Court already found to be an insufficient basis for an ICFA claim). Decision at 23. Critically, the SAC still does not allege that any customer heard LRBT in Illinois, a failing noted by the Court in its Decision. *Id.* Plaintiffs' ICFA claim also fails for the additional reason that the SAC does not plead any nexus to consumer injury.

For these reasons, and as set forth more fully in TMUS's accompanying memorandum of law, TMUS's motion to dismiss the SAC to the same extent the Court dismissed Plaintiffs' prior

iteration of the same claims in its Decision should be granted and those claims should be dismissed with prejudice.

Dated:  January 12, 2021                                   Respectfully submitted,

*/s/ Nigel F. Telman*
Nigel F. Telman
PROSKAUER ROSE LLP
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602
(312) 962-3550
(312) 962-3551 (fax)
ntelman@proskauer.com

Bradley I. Ruskin (admitted *pro hac vice*)
Michael T. Mervis (admitted *pro hac vice*)
Baldassare Vinti (admitted *pro hac vice*)
PROSKAUER ROSE LLP
11 Times Square
New York, New York 10036
(212) 969-3249
(212) 969-2900
bruskin@proskauer.com
mmervis@proskauer.com
bvinti@proskauer.com

## CERTIFICATE OF SERVICE

I, Nigel F. Telman, one of the attorneys for Defendant T-Mobile USA, Inc., certify that I caused a copy of the attached PARTIAL MOTION TO DISMISS to be served by email via the Court's ECF System, upon counsel for Plaintiffs:

David T.B. Audley
Mia D. D'Andrea
Chapman and Cutler LLP
111 West Monroe Street
Chicago, IL 60603-4080
Email: audley@chapman.com
Email: dandrea@chapman.com

Cathy A. Hinger
G. David Carter
Womble Bond Dickinson (US) LLP
1200 19th Street, NW, Suite 500
Washington, DC 20036
Email: cathy.hinger@wbd.us.com
Email: david.carter@wbd.us.com

Kurt Weaver
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27061
Email: kurt.weaver@wbd-us.com

this 12th day of January, 2021.

*/s/ Nigel F. Telman*