# IN THE UNITED STATES DISTRICT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CRAIGVILLE TELEPHONE CO. d/b/a ADAMSWELLS; and CONSOLIDATED TELEPHONE COMPANY d/b/a CTC </br></br> Plaintiff, </br></br> vs. </br></br> T-MOBILE USA, INC.; and INTELIQUENT, INC. </br></br> Defendants. | No. 1:19-cv-07190 </br></br> Judge John Z. Lee |

## REPLY IN SUPPORT OF INTELIQUENT INC.'S
## MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

John J. Hamill
john.hamill@dlapiper.com
Michael S. Pullos
michael.pullos@us.dlapiper.com
Devin Carpenter
devin.carpenter@us.dlapiper.com
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Tel: 312.368.7036/2176
Fax: 312.251.5809/312.630.6350

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    The Complaint Is An Improper Motion for Reconsideration. ...........................................2

    II.   Counts IV and V Still Fail to State RICO Claims .............................................................3

        A.  The amended complaint yet again fails to plead any access charge injury and thus fails to plead any predicate act ............................................4

        B.  Even putting aside injury, the plaintiffs have not pleaded any predicate acts..............6

        C.  The amended complaint does not plead that Inteliquent operated or managed a RICO enterprise. ..................................................................................7

        D.  The amended complaint does not plead a RICO conspiracy ......................................9

    III.  Counts II and III Fail to State a Communications Act Claim ............................................9

    IV.  Count VII Fails to State an ICFA Claim. ..........................................................................12

CONCLUSION................................................................................................................................14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ..................................................................................................................6

*Beller v. Health & Hosp. Corp. of Marion Cnty., Ind.*,
 703 F.3d 388 (7th Cir. 2012) ...................................................................................................10

*Bobb v. Swartz-Retson P.C.*,
 2018 WL 4384292 (N.D. Ill. Sept. 14, 2018) ............................................................................3

*Crichton v. Golden Rule Ins. Co.*,
 576 F.3d 392 (7th Cir. 2009) .....................................................................................................9

*Glen Flora Dental Ctr. v. First Eagle Bank*,
 2018 WL 4300478 (N.D. Ill. Sept. 10, 2018) ............................................................................6

*IFC Credit Corp. v. Aliano Bros. Gen. Contractors*,
 2007 WL 164603 (N.D. Ill. Jan. 12, 2007) ..............................................................................13

*Illinois Transp. Trade Ass'n v. City of Chicago*,
 2016 WL 1623206 (N.D. Ill. Apr. 25, 2016) .............................................................................3

*Miranda v. Ponce Fed. Bank*,
 948 F.2d 41 (1st Cir. 1991) .......................................................................................................3

*United Food and Com. Workers Unions and Emp 'rs Midwest Health Benefits Fund*,
 719 F.3d 849 (7th Cir. 2013) .....................................................................................................9

*United States ex rel. Gray v. UnitedHealthcare Ins. Co.*,
 2018 WL 11196387 (N.D. Ill. Oct. 29, 2018) ...........................................................................3

**Statutes**

28 U.S.C. § 2342 ............................................................................................................................5

**Regulations**

47 C.F.R. § 64.2101 .....................................................................................................................10

Inteliquent, Inc., submits this reply in support of its Rule 12(b)(1) and (6) motion to dismiss the Second Amended Class Action Complaint ("amended complaint"). (ECF 94.)[1]

## Preliminary Statement

The plaintiffs' response confirms that the amended complaint is nothing more than a motion for reconsideration dressed up as an amended complaint. Their attempts to suggest that they have added the facts to substantiate a claim and to explain away the numerous deficiencies are all without merit. The amended complaint has no new material *factual* allegations. It points to no new *factual* allegations related to the named plaintiffs. It points to no new *factual* allegations to substantiate its rehashed allegation that Inteliquent is a "covered provider"—nor could it for the relevant calls. It points to no new *factual* allegations to support any access-charge injury, and it again hinges on the theory that made this Court find any such injury entirely implausible. It points to no new *factual* allegations to establish the requisite link to Illinois.

The response largely fails to respond to Inteliquent's motion to dismiss or to distinguish the cases cited. Like the amended complaint, the response merely (i) repeats arguments that this Court already rejected; (ii) writes more words about FCC materials this Court already considered; and (iii) regurgitates conclusory allegations that should be disregarded. Even more, the response concedes that all of that is what it is doing. It states, for example, that it "appears that [this] Court simply declined to take into consideration the FCC's findings … without more express allegations concerning those findings being set forth[.]" (ECF 108 at 7.) That is no answer to curing their fundamentally unsound and implausible theory of injury. Nor does their attempt to rewrite years of FCC decisions save their claims. In effect, the plaintiffs are reduced to contending that the

---

[1] Inteliquent joins T-Mobile USA, Inc.'s separate reply memorandum in support of its motion to dismiss and sets forth here only arguments that are non-duplicative of T-Mobile's submission.

Court did not read what they already argued and cited, and that they should be permitted to say the same things all over again, just with more words this time. Despite their rhetoric, the plaintiffs cannot escape that there is no FCC decision (not anywhere or in any way) that supports any notion that Inteliquent did anything wrong. The amended complaint should again be dismissed for each point discussed below and in Inteliquent's and T-Mobile's memoranda.

## Argument

I. **The Complaint Is An Improper Motion for Reconsideration.**

This Court made clear that one fatal deficiency among many with the previous complaint was its lack of well-pleaded *facts*. This Court ruled, for example, that the complaint was "bereft of any 'factual content' showing that [p]laintiffs have lost access[ ] charges[.]" (ECF 91 at 9.) The complaint likewise "contain[ed] little support for" the theory "that fake ring tones caused consumers to end calls prematurely[.]" (*Id.*) It was "devoid of facts" showing any injury other than depletion of customer service resources. (*Id.* at 10 n.5.) The Court also held that the "complaint [did] not disclose enough factual details [about the complaint's vague references to 'call blocking practices'] … to make a plausible showing that they occurred." (*Id.* at 20 n.7.)

Instead of adding facts, the "new" allegations are wordy legal conclusions, expanded content from previously relied upon FCC materials, and rehashed arguments. Inteliquent's opening memorandum thus cited cases from this District showing that this Court may and should treat the amended complaint as an improper motion for reconsideration. (ECF 98 at 6-7.)

The plaintiffs' response essentially concedes that they cannot distinguish those cases. They admit that in *Illinois Transportation Trade Association v. City of Chicago*, 2016 WL 1623206, at *1 (N.D. Ill. Apr. 25, 2016), *aff'd in part, rev'd in part on unrelated grounds*, 839 F.3d 594 (7th Cir. 2016), the court "treated the defendants' motion to dismiss…as a motion to reconsider because

2

it 'rehashe[d] the same arguments' the court rejected twice before[.]" (ECF 106 at 6.) This amended complaint is no different. Their attempt to distinguish *United States ex rel. Gray v. UnitedHealthcare Insurance Co.*, 2018 WL 11196387 (N.D. Ill. Oct. 29, 2018), similarly fails. (ECF 106 at 6-7.) The court there went even further and "denied leave to amend where … most of the factual allegations that the party sought to add were not 'materially different' from the allegations that the court had previously found to be insufficient." (*Id.* at 6.) That court denied amendment when the plaintiff, like here, "merely repeat[ed] his allegations and rehash[ed] his arguments with more detail, relying on the same statutes…the [c]ourt already held [were] insufficient[.]" *UnitedHealthcare*, 2018 WL 11196387, at *1.

The plaintiffs make the unremarkable argument that a court can rule differently on a motion to dismiss an amended complaint compared to an earlier one. (ECF 105 at 10; ECF 106 at 5.) Sure, but there is nothing new here—let alone particularized factual allegations. This Court should thus evaluate the amended complaint under the motion for reconsideration standard. The plaintiffs were granted leave to plead additional *facts*. They did not do so.

## II. Counts IV and V Still Fail to State RICO Claims.

RICO is not a catch-all claim. *Bobb v. Swartz-Retson P.C.*, 2018 WL 4384292, at *6 (N.D. Ill. Sept. 14, 2018) (Lee, J.). The elements must be adequately pleaded because "[c]ivil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991).

### A. The amended complaint yet again fails to plead any access charge injury and thus fails to plead any predicate act.

The amended complaint (like the prior complaint) does not plausibly show that the alleged LRBT scheme was "devised *for the purpose* of defrauding anyone of money or property." (ECF 98 at 7 (quoting ECF 91 at 20 (emphasis original).) It does not matter that the amended complaint

3

(again, like the prior one) conclusively "asserts that T-Mobile's fake ring tone scheme 'had the illegitimate purpose of fraudulently reducing'…access charges[.]" (ECF 91 at 20 (quoting Compl. ¶¶ 365-67, 371-75); *see also* ECF 94 ¶¶ 416-18, 422-26.) The plaintiffs' "loss-of-access-charges" theory has not changed—not at all. (ECF 98 at 7-8.)

The plaintiffs concede that their theory remains that there was a use of LRBT "to mask call failures[.]" (ECF 106 at 1.) They are thus fully embracing the same theory that this Court found so implausible as to warrant dismissal. As the Court ruled, the only plausible reason to use a fake ring tone to mask difficulties in connection would be to keep the caller on the line. The amended complaint does nothing to make that theory more plausible. The plaintiffs argue that the amended complaint "added new allegations *highlighting* the FCC's factual findings that fake ring tones cause calls not to complete." (ECF 106 at 8.)[2] Those are not "new" factual allegations. They are citations to the FCC materials that were already before this Court when it found this same theory implausible. (ECF 66 at 7.) And the FCC certainly did not make any factual finding about lost access charges.

The plaintiffs also claim that they have new, more particularized allegations that LRBT can sometimes prevent providers from handing back calls. This argument—based on snippets of FCC materials, bereft of context—was briefed and the amended complaint offers neither particularized nor new allegations. (ECF 98; ECF 65 at 8-9, 8 n.4.)) Regardless, even taking the plaintiffs' characterization of those FCC materials at face value, the amended complaint does not allege that Inteliquent inserted LRBT into any call. Yet the Plaintiffs allege that an intermediate provider inserting LRBT is what makes a call unable to be handed back. The amended complaint thus confirms that it does not allege the circumstances that would be required for the plaintiffs'

---

[2] All emphasis is added unless otherwise stated.

4

"can't-hand-back-calls" theory to make any sense.

The plaintiffs' repeated effort to invoke administrative law principles to obtain deference to (inapplicable) FCC findings is equally unavailing. (ECF 106 at 8.) Neither the Hobbs Act nor *Chevron* deference transforms the plaintiffs' "lost access charge" theory into a plausible one (or, better said, revives it from the proper dismissal it already suffered). No party here is challenging the FCC's rule against LRBT, so the Hobbs Act is inapplicable. *See* 28 U.S.C. § 2342. Inteliquent is challenging the plaintiffs' fatally implausible theory of injury specific to this case. Whether the plaintiffs have plausibly alleged an injury here likewise has nothing to do with an interpretation of an ambiguous statute, which means *Chevron* is likewise irrelevant. The plaintiffs do not even try to distinguish the cases cited in Inteliquent's opening brief showing why their argument is incorrect. (*See, e.g.*, ECF 98 at 8-9.)

The plaintiffs also misconstrue Inteliquent's argument (and this Court's holding) on the implausibility of their injury allegations. They contend that "Inteliquent is merely arguing that it thinks proof of the [amended complaint's] allegations will be difficult[.]" (ECF 106 at 8.) That was not Inteliquent's position (and not what this Court held). Inteliquent did not argue that proof of an *assumed* injury will be *difficult*. The point is that the allegations necessary to *establish* the *required showing* of injury were so implausible as to not state a claim under settled precedent. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This Court agreed.[3] Nothing has changed.

**B. Even putting aside injury, the plaintiffs have not pleaded any predicate acts.**

The amended complaint again fails to properly plead any predicate act against Inteliquent.

---

[3] The Court held that only one theory of injury (depletion of customer service resources, which did not establish fraudulent intent) "introduce[d] sufficient factual allegations to 'nudge' [the plaintiffs']..theory…'across the line from conceivable to plausible[.]'" (ECF 91 at 10 (quoting *Twombly*, 550 U.S. at 570).)

5

(ECF 98 at 9-10; *see also* ECF 48 at 12-13.) The plaintiffs' arguments in response are meritless.

First, the plaintiffs argue that it is not required to plead any predicate acts against Inteliquent itself. (ECF 106 at 9.) To the contrary, "civil RICO liability for a substantive violation only covers individuals who have *personally committed* at least two predicate racketeering acts." *Glen Flora Dental Ctr. v. First Eagle Bank*, 2018 WL 4300478, at *4 (N.D. Ill. Sept. 10, 2018) (emphasis in original); (ECF 48 at 12-13; ECF 67 at 13.)

Second, the plaintiffs argue that they have alleged that Inteliquent used interstate wires in furtherance of the fake ring tone scheme through its "preparation and communication of T-Mobile's Form 480 reports submitted to the FCC[.]" (ECF 106 at 12.)[4] This allegation is (like the others) not new—and it was previously briefed. (ECF 48 at 13; ECF 67 at 13-14; *compare* Compl. ¶ 372(e), *with* ¶ 423 (e).) The plaintiffs' argument falls apart because the amended complaint does not properly allege that Inteliquent had *any* role with supposed misrepresentations in these reports. The amended complaint also contradicts its allegation that Inteliquent "prepared" these forms as it states that "T-Mobile admitted that '*algorithms* used to compute call attempts by T-Mobile customers for purposes of generating its quarterly Form 480 reports contained errors[.]" (ECF 94 ¶ 297.) Inteliquent is a company. It is not an "algorithm." The contract provisions the plaintiffs cite likewise say nothing about Form 480 reports. (¶¶ 246-47.) Even assuming Inteliquent did take part in preparing the Form 480 reports, the plaintiffs' argument circularly assumes the unsupported allegation that the Form 480s fraudulently omitted information. Plus, in the end, the amended complaint again never alleges that Inteliquent actually inserted LRBT.

Third, the plaintiffs contend that Inteliquent's supposed "unlawful routing practices that

---

[4] For now, Inteliquent understands that it must accept the allegations in the amended complaint as true. But it is utterly false that Inteliquent prepared the referenced Form 480 reports.

6

blocked or degraded calls" are another predicate act. (ECF 106 at 9.) This is yet another previously rejected and now rehashed argument. The amended complaint adds nothing to change this Court's determination that these "vague references to 'call blocking practices'" do "not disclose enough factual details for the Court to assess whether those practices count as predicate acts under RICO[.]" (ECF 91 at n.7.) There is still not one call blocking practice alleged against Inteliquent.

### C. The amended complaint does not plead that Inteliquent operated or managed a RICO enterprise.

Contrary to the plaintiffs' suggestion (ECF 106 at 9-10), the Court did not need to reach this argument previously to dismiss the RICO claims (and therefore the Court did not reach it). The plaintiffs' recycled response fails to show that the amended complaint properly pleads Inteliquent's operation or control of a RICO enterprise. The plaintiffs merely suggest that "Inteliquent's participation in the enterprise was its administration of the call routing practices[.]" (*Compare* ECF 106 at 10, *with* ECF 65 at 10.) That generic allegation is insufficient.

The amended complaint adds nothing to change this Court's determination that these "vague references to 'call blocking practices'" do "not disclose enough factual details" to "make a plausible showing that they occurred." (ECF 91 at n.7.) The plaintiffs assert that these call practices were those "underlying T-Mobile's admission in the Consent Decree that it failed to correct problems with its intermediate providers' delivery of calls to consumers in certain rural areas." (ECF 106 at 10.) But the Consent Decree nowhere identifies Inteliquent, and it certainly never says anything about wrongful conduct by Inteliquent or any supposed RICO enterprise. The Consent Decree (to the extent it is referring to Inteliquent as an intermediate provider), actually goes in the opposite direction from what the plaintiffs argue. The Consent Decree is explicit that any problems to which an intermediate carrier was alerted were *solved*. (Consent Decree ¶ 8.) In other words, if the references in the Consent Decree are to Inteliquent (as the plaintiffs suggest),

7

then Inteliquent is completely *exonerated* by the plaintiffs' efforts to use the Consent Decree here. Plus, as already thoroughly demonstrated to the Court, the only obligation that would have existed on an intermediate provider would have been to work with the main carrier to solve problems. (ECF 98 at 11-14.)

The remaining allegations likewise fail to allege any plausibly actionable conduct by Inteliquent beyond the ordinary provision of services. The plaintiffs again drop a footnote to state what they contend satisfies operation or control. (*Compare* ECF 106 at 10 n.3, *with* ECF 65 at 11 n.6.) But that list just shows how weak their claims are. The list includes Inteliquent's constitutionally protected lobbying, lawful participation in litigation, and participation on calls as part of its business relationship with T-Mobile. (*Id.*) Everything else is a mere conclusion without factual allegations (*e.g.*, "failing to correct the grossly disproportional number of calls it failed to connect to high-cost rural areas"). (ECF 106 at 10 n.3.) When "the activities … are entirely consistent with [defendants] each going about its own business" they do not conduct the affairs of the enterprise. *United Food and Com. Workers Unions and Emp'rs Midwest Health Benefits Fund*, 719 F.3d 849, 854-55 (7th Cir. 2013); *accord Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009).

The plaintiffs do not even try to distinguish those and other cases Inteliquent cited on this point. The Seventh Circuit consistently rejects efforts like the plaintiffs' attempt to transform Inteliquent's legitimate business operations and commercial relationship with T-Mobile into the operation or management of a RICO enterprise. "Allegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant performed services for that enterprise do not suffice." *Crichton*, 576 F.3d at 399; *see also* ECF 48 at 11-12.

### D. The amended complaint does not plead a RICO conspiracy.

This Court should also dismiss the RICO conspiracy claims because they cannot stand without the underlying RICO claim and because the plaintiffs have failed to plausibly allege a conscious agreement. (ECF 98 at 11.) Nothing in the plaintiffs' response establishes otherwise.

## III. Counts II and III Fail to State a Communications Act Claim.

The amended complaint still does not plausibly allege that Inteliquent violated any actionable duty, nor does it adequately plead any unjust, unreasonable, or discriminatory act by Inteliquent. (ECF 98 at 11-12; *see also* ECF 48 at 8-10.)[5] The plaintiffs respond by arguing again that this Court misinterpreted FCC Orders and that amendments to the complaint address the deficiencies. (ECF 106 at 11-14.) They say (i) that the 2012 Ruling provides duties that applied to Inteliquent as a carrier, and (ii) that Inteliquent is both an intermediate provider and covered provider. But this repeated attempt to rewrite FCC decisions fails again. Everything they claim are "amendments" have either already been addressed and rejected by this Court or are logically inconsistent based on the amended complaint's own allegations. Nothing they say alters this Court's correct ruling that intermediate providers like Inteliquent did not have a duty to fix call completion problems.

The plaintiffs' contention that Inteliquent is a "carrier" subject to the relevant duties in the 2012 Ruling is not new. (ECF 106 at 11-12.) This Court already rejected this same argument while considering the same FCC materials. (ECF 91 at 26.) The Court directly acknowledged that the plaintiffs "point[ed] to the 2012 Ruling and its applicability to 'carriers,' a category that might

---

[5] Even if Inteliquent had such a duty (it did not), there are no allegations plausibly showing that Inteliquent violated that duty. (ECF 98 at 13-14.) And as noted, the Consent Decree makes explicitly clear that intermediate provider(s) *solved* any problems, which again would eliminate any liability under the plaintiffs' theories.

9

be construed as covering Inteliquent." (*Id.* (citing 27 FCC Rcd. at 1355-56).) It then held that the 2018 Order clarifies that the 2012 Ruling only "appl[ies] to covered providers." (*Id.* (citing 33 FCC Rcd. at 4211 and *Beller v. Health & Hosp. Corp. of Marion Cnty., Ind.*, 703 F.3d 388, 391 (7th Cir. 2012)). The plaintiffs call this Court's ruling that the 2018 Report "'clarified' that the [2012 Ruling] applies only to covered providers" an "erroneous premise[.]" (ECF 106 at 11.)

But it is the plaintiffs that continue to base their deficient claim on an erroneous premise. Any amendments, including that Inteliquent is a "carrier" do not change the correct ruling that Inteliquent "is an 'intermediate provider' when it comes to T-Mobile's calls[.]" (ECF 91 at 26.) An "intermediate provider '[d]oes not…serve as a covered provider in the context of originating or terminating a given call'[.]" (*Id.* at 26-27 (quoting 47 C.F.R. § 64.2101).) This Court thus correctly concluded that "Inteliquent does not fall within the scope of the requirements set out in the 2012 Ruling." (*Id.* at 27.) The amended complaint does nothing to change that conclusion. It still has not (because it cannot) "identif[y] any other rule or regulation that requires intermediate providers to correct connection problems of the type at issue here." (*Id.*)

The plaintiffs' argument that "Inteliquent can be both an intermediate provider and a covered provider" is also without merit. (ECF 106 at 12.) For the calls in the case the plaintiffs are seeking to pursue in their amended complaint, it is axiomatic that Inteliquent cannot be a covered provider and an intermediate provider. (ECF 98 at 13-14.) The response does not even try to respond to Inteliquent's brief that showed the allegations in paragraphs 150-51 that plaintiffs rely on fail to plead that Inteliquent is a "covered provider." (ECF 98 at 13.)

The plaintiffs' arguments that Inteliquent is a "covered provider" for the relevant calls all fail. First, they argue that if the "originating provider hands *all* of its traffic off to an IXC, the IXC qualifies as the covered provider[.]" (ECF 106 at 13.) But the amended complaint and response

10

concede that T-Mobile *did not* hand all of its traffic to Inteliquent. (*Id.* at 14 n.4.) Second, they argue that Inteliquent could have been a covered provider if T-Mobile selected Inteliquent "based on the *called* party's number not the calling party's number[.]" (*Id.* at 13 (emphasis original).) There is *no allegation* in the amended complaint—even one alleged on information and belief—that T-Mobile selected Inteliquent on that basis. This Court should not credit the plaintiffs' about-face attempt to pronounce Inteliquent a "covered provider" after they have represented to this Court more than *forty* times that Inteliquent is an intermediate provider for the alleged calls. (ECF 98 at 12.)

Even if Inteliquent is found to have an actionable duty (it did not), there are no allegations plausibly showing that Inteliquent violated that duty. The plaintiffs argue that the amended complaint alleges that Inteliquent "provid[ed] degraded service to certain areas, fail[ed] to correct call completion problems, and adopt[ed] or perpetuat[ed] routing practices that resulted in lower quality service to rural or high cost localities." (ECF 106 at 11.) But, again, the amended complaint adds nothing to change this Court's determination that the "vague references to 'call blocking practices'" do "not disclose enough factual details" to "make a plausible showing that they occurred." (ECF 91 at n.7.) Yet again, the amended complaint is an insufficient do-over.

## IV. Count VII Fails to State an ICFA Claim.

Nothing in the amended complaint changes this Court's ruling that ICFA did not apply because the allegations came far short of showing that the disputed transaction occurred primarily and substantially in Illinois. (ECF 91 at 22-23.) The amended complaint again "conced[es] that neither [the plaintiffs] nor the customers who heard false ringing reside" in Illinois. *Id.*; *see also* ECF 98 at 14-15. There still is no allegation that anyone in Illinois was deceived, that any injury occurred in Illinois, or that any misrepresentation was made in Illinois. (*Id.*)

11

In response, the plaintiffs argue that the amended complaint "alleges many new facts adding marks in [the plaintiffs'] favor showing more circumstances related to the fake ring tone scheme occurred primarily and substantially in Illinois[.]" (ECF 106 at 14.) But almost every paragraph citation of supposedly "new facts" reflects allegations *already in the previous complaint.* The plaintiffs cite 34 paragraphs of the amended complaint in their ICFA response. 30 out of 34 of those paragraphs are just holdovers from the previous complaint, and the additional four do nothing material. This list includes every paragraph cited in the plaintiffs' ICFA response, with paragraphs that are holdovers from the plaintiffs' previous complaint bolded and underlined: **10**, 155, 156, **195, 196, 197, 198, 199, 206**, 209, 212, **220, 221, 222, 223, 224, 225, 226, 232, 233, 239, 240, 241, 297, 298, 330, 331, 333, 349, 358, 359, 360, 361, 423(e)**.

The plaintiffs disingenuously accuse Inteliquent of "ignor[ing] some of the most significant allegations establishing the nexus between the fake ring tone scheme and Illinois[.]" (ECF 106 at 14.) To the contrary, those supposed "significant allegations" were already in the previous complaint and addressed in previous briefing. Inteliquent thus focused on the few and miniscule new allegations in the amended complaint. (ECF 98 at 14-15.) It is the plaintiffs that ignore this Court's ruling, not Inteliquent. For example, the plaintiffs again argue that Inteliquent picked up and initiated delivery of T-Mobile's traffic through switches in Illinois and routing decisions were made by Inteliquent in Illinois. But the Court already found that ICFA does not apply even where supposed misrepresentations "emanated from servers located in Illinois." (ECF 91 at 22-23.)

In any event, the "new" allegations cited in the response do nothing to fix the deficiencies. Two of the paragraphs (155 and 156) say nothing about Illinois at all. The final two paragraphs (209 and 212) merely say that T-Mobile sent ordinary course reports to Inteliquent in Illinois and that Inteliquent maintains data in Illinois. Those two allegations do not come close to establishing

12

that this case concerns actions that *primarily and substantially* occurred in Illinois.[6]

The plaintiffs again cite *Morrison*, but that case refutes their position and supports Inteliquent. As this Court has already held, "[a]part from alleging that the defendant made its headquarters in Illinois, the *Morrison* complaint also pleaded that: (1) the underlying deals were executed in Illinois, (2) a choice-of-law clause in the governing contract required that the parties litigate in Illinois courts, (3) the *plaintiffs* sent payments to Illinois, and (4) the defendants resolved complaints in Illinois." (ECF 91 at 23 n.9.) "None of those considerations is present here" (*id.*), and the plaintiffs have added nothing to change that.

Another case the plaintiffs cite, *IFC Credit Corp. v. Aliano Bros. Gen. Contractors*, 2007 WL 164603 (N.D. Ill. Jan. 12, 2007), also supports dismissal. It provides that courts use the following factors to determine whether a transaction occurs "primarily and substantially" in Illinois: "(i) plaintiff's residence, (ii) where the deception occurred, (iii) where the damage to plaintiff occurred, and (iv) whether plaintiff communicated with defendants or its agents in Illinois." *Id.* at *3. Unlike in *IFC*, the amended complaint has no allegation involving Illinois for any of these factors.

In response to the preemption argument, the plaintiffs raise no new arguments and rely on their response to the prior motion to dismiss. For the reasons stated in Inteliquent's opening brief and prior briefing, the ICFA claim is preempted by the Communications Act.

## **Conclusion**

For the reasons above, the amended complaint fails as a matter of law and should be dismissed.

---

[6] The plaintiffs also again wrongly claim that Inteliquent prepared T-Mobile's Form 480 reports. *Supra* at 6 n.4.

13

Dated: February 19, 2021  Respectfully submitted,

By: /s/ *John J. Hamill*
John J. Hamill
john.hamill@dlapiper.com
Michael S. Pullos
michael.pullos@us.dlapiper.com
Devin Carpenter
devin.carpenter@us.dlapiper.com
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Tel: 312.368.7036/2176
Fax: 312.251.5809/312.630.6350

*Attorneys for Inteliquent, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney, on oath, certifies that on February 19, 2021, he served the foregoing **Reply in Support of Inteliquent Inc.'s Motion to Dismiss Second Amended Class Action Complaint** via the ECF system to all parties that have consented to same in accordance with applicable Federal Rules of Civil Procedure and Local Rules of the U.S. District Court for the Northern District of Illinois.

By: /s/ *John J. Hamill*
John J. Hamill