**THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CRAIGVILLE TELEPHONE CO. d/b/a ADAMSWELLS; and CONSOLIDATED TELEPHONE COMPANY d/b/a CTC | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:19-cv-07190 |
| vs. | ) ) | Judge John Z. Lee |
| T-MOBILE USA, INC.; and INTELIQUENT, INC. | ) ) ) | |
| Defendants. | ) ) | |

**AMENDED JOINT STATUS REPORT**

Plaintiffs, Craigville Telephone Co. d/b/a AdamsWells ("AdamsWells") and Consolidated

Telephone Company d/b/a CTC ("CTC"), on behalf of themselves and a class of similarly-situated

companies ("Plaintiffs"), and Defendants T-Mobile USA, Inc. ("T-Mobile") and Inteliquent, Inc.

("Inteliquent") ("Defendants"), pursuant to this Court's March 24, 2021 Notification of Docket

Entry, submit their Joint Status Report on the progress of discovery, in addition to what the parties

addressed in the June 7, 2021 Joint Status Report (ECF 125).[1]

**I.      Current Deadlines.**

Pursuant to the Court's March 24, 2021 Order (ECF 115) the current schedule is as follows:

| Date | Event |
|---|---|
| 8/1/21 | Deadline for Amendments |
| 9/10/21 | Joint Status Report Due |
| 12/15/21 | Fact Discovery Closes (not bifurcated) |

---

[1] Prior to the referral to Judge Gilbert for discovery supervision, Judge Lee, during the hearing following the parties' filing of an Initial Joint Status Report, instructed the parties to file Joint Status Reports to resolve discovery disputes, rather than motions.  (*See* Ex. 1, 3/24/21 Tr. at 16:17 – 17:10.)  Plaintiffs seek further instruction from Judge Gilbert on his preferences for Joint Status Reports versus Motions to seek resolution of discovery disputes.

II.     **Status of Discovery.**

        a.  **Plaintiffs' Statement.**

The following discovery has been served or exchanged:

| DATE | DESCRIPTION |
|------|-------------|
| 3/19/21 | Plaintiffs served First Requests for Production on T-Mobile and Inteliquent |
| 3/23/21 | All Parties served Initial Disclosures |
| 3/26/21 | T-Mobile served First Requests for Production on Plaintiffs CTC and AdamsWells |
| 4/19/21 | Inteliquent served First Requests for Production on Plaintiffs CTC and AdamsWells |
| 4/19/21 | T-Mobile and Inteliquent served Responses and Objections to Plaintiffs' First Requests for Production |
| 4/23/21 | Inteliquent served Amended Initial Disclosures |
| 4/23/21 | T-Mobile served Amended Initial Disclosures |
| 4/26/21 | Plaintiffs CTC and AdamsWells served Objections Responses to T-Mobile's First Request for Production with a production of 150 non-confidential documents |
| 5/19/21 | Plaintiffs CTC and AdamsWells served Responses and Objections to Inteliquent's First Request for Production |
| 5/27/21 | T-Mobile served Interrogatories on Plaintiffs CTC and AdamsWells |
| 6/7/21 | Plaintiffs' Subpoena to third party Wilkinson Barker Knauer LLP (T-Mobile counsel in the FCC Investigation) |
| 6/16/21 | Plaintiffs' Subpoena to third party Ribbon Communications (provider of server to Inteliquent capable of inserting LRBTs) |
| 6/22/21 | Plaintiffs' Subpoena to Fritz Hendricks (former CEO of Inteliquent) |
| 6/22/21 | Plaintiffs' Subpoena to Matthew Carter (former CEO of Inteliquent) |
| 6/22/21 | Wilkinson Barker Knauer LLP served Objections to Subpoena (without document production) |

To date, Plaintiffs have produced 150 documents and 2,720 pages of material. Plaintiffs have approximately 1,800 more documents ready to produce upon entry of a Confidentiality Order. These include documents concerning Plaintiffs' corporate structures, Plaintiffs' coverage maps, Plaintiffs' originating and terminating traffic totals, and meetings concerning rural call completion problems. The production also includes communications with the FCC regarding rural call completion issues, complaints logged in the FCC complaint portal, and documents concerning Plaintiffs' troubleshooting efforts and use of workaround solutions, such as porting numbers to Inteliquent, which charged them for doing so. Additionally, Plaintiffs have harvested and are in the process of reviewing over 100,000 other documents collected from the files of custodians that counsel has identified as containing potentially responsive information. Therefore, Plaintiffs are actively preparing to make rolling document productions to move this case forward.

Plaintiffs are unaware of Defendants' efforts to harvest potentially responsive documents and commence their review process. Defendants have not produced any documents, which appears due to the dispute over Defendants' scope of discovery objections and the other matters detailed in the June 7 Joint Status Report. In addition, Plaintiffs advised Judge Lee during the March 24, 2021 hearing that they intend to take records custodian depositions to facilitate discovery requests for complex technical information concerning, for example, Defendants' call detail records, documentation of their routing practices, documents related to the technology that inserted the fake ring tones, and other technical telecommunications records. Defendants' blanket position that discovery on these topics is outside the scope of permissible discovery is undermining Plaintiffs' effort to proceed with records custodian depositions that will be productive.

Plaintiffs request a discovery hearing at the Court's earliest convenience to resolve these disputes and the current stalemate that is preventing Plaintiffs from obtaining any discovery on their claims.

### b. Defendants' Statement.

Since the Court's June 11, 2021 Order (ECF 126) referred this matter to Judge Gilbert for general discovery supervision and set September 10, 2021 as a new deadline for a joint status report, Defendants do not believe a joint status report is required at this time.

Nonetheless, because Plaintiffs insist on filing a status report, Defendants respond that Plaintiffs' statement above reargues discovery disputes that are set forth in the parties' June 7, 2021 joint report. ECF 125. Plaintiffs continue to ignore the impact of the Court's order that dismissed most of their complaint. The June 7 joint report contains all discovery disputes that are presently ripe for the Court's consideration, and is currently being considered by Judge Gilbert. *See* ECF 128. Plaintiffs' statement above misstates Defendants' discovery positions, which are set forth in ECF 125 at pages 18-35.

Submitted on this 25th day of June 2021.

   /s/ David T.B. Audley
David T.B. Audley (Bar No. 6190602)
Mia D. D'Andrea (Bar No. 6307966)
Chapman and Cutler LLP
111 West Monroe Street
Chicago, IL 60603-4080
Tel. 312-845-2971
Fax: 312-516-3971
Email: audley@chapman.com
Email: dandrea@chapman.com

Cathy A. Hinger (*pro hac vice*)
G. David Carter (*pro hac vice*)
Womble Bond Dickinson (US) LLP

1200 19th Street, NW, Suite 500
Washington, DC 20036
Tel.: 202-857-4489
Fax: 202-261-0029
Email: cathy.hinger@wbd-us.com
Email: david.carter@wbd-us.com

Kurt D. Weaver (*pro hac vice*)
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: 919-755-8163
Facsimile: 919-755-6770
Email: kurt.weaver@wbd-us.com

*Counsel for Plaintiffs*

# EXHIBIT 1

1

```
 1                    IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION

 3   CRAIGVILLE TELEPHONE CO., doing      ) Docket No. 19 C 7190
     business as AdamsWells Internet      )
 4   Internet Telecom TV, AND             )
     CONSOLIDATED TELEPHONE COMPANY,      )
 5   individually and on behalf of a class)
     of similarly situated companies,     )
 6   doing business as CTC,               )
                                          )
 7                        Plaintiffs,     )
                                          )
 8            vs.                         )
                                          )
 9   T-MOBILE USA, INC., AND              )
     INTELIQUENT, INC.,                   ) Chicago, Illinois
10                                        ) March 24, 2021
                          Defendants.     ) 10:00 o'clock a.m.
11
              TRANSCRIPT OF PROCEEDINGS - TELEPHONIC STATUS
12                 BEFORE THE HONORABLE JOHN Z. LEE

13   TELEPHONIC APPEARANCES:

14   For the Plaintiff:        WOMBLE BOND DICKINSON, LLP
                               BY:  MR. G. DAVID CARTER, JR.
15                                  MS. CATHY HINGER
                                    MS. VICTORIA A. BRUNO
16                                  MS. KATHLEEN O. GALLAGHER
                               1200 19th Street, NW, Suite 500
17                             Washington, D.C.  20036

18                             WOMBLE BOND DICKINSON, LLP
                               BY:  MR. KURT D. WEAVER
19                             555 Fayetteville Street, Suite 1100
                               Raleigh, North Carolina  27601
20
                               CHAPMAN & CUTLER
21                             BY:  MS. MIA D. D'ANDREA
                               111 West Monroe Street, Suite 1600
22                             Chicago, Illinois  60603

23   For Deft. T-Mobile:       PROSKAUER ROSE, LLP
                               BY:  MR. BALDASSARE VINTI
24                                  MS. TIFFANY WOO
                               1585 Broadway
25                             New York, New York  10036
```

2

```
 1   APPEARANCES (Cont'd):

 2
     For Deft. Inteliquent:      DLA PIPER, LLP
 3                               BY:  MR. JOHN J. HAMILL, JR.
                                      MR. MICHAEL S. PULLOS
 4                               444 West Lake Street, Suite 900
                                 Chicago, Illinois  60606
 5
     Court Reporter:             MR. JOSEPH RICKHOFF
 6                               Official Court Reporter
                                 219 S. Dearborn St., Suite 2128
 7                               Chicago, Illinois  60604
                                 (312) 435-5562
 8

 9              *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

10                     PROCEEDINGS RECORDED BY
                       MECHANICAL STENOGRAPHY
11               TRANSCRIPT PRODUCED BY COMPUTER

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
1          (Proceedings had via telephone conference:)
2              THE CLERK:  19 C 7190, Craigville Telephone Company
3    vs. T-Mobile USA, Inc., at al.
4              THE COURT:  Who is appearing on behalf of Craigville
5    Telephone Company?
6              MS. HINGER:  Good morning, your Honor, this is Cathy
7    Hinger from Womble Bond Dickinson on behalf of the plaintiffs.
8    Also on the line with me is my co-counsel David Carter,
9    Victoria Bruno, Kurt Weaver, and Mia D'Andrea.  I also have an
10   associate who is not yet admitted pro hac named Katie
11   Gallagher who is on the line.
12             THE COURT:  All right.
13             So, Ms. Hinger, you are representing -- you and your
14   colleagues are representing -- both plaintiffs; is that
15   correct?
16             MS. HINGER:  Correct, your Honor.
17             THE COURT:  Okay.
18             And who is appearing on behalf of T-Mobile?
19             MR. VINTI:  Good morning, your Honor, this is Baldo
20   Vinti of Proskauer Rose, and with me is my colleague Tiffany
21   Woo.
22             THE COURT:  All right.
23             And who is appearing on behalf of Inteliquent?
24             MR. HAMILL:  Good morning, your Honor, this is John
25   Hamill, and with me is my colleague Michael Pullos.
```

4

1              THE COURT:  Good morning, everyone.

2              So, we're here for a status in this case.  And

3    really, I wanted to focus on setting a discovery schedule

4    going forward in this case.  I've reviewed the joint status

5    report that the parties have submitted and the different

6    approaches that plaintiffs and defendants propose, and I

7    wanted to address some of those issues.

8              So, first of all, I'm looking at Page 3 of the joint

9    status report and the parties' respective positions on the

10   discovery schedule.

11             With regard to initial disclosures, I'll go ahead and

12   grant defendants' request for the parties to exchange initial

13   disclosures on March 30th, 2021.

14             With regard to the amendment of pleadings, I'm going

15   to set August 1st, 2021, as a deadline to amend pleadings and

16   join parties.

17             I'm not going to impose deadlines for the last date

18   on which to issue written discovery because the parties are

19   well aware that all written discovery must be completed by the

20   fact discovery deadline, and that encompasses getting any

21   responses to written discovery.

22             As far as close of fact discovery, I'd like to hear

23   from the parties, given the wide disparities in their

24   proposals.

25             And, so, first of all, let me address defendants.

1    And I don't know who is going to address it, whether it's

2    going to be T-Mobile or Inteliquent; but the defendants

3    propose a fact discovery deadline of August 1st, 2022.

4              Is that because that deadline encompasses a -- the

5    parties' briefing on class certification, as well as my ruling

6    on class certification?

7              MR. VINTI:  Your Honor, this is Baldo Vinti for

8    T-Mobile.

9              That's correct, your Honor.  What we were proposing

10   would be to have class -- you know, to have all fact discovery

11   go forward on any ground that's in the case -- right now it's

12   Counts 1 through 3 and Count 8; and, then, in February have

13   class certification briefing; and, then, once that briefing is

14   complete, just to do -- if there's a need for any clean-up,

15   you know, fact discovery, that's why we proposed that.

16             I mean, overall the dates, your Honor, are not far

17   apart because, you know, plaintiffs' proposed class

18   certification in April, which, you know -- which would mean

19   that presumably class discovery would -- briefing would -- end

20   in July of 2022; and what we're saying is let's have class

21   briefing earlier, and then let's end fact discovery in around

22   August of 2022.

23             So, overall it's not that different, your Honor, but

24   we thought that would be more efficient.

25             THE COURT:  I see.

1         And let me hear from the plaintiffs, please, Ms.

2    Hinger.

3         MS. HINGER:  Certainly, your Honor.

4         Just as some context, the schedule that we proposed,

5    we believe, is consistent with some of the other schedules

6    that you've issued in cases involving class actions.  We

7    looked at some of your scheduling orders, for example, in the

8    Elward vs. Electrolux Home Products case and the Lowe vs. CVS

9    Pharmacy case and Alani vs. FC Harris.  And all of those cases

10   -- in all of those cases, the class certification motion was

11   filed and scheduled to be filed after the close of fact

12   discovery, and after the close of expert disclosures and

13   expert discovery.

14        And we think the most efficient thing to do here is

15   to have the fact discovery; then have a period of expert

16   disclosure, both on merits and class; have those depositions

17   on the experts on class and merits; and, then, file the class

18   certification motion.

19        We haven't heard any explanation from the defendants

20   why they would hold -- why we would hold back and disclose

21   class experts simultaneously with the class motion and, then,

22   have to sort of go backwards and engage in discovery over the

23   class experts at the same time that the motion is pending.

24   Because whatever comes out of the class expert discovery or

25   class expert depositions is just going to create, I think,

1   duplicative motions practice.  So, we think that's incredibly

2   inefficient for one -- in one -- for one reason.

3         The second reason is the merits and the class issues

4   are incredibly overlapping here because this is a case where

5   we have a business conspiracy where the majority of the

6   information is in the exclusive possession and control of the

7   defendants.  And it may take us many months to unearth all of

8   that.

9         And I think we pled in our complaint in Inteliquent's

10  other litigation in this court, they waited until literally

11  the end and close of fact discovery for one of their witnesses

12  to come out and reveal that T-Mobile and Inteliquent had a

13  working group that was focused on reducing traffic to

14  high-cost codes.  And that was an incredibly important fact in

15  that case.  And they had to redo depositions.  Inteliquent was

16  ordered to pay for some of those depositions.  A lot of it was

17  sealed, so we don't know what came out of that.

18        But we're very concerned that the same playbook might

19  be used on us.  And we think that this back-end proposal by

20  the defendants to have an extra period of fact discovery after

21  class certification, after class experts just gives them a

22  pocket of time to hold back documents.  And we need to get to

23  the heart of the business conspiracy up front and able to

24  identify a lot of the class issues.

25        For example, whether the class is ascertainable is

1    necessarily going to require us to understand the merits of

2    the scheme.  So, who was impacted?  What are the commonalities

3    in the way that the different rural LECs were impacted?  Where

4    were the hundreds of millions of calls that were impacted by

5    fake ringtones every year directed?  Were they the same OCNs

6    or same rural LEC areas repeatedly or were they all over the

7    country?  Were they constant or were they in patterns?

8              These are all things that cross over between merits

9    and class.  And, so, we want to be efficient for class

10   plaintiffs and for our resources.

11             And for those reasons, that's why we think our

12   schedule is consistent with the way you've handled similar

13   cases in the past.

14             MR. VINTI:  Your Honor, may I respond?

15             THE COURT:  Hold on for a second.

16             I understand your point, Ms. Hinger, that merits and

17   class discovery in this case would have substantial overlap.

18   But take, for example, a damages expert.  Do you think that

19   you'll need -- that a damages expert would also be opining on

20   class certification issues?

21             MS. HINGER:  I don't know that the damages expert

22   will opine on class certification.  They may.  But it seems to

23   us most efficient to just do all of those pieces at the same

24   time, do all of the expert discovery at the same time.

25             The damages experts -- I mean, I think we're going to

1    be seeing issues from the defendants on, you know, the

2    commonality of the claims and things like that.  So, I think

3    our damages model may very well speak to some of the class

4    elements.  So, it's possible.  It's early, again, because --

5    so much of this -- so much of who it impacted, how it impacted

6    them and the commonality of it is in the exclusive control of

7    defendants.

8           I would also suggest that, you know, one way to

9    handle this -- and I think you handled it in the Alani case

10   this way -- is to revisit some of these later scheduling

11   points towards the end of the close of fact discovery.  That

12   may be another way.  Because I think we all want to be

13   efficient, too.

14          THE COURT:  All right.  Let me hear from defendants.

15          MR. VINTI:  Your Honor --

16          MR. HAMILL:  Judge, if I may --

17          Baldo, if I may before you.

18          This is John Hamill speaking.

19          Obviously, if we're going to get into anything that

20   happened in any other cases, we can certainly discuss that.  I

21   think it's wildly irrelevant.

22          But if I may add, if we're going to look for

23   efficiencies, right now, as we understand your ruling on the

24   motion to dismiss, the only actionable harm that's in the case

25   is the supposed depletion of the plaintiffs' customer service

1   resources.  That's information solely within the plaintiffs'

2   possession.  So, if we're going to try to do this case in an

3   efficient way and to avoid a bunch of unnecessary

4   expenditures, maybe we should have an interim proceeding where

5   we just focus on what the plaintiffs can show about their

6   supposed depletion of customer services resources.  Because if

7   they have little to show there, the case goes away.  So, if

8   we're really focused on efficiencies, that's what we ought to

9   -- where we ought to be focusing.

10          But I'll allow my -- please allow my co-counsel,

11  Mr. Baldo, to go ahead and speak.

12          MR. VINTI:  Thank you.

13          So, your Honor, we agree with Inteliquent's counsel,

14  but I just wanted to address this fallacy of this playbook.  I

15  mean, T-Mobile was not a party to any case.  There is no

16  playbook on trying to, you know -- to stage discovery a

17  certain way.

18          You know, again, we're not asking for any bifurcation

19  here.  We're saying fact discovery should go forward and,

20  then, let's do the class certification briefing.  This is very

21  similar, your Honor, to the case that your Honor had, the NCAA

22  Student Athlete case, which your Honor presided over.  That

23  was the same -- the same type of schedule was followed.  And

24  the same thing in the Nelson vs. Pace Suburban Bus case.

25  Those are the cases that we looked at the procedure in that

1    case to go forward with fact discovery; have class

2    certification briefing; and, then, you know, if there's any

3    need for discovery on -- expert discovery on class

4    certification, then that case could -- that could go forward.

5           I mean, we feel very strongly, as does Inteliquent,

6    that this -- putting aside the lack of merits of plaintiffs'

7    claims, but this is not a case where class certification is

8    appropriate.  And, so, we think that the most efficient way is

9    let's have the class certification briefing; we'll tackle all

10   fact discovery; and, then, if we need to get into expert

11   discovery on the merits, we could do that efficiently.

12          THE COURT:  Okay.  Thank you very much.

13          So, with regard to the November 15th, 2021, deadline

14   that the plaintiffs proposed, Ms. Hinger, you still think that

15   plaintiffs would be able to complete their discovery by that

16   date?

17          MS. HINGER:  Your Honor, we've already served our

18   first set of requests for production of documents, and we

19   would hope that we could finish by then.  I think a lot of it

20   is going to depend on the level of motions practice that we

21   receive from the defendants or the amount of objections and

22   the amount of motions to compel.

23          So, I mean, we could be flexible on that date if

24   you're concerned about it being too aggressive, but, you know,

25   we can also seek extensions, I suppose, later on if there are

1    issues of extensive discovery motions practice or trouble that

2    we're having getting the documents produced to us.

3            I mean, you've already just heard that the defendants

4    want to limit discovery.  We think under your order,

5    especially with the conspiracy claim -- and, you know, in our

6    view, the operative complaint right now is the second amended

7    complaint.  Your Honor has not ruled on that yet.  We did make

8    a lot of revisions.

9            But the conspiracy claim necessarily involves as the

10   legal elements whether there was an unlawful purpose or lawful

11   purpose by unlawful means.  And your Honor's prior order found

12   that that -- with respect to Inteliquent, that they are

13   proceeding under that theory because one of the issues is

14   whether the economic rewards from T-Mobile's apparent refusal

15   to fix connection issues was a motivating factor.  And, so, we

16   are -- we do need to get into the motivating -- the economic

17   motivating -- factors for all of this.

18           So, you know, to the extent that Mr. Hamill just

19   suggested that discovery be gutted to damages only, we think

20   that would be completely against Rule 26 and our opportunity

21   to get into the liability discovery; and, you know, any

22   limitation like that should come from a fully briefed motion

23   explaining why.

24           But, like I said, we've got discovery requests that

25   are already out there.  So, you know, you may see objections

1     coming in once those are -- those responses are due.

2            But we would -- the plaintiffs, from our perspective,

3     would like to expeditiously get through discovery and get to

4     the meat of the case.  So, we -- we would be flexible, though,

5     your Honor, if you have any concerns about November 15th.

6            THE COURT:  Do defendants believe that November 15th

7     would provide them with sufficient time to conduct discovery

8     in this case -- fact discovery in this case?

9        (Brief pause.)

10           MR. VINTI:  Sorry for the delay, your Honor.  I have

11    to keep unmuting and muting my line.

12           So, we think, your Honor, that that is a bit tight.

13    In fact, you heard plaintiffs' counsel say, you know, we can

14    always ask for extensions.  What we were trying to do is come

15    up with a schedule that, you know, we don't have to keep

16    coming back, you know, and asking for extensions.  So, you

17    know, we think that is a bit tight.

18           So, if you're not inclined to have any fact discovery

19    after the close of class certification briefing, then we would

20    say, given that Order 110 of your Honor's limited discovery

21    right now to Counts 1 through 3 and 8, we think that at least

22    a few more months after, you know, the proposed November

23    deadline would be sufficient and allow the parties not to keep

24    coming back for extensions.

25           THE COURT:  All right.  So, I'm going to set --

1      MR. HAMILL:  And if I may -- I'm sorry, your Honor.

2  This is John Hamill.

3      But if you're ready to rule, I don't need to add in.

4  But I would certainly have a few more things to say on that.

5      THE COURT:  I think I'm ready, Mr. Hamill.

6      I'm going to set the deadline for fact discovery in

7  this case to be December 15th, 2021.  That should provide the

8  parties with sufficient time to conduct fact discovery in this

9  case.  And the fact discovery will be on both class issues and

10 merits issues.  So, discovery will not be bifurcated.  And I

11 want all of fact discovery done within the fact discovery

12 period.

13     With regard to experts, I see the usefulness, at

14 least preliminarily, of dealing with class certification

15 experts first so that we can get that briefed and ready to

16 roll.  But it's so early that I'm willing to hear arguments on

17 both sides on that.  But we'll address that as fact discovery

18 concludes.

19     I don't think there's much to be gained by putting a

20 schedule in with regard to experts at this point in time.  My

21 experience is that as fact discovery concludes, that whatever

22 schedule we enter now will probably end up needing revision

23 anyway.  So, we'll deal with the expert discovery schedule

24 later on in the case.

25     With regard to the discovery limitations under the

1  rules, with regard to the number of interrogatories, I'm going

2  to permit each party up to 30 interrogatories to any other

3  party.  Each party may serve up to 30 interrogatories to any

4  other party.

5       With regard to depositions, I'm going to limit

6  depositions to 15 depositions per side.  Not per party, but

7  per side.  If more are needed, you can file a motion for leave

8  for additional discovery and explain to me why that's

9  necessary.

10       With regard to Rule 30(b)(6) depositions, it really

11  depends on how many topics there are and how beneficial I

12  think these depositions will be in narrowing the issues in

13  this case.  So, at this point in time, I'm not going to

14  deviate from the seven-hour rule with regard to 30(b)(6)

15  depositions.

16       But, again, 30(b)(6) depositions, obviously, are a

17  very useful tool, particularly in a case like this, to narrow

18  issues.  On the other hand, a party that notices a 30(b)(6) is

19  sometimes overly exuberant in the types of topics that they

20  want a designee to be prepared to testify about.

21       But I understand that if done right, the 30(b)(6)

22  depositions could really help narrow the issues and be

23  efficient with taking deposition testimony.  And, so, I'm not,

24  at this point, ruling out allowing more than seven hours for a

25  30(b)(6) dep; but, at this point in time, without knowing what

1   the issues will be, I'm not inclined to grant the request for

2   14 hours at this point in time.

3           With regard to privilege logs and production issues,

4   I'm fine with discovery production being on a rolling basis,

5   so long as it's on a reasonable pace and sufficiently in

6   advance of depositions, so that the party in depositions will

7   have the fact discovery and documents that it needs.

8           And with regard to the privilege log, I think the

9   privilege log is something that the parties can talk more

10  about once the production starts rolling in.  And, so, with

11  regard to when privilege logs need to be exchanged, I'm not

12  going to set a deadline at this point in time other than to

13  say that the -- I don't want privilege log issues to be a

14  unnecessary impediment to the pace of fact discovery in this

15  case.  And if that's something that the parties need to bring

16  before the Court, that's fine, too.

17          As far as discovery disputes, the way I would like

18  discovery disputes handled is that, obviously, first I want

19  the parties to meet and confer and see if they can narrow the

20  issues.  If there are discovery disputes, I would like the

21  parties to submit jointly -- I don't care what you call it.

22  You can call it a motion.  You can call it a status report

23  regarding discovery disputes.  But I would like if the parties

24  can go ahead and submit one joint filing that sets forth the

25  issues on which the parties disagree; and in that one

1    document, the parties can set forth their respective

2    positions.

3            So, for example, a status report on discovery

4    disputes may list three issues on which the parties disagree.

5    Under Heading 1, you can explain to me generally what that

6    issue is; and then you can set forth plaintiffs' position and

7    defendants' position.

8            And once I take a look at it, if I need additional

9    input from the parties, I'll schedule a hearing on the

10   disputes and take it from there.

11           I want to avoid, if possible, any unnecessary

12   extensive briefing on discovery issues.  I find often it's

13   just better just for me to get a sense of what the dispute is

14   and then just have the parties come in and talk about them.

15           With regard to discovery and with regard to those

16   conferences, I may either have the parties -- the attorneys --

17   come in in person or, more likely than not, I'll probably end

18   up conducting those discovery hearings via some sort of

19   videoconference platform, probably Zoom or Webex.  But we'll

20   let you know.  I guess I can hope, perhaps naively, that there

21   won't be any discovery disputes in this case.  But to the

22   extent there is, we'll let the parties know how we're going to

23   go about scheduling those disputes.  And it may depend just on

24   what the issues are.

25           All right.  That's all I had on my list.

 1         Is there anything else that I can address for the

 2    plaintiffs, Ms. Hinger?

 3         MS. HINGER:  Yes, your Honor.  Thank you for all

 4    that.

 5         If we can just revisit your guidance on the 30(b)(6)

 6    depositions.  You mentioned how they can be a very efficient

 7    tool.  We wanted to use the 30(b)(6) in that way, and we

 8    were -- we are planning on taking a records custodian Rule

 9    30(b)(6) deposition.  And I think that's one of those places

10    where, quite frankly, we held back certain document requests

11    because we want to make sure that we're requesting the right

12    materials.  And, so, part of the reason we asked for the 14

13    hours was so that our 30(b)(6) deposition on the merits

14    doesn't get depleted by time we spend on the 30(b)(6) for the

15    records deposition.

16         Would it be possible for us to either, you know,

17    submit that 30(b)(6) deposition for the records to you in

18    advance for your approval to have that not count against the

19    seven hours for a 30(b)(6) deposition or to, for that limited

20    purpose, give us the 14 hours for all Rule 30(b)(6) deponents?

21         I'd rather not have to go through another motion

22    because we, quite frankly, wanted to get that out to try to

23    get that deponent in April.  So, mindful of the December

24    deadline, then after that we'll need to get our document

25    requests from what comes from that.  So, just looking for a

1    little more guidance on that issue.

2              THE COURT:  Would that be a records custodian from

3    both T-Mobile and Inteliquent?

4              MS. HINGER:  I imagine we would need it for both,

5    yeah, based on what we -- we did get some initial disclosures

6    yesterday, and they were -- they raise a lot of questions on

7    the records.  So --

8              THE COURT:  You think you'll need the full seven

9    hours for the records deposition?

10             MS. HINGER:  If the witnesses are prepared, I imagine

11   we could get both of them done, you know, within the seven

12   hours.

13             THE COURT:  All right.  What I'll do is -- and I

14   assume they'll be prepared.  So, I will give the plaintiffs --

15   I'll give you five hours for each records custodian above and

16   beyond the seven hours.  Okay?

17             MS. HINGER:  Thank you very much, your Honor.

18             THE COURT:  Anything else?

19             MS. HINGER:  I don't have anything further.

20             THE COURT:  How about for defendants?

21             MR. VINTI:  Your Honor, this is Baldo Vinti.

22   Nothing, your Honor.

23             But I would say that, you know, we would request the

24   same amount for records custodians for plaintiffs, as well.

25             THE COURT:  That's fine.  I doubt if you'll need as

1   much, but that's fine.

2           All right.  And the final thing is I'd like the

3   parties to submit a joint status report in 90 days letting me

4   know how things are going -- so, that would be, let's see, by

5   June 25th -- on the status of discovery.

6           Okay.  Thank you, everyone.

7           MS. HINGER:  Thank you, your Honor.

8           MR. VINTI:  Thank you, your Honor.

9           MR. HAMILL:  Thank you, Judge.

10                      *     *     *     *     *

11

12  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.
13

14
    /s/ Joseph Rickhoff                      March 25, 2021
15  Official Court Reporter

16

17

18

19

20

21

22

23

24

25