IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRAIGVILLE TELEPHONE CO. d/b/a ) <br> ADAMS WELLS INTERNET TELECOM ) <br> TV and CONSOLIDATED TELEPHONE ) <br> CO. d/b/a CTC, individually and on ) <br> Behalf of similarly situated companies, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> T-MOBILE USA INC., and ) <br> INTELIQUENT, INC., ) <br> ) <br> Defendants. ) | No. 19 C 7190 <br><br> Judge John Z. Lee |

**MEMORANDUM OPINION AND ORDER**

In this putative class action, local telephone companies Craigville Telephone Co. and Consolidated Telephone Co. (collectively, "Plaintiffs") allege that T-Mobile USA, Inc. ("T-Mobile) and Inteliquent, Inc. ("Inteliquent") (collectively, "Defendants") engaged in a scheme to perpetuate call connection issues for calls originating from cell phones and terminating to landline telephones located in certain rural areas, which they covered up by inserting false ring tones on the caller's end. The Court previously dismissed without prejudice Counts IV through VII of Plaintiffs' first amended class action complaint as to T-Mobile, and Counts II though V and VII as to Inteliquent. Now before the Court are Defendants' motions to dismiss the same counts of Plaintiffs' second amended class action complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motions are granted.

I. **Background**[1]

The Court presumes familiarity with the facts as set forth in its prior opinion. *See* 11/16/20 Mem. Op. and Order at 2–7, ECF No. 91. In brief, Plaintiffs are "local exchange carriers" (or LECs) that are responsible for routing phone calls directly to the called party for calls "terminating to a traditional landline telephone." 2d. Am. Class Action Compl. ("2d Am. Compl.") ¶¶ 34–36, ECF No. 94. T-Mobile is a "mobile carrier" that transmits calls originating from a cell phone to nearby wireless towers. *Id.* ¶¶ 48–50. Inteliquent is an "intermediate provider," on which mobile carriers like T-Mobile rely, to route calls between wireless towers and LECs. *Id.* ¶ 51.

As the last step in the call process, LECs typically incur higher costs to build and maintain their networks than other telecommunication carriers. *Id.* ¶ 31. To help LECs recover these expenses, the Federal Communications Commission ("the FCC") has introduced a system of intercarrier compensation requiring mobile carriers and intermediate providers to pay "access charges" to LECs for each call that they complete. *Id.* ¶ 62.

In 2012, the FCC issued a declaratory ruling to address a "pattern of call completion and service quality problems on long distance calls to certain rural areas," where mobile carriers and intermediate providers typically incurred the highest access charges. *In re Unified Intercarrier Comp. Regime* ("*2012 Ruling*"), 27 FCC Rcd. 1351, 1351–52 (2012); *see* 2d. Am Compl. ¶¶ 95–101. The FCC ruled that it was a violation of the Communications Act, 47 U.S.C. § 201(b), to fail to correct such

---

[1] The Court "accept[s] as true all well-pleaded facts alleged" in reviewing a motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

problems, as well as to use "false ring tones" to mask prolonged call set-up times. *Id.* at 1355 & n.35; *see also In re Rural Call Completion* ("*2018 Order*"), 33 FCC Rcd. 4199, 4200–02 (2018). False ring tones occur "when an originating or intermediate provider prematurely triggers audible ring tones to the caller before the call setup request has actually reached the terminating provider, leading the calling party to believe that the called party's phone is ringing when in fact it is not." *In re Rural Call Completion*, 33 FCC Rcd. at 4202 n.18. The FCC codified this prohibition on the use of false ring tones in 2013. *See* 47 C.F.R. § 64.2201(a)

In 2016, T-Mobile acknowledged in a consent decree that it had violated this prohibition by continuing to use false ring tones and failing to "correct problems with its Intermediate Providers' delivery of calls to consumers in certain rural areas." *In re T-Mobile USA, Inc.* ("*Consent Decree*"), 33 FCC Rcd. 3737, 3744 (2018); *see* 2d. Am. Compl. ¶ 168. Based largely on this admission, Plaintiffs allege that Defendants, in an effort to minimize their costs, engaged in a scheme to perpetuate these call completion problems and covered them up with false ring tones and other call-blocking practices. *E.g.*, 2d Am. Compl. ¶¶ 2–3, 10, 13–14, 61, 78–87.

Like its predecessor, the second amended complaint raises eight counts. Count I alleges that T-Mobile violated 47 U.S.C. § 201(b) by inserting false ring tones. *Id.* ¶¶ 373–82. Count II alleges that both Defendants violated § 201(b) by failing to ensure delivery of calls. *Id.* ¶¶ 383–92. Count III alleges that Defendants violated another provision of the Communications Act, 47 U.S.C. § 202(a), by perpetuating low quality service to rural localities. *Id.* ¶¶ 393–402. Counts IV and V allege that

3

Defendants' false ring tone scheme violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), respectively. *Id.* ¶¶ 403–47. Count VI alleges tortious interference with a prospective economic advantage under Illinois common law against T-Mobile. *Id.* ¶¶ 448–62. Count VII alleges that Defendants violated Illinois's Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq*. *Id.* ¶¶ 463–72. And Count VIII alleges that Defendants engaged in a civil conspiracy. *Id.* ¶¶ 473–79.

The Court's prior opinion dismissed Counts IV through VII with regard to T-Mobile and Counts II through V and VII with regard to Inteliquent under Rule 12(b)(6) for reasons discussed below, while giving Plaintiffs a chance to replead them. Now that Plaintiffs have done so, Defendants each move to dismiss them under Rule 12(b)(6) anew and with prejudice. *See* Def. T-Mobile's Partial Mot. Dismiss, ECF No. 97; Def. Inteliquent's Partial Mot. Dismiss, ECF No. 100.

## II. <u>Legal Standard</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up). "Where a complaint pleads

facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

When considering a motion to dismiss, courts accept "all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

### III. Analysis

**A. T-Mobile's Motion to Dismiss**

**1. Counts IV and V**

The Court begins with Plaintiffs' civil RICO claims. In relevant part, RICO makes it unlawful for an enterprise to conduct its affairs "through a pattern of racketeering activity," 18 U.S.C. § 1962(c), as well as "to conspire" to do so, *id.* § 1962(d). "Racketeering activity" includes "any act indictable" under the federal wire fraud statute, *id.* § 1961(1); that section, in turn, makes it unlawful to "devise any scheme or artifice to defraud" another "by means of wire . . . communication in interstate or foreign commerce," *id.* § 1343. Here, the predicate acts of wire fraud are based on T-Mobile's alleged use of false ring tones, the purported misrepresentations.

The Court previously dismissed Counts IV and V because the first amended complaint did not plausibly allege that T-Mobile used false ring tones with the

requisite "intent to defraud" Plaintiffs of access charges. *See United States v. Bloom*, 846 F.3d 243, 250 (7th Cir. 2017) (discussing the elements of wire fraud). Specifically, the Court found it unreasonable to infer that T-Mobile conducted the alleged false ring tone scheme *for the purpose* of inducing callers to hang up the phone before the call setup request had reached the terminating provider, thereby depriving Plaintiffs of access charges. 11/16/20 Mem. Op. and Order at 19–21.

In asserting that the second amended corrects this deficiency, Plaintiffs rely largely on the FCC's findings that, because false ring tones make the calling party believe that "the phone is ringing at the called party's premises when it is not," the caller "may often hang up" as a result, "thinking nobody is available to receive the call." *Consent Decree*, 33 FCC Rcd. at 3742; *accord 2012 Ruling*, 27 FCC Rcd. at 1355 n.35; *see* 2d. Am. Compl. ¶¶ 2, 113–14. But even accepting this is so, Plaintiffs fail to sufficiently allege that T-Mobile intended the false ring tones to accomplish this result. Nor did the FCC find that T-Mobile had inserted false rings tones in order to induce callers to hang up. To the contrary, the FCC suggested that it did so "to mask" its ongoing call completion problems in rural areas (including, at times, calls that had already failed—a scenario the second amended complaint conveniently deletes). *Consent Decree*, 33 FCC Rcd. at 3742. Plaintiffs themselves repeatedly acknowledge this purpose. *See* 2d. Am. Compl. ¶¶ 2, 14, 82–87, 191, 226, 242, 266, 359, 416, 465.

In the same vein, the FCC recognized that the use of false ring tones is "a symptom" of the underlying call completion problems that T-Mobile had failed to fix as of 2016. *Consent Decree*, 33 FCC Rcd. at 3737. Indeed, were it not for those

problems, there would have been no dead air to fill with false ringing. And it ultimately was due to those problems, which Plaintiffs attribute to T-Mobile's core strategy of minimizing its routing costs, that Plaintiffs could not recover access charges. *See* 2d. Am. Compl. ¶¶ 78–81. Given all this, the new complaint fails to allege facts from which it would be reasonable to infer that the *intent* of T-Mobile's false ringing scheme was to fraudulently deprive Plaintiffs of access charges.

Thus, because Plaintiffs do not plausibly allege that T-Mobile engaged in predicate acts of wire fraud, Count IV fails to state a claim under § 1962(c). For the same reason, Count V fails to state a claim under § 1962(d) "based on the same facts." *See Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000). Both counts are dismissed with prejudice.

### 2. Count VI

A similar deficiency dooms Count VI, which alleges that T-Mobile tortiously interfered with Plaintiffs' prospective economic advantage. To state such a claim under Illinois law, "a plaintiff must allege (1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996). To establish the third element, the plaintiff "must allege . . . facts which demonstrate that the defendants acted with the purpose of injuring the

plaintiff's expectancies." *Panter v. Marshall Field & Co.*, 646 F.2d 271, 298 (7th Cir. 1981).

Just as Plaintiffs fail to establish that T-Mobile acted with intent to defraud them of access charges, so too do they fail to demonstrate that T-Mobile acted with intent to injure their expectancies of receiving access charges. As noted, Plaintiffs continue to allege that T-Mobile's interferences with those expectancies, which arose from its persistent failure to fix call completion problems, "were attributable to [its] desire to minimize its costs rather than any desire to harm Plaintiffs." 11/16/20 Mem. Op. and Order. at 22 (cleaned up);[2] *see* 2d. Am. Compl. ¶¶ 78–81, 452. Because this benign purpose of preventing "a drain on profits," 2d Am. Compl. ¶ 78, is still the only one that may reasonably be inferred from T-Mobile's alleged scheme, Count VI fails to state a claim of tortious interference and is dismissed with prejudice.

### 3. Count VII

Lastly, Count VII alleges that Defendants violated Illinois's Consumer Fraud and Deceptive Business Practices Act ("ICFA"). As the Court previously noted, the ICFA generally "does not apply to fraudulent transactions which take place outside Illinois." *Tarzian v. Kraft Heinz Foods Co.*, No. 18 C 7148, 2019 WL 5064732, at *3 (N.D. Ill. Oct. 9, 2010) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853 (Ill. 2005)). As a result, a non-resident plaintiff may only invoke the ICFA if "the circumstances that relate to the disputed transaction . . . occurr[ed] primarily

---

[2] Although Count VI of the first amended complaint technically alleged tortious interference with contract (a claim that failed because Plaintiffs did not allege any breach of contract), the Court also dismissed Count VI to the extent Plaintiffs sought to recast it in their briefing as alleging tortious interference with a prospective economic advantage.

and substantially in Illinois." *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009) (quoting *Avery*, 835 N.E.2d at 853–54)). And because the first amended complaint alleged only that the fraudulent scheme "was disseminated from" Illinois, which "is insufficient to establish the necessary connections to Illinois," the Court dismissed Count VII. *See Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 782 (N.D. Ill. 2011) (citing *Avery*, 835 N.E.2d at 855).[3]

The second amended complaint fares no better with respect to Count VII than its predecessor. Simply put, the allegations on which Plaintiffs rely, none of which is materially different from those in their first amended complaint, all relate to Defendants' alleged dissemination of the challenged scheme. *See* 2d. Am. Compl. ¶¶ 195–99, 206, 209, 212–14, 220–26, 229–41, 330–33, 349, 358–61. The cases Plaintiffs cite do not suggest otherwise because they alleged Illinois-centric facts which are absent here. *See IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 191 F. Supp. 3d 790, 808 (N.D. Ill. 2016) (Plaintiffs suffered harm in Illinois and communicated with Defendants in Illinois, and Illinois consumers were deceived by the scheme); *Clearing Corp. v. Fin. & Energy Exch. Ltd.*, No. 09 C 5383, 2010 WL 2836717, at *5 (N.D. Ill. July 16, 2010) (claim arose from a contract between plaintiff and defendant primarily negotiated in Illinois and containing an Illinois choice-of-law provision); *IFC Credit Corp. v. Aliano Bros. Gen. Contractors*, No. 04 C 6504, 2007 WL 164603, at *3 (N.D. Ill. Jan. 12, 2007) (contract executed and performed in Illinois and damages occurred

---

[3] The Court's analysis with respect to Counts IV and V does not apply to Count VII because Illinois courts have not required an intent to defraud under the IFCA. *See Roberts v. Robert V. Rohrman, Inc.*, 909 F. Supp. 545, 549 (N.D. Ill. 1995).

in part in Illinois); *cf. Swartz v. Schaub*, 818 F. Supp. 1214, 1214 (N.D. Ill. 1993) (the ICFA "is intended to deal only with the impact of the statutorily prohibited practices on *Illinois* consumers").

Plaintiffs also lean on *Martin v. Heinold Commodities, Inc.*, 510 N.E.2d 840 (Ill. 1987). But that case "is of little help" because it "considered only whether" the application of Illinois law to a class including non-resident plaintiffs "comported with the due process principles" of *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), not whether such plaintiffs had a cause of action under the ICFA as a matter of statutory interpretation. *See Avery*, 835 N.E.2d at 855.

As a result, the Court concludes that Plaintiffs have no cause of action under the ICFA and dismisses Count VII with prejudice.

**B.     Inteliquent's Motion to Dismiss**

Turning to Inteliquent's motion to dismiss, it again raises the same arguments with regard to Counts IV through V and VII as T-Mobile. Since these arguments are equally availing here, the Court dismisses these counts to as Inteliquent with prejudice as well.

That leaves Counts II and III as to Inteliquent. Last time around, the Court dismissed these counts because the duty to fix call completion problems imposed by the *2012 Ruling* apply only to "covered providers," whereas the regulations state that intermediate providers "[d]o[] not . . . serve as a covered provider in the context of originating or terminating a given call," 47 C.F.R. § 64.2101. This time around, Plaintiffs attempt to avert this outcome in two ways.

First, they suggest that the Court previously erred in reading the *2018 Order* to clarify that this duty does not apply to all carriers. This is incorrect. As the Court previously held, that order explicitly clarifies that "[t]he duties in the *2012 Declaratory Ruling* . . . apply to covered providers," not "carriers" generally. 33 FCC Rcd. at 4211 n.85. And there is no private right of action under the Communications Act unless the FCC first determines that "a particular practice constitutes a violation" of the statute. *N. Cty. Commc'ns Corp. v. Ca. Catalog & Tech.*, 594 F.3d 1149, 1158 (9th Cir. 2010). In any event, the Court does not find plausible Plaintiffs' new allegations that Inteliquent also served as a carrier, *see* 2d. Am. Compl. ¶¶ 146–47, given that the *2012 Ruling* distinguished between carriers and intermediate providers, *see* 27 FCC Rcd. at 1355–56, and T-Mobile admittedly served as the carrier, *see Consent Decree*, 33 FCC Rcd. at 3742.

Second, Plaintiffs argue that Inteliquent is both an intermediate provider and a covered provider with respect to the T-Mobile calls. *See* 2d. Am. Compl. ¶¶ 146, 150–51. This view is equally unpersuasive. Contrary to Plaintiffs' assertion, covered providers and intermediate providers are mutually exclusive terms as the regulations currently define them. *See* 47 C.F.R. § 64.2101 (defining the former as the provider "that makes the initial long-distance call path choice" and explaining that the latter do not "serve as a covered provider in the context of originating or terminating a given call"). Although Plaintiffs also point to an earlier definition of intermediate providers as "any entity that carries or processes traffic that traverses or will traverse the public switch telephone network . . . at any point insofar as that entity neither

11

originates nor terminates the traffic," 47 C.F.R. § 64.1600(i), they concede that this substantially similar definition also excluded originating entities, which is precisely what the definition of a covered provider requires. *Cf. 2018 Order*, 33 FCC Rcd. at 4215–16 & n.116 (distinguishing between covered providers and intermediate providers insofar as the former originate the call).

Along the same lines, the allegations on which Plaintiffs rely to show that Inteliquent was a covered provider do not suggest that it made the *initial* long-distance call path choice for any "of T-Mobile's traffic." *See* 2d. Am. Compl. ¶ 150. To the contrary, as the complaint alleges elsewhere, T-Mobile originated the calls before handing them off to Inteliquent. *Id.* ¶¶ 59–61. That makes T-Mobile the covered provider and Inteliquent the intermediate provider. *See Consent Decree*, 33 FCC Rcd. at 3742.

Accordingly, Counts II and III fail to allege violations of the Communications Act by Inteliquent and are dismissed with prejudice as to it.

## IV. <u>Conclusion</u>

For the reasons above, Defendants' partial motions to dismiss are granted. Counts IV through VII of the second amended class action complaint are dismissed with prejudice as to both Defendants, while Counts II and III are dismissed with prejudice as to Inteliquent.

**IT IS SO ORDERED.**          **ENTERED: 8/31/21**

_____

**John Z. Lee**
**United States District Judge**