**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CRAIGVILLE TELEPHONE CO. d/b/a )
ADAMSWELLS; and CONSOLIDATED )
TELEPHONE COMPANY d/b/a CTC )
                                        )
        Plaintiff, )     No. 1:19-cv-07190
                                        )
     vs. )     Judge John Z. Lee
                                          )
T-MOBILE USA, INC.; and )
INTELIQUENT, INC. )
                                        )
        Defendants. )

**PLAINTIFFS' OPPOSITION TO INTELIQUENT INC.'S RULE 12(c)**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

David T.B. Audley (Bar No. 6190602)
Mia D. D'Andrea (Bar No. 6307966)
**CHAPMAN AND CUTLER LLP**
111 West Monroe Street
Chicago, IL 60603-4080
Tel. 312-845-2971
Email: audley@chapman.com
Email: dandrea@chapman.com

Cathy A. Hinger (*pro hac vice*)
G. David Carter (*pro hac vice*)
Victoria A. Bruno (*pro hac vice*)
Kathleen O. Gallagher (*pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
2001 K Street, NW Suite 400 South
Washington, DC 20006
Tel.: 202-857-4489
Fax: 202-261-0029
Email: cathy.hinger@wbd-us.com
Email: david.carter@wbd-us.com
Email: victoria.bruno@wbd-us.com
Email: katie.gallagher@wbd-us.com

Kurt D. Weaver (*pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: 919-755-8163
Email: kurt.weaver@wbd-us.com

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

ARGUMENT .......................................................................................................................2

I.    THE COURT SHOULD DENY INTELIQUENT'S MOTION BECAUSE IT FAILS TO SATISFY THE EXACTING STANDARDS APPLICABLE TO MOTIONS TO RECONSIDER. .................................................................................................2

II.    THERE IS NO ACTUAL CONFLICT BETWEEN THE LAW GOVERNING CIVIL CONSPIRACY IN ILLINOIS, INDIANA, AND MINNESOTA. ....................................4

III.   ILLINOIS LAW GOVERNS THE CIVIL CONSPIRACY CLAIM AT THIS PLEADING STAGE BECAUSE PLAINTIFFS HAVE ALLEGED FACTS SHOWING ILLINOIS HAS THE MOST SIGNIFICANT RELATIONSHIP WITH THE EVENTS AT ISSUE. .................................................................................5

   a.   Illinois's Most Significant Relationship Test. .............................................6

   b.   The Place Of Injury Is Less Important When The Conduct Causes Injuries In Numerous States. .................................................................................6

   c.   Because Inteliquent's Wrongful Conduct Took Place In Illinois, Illinois Law Has The Most Significant Relationship To The Events Giving Rise To The Conspiracy. ............8

IV.   PLAINTIFFS HAVE STATED A CLAIM FOR CIVIL CONSPIRACY WHETHER ILLINOIS LAW APPLIES OR NOT. ...............................................................10

V.   THE ACT IMPLICITLY ESTABLISHES SECONDARY LIABILITY .........................14

CONCLUSION...................................................................................................................15

i

# TABLE OF AUTHORITIES

## Cases

*ACE Hardware Corp. v. Marn, Inc.*,
   No. 06-C-5335, 2009 WL 10738228 (N.D. Ill. Jan. 28, 2009)...................................................3

*Adcock v. Brakegate, Ltd.*,
   645 N.E.2d 888 (Ill. 1994) ........................................................................................................9

*Anderson v. Douglas Cnty.*,
   4 F.3d 574 (8th Cir. 1993) ...................................................................................................5, 11

*AON PLC v. Michael Heffernnan,*
   No. 16-CV-01924, 2017 WL 478270 (N.D. Ill. Feb. 6, 2017)..................................................14

*Bloom v. Hennepin Cnty.*,
   783 F. Supp. 418 (D. Minn. 1992)....................................................................................13, 14

*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*,
   90 F.3d 1264 (7th Cir. 1996) .....................................................................................................3

*Carter v. State Farm Fire & Cas. Co.*,
   850 F. Supp. 2d 946 (S.D. Ind. 2012) .....................................................................................12

*Clark v. TAP Pharm. Prod., Inc.*,
   798 N.E.2d 123 (Ill. App. Ct. 2003) ........................................................................................10

*Cunningham v. PFL Life Ins. Co.*,
   42 F. Supp. 2d 872 (N.D. Iowa 1999)........................................................................................7

*Damon v. Groteboer*,
   937 F. Supp. 2d 1048 (D. Minn. 2013) ....................................................................................13

*Doe v. GTE Corp.*,
   347 F.3d 655 (7th Cir. 2003) ...................................................................................................15

*Domanus v. Locke Lord LLP*,
   847 F.3d 469 (7th Cir. 2017) .....................................................................................................9

*Dunbar v. Wells Fargo Bank, N.A.*,
   853 F. Supp. 2d 839 (D. Minn. 2012).................................................................................5, 11

*E. Trading Co. v. Refco, Inc.*,
   229 F.3d 617 (7th Cir. 2000) ...................................................................................................13

*ECTG Ltd. v. O'Shaughnessy*,
   No. CIV. 14-960 (DSD/JJK), 2014 WL 6684982 (D. Minn. Nov. 25, 2014) .........................14

ii

*Foodcomm Int'l v. Barry*,
    463 F. Supp. 2d 818 (N.D. Ill. 2006) ............................................................... 6, 9, 10

*Harper v. LG Elecs. USA, Inc.*,
    595 F. Supp. 2d 486 (D.N.J. 2009) ........................................................................ 14

*In re Air Crash Disaster Near Chicago, Ill. on May 25,1979*,
    644 F.2d 594 (7th Cir. 1981) .................................................................................... 4

*Ingersoll v. Klein*,
    262 N.E.2d 593 (Ill. 1970) ....................................................................................... 6

*Inteliquent, Inc. v. Free Conferencing Corp.*,
    503 F. Supp. 3d 608 (N.D. Ill. 2020) ................................................................. 3, 10

*K.M.K. v. A.K.*,
    908 N.E.2d 658 (Ind. Ct. App. 2009) ............................................................ 5, 11, 12

*Milavetz, Gallop & Milavetz, P.A. v. Hill*,
    No. CX-98-140, 1998 WL 422229 (Minn. Ct. App. July 28, 1998) ........................ 13

*Miller v. Long-Airdox Co.*,
    914 F.2d 976 (7th Cir. 1990) .................................................................................... 6

*Qwest Commc'ns. Co. v. Aventure Commc'ns. Tech., LLC*,
    86 F. Supp. 3d 933 (S.D. Iowa 2015) ...................................................................... 13

*Smurfit Newsprint Corp. v. Se. Paper Mfg.*,
    368 F.3d 944 (7th Cir. 2004) .................................................................................... 4

*Spinozzi v. ITT Sheraton Corp.*,
    174 F.3d 842 (7th Cir. 1999) .................................................................................. 10

*Spitz v. Proven Winners N. Am., LLC*,
    759 F.3d 724 (7th Cir. 2014) .................................................................................... 4

*Strategic Energy Concepts, LLC v. Otoka Energy, LLC*,
    No. 16-463 (MJD/BRT), 2016 WL 7627040 (D. Minn. Nov. 18, 2016) ............. 13, 14

*Townsend v. Sears, Roebuck & Co.*,
    879 N.E.2d 893 (Ill. 2007) .................................................................................... 4, 6

*Unipro Graphics, Inc. v. Vibrant Impressions, Inc.*,
    No. 21-CV-1700, 2021 WL 3722848 (N.D. Ill. Aug. 23, 2021) ............................... 9

*Wagner v. Teva Pharms. USA, Inc.*,
    840 F.3d 355 (7th Cir. 2016) .................................................................................. 11

**Statutes**

47 U.S.C. § 206 ................................................................................................... 15

47 U.S.C. § 217 ................................................................................................... 15

**Other Authorities**

Restatement (Second) Conflict of Laws § 145 ......................................................... 6, 7

*In the Matter of Rural Call Completion,*
   28 F.C.C. Rcd. 16154 (2013) ............................................................................... 11

Craigville Telephone Co. d/b/a AdamsWells and Consolidated Telephone Company d/b/a CTC, on behalf of themselves and a class of similarly-situated companies (collectively, "Plaintiffs"), respectfully submit this Opposition to Inteliquent, Inc.'s ("Inteliquent") Rule 12(c) Motion for Judgment on the Pleadings (the "Motion" or "Mot.").

## INTRODUCTION

Inteliquent's Motion should be denied because this Court has already found that Plaintiffs adequately stated a civil conspiracy claim against Inteliquent and its co-defendant T-Mobile, USA Inc. ("T-Mobile"), despite its simultaneous dismissal of the RICO and Communications Act of 1934 (the "Act") claims against Inteliquent. As this Court ruled previously:

> ***[T]he complaint adequately pleads that T-Mobile and Inteliquent entered an agreement to bring about "an unlawful purpose or a lawful purpose by unlawful means."*** According to Plaintiffs, Inteliquent assumed responsibility for terminating calls placed by T-Mobile subscribers, reviewed information about completion rates, and realized economic rewards from T-Mobile's apparent refusal to fix connection issues. One plausible inference, advanced by Defendants, is that Inteliquent tolerated T-Mobile's practices without endorsing them. But another plausible inference, promoted by Plaintiffs, is that Inteliquent's extensive involvement in routing T-Mobile's calls is evidence that Defendants agreed not to remedy call failures.

(ECF No. 91 at 24–25 (internal citations omitted) (emphasis added).) In finding that Plaintiffs adequately pleaded their claim for conspiracy, this Court rightfully applied Illinois law. *See id.*

Now, ten months after denial of its initial Rule 12(b)(6) motion to dismiss the civil conspiracy claim as pled in the Amended Complaint, eight months after choosing ***not*** to move to dismiss Plaintiffs' civil conspiracy claim as pled in the now-operative Second Amended Complaint (the "SAC"), and on the heels of the Court issuing discovery rulings clarifying that Plaintiffs can investigate the problems with Inteliquent's delivery of calls to rural consumers that T-Mobile admittedly failed to correct, Inteliquent is attempting to stave off discovery again by asking the

Court to effectively reconsider its prior ruling by applying "some other state's law."[1]  Although brought under Rule 12(c), in reality, Inteliquent is moving for reconsideration of the Court's November 16, 2020 denial of Inteliquent's first motion to dismiss the conspiracy claim, which Inteliquent implicitly recognizes.  (Mot. at 3 n.2.)  Because Inteliquent does not address or satisfy any basis for reconsideration, the Court should deny its Motion.

Nevertheless, should the Court reach the merits of Inteliquent's Motion, the Motion still fails because Plaintiffs have adequately alleged a claim for civil conspiracy under Illinois law, which applies both because there is no conflict necessitating a conflict of laws analysis, and even if a conflict of law analysis is undertaken, Illinois has the most significant relationship to Defendants' illegal conduct.  And, at the pleading stage, the Court must defer to Plaintiffs' allegations concerning Inteliquent's wrongful conduct occurring in Illinois.  It would also be premature for the Court to definitively conclude that the place of the injury, as opposed to the place the wrongful conduct occurred, has the most significant contacts on the pleadings when Inteliquent, which has only produced twenty-five documents, remains in possession of requested discovery that will expose just how significant its wrongful activities in Illinois were.

## **ARGUMENT**

## I.    THE COURT SHOULD DENY INTELIQUENT'S MOTION BECAUSE IT FAILS TO SATISFY THE EXACTING STANDARDS APPLICABLE TO MOTIONS TO RECONSIDER.

A motion to reconsider is only appropriate in very limited circumstances:

A motion to reconsider is proper only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension."  A motion to reconsider also may be appropriate if there has been "a controlling or

---

[1]    Even Inteliquent appears uncertain as to which state law it believes should govern the conspiracy claim.  (*See* Mot. at 3 (equivocating that "[s]ome other state's law – presumably Minnesota law or Indiana law. . ." will govern the civil conspiracy claim); *see also id*. at 6 (speculating "[w]hatever state law applies . . .").)

significant change in the law or facts since the submission of the issue to the Court." By contrast, because judicial opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure," "***motions to reconsider are not appropriate vehicles to advance arguments already rejected by the Court or new legal theories not argued before the ruling***." [ . . .] In view of these exacting standards, it is not surprising that our court of appeals has opined that issues appropriate for reconsideration "***rarely arise and the motion to reconsider should be equally rare***."

*ACE Hardware Corp. v. Marn, Inc.*, No. 06-C-5335, 2009 WL 10738228, at *1 (N.D. Ill. Jan. 28, 2009) (internal citations omitted) (emphasis added).  None of these circumstances are present here.

Inteliquent did not argue a misunderstanding or error of apprehension by the Court.  Nor has there been a "controlling or significant change in the law or facts" since the Court's November 16, 2020 Order.  To be clear, Inteliquent answered the conspiracy claim and did not move to dismiss it from the SAC pursuant to some other state's law.  (*See* ECF No. 99.)  The Court should look upon Inteliquent's new choice of law arguments, which were fully available to it when it filed its first two Rule 12 motions, with great suspicion.  (*See* ECF No. 48; ECF No. 98.)  *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("Belated factual or legal attacks are viewed with great suspicion . . . .").[2]  Because Inteliquent's Motion ignores the motion for reconsideration standards (which it cannot satisfy), the Motion is improper and the Court should deny it for that reason alone.

---

[2]     The Court should be particularly wary of Inteliquent's new position given that when it suited Inteliquent, it asserted and prevailed on an Illinois common law conspiracy claim premised upon the defendants conspiring "in violation of the Communications Act of 1934."  *Inteliquent, Inc. v. Free Conferencing Corp.*, 503 F. Supp. 3d 608, 644 (N.D. Ill. 2020).  Inteliquent's argument ten months later that such a claim under Illinois law is not viable merely because Inteliquent was caught participating in a scheme to violate the Act is hypocritical.

## II.     THERE IS NO ACTUAL CONFLICT BETWEEN THE LAW GOVERNING CIVIL CONSPIRACY IN ILLINOIS, INDIANA, AND MINNESOTA.

Inteliquent's Motion presumes a conflict of laws between Illinois, Minnesota, and Indiana, without demonstrating whether a conflict truly exists.  However, under Illinois law (which governs the choice of law analysis as the forum state, *see Smurfit Newsprint Corp. v. Se. Paper Mfg.*, 368 F.3d 944, 949 (7th Cir. 2004)), it is the moving party's burden to establish an actual conflict between state laws before the Court may delve into a conflict of law analysis.  *See Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 729 (7th Cir. 2014) (requiring the movant to establish an actual conflict between state laws); *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007).[3]  "[A] choice-of-law analysis begins by isolating the issue and defining the conflict.  A choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Id.*  Thus, if there is no substantive difference in the outcome, there should be no choice of law analysis.  *See id.*; *see, e.g.*, *In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979*, 644 F.2d 594, 605 (7th Cir. 1981) (conducting choice of law analysis because some interested states did, and some did not, allow punitive damages).  There is no outcome-altering conflict between the laws of Illinois, Indiana, and Minnesota.  They all recognize common law civil conspiracy.  As this Court ruled previously, "'[i]n Illinois, a civil conspiracy is defined as a combination of two or more persons for the purpose of accomplishing by concerted action either ***an unlawful purpose*** or a lawful purpose by ***unlawful means***.'"  (ECF No. 91 at 23 (emphasis added) (internal citations omitted).)  Furthermore, "Plaintiffs must allege facts establishing both 'an agreement' and "'***a tortious act*** committed in furtherance of that agreement.'"  (*Id.* at 24 (emphasis added).)

---

[3]     Inteliquent completely ignores this burden as the movant.  If it seeks to file a reply correcting this threshold failure of its burden, Plaintiffs respectfully request that they be permitted

Similarly, in Minnesota, "[c]ivil conspiracy 'involves a combination of persons to accomplish either an **unlawful purpose** or a lawful purpose by **unlawful means**.'" *Dunbar v. Wells Fargo Bank, N.A.*, 853 F. Supp. 2d 839, 848 (D. Minn. 2012) (emphasis added) (quoting *Anderson v. Douglas Cnty.*, 4 F.3d 574, 578 (8th Cir. 1993)). Likewise, in Indiana, "[a] civil conspiracy is a combination of two or more persons who engage in a concerted action to accomplish **an unlawful purpose** or to accomplish some lawful purpose by **unlawful means**." *K.M.K. v. A.K.*, 908 N.E.2d 658, 663 (Ind. Ct. App. 2009) (emphasis added). The Court plainly found that "the complaint adequately pleads that T-Mobile and Inteliquent entered an agreement to bring about 'an unlawful purpose or a lawful purpose by unlawful means.'" (ECF No. 91 at 24.) Although Inteliquent attempts to draw minute procedural differences between the jurisdictions,[4] when viewed as a whole, the essence of civil conspiracy remains the same: an unlawful purpose or a lawful purpose by unlawful means. Since there is no conflict, the Court may not undertake a conflict of law analysis, which moots the rest of Inteliquent's Motion and requires its denial.

## III. ILLINOIS LAW GOVERNS THE CIVIL CONSPIRACY CLAIM AT THIS PLEADING STAGE BECAUSE PLAINTIFFS HAVE ALLEGED FACTS SHOWING ILLINOIS HAS THE MOST SIGNIFICANT RELATIONSHIP WITH THE EVENTS AT ISSUE.

Even if the Court conducts a conflict of law analysis, the Motion still fails because, under the allegations pled, Illinois prevails under the most significant relationship test and the Court has already ruled that Plaintiffs stated a claim for civil conspiracy under Illinois law.

---

to respond with a sur-reply, for it would be improper for the movant to raise new arguments to support a burden it should have addressed in its opening motion for the first time in a reply.

[4] These differences also substantively fail as set forth in Section IV, *infra*.

### a. Illinois's Most Significant Relationship Test.

Illinois's choice law analysis is premised upon "the most significant relationship test," *Foodcomm Int'l v. Barry*, 463 F. Supp. 2d 818, 829 (N.D. Ill. 2006), which follows the Restatement (Second) Conflict of Laws § 145. *See Townsend*, 879 N.E.2d at 898. Generally, under this test, the local law of the state of injury should govern. *See, e.g.*, *Ingersoll v. Klein*, 262 N.E.2d 593, 595 (Ill. 1970). However, if Illinois has a more significant relationship to the occurrence or the parties, then Illinois law should apply. *See Foodcomm*, 463 F. Supp. 2d at 829 (citing *Ingersoll*, 262 N.E.2d at 595). To determine which state has a more significant relationship:

> [T]he court considers: (1) where the injury occurred; (2) where the injury causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered. Additionally, the court should look at the contacts of each jurisdiction under the factors and evaluate those contacts in light of the policies underlying the laws of those jurisdictions.

*Id.* Although the test includes four factors, "[g]enerally, in a tort case, the two most important contacts are the place where the injury occurred ***and the place where the conduct causing the injury occurred***." *Miller v. Long-Airdox Co.*, 914 F.2d 976, 978 (7th Cir. 1990) (emphasis added). Inteliquent's brief ignores the significance of the place where the conduct causing the injury occurred.

### b. The Place Of Injury Is Less Important When The Conduct Causes Injuries In Numerous States.

As alleged in the SAC, the known places of injury to the class (for now) are Minnesota and Indiana, the locations of the named Plaintiffs (SAC ¶¶ 16–17), and Wisconsin, (SAC ¶ 170). The affected LECs and potential class members also include harm sustained by seven additional LECs referenced in the Consent Decree (SAC ¶¶ 187–88), whose identities are the subject of ongoing discovery. Other rural LECs who were identified in T-Mobile's rural call complaint log produced by the FCC under FOIA as victims of the scheme, who previously moved to intervene, are also in

other states. (*See* ECF 72-73 (North Dakota, Oklahoma, Kansas).) And, FCC Commissioner Clyburn estimated that this scheme likely impacted billions of telephone calls to rural areas over several years, and Plaintiffs have alleged that the Defendants' scheme affected numerous rural LECs dispersed throughout the nation whose identities may only be ascertained by records in the possession of the Defendants. (*See, e.g.*, SAC ¶¶ 290, 367.) In such situations when the injury and the underlying conduct occur in separate and multiple states, the Restatement finds that the place of injury is less important:

> Choice of the applicable law becomes more difficult in situations where the defendant's conduct and the resulting injury occurred in different states. When the injury occurred in two or more states . . . ***the place where the defendant's conduct occurred will usually be given particular weight in determining the state of the applicable law***.

Restatement (Second) of Conflict of Laws § 145 cmt. e (emphasis added).

Inteliquent's brief reads as if the place of injury alone controls the governing law in cases such as the instant one. It does not. Illinois is not a pure *lex loci* jurisdiction. Inteliquent completely fails to acknowledge that, under the Restatement, the place of the underlying conduct carries particular weight when the defendants' actions cause injury in numerous states. *See Cunningham v. PFL Life Ins. Co.*, 42 F. Supp. 2d 872, 882–84 (N.D. Iowa 1999) (applying "most significant relationship test" and finding that contacts with the forum state (Iowa) were more significant when underlying conspiracy occurred in Iowa and named class representatives were from multiple states (Florida and Missouri)). Thus, the entire legal premise of Inteliquent's Motion is analytically flawed. As shown below, Inteliquent avoids the place where its conduct occurred because all of its participation in the conspiracy occurred in Illinois, chronically and constantly for many years to impact billions of calls.

**c. Because Inteliquent's Wrongful Conduct Took Place In Illinois, Illinois Law Has The Most Significant Relationship To The Events Giving Rise To The Conspiracy.**

The crux of Inteliquent's participation in the fake ring tone scheme was its facilitation of significant volumes of call failures that coincided with T-Mobile's expansion of its use of fake ring tones in 2015 when T-Mobile and Inteliquent entered into a Master Services Agreement ("MSA") pursuant to which Inteliquent was responsible for delivery of almost all of T-Mobile's long distance traffic and rural call completion obligations. (*See* SAC ¶¶ 8–12.) The SAC alleges all of T-Mobile's collaborations with Inteliquent that facilitated the fake ring tone scheme took place in Illinois, from routing decisions, to collection of call detail records, and transmittal of rural call completion information to the FCC that contained false information. (*See* SAC ¶¶ 19, 25, 155, 199, 208–213, 229–247, 297, 471.) Nearly every aspect of Inteliquent's role in Defendants' unlawful scheme occurred in Illinois:

- The MSA specified Chicago as the sole place where Inteliquent could pick up T-Mobile's long distance traffic (SAC ¶¶ 195–99, 206; SAC Ex. 13);

- Inteliquent picked up and initiated delivery of T-Mobile's traffic through its switch sites located throughout the Chicagoland area and that the routing decisions were made by Inteliquent's PSX policy server in Illinois (SAC ¶¶ 195–99, 220–26; SAC Ex. 10);

- T-Mobile's call service complaints were routed through Illinois (SAC ¶¶ 209, 330–33, 349, 358–61; SAC Ex. 13, ¶ 10(A), at 10);

- Inteliquent collected T-Mobile's rural call completion data, prepared T-Mobile's Form 480 compliance reports, and submitted fraudulent rural call completion information to the FCC from Illinois (SAC ¶¶ 212, 232–33, 297, 423(e)); and

8

- Inteliquent participated in weekly communications with T-Mobile from Illinois to discuss reducing the volume of T-Mobile traffic terminating to areas with high terminating access rates, precisely what the fake ring tone scheme was aimed at achieving. (SAC ¶¶ 239-41.)[5]

When ruling on a Rule 12(c) motion, the Court "accept[s] all well-pleaded allegations in the complaint as true and draw[s] all reasonable inferences in the plaintiff's favor." *Unipro Graphics, Inc. v. Vibrant Impressions, Inc.*, No. 21-CV-1700, 2021 WL 3722848, at *3 (N.D. Ill. Aug. 23, 2021). As alleged by Plaintiffs, nearly every action that would support a finding of conspiracy, including every action by Inteliquent, occurred in Illinois, which not only justifies the application of Illinois law, but requires it, as the Court applied previously.[6] Inteliquent has produced no discovery to contravene these allegations and, even if it did, there is no plausible reason to believe any of Inteliquent's conduct at issue occurred in Minnesota or Indiana.

In an analogous case, *Foodcomm Int'l v. Barry*, 463 F. Supp. 2d 818 (N.D. Ill. 2006), this Court applied the Restatement factors to a conspiracy claim where the plaintiff was a non-resident. Based in part on the fact that, like here, all of the underlying conduct of "the alleged civil

---

[5]     When determining if Plaintiffs have adequately stated a claim for civil conspiracy, Plaintiffs are entitled to rely on circumstantial evidence in support of their claim. *See Domanus v. Locke Lord LLP*, 847 F.3d 469, 479 (7th Cir. 2017); *see also Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 895 (Ill. 1994) ("Such actions [for civil conspiracy], by their very nature, do not permit the plaintiff to allege, with complete particularity, all of the details of the conspiracy or the exact role of the defendants in the conspiracy.").

[6]     In its Motion, Inteliquent emphasizes the Court's prior ruling regarding Plaintiffs' claims under the Illinois's Consumer Fraud and Deceptive Business Practices Act ("ICFA"). (*See* Mot. at 3, 7.) The Court should not be swayed by Inteliquent's attempt to liken the instant analysis to that under the ICFA because the standards are fundamentally different. In particular, under the ICFA, the Court was required to find that "the circumstances that relate to the disputed transaction . . . occur[ed] primarily and substantially in Illinois." (ECF No. 147 at 8-9.) That standard differs from the instant analysis, which requires the Court to determine whether Illinois has the most significant relationship to the conduct at issue when measured, in a relative sense, against other interested states.

conspiracy occurred in Illinois," the Court found that Illinois law governed plaintiff's conspiracy claim despite the injury occurring in plaintiff's home state, California. *See id.* at 829–830. In so doing, this Court cited the holding in *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842 (7th Cir. 1999), to reason that "'[the location that the tort occurred] is the place that has the greatest interest in striking reasonable balance among safety, cost, and other factors pertinent to the design and administration of a system of tort law.'" *Id.* at 830 (alteration in original).

Like the conclusion reached in *Foodcomm*, Illinois law should govern Plaintiffs' conspiracy claim because Illinois clearly has the most significant relationship to Inteliquent's role in causing calls placed to rural LEC customers not being delivered or being degraded, while masked by fake ring tones. As alleged, Inteliquent participated in the fraudulent scheme in Illinois alone, which has a vested interest in regulating businesses that engage in unlawful schemes within its borders. *See, e.g.*, *Clark v. TAP Pharm. Prod., Inc.*, 798 N.E.2d 123, 129 (Ill. App. Ct. 2003) (noting that Illinois has a "legitimate interest . . . in ensuring that entities within its jurisdiction operate in accordance with Illinois law"). Additionally, it would be fundamentally unfair for Inteliquent, which is domiciled in Illinois, to reap the benefit of Illinois's civil conspiracy jurisprudence as a plaintiff in *Inteliquent, Inc. v. Free Conferencing Corp.*, 503 F. Supp. 3d 608, 644 (N.D. Ill. 2020), yet when the shoe is on the other foot, deny any plausible application of this state's conspiracy law to it. As such, the Court should uphold its prior ruling that a claim for civil conspiracy against Inteliquent under Illinois law has already been stated.

## IV.    PLAINTIFFS HAVE STATED A CLAIM FOR CIVIL CONSPIRACY WHETHER ILLINOIS LAW APPLIES OR NOT.

Even if the Court finds that Illinois law does not apply, the Court should find Plaintiffs have sufficiently stated a civil conspiracy claim against Inteliquent, or alternatively grant Plaintiffs

leave to amend their allegations to address Inteliquent's new position on choice of law.[7] Inteliquent takes an exceedingly narrow view of Minnesota and Indiana civil conspiracy law and argues both jurisdictions require that civil conspiracy claims be premised solely "'on underlying torts.'"  (Mot. at 9.)  Minnesota and Indiana law are not, however, so restrictive.

As noted above, under both Indiana and Minnesota law, a "[c]ivil conspiracy 'involves a combination of persons to accomplish either an ***unlawful purpose*** or a lawful purpose by ***unlawful means***.'"  *Dunbar*, 853 F. Supp. 2d at 848 (emphasis added) (quoting *Anderson*, 4 F.3d at 578); *see K.M.K.*, 908 N.E.2d at 663 ("A civil conspiracy is a combination of two or more persons who engage in a concerted action to accomplish ***an unlawful purpose*** or to accomplish some lawful purpose by ***unlawful means***.") (emphasis added).  Thus, the crux of a civil conspiracy claim in both jurisdictions is "an unlawful purpose" or a lawful purpose "by unlawful means."

With all reasonable inferences and facts construed in Plaintiffs' favor, *see Wagner v. Teva Pharms. USA, Inc.*, 840 F.3d 355, 357–58 (7th Cir. 2016) (setting forth standard applicable to motions under Rule 12(c)), Plaintiffs have more than adequately stated a plausible claim for civil conspiracy, as this Court has already found, regardless of which law applies.  First, the conduct that forms the basis of Plaintiffs' civil conspiracy claim is fraudulent and unlawful.  In January 2014, the FCC declared the use of fake ring tones to be illegal, and in the MSA, Inteliquent took responsibility for compliance with the FCC's Rural Call Completion Order.  (*See* SAC ¶¶ 112–15, 246–47; *see also In the Matter of Rural Call Completion*, Report and Order and Further Notice of Proposed Rulemaking, 28 F.C.C. Rcd. 16154 (2013).)  Despite the FCC's clear ruling in 2014, T-

---

[7]    It is patently unfair for Inteliquent to acquiesce in Illinois law in its first motion to dismiss, say nothing about choice of law as to conspiracy in its second motion to dismiss, and lull Plaintiffs into not making further amendments to its conspiracy claim in the SAC.  Since conspiracy was not previously amended, at a minimum, Plaintiffs should be afforded one amendment of this claim just as the Court gave Plaintiffs opportunity to amend the other claims it dismissed once.

Mobile not only continued its use of fake ring tones, it actually expanded its unlawful use of them as Inteliquent became its exclusive intermediate provider. (*See* SAC ¶¶ 11, 204). And, as alleged, this unlawful scheme to mask Defendants' failure to deliver calls to rural areas was "developed and implemented with knowledge and participation" of both T-Mobile ***and*** Inteliquent. (*See id.* ¶ 191; *see also id.* ¶¶ 206, 215, 219, 226, 239, 408, 411–12, 417–18, 421.) Thus, Plaintiffs have adequately alleged a claim that facially satisfies the requirements for civil conspiracy under either Indiana or Minnesota law, which is consistent with the Court's finding that Inteliquent allegedly routing T-Mobile's long distance calls make it plausible that Inteliquent knew about T-Mobile's failure to fix problems with its delivery of the calls, which was sufficient to state Count VIII. (*See* ECF 91 at 25.)

Contrary to Inteliquent's assertions, Minnesota and Indiana law do not bar Plaintiffs from holding Inteliquent liable for its role in perpetuating the fraudulent scheme that underlies the violations of the Act. With regard to Indiana, Inteliquent relies upon the following: "Indiana law 'limits successful civil conspiracy claims to actions based in tort[.]'" (Mot. at 9). Inteliquent's selective editing of the Court's ruling in *K.M.K. v. A.K.*, 908 N.E.2d 658, 664 n.4 (Ind. Ct. App. 2009), is misleading. The case expressly refuses to reach the conclusion that Inteliquent offers it for. Instead, the full quote acknowledges the possibility that claims, such as the instant one, may be viable under Indiana law: "While Indiana authority appears to limit successful civil conspiracy claims to actions based in tort, we leave for another day the question of whether one could successfully allege a civil conspiracy in an action that is based upon another legal theory." *Id.* At least one other federal court has similarly noted the lack of Indiana law that would limit civil conspiracy to actions solely based in tort. *See Carter v. State Farm Fire & Cas. Co.*, 850 F. Supp. 2d 946, 952 (S.D. Ind. 2012) ("Defendants have referenced no Indiana authority which has opined

that a tort is a requirement to pursue a civil conspiracy theory to the exclusion of any other type of underlying civil action.").

Inteliquent's analysis of Minnesota law fares no better. First, civil conspiracy claims in Minnesota do not have to be based solely on tort, such claims can also be based on agreements to commit a criminal act or an intentional tort. *See Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1078 (D. Minn. 2013) ("[P]laintiff is required to establish that multiple defendants agreed to commit a criminal act or intentional tort."); *Milavetz, Gallop & Milavetz, P.A. v. Hill*, No. CX-98-140, 1998 WL 422229, at *4 (Minn. Ct. App. July 28, 1998) ("Civil conspiracy . . . must be based on a criminal act or an intentional tort."). Plaintiffs' allegations that the fake ring tone scheme was a massive fraud scheme, and that Inteliquent actively participated in submitting false rural call completion information to the FCC in furtherance of the scheme, is more than sufficient at this pleading stage, as this Court already found. *See, e.g.*, *E. Trading Co. v. Refco, Inc.*, 229 F.3d 617, 625 (7th Cir. 2000) ("[F]raud is an intentional tort."). (*See also, e.g.*, SAC ¶¶ 1, 5, 9, 80, 155, 297, 311; ECF 91 at 25.)

Furthermore, at least one federal court has found that violations of the Act sound in tort. *See Qwest Commc'ns. Co. v. Aventure Commc'ns. Tech., LLC*, 86 F. Supp. 3d 933, 1018 (S.D. Iowa 2015) (noting that defendants were "jointly and severally liable for violations of the Communications Act, the claims under which sound in tort").

In addition to Inteliquent's inaccurately restrictive portrayal of conspiracy under Minnesota law, its reliance upon *Bloom v. Hennepin Cnty.*, 783 F. Supp. 418 (D. Minn. 1992), and *Strategic Energy Concepts, LLC v. Otoka Energy, LLC*, No. 16-463 (MJD/BRT), 2016 WL 7627040 (D. Minn. Nov. 18, 2016), is misplaced. The primary concern in both *Strategic* and *Bloom* was that the underlying claims were not similar, and plaintiffs were attempting to use conspiracy "to weld

13

into a single claim actions based upon contract and tort or actions running against different defendants." *Bloom*, 783 F. Supp. at 446; *see Strategic Energy Concepts*, 2016 WL 7627040, at *17. However, here, Plaintiffs are not trying to "weld together" unrelated acts; the SAC describes interrelated activities by and among T-Mobile and Inteliquent that were part and parcel of the fake ring tone scheme exposed by the Consent Decree. *See ECTG Ltd. v. O'Shaughnessy*, No. CIV. 14-960 (DSD/JJK), 2014 WL 6684982, at *4 (D. Minn. Nov. 25, 2014) (finding that plaintiff stated a claim for civil conspiracy where defendants all "played a part in planning and establishing" the scheme and "the complaint directly implicates [defendants] in the scheme").

In sum, regardless of which law applies, Plaintiffs have more than adequately alleged a claim for civil conspiracy against Inteliquent.[8]

## V.    THE ACT IMPLICITLY ESTABLISHES SECONDARY LIABILITY.

Because Plaintiffs have alleged civil conspiracy under Illinois law, Inteliquent's analysis of secondary liability for a claim of federal civil conspiracy is irrelevant. Nevertheless, secondary liability is available under the Act. Inteliquent's broad assertion that "[f]ederal statutes do not

---

[8]    Alternatively, the Court should deny the Motion as premature to afford Plaintiffs the opportunity to obtain discovery concerning Inteliquent's actions in Illinois. In *Aon plc v. Heffernan*, this Court noted that "[d]ue to the significance of the choice-of-law determination as a threshold issue," which turned "mostly on the fact-intensive question of which state possesses the greater interest in the disputed matters . . . , the parties proceeded with discovery and briefing on the choice-of-law question before any preliminary injunction hearing or other proceedings on the merits." No. 16-CV-01924, 2017 WL 478270, at *2 (N.D. Ill. Feb. 6, 2017). The Court should likewise abstain from making a case dispositive ruling premised on a choice of law issue, until the evidentiary record is more developed. *See id.*; *see also Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 490–91 (D.N.J. 2009) (denying motion to dismiss where the court was unable to make a choice-of-law ruling due to inadequate factual record)).

allow for secondary liability unless expressly provided," is misleading and not applicable here. (Mot. at 5).

In *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003), the Seventh Circuit recognized that "a statute's structure may show that secondary liability has been established implicitly." The statutory language of two sections of the Act provide the necessary basis for implying such secondary liability. Specifically, 47 U.S.C. § 206 states that liability attaches to any common carrier that may "cause or ***permit to be done***, any act, matter, or thing in this chapter prohibited or declared to be unlawful," (emphasis added) and 47 U.S.C. § 217 explicitly provides for agency liability. Thus, a fair reading of the statutory framework does in fact implicitly provide for secondary liability for actors such as Inteliquent, who is alleged to have knowingly allowed and participated in T-Mobile's violations of the Act. (*See* SAC ¶¶ 226, 237-42 (alleging that Inteliquent "engaged in, or participated in, routing practices that impeded the delivery of calls to rural America" including "the use of fake ring tones to reduce the volume of calls routed to areas with higher terminating access rates and/or mask call completion failures").) This once again supports Plaintiffs' position that Inteliquent can be held liable under common law conspiracy for its role in the alleged violations of the Act.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs, on behalf of themselves and a class of similarly-situated companies, respectfully request that the Court deny Inteliquent's Motion.

Submitted on this 6th day of October, 2021.

*/s/   David T.B. Audley*
David T.B. Audley (Bar No. 6190602)
Mia D. D'Andrea (Bar No. 6307966)
**CHAPMAN AND CUTLER LLP**
111 West Monroe Street
Chicago, IL 60603-4080
Tel. 312-845-2971
Email: audley@chapman.com
Email: dandrea@chapman.com

Cathy A. Hinger (*pro hac vice*)
G. David Carter (*pro hac vice*)
Victoria A. Bruno (*pro hac vice*)
Kathleen O. Gallagher (*pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
2001 K Street, NW Suite 400 South
Washington, DC  20006
Tel.:  202-857-4489
Fax:  202-261-0029
Email:  cathy.hinger@wbd-us.com
Email:  david.carter@wbd-us.com
Email:  victoria.bruno@wbd-us.com
Email:  katie.gallagher@wbd-us.com

Kurt D. Weaver (*pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: 919-755-8163
Email: kurt.weaver@wbd-us.com

*Counsel for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this the 6th day of October, 2021, I served the foregoing **Plaintiffs' Opposition to Inteliquent, Inc.'s Rule 12(c) Motion for Judgment on the Pleadings** via the ECF system on parties that have consented to the same in accordance with applicable Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Northern District of Illinois.

By:    _/s/  David T.B. Audley_____