THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRAIGVILLE TELEPHONE CO. d/b/a ADAMSWELLS; and CONSOLIDATED TELEPHONE COMPANY d/b/a CTC, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:19-cv-07190 |
| vs. | ) ) | Judge John Z. Lee |
| T-MOBILE USA, INC.; and INTELIQUENT, INC., | ) ) ) ) | |
| Defendants. | ) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLARIFICATION**

TMUS respectfully submits this reply memorandum of law in support of its Motion for Clarification Concerning the Court's Memorandum Opinions and Orders Dismissing in Part Plaintiffs' First and Second Amended Complaints (the "Clarification Motion" or the "Motion").[1]

**PRELIMINARY STATEMENT**

The Clarification Motion raises a single, straightforward issue: it asks the Court to clarify Plaintiffs may not pursue their claim that the use of LRBT itself prevented calls from completing and thus caused Plaintiffs to lose access fees, since that theory was not plausibly pled in the SAC. Very little in Plaintiffs' opposing brief [ECF No. 211] ("Opp. Mem.") addresses that issue. Instead, most of Plaintiffs' brief is devoted to strawman arguments that try to cast the Motion as something it is not. Chief among them is Plaintiffs' contention that the Clarification Motion is really a discovery motion in disguise. It is not.

---

[1] Capitalized terms used but not defined in this reply brief have the meaning given to them in TMUS's moving brief [ECF No. 196].

To begin with, since Magistrate Judge Gilbert issued his September 1, 2021 Order [ECF No. ECF. No. 148] (the "Discovery Order"), TMUS has not withheld any discovery solely on the basis of the ruling sought in the Clarification Motion. On the contrary, after entry of the Discovery Order, TMUS voluntarily amended its objections and responses to Plaintiffs' document requests (withdrawing a number of its previously asserted objections) and has steadfastly complied with the Discovery Order.

Moreover, the Clarification Motion seeks no discovery ruling whatsoever—much less, as Plaintiffs wrongly contend (Opp. Mem. at 11-12), a protective order. Indeed, although the outcome of the Clarification Motion may impact discovery going forward, none of the pending discovery motions turns solely on how this Court will rule on this Motion, because TMUS's arguments in those discovery motions are not based solely on the issue raised by this Motion.[2] Plaintiffs also ignore that the outcome of this Motion will impact **all aspects of this case**, particularly class certification, experts, summary judgment briefing and the ultimate disposition of the litigation.

Another of Plaintiffs' incorrect strawman arguments is that the Motion is really one for reconsideration of the Second Mem. Op. Unlike the Court's rulings on the FAC, in its decision on Defendants' motion to dismiss the SAC the Court did not rule (one way or the other) on whether the claim that LRBT itself caused Plaintiffs to lose access charges, as alleged in the SAC, is or is not plausible under the standards of *Iqbal* and *Twombly*. Thus, there is no adverse ruling TMUS is asking the Court to reconsider.

---

[2] For largely the same reasons, Plaintiffs are also wrong in claiming (Opp. Mem. at 9-10) the Motion is an appeal of the Discovery Order. TMUS is not challenging the rulings in the Discovery Order, including Magistrate Judge Gilbert's finding that discovery should not be limited "only to matters relevant to the alleged depletion of Plaintiffs' customer services resources . . . ." ECF 148 ¶ 1. Rather, the Clarification Motion simply seeks a ruling as to whether a particular claim is still in the case.

Plaintiffs are also wrong in arguing that a motion for clarification is an improper means to obtain substantive (as opposed to more ministerial) relief. Courts can and do clarify their prior orders in a manner that effectuates substantive relief.

Plaintiffs also argue the Court is not empowered to make the ruling TMUS seeks because, on a motion to dismiss, a court cannot dismiss only part of a claim. What Plaintiffs studiously ignore, however, is that their contention LRBT itself caused them to lose access fees *is a claim*. As the Seventh Circuit has explained, a claim is a set of facts producing one injury. With regard to the use of LRBT, the SAC purports to plead two factually distinct claims, one of which this Court found in the First Mem Op. was implausible but which it did not expressly address in the Second Mem. Op.

Finally, what little Plaintiffs have to say on the actual merits of the Motion is misplaced. Plaintiffs do not deny that, in the First Mem. Op., this Court found Plaintiffs' contention that LRBT itself caused them to lose access fees was implausible and that "depletion of customer services" (Plaintiffs' second claim about the use of LRBT) was the "sole injury Plaintiffs have successfully pled." ECF 91 at 9, 10, n.5. Nor do Plaintiffs even try to grapple with the clear import of this Court's findings in the Second Mem. Op. that LRBT "is 'a symptom' of the underlying call completion problems that T-Mobile had failed to fix" and "it ultimately was due to those problems . . . that Plaintiffs could not recover access charges." ECF 147 at 6-7. Rather, Plaintiffs argue those findings only concern TMUS's intent. That is no answer, however, because the findings in the Second Mem. Op. indisputably apply with equal force to the plausibility of Plaintiffs' contention that (a) LRBT was more than just a symptom of underlying call completion problems

TMUS allegedly failed to fix and (b) was also a direct cause of Plaintiffs' alleged lost access charges.[3]

## ARGUMENT

I. **The Court Should Clarify Plaintiffs Cannot Pursue Their Claim That The Use Of LRBT Itself Prevented Calls From Completing, And Thus Caused Plaintiffs To Lose Access Fees, Because That Claim Is Implausible**

In its moving brief, TMUS explained why it is reasonable to infer the Court concluded in the Second Mem. Op. that the use of LRBT (*i.e.*, ***a symptom*** of underlying call completion problems) could not plausibly have also been ***a cause*** of calls completion failures and thus lost access fees. There is no question that is what the Court expressly found in the First Mem. Op.:

> Without false ringing, callers would have heard dead air or other "symptoms" of those [call connection] issues . . . . If anything, common sense dictates that a caller who encountered ringing would have stay on the line longer than one who met with dead air . . . . Indeed, consistent with that logic, the complaint is bereft of any "factual content" showing that Plaintiffs have lost accesses charges as a result of the alleged false ringing.

ECF 91 at 9. The Court went further, finding that "the depletion of customer services is the sole injury Plaintiffs have successfully pled" in the FAC. *Id.* at 10, n.5.[4]

---

[3] Plaintiffs also claim, gratuitously, that discovery somehow shows TMUS and its co-defendant intended to deprive Plaintiffs of access charges. Opp. Mem. at 14-15. Plaintiffs' position relies in part on the contents of a third-party production that they received in December 2021 but have not yet shared with Defendants. ECF 210 at 4. Furthermore, Plaintiffs completely misrepresent the documents, which concern efforts to combat fraudulent activity involving third parties to "stimulate" or "pump" calls to high cost areas. *See* https://www.fcc.gov/general/traffic-pumping. That initiative had nothing to do with the use of LRBT or the call completion problems that were the subject of the FCC's consent decree with TMUS. It also had nothing to do with Plaintiffs, who have represented they are not participants in such stimulation and pumping activity.

[4] Plaintiffs argue that because the SAC superseded the FAC, the First Mem. Op. itself is somehow "no longer operative" and "mooted" (Opp. Mem. at 13). Putting aside that Plaintiffs cite no authority for this nonsensical proposition (amended pleadings supersede prior pleadings, not decisions about prior pleadings), TMUS is not arguing that the findings in the First Mem. Op. are binding with respect to the SAC, but merely aid in interpreting the meaning of the Second Mem. Op. insomuch as the First Mem. Op. informs and places into context the Court's rulings in the Second Mem Op.

Then, in the Second Mem. Op., the Court further expanded on its reasoning (albeit in the context of dismissing with prejudice Plaintiffs' RICO claims):

> [T]he FCC recognized that the use of false ring tones is "***a symptom" of the underlying call completion problems*** that T-Mobile had failed to fix as of 2016. *Consent Decree*, 33 FCC Rcd. at 3737. Indeed, were it not for those problems, there would have been no dead air to fill with false ringing. ***And it ultimately was due to those problems***, which Plaintiffs attribute to T-Mobile's core strategy of minimizing its routing costs, ***that Plaintiffs could not recover access charges***. *See* 2d. Am. Compl. ¶¶ 78–81.

ECF 147 at 6-7 (emphasis added).

Plaintiffs argue these finding were made only in connection with the question of whether the SAC adequately pleaded "the requisite intent elements of wire fraud to sustain RICO claims, or tortious interference." Opp. Mem. at 9; *see also id.* at 3. To be sure, the above-quoted findings in the Second Mem. Op. were made in the context of the Court's dismissal with prejudice of the RICO claims and a discussion of the intent element. But the Court's language is not only about intent and, on its face, applies with equal force to Plaintiffs' claim that LRBT itself caused them to lose access charges.

Plaintiffs argue that in the Second Mem. Op. the Court must have "accepted the new allegations" concerning supposed FCC's findings about the "rule [*sic*] fake ring tones played in either causing or masking call completion failures as true . . . ." Opp. Mem. at 9. That explanation does not hold up. It is clear from the discussion in the Second Mem. Op. that the Court fully appreciated what the FCC's findings were, but concluded they were not what Plaintiffs represented them to be. The Court did not conclude the FCC made findings about the "r[o]le fake ring tones played ***in causing*** . . . call completion failures." On the contrary, the Court found "the FCC recognized that the use of false ring tones is 'a symptom' of the underlying call completion problems that T-Mobile had failed to fix as of 2016." Second Mem. Op. at 6, quoting *Consent*

5

*Decree*, 33 FCC Rcd. at 3737. Simply put, a cause and a symptom are entirely different things. As a matter of basic logic, a symptom of call completion problems does not cause them. Plaintiffs' claim to the contrary is implausible.

## II. Plaintiffs' Contention That LRBT Caused Them To Lose Access Charges *Is* A Claim That The Court Has The Authority to Dismiss

Plaintiffs contend the Motion is procedurally defective because it supposedly seeks dismissal of a damages theory rather than a claim. Opp. Mem. at 6-7. In so arguing, Plaintiffs ignore that the "damages theory" at issue ***is a claim*** and that a single count can, as is the case with Count I (and Count VII) of the SAC, contain multiple claims.

As the Seventh Circuit has explained, a claim for relief is "[o]ne set of facts producing one injury." *N.A.A.C.P. v. American Family Mut. Ins. Co.*, 978 F.2d 287, 292 (1992). To show a claim is facially plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, a plaintiff must allege a plausible causal link between the defendant's alleged misconduct and the injury allegedly incurred. *See Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2016 WL 754731, at *10 (N.D. Ill., Feb. 23, 2016).

Courts within this District routinely grant dismissal of parts of a count that state legally defective claims. *See*, *e.g.*, *United States ex rel. Myers v. Am.'s Disabled Homebound, Inc.*, No. 14 C 8525, 2018 WL 1427171, at *4 (N.D. Ill. Mar. 22, 2018) (dismissing portion of count that was insufficiently pled); *Dollens v. Zionts*, No. 01 C02826, 2002 WL 1632261 (N.D. Ill. Jul. 22, 2002) (dismissing parts of count that failed to "plead a legally cognizable theory of damages"); *see also Balmes v. Illinois Bell Tel. Co.*, No. 15 C 2685, 2016 WL 1019764, at *3 (N.D. Ill. Mar. 15, 2016) ("[Plaintiff] also contends that it is inappropriate for the court 'to scrutinize [his] complaint by 'line item''—that is, to dismiss a portion of a given claim as untimely while allowing

6

the other portion to proceed. But that is not even a remarkable practice, much less an inappropriate one.") (alterations in original, internal citations omitted)); *Carter v. Pallante*, 256 F. Supp. 3d 791, 805–06 (N.D. Ill. 2017) (dismissing preempted part of "deceptive trade practice claim") (Lee, J.).[5]

It is, in fact, common for courts in this District to dismiss portions of counts in a variety of circumstances: where, as here, a portion of a count is insufficiently pled (*see*, *e.g.*, *Burger v. Spark Energy Gas, LLC*, 507 F. Supp. 3d 982, 991 (N.D. Ill. 2020) ("The Court also dismisses without prejudice the breach of contract claim (Count III) to the extent it is based on breach of an express provision that the variable rate 'may vary according to market conditions.'"))[6]; where a portion of a count is barred by the statute of limitations (*see*, *e.g.*, *Illinois Bell Tel.*, 2016 WL 1019764, at *3 (collecting cases))[7]; where a portion of a count is preempted (*see*, *e.g.*, *Carter*, 256 F. Supp. 3d at

---

[5] Other courts share this view. *See*, *e.g.*, *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 255 F. Supp. 2d 351, 366-67 (E.D. Pa. 2002) (dismissing part of one count to the extent it concerned allegedly false claims submitted prior to an amendment of the False Claims Act), *aff'd*, 473 F.3d 506 (3d Cir. 2007); *In re Credit Default Swaps Antitrust Litig.*, No. 13md2476 (DLC), 2014 WL 4379112 (S.D.N.Y. 2014) (dismissing part of claim seeking damages prior to December 2008 because the "Complaint does not plausibly allege injury-in-fact as early as the date specified").

[6] *See also Dochak v. Polskie Linie Lotnicze LOT S.A.*, 189 F. Supp. 3d 798, 806 (N.D. Ill. 2016) (dismissing various counts "to the extent they seek redress for breach of contract under" provision that was not incorporated into the agreement); *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 917 (N.D. Ill. 2013) ("Thus, to the extent that Plaintiffs base their ICFA and ADTPA claims on alleged misrepresentations made by Unilever, the Court dismisses those claims. To the extent that Plaintiffs base their ICFA and ADTPA claims on Unilever's failure to disclose and warn of a defect in the Hair Treatment, the Court declines to dismiss those claims."); *Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp. 2d 951, 963–64 (N.D. Ill. 2002) ("Arnold's breach of contract claim (Count VIII), to the extent it relies on the credo, is dismissed . . . . The residue of the contract claim, grounded on the sexual harassment policy, survives.").

[7] *See also Guster-Hines v. McDonald's USA, LLC*, No. 20-CV-00117, 2021 WL 2633303, at *12 (N.D. Ill. June 25, 2021) ("[Plaintiff's claims] are dismissed to the extent described above: Plaintiffs have plausibly alleged a policy of racially discriminatory promotion, demotion, and termination . . . , but time-barred conduct prior to March 5, 2019 . . . cannot support their claims"); *Gentleman v. Mass. Higher Educ. Assistance Corp.*, 272 F. Supp. 3d 1054, 1074 (N.D. Ill. 2017) ("[The motion to dismiss is] granted as to Count II insofar as it alleges violations . . . occurring before March 13, 2015 and denied as to violations occurring after that date").

805–06 (Lee, J.))[8]; where a portion of a Count is barred by other legal doctrines (*see, e.g.*, *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 767 F.Supp.2d 880 (N.D. Ill. 2011) (dismissing portion of all counts to the extent premised on damages barred by filed-rate doctrine))[9].

Here, the claim of injury that TMUS asks this Court to clarify is implausible is well within the Seventh Circuit's definition of what constitutes a claim. Plaintiffs allege a set of facts (*i.e.*, that the use of LRBT itself caused calls to their customers not to complete) and contend those facts caused them injury (*i.e.*, lost access charges). Indeed, Count I of the SAC sets forth two distinct claims concerning the use of LRBT, allegedly causing two different injuries: first, that LRBT caused TMUS customers making wireless calls to Plaintiffs' customers to hang up "prematurely," depriving Plaintiffs of access fees they allegedly would have collected had the calls completed; and second, that LRBT masked purported issues with call completion, leading to depletion of customer service resources. In the First Mem. Op. (at 9-10), this Court discussed these two claims separately. While the Court did not dismiss Count I because it found the FAC alleged sufficient facts to nudge Plaintiffs' second theory "from conceivable to plausible," the Court made clear this was "the sole injury Plaintiffs have successfully pled." *Id*. at 10, n.5.[10] Thus, the Clarification

---

[8] *See also O'Connor v. Ford Motor Co.*, No. 19-CV-5045, 2021 WL 4480743, at *7 (N.D. Ill. Sept. 30, 2021); *Inmar, Inc. v. Vargas*, No. 18-CV-2306, 2018 WL 6716701, at *11 (N.D. Ill. Dec. 21, 2018); *Cronimet Holdings, Inc. v. Keywell Metals, LLC*, 73 F. Supp. 3d 907, 920-21 (N.D. Ill. 2014) ("To the extent that the claim alleges a conspiracy related to claims that are being dismissed—breach of the non-compete agreements, misappropriation of confidential information, unfair competition, and unjust enrichment—those allegations are also dismissed. . . . the remainder of [the] civil conspiracy claim related to breach of fiduciary duties and trade secret violations will proceed to discovery.").

[9] *See also Kesse v. Ford Motor Co.*, No. 14 C 6265, 2015 WL 920960, at *3 (N.D. Ill. Mar. 2, 2015) (dismissing portions of counts that sought damages barred by economic loss doctrine); *Smith v. BOC Grp. PLC*, No. 00 C 7909, 2001 WL 477237, at *5 (N.D. Ill. May 4, 2001) (dismissing negligence claim premised on failure to engage in post-sale warning of defect, as there is no such duty).

[10] This is not an issue for Counts II and III of the SAC, because those Counts do not concern the use of LRBT. It is an issue for Count VIII, the conspiracy count.

Motion does not ask this Court for "partial dismissal of legal theories" (Opp. Mem. at 6), but rather seeks clarification that, as pleaded in the SAC, Plaintiffs' claim that the use of LRBT itself caused them to lose access fees is implausible and thus is not part of this lawsuit.[11]

Plaintiffs' authorities are inapposite. In each of the three cases they cite, the courts addressed a single set of facts giving rise to a single injury—in other words, a single claim. For example, in *BBL, Inc. v. City of Angola*, the district court considered whether certain zoning ordinances were content-neutral regulations for purposes of the First Amendment, and granted defendants' motion for judgment on the pleadings as to only certain elements of the doctrinal test. 809 F.3d 317, 323 (7th Cir. 2015). The Seventh Circuit observed this may have been improper claim splitting. *Id.* at 325 (but finding the issue irrelevant to the interlocutory appeal before the court). Here, TMUS does not seek dismissal of an element of any claim, but rather asks the Court to clarify that a distinct claim is implausible.

In *Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021), the plaintiff alleged a single injury-producing event—unauthorized robocalls—but asserted defendants were vicariously liable under three different legal theories of agency. The court held it did not need to evaluate each legal theory alleged because plaintiff stated a plausible claim for relief under an actual authority theory of liability. *Id.* at 587. In other words, *Bilek* involved one set of facts and one injury but different reasons why defendants were *legally* liable for the harm, which is different than Plaintiffs' factual assertion that the use of LRBT itself deprived them of access charges.

---

[11] Even if there were something to Plaintiffs' argument (and there is not), this Court could strike the damages claim, *sua sponte*, under Rule 12(f). Doing so would have the "advantage of expediting litigation that would otherwise be comparatively bogged down and protracted." *Sojo's Studios, Inc. v. Citizens Ins. Co. of Am.*, No. 20 C 4780, 2021 WL 837623, at *3 (N.D. Ill. Mar. 4, 2021) (striking regulatory estoppel theory where court concluded the pleadings relating to the theory were implausible).

And in *Hobbs v. Gerber Products Co.,* No. 17 CV 3534, 2018 WL 3861571 (N.D. Ill. Aug. 14, 2018), plaintiff alleged defendant's baby food marketing was a violation of the Illinois consumer protection statute, a breach of express warranty and a fraudulent misrepresentation. Because each of those legal theories was "premised on the same set of operative facts causing the same injury," and would not entitle plaintiff to three different recoveries, the complaint alleged only a single claim that Gerber's marketing materials defrauded plaintiff. *Id.* at *4 (citing *N.A.A.C.P.*, 978 F.2d at 292).[12] Here, as noted, Count I of the SAC (and, of necessity, Count VIII (civil conspiracy)) asserts two distinct claims, one of which is implausible (as the Court ruled in dismissing the FAC in part) and therefore should not be part of this case.

In short, this Court can find a damages claim to be implausible on a motion to dismiss under Rules 12(b)(1) and/or 12(b)(6) (as it clearly did in the FAC) and dismiss it on that basis.

### III. The Clarification Motion Is Not A Discovery Motion

In an effort to distract the Court, Plaintiffs attempt to cast the Clarification Motion as being about discovery only. It is not. They call the Motion an untimely appeal of the Discovery Order and a motion for a protective order. It is neither of those things. They also accuse TMUS of discovery misconduct. That accusation is untrue.

The Clarification Motion seeks no discovery ruling. The Motion acknowledges that a ruling would likely assist the parties (and potentially Magistrate Judge Gilbert) with discovery going forward, but it does not ask the Court to quash or grant any pending discovery or make any

---

[12] Plaintiffs wrongly equate the factual theories of injury alleged in the SAC with the concept of a "legal theory," asserting Rule 12(b)(6) does not permit dismissal if a valid claim for relief is supported by any legal theory. Opp. at 6. But, as *Hobbs* itself explains, a claim is the operative set of facts causing an injury, while a legal theory is the reason a plaintiff is allegedly entitled to damages under the law. *Hobbs*, 2018 WL 3861571 at *4. Plaintiffs allege two distinct claims, or sets of facts, concerning how LRBT purportedly caused them injury, but allege entitlement to damages for both under the same legal theories—a purported violation of the federal Communications Act and common law conspiracy.

ruling about potential future discovery. Indeed, a ruling would assist the parties and the Court with ***all*** aspects of the case, including expert testimony, class certification, summary judgment briefing and the ultimate resolution of the case. The Motion is also self-evidently not, as Plaintiffs wrongly contend (Opp. Mem. at 9-10), an appeal of the Discovery Order. Although a ruling on the Clarification Motion may impact how the Discovery Order is applied (if that ever becomes necessary) in the future, the Motion does not ask this Court to change any aspect of the Discovery Order, including Magistrate Judge Gilbert's holding that discovery should not be limited "only to matters relevant to the alleged depletion of Plaintiffs' customer services resources . . . ." ECF 148 ¶ 1.[13]

Moreover, although Plaintiffs imply TMUS is withholding discovery in violation of the Discovery Order (Opp. Mem. at 5), that is untrue.[14] In fact, shortly after the Discovery Order was entered, TMUS amended its objections and responses to Plaintiffs' document requests, withdrawing a number of objections in light of that ruling. In compliance with the Discovery Order, TMUS has not limited its productions based solely on the plausibility of Plaintiffs' damages claims. Consequently, none of the pending discovery motions turn solely on how the Court will rule on the Clarification Motion.[15]

---

[13] Plaintiffs accuse TMUS of "styl[ing]" the Motion "as one for 'clarification' to avoid falling within the ambit of the discovery supervision referral, in a transparent attempt to judge-shop for a different ruling than the one issued by Magistrate Judge Gilbert in the" Discovery Order. Opp. Mem. at 1; *see also id.* at 9-10. This makes no sense; there is no discovery dispute the Motion seeks to resolve and thus no reason why the Motion would be referred for discovery supervision. The Motion is styled as one for clarification because clarification is precisely what TMUS seeks. It is hardly surprising that a motion seeking clarification of an order would be decided by the judge who issued that order.

[14] The TMUS discovery motion Plaintiffs cite for this contention [ECF 177] says nothing of the sort. And although Plaintiffs cite to their own discovery filing containing such assertions [ECF 199-1], they are every bit as false as the ones made in Plaintiffs' brief in opposition to the Clarification Motion.

[15] Plaintiffs complain that TMUS "will not produce discovery unless it expressly relate[s] [*sic*] to fake ring tones, call completion issues, or T-Mobile's admission that it failed to oversee known problems with its intermediate service provider." Opp. Mem. at 5. Although it is unclear what (apart from their own self-

11

In any case, a ruling on the Motion will impact far more than discovery. For example, Plaintiffs may very well attempt to support their implausible claim with one or more expert witnesses. That may require TMUS to retain one or more expert witnesses in rebuttal. It is not an answer that Plaintiffs' experts would be subject to a *Daubert* challenge or may be unable to manufacture an issue of fact to survive summary judgment. The damage the Supreme Court intended to guard against in *Twombly*—protecting defendants against needless cost and distraction defending implausible claims (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557-558 (2007))—will have already been done. Likewise, judicial resources will be wasted ruling on *Daubert* and summary judgment motions on an implausible claim.

As another example, a ruling on the Clarification Motion could impact the definition of the putative class and thus certification issues. There is a significant difference between a class of rural LECs who supposedly lost access charges because TMUS's use of LRBT itself caused calls not to complete (an implausible claim) and a class that supposedly lost access charges because of call completion problems for which LRBT was a symptom (the claim this Court found was plausibly alleged in the SAC).[16]

---

serving and inaccurate discovery letter) Plaintiffs rely on to say this, such a limitation would hardly be objectionable. The use of LRBT, and the alleged failure to oversee intermediate service providers, are precisely what the surviving counts of the SAC are about. *See* ECF No. 94 ¶¶ 373-382 (Count I) and 383-402 (Counts II and III). Count VIII, the conspiracy claim, is not an independent tort and, by definition, is limited to the underlying torts sufficiently pleaded in the SAC (*i.e.*, Counts I-III). *Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019).

[16] Plaintiffs argue that because TMUS does not contest they can seek lost access charges based on TMUS's alleged failure to correct call completion problems, the clarification TMUS seeks will not "narrow discovery" or "streamline the case." Opp. Mem. at 3, n. 1. But to state the obvious, there is a world of difference between a lawsuit in which lost access charges are sought on the basis that LRBT itself "prevented" "billions of calls" "from completing" (ECF 182 at 1) and one in which lost access charges are sought only for calls that did not complete due to TMUS's alleged failure to adequately supervise intermediate carriers.

### IV. The Motion Is Not One For Reconsideration

Although Plaintiffs argue the Motion is also a disguised reconsideration motion (apparently of multiple orders, including the Second Mem. Op. 9 (Opp. Mem. at 7-9)), they readily admit the Second Mem. Op. "did not address whether Plaintiffs plausibly alleged *causation* with respect to terminating access charge damages" (emphasis in original) and even go so far as to say the Court "ignored" TMUS's request for relief in that regard. Opp. Mem. at 3.

Simply put, there was no adverse ruling for TMUS to ask this Court to reconsider. Plaintiffs appear to assume the Court's silence was an endorsement of the plausibility of their claim that the use of LRBT itself caused them to lose access fees. Respectfully, TMUS does not believe that assumption is reasonable but, in any case, it hardly renders the Motion one for reconsideration. Nor is it true that TMUS "advanced the same arguments" here as it did in its motion to dismiss the SAC. Opp. Mem. at 8; *see also id.* at 2-3. Rather, TMUS's arguments on this Motion are based on TMUS's reading of the First and Second Mem. Ops. and what TMUS believes can be most logically inferred from them.

### V. Substantive Relief Can Be Granted On A Motion For Clarification

Finally, Plaintiffs argue "a motion for clarification is typically only used to address administrative or ministerial issues." Opp. Mem. at 13. However, none of the cases Plaintiffs cite for this proposition state or even suggest that. In *Travis v. City of Chicago*, No. 10 CV 3011, 2014 WL 7177633, at *2-6 (N.D. Ill. Dec. 16, 2104), for instance, the court clarified that it denied the individual defendants' summary judgment claim with respect to plaintiff's discrimination claim, but granted the individual defendants' summary judgment motion as to plaintiff's hostile work environment claim. Similarly, in *U.S. Equal Emp. Opportunity Commission v. Source One Staffing, Inc.*, No. 11 cv 6754, 2015 WL 6872507, at *2 (N.D. Ill. Nov. 9, 2015), the court granted

13

defendant's motion to clarify defendant's obligations under a court-approved consent decree after both parties offered competing interpretations of it.

In fact, courts in this District have repeatedly granted motions to clarify the substantive application of their prior orders. *See*, *e.g.*, *Beverly v. Abbott Laboratories*, No. 17 C 5590, 2020 WL 10486003, at *3 (N.D. Ill. Oct. 27, 2020) (clarifying whether, despite court's prior order prohibiting lost wage damages, plaintiff could nonetheless pursue damages based on his alleged loss of earnings potential with respect to his race discrimination and defamation claims); *Kenall Mfg. Co. v. Cooper Lighting, LLC*, 17 C 4575, 2019 WL 1620019, at *3-5 (N.D. Ill. Apr. 16, 2019) (granting motion to clarify the scope of the court's prior dismissal of plaintiff's patent infringement claims, based on the construction of the parties' license agreement); *Equal Emp. Opportunity Commission v. AT&T Tech., Inc.*, No. 78 C 3951, 1988 WL 4996, at *1 (N.D. Ill. Jan. 20, 1988) (clarifying the court's opinion regarding extent to which class members could recover in light of plaintiffs' argument that court's opinion could unfairly limit relief available to plaintiffs); *see also* TMUS's moving brief at 10.

In short, the relief sought by TMUS is entirely appropriate for a motion for clarification.[17]

## CONCLUSION

For the foregoing reasons and those set forth in its moving brief, TMUS respectfully requests that the Court grant the Clarification Motion.

---

[17] Plaintiffs' attorneys fee request does not merit mention, except to note that the procedural rules they cite—Fed. R. Civ. P. 26(c)(3) and 37(a)(5)(B)—are inapplicable because the Clarification Motion is neither a motion for a protective order nor one to compel discovery.

Dated: January 28, 2022

/s/ Nigel F. Telman
Nigel F. Telman
PROSKAUER ROSE LLP
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602
(312) 962-3550
(312) 962-3551 (fax)
ntelman@proskauer.com

Bradley I. Ruskin (admitted *pro hac vice*)
Michael T. Mervis (admitted *pro hac vice*)
Baldassare Vinti (admitted *pro hac vice*)
PROSKAUER ROSE LLP
11 Times Square
New York, New York 10036
(212) 969-3249
(212) 969-2900
bruskin@proskauer.com
mmervis@proskauer.com
bvinti@proskauer.com

**CERTIFICATE OF SERVICE**

I, Nigel F. Telman, one of the attorneys for Defendant T-Mobile USA, Inc., certify that I caused a copy of the foregoing REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLARIFICATION to be served by email via the Court's ECF System, upon counsel for Plaintiffs:

David T.B. Audley
Mia D. D'Andrea
Chapman and Cutler LLP
111 West Monroe Street
Chicago, IL 60603-4080
Email: audley@chapman.com
Email: dandrea@chapman.com

Cathy A. Hinger
G. David Carter
Womble Bond Dickinson (US) LLP
1200 19th Street, NW, Suite 500
Washington, DC 20036
Email: cathy.hinger@wbd.us.com
Email: david.carter@wbd.us.com

Kurt Weaver
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27061
Email: kurt.weaver@wbd-us.com

John Hamill
Michael Pullos
Counsel for Inteliquent, Inc.
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Email: john.hamill@dlapiper.com
Email: michael.pullos@dlapiper.com

this 28th day of January, 2022.

                                                                                       */s/Nigel F. Telman*