# Exhibit 1

IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRAIGVILLE TELEPHONE CO. d/b/a ADAMSWELLS; and CONSOLIDATED TELEPHONE COMPANY d/b/a CTC | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:19-cv-07190 |
| vs. | ) ) | Judge John Z. Lee Magistrate Judge Jeffrey T. Gilbert |
| T-MOBILE USA, INC.; and INTELIQUENT, INC. | ) ) ) | |
| Defendants. | ) | |

**INTELIQUENT, INC.'S SURREPLY TO ADDRESS
(1) NEW MATTERS THE PLAINTIFFS RAISED IN THEIR REPLY;
(2) THE PLAINTIFFS' DISAVOWAL OF THEIR ONLY CLAIM AGAINST
INTELIQUENT; AND (3) THE PLAINTIFFS' ENDEMIC RULE 37.2 VIOLATIONS**

The plaintiffs' reply makes their meritless motion considerably worse. They raise new issues and make bold and baseless accusations that regrettably necessitate this surreply.

**A. The plaintiffs <u>newly</u> and incredibly argue that their claim against Inteliquent is not about an "agreement."** We explained why our approach to discovery (i) provided all that could be relevant and proportional on direct and indirect evidence of the supposedly unlawful agreement, and (ii) was fully in line with all rules, commitments, and agreements. In reply, the plaintiffs now disavow that the case is about an "agreement." (ECF 238 at 4.) That is a new development. We would be delighted for the Court to agree that there is no claim of a purported "agreement" between Inteliquent and TMUS. But there is, for now, as it is a *conspiracy* claim. The plaintiffs' Count VIII says that "Defendants *agreed* to perpetrate the scheme" and "*agreed* on the objective and method to perpetrate the scheme[.]" (ECF 94 ¶¶ 474-75.) As Judge Lee ruled in denying our motion to dismiss, they met ("for now") their pleading obligation to "allege facts establishing both an '*agreement*' and a 'tortious act in furtherance of that *agreement*.'" (ECF 91

at 24 (quoting *McClure v. Owens Corning Fiberglass Corp.*, 720 N.E. 2d 242, 258 (Ill. 1999).) The Court ruled that the plaintiffs had at least plausibly alleged that "Defendants *agreed* not to remedy call failures," as their current motion acknowledges. (ECF 91 at 25; ECF 219 at 3.)[1] The plaintiffs now hedge and say "collaboration" instead of "agreement," but the semantics are rubbish and the law is the law. (ECF 238 at 4-5.) If the case is not about an alleged agreement, then it ought to be immediately dismissed. If it *is* about an alleged agreement, then the document discovery we produced is well within any sensible bounds of relevance and proportionality.

**B. The plaintiffs <u>newly</u> move from "Equinox" to "Empirix," which comes out of the blue and is non-sensical.** We explained why non-party Equinox's information does not support any document request. (Inteliquent's response, ECF 230 at 12.) The plaintiffs apparently concede the point—because they now move to the similar sounding word "Empirix." (ECF 238 at 2-3, 7 n.2, 7-8, 8 n.3.) This is a meritless shift. "Equinox" and "Empirix" are different words and different entities. "Equinox" is an outside vendor that provided services Inteliquent used to find ways to combat scams, fraud, and abuse on the telecommunications network. "Empirix" is a common telecommunications *software* application used to access various call signaling data. The plaintiffs' refashioned-on-reply request is telecommunications gibberish, as documents related to the operation of a software application could not have anything to do with the supposed unlawful agreement. On top of that, the plaintiffs never mentioned Empirix to us in the year since they served their requests (and it would have made no sense for them to do so since Empirix is a software application).[2] Now the plaintiffs newly argue that they requested documents related to

---

[1] Contrary to Judge Lee's ruling in their favor, the plaintiffs dodge again and say the supposed "object of the conspiracy was suppression of traffic to high cost codes." (ECF 238 at 5.) We cannot keep having moving targets in discovery. This is what Rule 37.2 is supposed to stop.

[2] Their motion here only mentioned Empirix once in passing in a footnote. (ECF 219 at 12 n. 15.)

Empirix and seem to suggest that those documents are somehow the key to their case. (*Id.*) A phone call, a letter, an email, or any basic Rule 37.2 effort could have solved this issue without requiring Court intervention.

      **C.    The plaintiffs offer <u>*newly*</u> submitted but incomplete exhibits that continue their pattern of half-truths and material omissions.** Just as with their opening motion, the plaintiffs *again* make material omissions by using an incomplete email thread to argue that Inteliquent "concealed … evidence of rural call completion issues not being effectively resolved." (ECF 238 at 11, Ex. 39.) They cite the following document:



But the plaintiffs do not share with the Court a series of emails *from the same thread produced by Inteliquent* that show Inteliquent quickly resolved the reported issues *the very next day*:

3



(Ex. U.)³ Inteliquent "concealed" nothing. The plaintiffs' accusation is false. Their incomplete submission is noteworthy given that the full thread (produced by Inteliquent and TMUS) shows Inteliquent doing exactly what the complaint says it did not—namely, effectively resolving an issue.⁴

---

³ Inteliquent added red boxes on the above screenshots to aid the Court's review.

⁴ The plaintiffs also oddly rely on Exhibits 41 and 46-47 to argue that "T-Mobile repeatedly complained about Inteliquent's performance." (ECF 238 at 13.) That is not what those documents show.

**D.     The plaintiffs wrongly stated in their opening motion that Inteliquent did not provide its list of custodians (ECF 219 (the motion) at 2, 5 n.2), but now <u>*newly*</u> argue (also wrongly) that those custodians are deficient (ECF 238 at 9-10).**  There is nothing improper about Inteliquent's list of ESI custodians.  It includes the individuals responsible for running Inteliquent's business of completing calls and its relationship with TMUS—and who would have to be the ones to "agree" to the supposed unlawful conduct.  We also produced documents from Inteliquent's "Network Operations Center," which is responsible for responding to reports of call completion issues—i.e., the central issue of the supposed unlawful agreement.  If there were documents establishing a conspiracy between Inteliquent and TMUS (there is none) or widespread issues with Inteliquent's rural call completion (there are none), these are the custodians who would have them.  As we have repeatedly stated in this case, we cannot produce documents that do not exist.  Adding dozens more custodians will only needlessly (and dramatically) increase Inteliquent's costs (a truly classic fishing expedition).  The proper approach would have been for the plaintiffs to request a meet and confer on this topic, or to submit an interrogatory confirming job functions.  They instead raised the issue for the first time in their reply *after* wrongly stating (twice) in their motion that Inteliquent never provided its custodian list.  (ECF 219 at 2, 5 n.2.)[5]

**E.     The plaintiffs wrongly stated in their motion that Inteliquent did not provide its search terms (ECF 219 at 5 n.2), but now <u>*newly*</u> argue (also wrongly) that those search terms are deficient (ECF 238 at 9-10).**  This is a bait-and-switch tactic to distract from the plaintiffs' initial inaccuracy.  If there were documents evidencing an unlawful agreement about

---

[5] There was no reason for Inteliquent to include either Ms. Hochheimer or Mr. Schneberger (the declarants) in initial disclosures or as custodians.  The plaintiffs say these persons are "knowledgeable about [Inteliquent's] targeting of high cost codes[.]"  (ECF 238 at 6.)  But those high cost codes have nothing to do with the claim against Inteliquent or the plaintiffs as the declarations and productions make clear.

5

LRBT and rural call completion, our search terms would have captured them. Our terms included every reasonable variation of terms that would identify documents discussing LRBT or "fake" ring tones. They also covered rural call completion issues by searching "RCC"[6] or "rural" in emails between TMUS employees and Inteliquent's Network Operations Center tasked with resolving trouble tickets. Our good-faith approach was certainly relevant and proportional based on the cause of action. Once again, we would have discussed search terms in more detail with the plaintiffs had they minimally complied with Rule 37.2. But they first raised the issue in a reply *after* wrongly stating (twice) in their motion that we did not provide our search terms. (ECF 219 at 2, 5 n.2.)

   F. **The plaintiffs *newly* argue that Inteliquent should produce parent emails we already told them we do not have.** Inteliquent produced data showing its call completion "NER" and "ASR" data for the relevant period. The plaintiffs now resort for the first time in their "reply" to arguing that we should have produced "parent email[s]" with those spreadsheets. (ECF 238 at 14.) Here we go again. Leaving aside what could be relevant in a hypothetical "parent" email accompanying a call completion data submission, we already told the plaintiffs in the meet and confer that Inteliquent is unaware of any such parent emails, and that the spreadsheets were *not* transmitted by parent email. The plaintiffs improperly pretend we never told them even though we noted it in our response. (ECF 230 at 2 n.2.) Either way, we did. We told them. Inteliquent cannot violate an ESI Order by not producing emails that do not exist.

   G. **The plaintiffs *newly* argue that Inteliquent violated the ESI Order because we did not designate 33 additional custodians.** The plaintiffs used their "reply" to propose—for the first time—a wildly expansive and untethered interpretation of discovery obligations. They argue,

---

[6] Inteliquent and TMUS employees commonly use "RCC" as an acronym for "rural call completion."

without meeting and conferring on this issue (or without serving any interrogatories), that there are "at least 33 [additional] Inteliquent custodians whose ESI likely contains responsive documents that were not searched." (ECF 238 at 9.) They argue Inteliquent violated the ESI Order by only producing documents from 7 custodians rather than 40. (*Id.*) That is utter nonsense. Our custodians were the proper set, as noted. True to form, the plaintiffs still do not explain why adding 33 custodians would justify the heavy burden (it would not). They instead provide a blanket list of 33 names and ask the Court to accept that Inteliquent "brazenly violated" the ESI order by not designating all of them as custodians. (*Id.*) They do not offer actual reasoning. Nor do they even offer any description of the actual RFPs so that any of us can understand the basis for their rhetoric. They still take the all-or-nothing approach in violation of Rule 37.2.

**H.    The plaintiffs *newly* mischaracterize motion practice in an unrelated and irrelevant case that Inteliquent won on summary judgment.** The plaintiffs falsely accuse Inteliquent of a discovery violation in the different case involving different parties before Judge Blakey. (ECF 238 at 8 n.4.) This is inexcusable. The undersigned are counsel for Inteliquent in that case. We know what that case was about—and the plaintiffs (who were not there) are flatly wrong. **First**, the plaintiffs support their accusation with a citation *to their own complaint here* in this case, *not* any filing before Judge Blakey. (*Id.* (citing ECF 94 ¶¶ 259-61).) **Second**, the plaintiffs appear to be referencing a discovery motion (against Inteliquent) that Judge Blakey *denied* and that went to a merits issue on which he ultimately granted summary judgment in *Inteliquent's* favor. *Inteliquent, Inc. v. Free Conferencing Corp. et al.*, Case No. 16-CV-06976, ECF 508 at 48:10-11 (N.D. Ill. Mar. 14, 2019); *Inteliquent, Inc. v. Free Conferencing Corp.*, 503 F. Supp. 3d 608, 644-47 (N.D. Ill. 2020); ECF 94 at ¶ 259 (citing discovery motion that was denied by Judge Blakey). **Third**, the accusation about that case is just the latest in a series of

7

mischaracterizations the plaintiffs have made in their attempt to connect that separate litigation to this matter. For example, they continue to retreat to discussing a penny-per-call charging policy that T-Mobile unilaterally imposed on its cellphone customers for certain types of calls *not at stake here*. But in that case, Judge Blakey ruled as a matter of law at summary judgment in Inteliquent's favor that "T-Mobile (not Inteliquent) instituted and carried out" that "One Cent" charging policy. *Free Conferencing,* 503 F. Supp. 3d at 644-47.

Dated: March 16, 2022

Respectfully submitted,

By: */s/ John J. Hamill*
John J. Hamill
john.hamill@dlapiper.com
Michael S. Pullos
michael.pullos@us.dlapiper.com
Devin Carpenter
devin.carpenter@us.dlapiper.com
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Tel: 312.368.7036/2176
Fax: 312.251.5809/312.630.6350

*Attorneys for Inteliquent, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned attorney, on oath, certifies that on March 16, 2022 he served the foregoing **Surreply to Address (1) New Matters the Plaintiffs Raised In Their Reply; (2) the Plaintiffs' Disavowal Of Their Only Claim Against Inteliquent; and (3) the Plaintiffs' Endemic Rule 37.2 Violations** via the ECF system to all parties that have consented to same in accordance with applicable Federal Rules of Civil Procedure and Local Rules of the U.S. District Court for the Northern District of Illinois.

By: */s/ John J. Hamill*
John J. Hamill

# Group Exhibit U

**REDACTED**