## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CRAIGVILLE TELEPHONE CO. d/b/a
ADAMSWELLS; and CONSOLIDATED
TELEPHONE COMPANY d/b/a/ CTC

                 Plaintiffs,

     v.

T-MOBILE USA, INC.; and
INTELIQUENT, INC.

                 Defendants.

No. 19 CV 7190

Magistrate Judge Jeffrey T. Gilbert

## ORDER

Presently before the Court is Plaintiffs' Motion to Overrule T-Mobile's Objections and Compel Production of Documents [ECF No. 199]. Plaintiffs' Motion is granted in limited part and denied in large part for the reasons discussed below.

## I.    PROCEDURAL HISTORY AND STANDARD OF REVIEW

Plaintiffs filed their Motion to Compel on December 20, 2021. [ECF No. 199]. Defendant T-Mobile USA, Inc. ("TMUS") responded to Plaintiffs' Motion, in accordance with the briefing schedule set by the Court, on March 10, 2021. [ECF No. 235]. Plaintiffs replied on March 17, 2021. [ECF No. 247].

A party seeking discovery may file a motion to compel under Federal Rule of Civil Procedure 37 if another party fails to respond to a discovery request or when its response is insufficient. FED.R.CIV.P. 37(a); *see also, Belcastro v. United Airlines, Inc.,* 2019 WL 1651709, at *2 (N.D. Ill. 2019). "Courts have broad discretion in resolving

such disputes and do so by adopting a liberal interpretation of the discovery rules."
*United States Gypsum Co. v. Ectek Int'l, Inc.,* 2022 WL 1155155, at *2 (N.D. Ill. 2022)
(citing *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering,
Inc.,* 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018)). To that end, Rule 26(b)(1) provides
in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is
> relevant to any party's claim or defense and proportional to the needs of
> the case, considering the importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to relevant information, the
> parties' resources, the importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery outweighs its likely
> benefit.

FED.R.CIV.P. 26(b)(1). As the 2015 amendments to Rule 26 emphasize, "[t]he parties
and the court have a collective responsibility to consider the proportionality of all
discovery and consider it in resolving discovery disputes." FED.R.CIV.P. 26, Advis.
Comm. Notes for 2015 Amendments.

## II.   ANALYSIS

At their core, the Requests for Production of Documents ("RFPs") to which
Plaintiffs seek to compel responses are impermissibly overbroad. Although the
general subject matter or topic of certain RFPs arguably might be relevant to the
claims or defenses in this case, either in whole or in part, even those RFPs cover too
much territory with language requiring TMUS to produce "all documents" "that refer
or relate to" a particular topic, or "all communications" to the same effect. TMUS
targets this overbreadth by objecting throughout its written responses to the RFPs
and asserting that compliance with those requests would impose an undue burden on

it, and so the RFPs are not proportional to the needs of this case. Plaintiffs do not directly address TMUS's overbreadth or proportionality objections other than to say the objections are too general to merit a response. Plaintiffs instead focus only on the high-level subject matter relevance of the RFPs to the claims and defenses in this case. Because it is not the Court's job to re-write or "right size" Plaintiffs' RFPs on its own, it declines to do so. *Art Akiane LLC v. Art & SoulWorks LLC*, 2021 WL 5163288, *3 (N.D. Ill. 2021) (quoting FED.R.CIV.P. 26(b)(1)); *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 2018 WL 4356594, at *3 (N.D. Ill. 2018).

On the other side of the versus, TMUS's position also is broad and often vague, as Plaintiffs point out. TMUS asserts overly broad general objections, incorporates those objections into each of its responses to specific RFPs, and then says it will produce documents subject to these general objections. But as a practical matter, these non-specific objections leave Plaintiffs and the Court clueless as to what documents TMUS will produce and which documents or categories of documents it will withhold. For example, objections that include the qualifier "to the extent that" that the RFP is "overbroad, unduly burdensome," "disproportional to the needs of the case, fail to describe documents with the 'reasonable particularity' required by Rule 34," "impose conditions, obligations, or requirements different from or in addition to those set forth in the Federal Rules of Civil Procedure," or "seek[] information that is unrelated to the specific claims at issue in and disproportionate to the needs of this litigation" are unhelpful and improper without specifics tied to particular RFPs. *See* [ECF No. 199-3] at ¶¶ 1, 3, 7, 8, 10, 12–18, 21; *Burkybile v. Mitsubishi Motors, Corp.*,

2006 WL 2325506, at *6 (N.D. Ill. 2006) (the party opposing discovery must show with specificity that the request is improper – a burden that cannot be met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.") (internal quotations and citations omitted).

TMUS also raises burden objections without providing any detail about the nature or scope of the asserted burden, which provides the Court with no context from which to determine whether the alleged burden is undue or disproportional for purposes of this case. As Plaintiffs point out, TMUS does not respond to Plaintiffs' request to overrule these general, non-specific objections and Plaintiffs say TMUS therefore has waived the right to do so. *Wilcosky v. Amazon.com*, *Inc.,* 517 F. Supp. 3d 751, 767 (N.D. Ill. 2021). Whether or not TMUS has waived this argument, the Court has no difficulty overruling, and does overrule, TMUS's generalized, kitchen-sink objections. *Belcastro,* 2019 WL 1651709, at *4 (broad objections to discovery that do not address the specific interrogatory or document request to which they are posed 'are tantamount to not making any objection at all.'") (quoting *BankDirect Capital Finance, LLC v. Capital Premium Financing, Inc.,* 2017 WL 5890923, at *2 (N.D. Ill. 2017)).

Having assessed both Plaintiffs' overly broad RFPs and TMUS's overly broad objections, the Court's conclusion here is that generality begets generality. While neither party should conduct or respond to discovery in the broad strokes on display

here, ultimately, Plaintiffs have not convinced the Court in the context of this Rule 37[1] motion that the discovery sought is relevant and proportional to the needs of the case within the meaning of Federal Rule of Civil Procedure 26(b)(1). *Motorola Sols., Inc. v. Hytera Commc'ns Corp.,* 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019); *see also, BankDirect Cap. Fin., LLC,* 2018 WL 946396, at *4 ("Unless the requestor can demonstrate that the materials sought are relevant, judges should not hesitate to exercise appropriate control over the discovery process."). That is, although the burden generally is on the party resisting discovery to show why a particular request is improper, *Kodish v. Oakbrook Terrace Fire Prot.,* 235 F.R.D. 447, 450 (N.D. Ill. 2006), "when the discovery request is overly broad, or relevancy is not apparent, the requesting party must establish relevancy." *Hills v. AT&T Mobility Services, LLC*, 2021 WL 3088629, at *4 (N.D. Ind. 2021); *see also, Greenbank v. Great Am. Assurance Co.,* 2019 WL 6522885, at *3 (S.D. Ind. 2019) ("A party moving to compel production carries the initial burden of establishing, with specificity, that the requested

---

[1] Rule 37 also requires that the movant certify that it has in good faith conferred with the party from whom discovery is sought before bringing a motion to compel – a requirement that is supplemented in this jurisdiction by the requirements of Local Rule 37.2. FED.R.CIV.P. 37(a)(1). Both parties appear to have played some role in the breakdown of the meet and confer process regarding Plaintiffs' RFPs that led to the filing of the motion now presented to the Court. *See, e.g.,* Plaintiff's Reply [ECF No. 247] at 18 ("Plaintiffs were not required to continually meet and confer once it is clear that doing so would be futile."); Defendant's Response [ECF No. 235] at 15 ("...as detailed in the accompanying Alladi Declaration, the parties did not reach impasse on [RFPs 24–25 and 42–46] before plaintiffs moved on them and TMUS has either produced responsive documents or will do so."). In short, Plaintiffs disagree with Defendant TMUS's characterization of the meet and confer process, and vice versa. The Court does not intend to enter the fray and determine what occurred at the various Rule 37.2 conferences related to the pending issues. Nor does the Court have enough information about what documents TMUS has produced or will produce to be able to determine whether impasse was, in fact, reached prior to the filing of Plaintiffs' motion. And the Court does not need to do so to resolve the motion.

documents are relevant."). And in substantial part, Plaintiffs' RFPs encompass information far beyond the claims and defenses at issue in this case. *Vakharia v. Swedish Covenant Hosp.,* 1994 WL 75055, at *2 (N.D. Ill. 1994) ("The discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. Parties are entitled to a reasonable opportunity to investigate the facts—and no more."). In that vein, the Court's discussion below is intended not only to target the specific RFPs at issue in Plaintiffs' Motion, but also to provide some guidance to the parties going forward into the inevitable next stage of written discovery. That stage will require the parties to meet and confer, reasonably and in good faith, regarding Plaintiffs' RFPs.

## A. Documents Regarding Plaintiffs' Conspiracy Allegations (RFP Nos. 42, 46, 52–59)

Turning first to the RFPs targeting the alleged conspiracy between TMUS and Inteliquent, the Court declines to compel TMUS to produce documents responsive to these overbroad and disproportionate requests, especially given the disagreement between the parties as to whether LR 37.2 had run its course on these requests; namely, RFP Nos. 42, 46, 52–59. Nor is the Court convinced of the relevance of certain RFPs in this category, as explained below.

RFP No. 42 seeks "*all* responses to requests for proposals, presentations, or other documents *reflecting representations* Inteliquent made regarding either call quality or cost reductions as part of its bid to become T-Mobile's exclusive (or near exclusive) Intermediate Provider." [ECF No. 199-3] at 34. Although the general subject matter of this request appears to be related to this litigation, the lack of

6

specific relevance and the overbreadth of the request makes it impossible for the Court to compel production of responsive documents as drafted. *Motorola Solutions, Inc.,* 365 F. Supp. 3d at 924 ("Relevance focuses on the claims and defenses in the case, not its general subject matter."). Furthermore, TMUS says it has produced (or will produce) documents in response to this request, [ECF No. 235-1] at 4, although it is not clear what has been produced to date and if the LR 37.2 process has run its course regarding that production. At least at this time, Plaintiffs have not convinced the Court that TMUS should be compelled to produce additional documents in response to a facially overbroad request, even though it may ultimately lead to the production of some relevant documents.

RFP No. 46 relates to the volume of non-local traffic TMUS delivered to Inteliquent and does not suffer from the same facially overbroad language that appears in innumerable other RFPs (e.g. requests for "all documents"). So too does the request appear to be relevant and proportional to the needs of the case. However, TMUS appears to have responded to RFP No. 46, [ECF No. 235-1] at 4, even though it said at first that it would not do so, [ECF No. 199-3] at 37, and it is unclear from Plaintiffs' two briefs what more they want, or why they say TMUS's production is deficient. [ECF No 247] at 14–15. The Court will deny Plaintiffs' motion with respect to RFP No. 46, but without prejudice until Plaintiffs and TMUS have met and conferred consistent with LR 37.2 and reached impasse on whether further Court intervention is required on this point.

7

RFP No. 52, which asks for *all* records of payments between TMUS and Inteliquent, is plainly overbroad as drafted and exceeds the scope of Plaintiffs' Second Amended Complaint. Certainly, Plaintiffs have established that the "economics" of the TMUS-Inteliquent relationship generally is relevant to Plaintiffs' allegations as pled in the Second Amended Complaint. [ECF No. 247] at 16–17. But more specificity – both in terms of a relevance showing for "all payments" and in the drafting of the request itself – is required to bring RFP No. 52 into the orbit of what would be proportional to the needs of this case. To the extent TMUS says it has produced documents responsive to the general subject matter of RFP No. 52, [ECF No. 235] at 14, and Plaintiffs disagree that those documents are sufficient to capture all the relevant information to which they are entitled, the Court encourages the parties to include RFP No. 52 in their continued LR 37.2 discussions about what additional responsive documents TMUS can provide, consistent with Rule 26(b)(1).

RFP Nos. 53–59 are also overbroad as drafted (e.g. "all documents," "referring or relating to," "all filings"). [ECF No. 199-3] at 41–45. As another threshold matter, it is not clear to the Court that Plaintiffs have established that this category of requests targeting information related to or obtained in the Inteliquent litigation is specifically relevant to the claims and defenses at issue in *this* case, although the subject matter of the two cases does overlap. *Motorola Solutions, Inc.,* 365 F. Supp. 3d at 924. Plaintiffs must do more to satisfy the Court that the information sought is relevant, proportional, and not unduly burdensome within the purview of Rule 26(b)(1) before the Court will compel responses to RFP Nos. 53–59.

8

## B. Documents Related to Settlement Communications and the FCC Investigation (RFP Nos. 3, 4, 10, 14)

It is likewise not clear that every document TMUS submitted to the FCC is relevant to the claims and defenses in this case. Nor is relevance the end of the inquiry under Rule 26 – Plaintiffs also must show the discovery sought is proportional to the needs of this case, and at least as of now, it has not done so. *Motorola Solutions, Inc.,* 365 F. Supp. 3d at 924 ("…relevance alone does not translate into automatic discoverability under Federal Rule of Civil Procedure 26. An assessment of proportionality is essential.") (citing *Goldman v. As You Like It Silver Shop, Inc.,* 2019 WL 718739, at *2 (E.D. La. 2019)). RFP No. 3 is overbroad as drafted and not proportional to the needs of the case. Plaintiffs likely are not entitled to unredacted versions of all documents submitted to the FCC or produced by the FCC in response to Plaintiffs' counsel's Freedom of Information Act request, particularly if the redacted material has no relevance to the claims or defenses in this case. The blunderbuss approach Plaintiffs take with this RFP No. 3 is typical of the broad sweeping RFPs raised in Plaintiffs' motion. For the same reason, RFP No. 4 seeking "all communications referring or relating to the FCC Investigation File" is overbroad and disproportionate to the needs of the case. It is not the Court's job to re-write or redline overly broad requests like these. *Arsberry v. Wexford Health Sources*, *Inc.,* 2021 WL 5232733, at *9 (N.D. Ill. 2021); *In re Dealer Mgmt. Sys. Antitrust Litig.,* 2018 WL 6048262, at *4 (N.D. Ill. 2018); *Ye v. Cliff Veissman, Inc.,* 2016 WL 950948, at *4 (N.D. Ill. 2016) (even where it is "possible to imagine a request more narrowly tailored

to relevant content than the request at issue here…it is not the Court's role to tailor or re-write the discovery request."). Nor will the Court do so.

So too is RFP No. 10 overly broad. RFP No. 10 requests "all documents referring or relating to" a December 27, 2016 letter from the FCC to TMUS that appears to have started the FCC's inquiry into TMUS's involvement with early ringtones. [ECF No. 199-3] at 12. Although Plaintiffs signal to TMUS that the RFP as a whole is intended to target "documents related to any actions T-Mobile took in response to the letter," Plaintiffs impermissibly broaden the scope of the request as a whole with open-ended language elsewhere in the RFP asking for "*any* communications T-Mobile had with *any* third parties regarding the letter or its contents." [ECF No. 199-3] at 12 (emphasis added). While some communications with third parties (an undefined term) covered by this request conceivably might contain relevant information, a request for *all* communications clearly is not proportional to the needs of this case and unduly burdensome. As drafted, RFP No. 10 is extremely broad, and the Court will not require strict compliance by TMUS. It may be, however, that a request directly seeking "documents related to any actions T-Mobile took in response to the letter," with perhaps some additional subject limiters, might be more palatable and proportional.

The Court agrees with TMUS that RFP No. 14, which asks for "all copies or versions of any settlement offer or consent decree proposals" between TMUS and the FCC, is too far afield from permissible discovery here which should be focused on the who, what, when, where, why, and how of what TMUS is accused of doing by

Plaintiffs. In the Court's view, communications between the FCC and TMUS about settlement negotiations or the consent decree are one or two steps removed from relevant and proportional discovery in this case. Permissible discovery should focus on what TMUS did during the relevant time period, not its subsequent negotiations with the FCC in arriving at a consent decree. *Motorola Solutions, Inc.,* 365 F. Supp. 3d at 924 ("Relevance focuses on the claims and defenses in the case, not its general subject matter."). The Court recognizes that documents exchanged in connection with settlement negotiations could contain information generally relevant to the subject matter of this case, but those are not the primary documents Plaintiffs will use to prove their case, at least as outlined in the Second Amended Complaint.

### C. Documents Related to TMUS's Knowledge of the FCC's Prohibition on Early Ringtones (RFP Nos. 33, 35-38)

RFP No. 33, which again seeks "*all* communications," is overbroad, unduly burdensome, and not proportional to the needs of the case within the meaning of Rule 26. RFP No. 35, which seeks "*all* documents reflecting awareness that the use of fake ring tones was prohibited," is poorly drafted in that, among other things, it requires a subjective determination of what a document may "reflect" and that is something that very well may be specific to the beholder of the document.

RFP No. 36, which targets documents related to the 2013 Rural Call Completion Order, contains three subparts that all suffer from the same overbreadth concerns the Court has highlighted regarding Plaintiffs' other RFPs. To start, the 2013 Rural Call Completion Order, which is eighty-four pages long, appears to address telecommunications concerns broader than the early ringtone issue at the

11

heart of Plaintiffs' Second Amended Complaint. [ECF No. 94-9] at 3. Again, relevance to a general subject matter, as opposed to the specific claims or defenses at issue in this case, is not enough. *Motorola Solutions, Inc.,* 365 F. Supp. 3d at 924. In addition, the language used in all three subparts is vague and ambiguous, leaving both this Court and TMUS to guess what documents should be produced in response. Though the Court acknowledges that some relevant information is likely to be swept up in a production responsive to RFP Nos. 36(a) and 36(b), those requests still are too broadly framed to pass muster.

RFP Nos. 37 and 38 suffer from the overbreadth defect and the Court will not enforce them. It is not clear, for example, how the production of "all documents referring or relating to the errors in the algorithms used to compute call attempts by T-Mobile customers," [ECF No. 199-3] at 32, would possibly be proportional to the needs of this case. In the Court's view, these are examples of overbroad requests for production although the general subject matter of the requests arguably is relevant to Plaintiffs' claims. *Motorola Sols., Inc.,* 365 F. Supp. 3d at 924 ("Not all relevant information is discoverable...For example, district courts, which have extensive discretion in granting and denying discovery, have long held that it is permissible to refuse to grant discovery of matters of 'marginal relevance.'") (citing *Taylor v. Horizon Distributors, Inc.,* 398 F. App'x 306, 307 (9th Cir. 2010); *MediaNews Grp., Inc. v. McCarthey,* 494 F.3d 1254, 1266 (10th Cir. 2007); *United States v. Ardila,* 275 F. App'x 39, 40 (2d Cir. 2008); *United States v. Mauro*, 80 F.3d 73, 76-77 (2d Cir. 1996); *Robert L. Citroen, Law Corp. v. Micron Optics, Inc.,* 2017 WL 3707391, at *4 (D. Nev.

2017); *Baez v. Brown,* 2014 WL 2434192, at *6 (E.D.N.Y. 2014)). Plaintiffs are simply not entitled to put TMUS to the burden of producing "all documents" that "refer or relate to" a broad subject matter. RFP Nos. 33 and 35–38 present a perfect opportunity for the parties to meet and confer more fulsomely about requests for documents that Plaintiffs may be entitled to discover, as distinguishable from kitchen sink requests for every piece of paper that might touch a relevant subject matter. The parties might discuss limitations involving time periods, categories of documents, particular custodians or search terms, or other limiters that the parties and counsel surely are better suited to determine than the Court.

### D. TMUS's Compliance with the Consent Decree (RFP Nos. 5-9)

RFP No. 5 is, again, overbroad as drafted. Plaintiffs have failed to make the essential showing (at least, with any specificity) as to why documents responsive to RFP No. 5 are relevant to the claims or defenses at issue here. *Greenbank*, 2019 WL 6522885, at *3. Even crediting Plaintiffs' contention that it has uncovered evidence showing TMUS continued to use early ringtones beyond the date of the Consent Decree, the request for *all* compliance reports, whether or not those reports mention early ringtones or even graze that subject, is too general. RFP No. 6 seeking "all communications between you and any person regarding the development or implementation of the Compliance Plan, Compliance Manual, or Compliance Training Program" is plainly overbroad on its face and not proportional to the needs of the case. To expect TMUS to search its records for *any* communication to or from *any* person touching on (yet even more vague) the development or implementation of

13

the Compliance Plan clearly imposes an undue burden and is disproportionate to the needs of this case.

Conversely, RFP No. 7 appears to seek information specifically relevant to the claims and defenses in this case. [ECF No. 235-2] at 2–4. Although TMUS's objection that Plaintiffs appear to be using RFP No. 7 as a workaround for the limit on interrogatories is well-taken, TMUS nevertheless must respond to this relevant and proportional request. TMUS is not required to create a document to respond but it is required to produce documents sufficient to do so. Finally, regarding RFP Nos. 8 and 9, it is TMUS's conduct prior to the Consent Decree that is the focus of Plaintiffs' Second Amended Complaint. Kitchen-sink discovery – or fishing expeditions, as courts have often infamously characterized such an approach[2] – into "all communications" or "all documents" related to compliance with the Consent Decree is overbroad, unduly burdensome, and disproportionate to the needs of this case.

### E. TMUS's Relationships with Other Intermediate Providers (RFP Nos. 43-45)

Similarly, RFP Nos. 43, 44, and 45, which purportedly seek to explore the relationship between TMUS and certain intermediary communications providers, are vastly overbroad. All three RFPs ask that TMUS produce "any contract" entered into with certain providers, regardless of whether that contract or business relationship

---

[2] *Cuomo v. Clearing House Ass'n, L.L.C.,* 557 U.S. 519, 531 (2009); *Central States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Michigan, Inc.,* 674 F.3d 630, 637 (7th Cir. 2012); *U.S.O. Corp. v. Mizuho Holding Co.,* 547 F.3d 749, 754 (7th Cir. 2008) ("…indiscriminate and largely unsupervised fishing expeditions…characterize some American discovery."); *Higgason v. Hanks,* 54 F. App'x 448, 450 (7th Cir. 2002); *Pirazi v. Panda Express, Inc.,* 2009 WL 4232693, at *4 (N.D. Ill 2009).

14

relates to rural call traffic, early ringtones, or the specific claims or defenses in this case. In the Court's view, Plaintiffs have not made a threshold showing of relevance or proportionality sufficient to convince the Court that TMUS should be compelled to respond to RFP Nos. 43, 44, and 45. *Greenbank*, 2019 WL 6522885, at *3 ("A party moving to compel production carries the initial burden of establishing, with specificity, that the requested documents are relevant."). Although TMUS's brief also is less than complete with respect to the substantive relevance, proportionality, or burden associated with RFP Nos. 43, 44, and 45, the Court cannot enforce these impermissibly broad RFPs as written. Perhaps these RFPs, as with many others, are ripe for further LR 37.2 discussions to target specifically what relevant and proportional discovery Plaintiffs are seeking from TMUS regarding its relationship with Level 3 Communications LLC, West Corporation, or any other intermediate providers or interexchange carriers that delivered network traffic during the four-year time period referenced.

### F. Equipment Used to Facilitate Early Ringtones (RFP No. 30)

RFP No. 30 appears to be more narrowly tailored than its counterparts at issue in this motion. It seeks "all documents identifying the make, model number, serial number, and physical location of any equipment that was utilized, directly or indirectly, to activate LRBTs in September 2015." [ECF No. 199-3] at 26. TMUS has responded to RFP No. 30 and provided documents to Plaintiffs identifying the "make, model and physical location (city and state) for the equipment in question," which TMUS identified as Ericsson Mobile Switching Center Servers. [ECF No. 235] at 13.

Plaintiffs now ask the Court to compel additional information from TMUS; namely, the precise street addresses and serial numbers of the Ericsson Mobile Switching Center Servers so that Plaintiffs can explore "[t]he extent to which Inteliquent or any other third party may have had access to or affiliation with any of the locations where the servers used to insert the fake ring tones is relevant to investigating the witnesses to, and potential participants in the scheme." [ECF No. 199-1] at 18.

It is unclear how this information is proportional to the needs of this case. Plaintiffs need to do more to show that the specific information they seek will further a legitimate discovery purpose, to be distinguished from an exploratory fishing expedition. *Equal Employment Opportunity Comm'n v. Union Pac. R.R. Co.,* 867 F.3d 843, 852 (7th Cir. 2017) ("[t]he requirement of relevance…is designed to…prevent 'fishing expeditions.'"). It is difficult for the Court to reconcile Plaintiffs' open-ended proffer of relevance and proportionality – "[t]he precise address of these servers is relevant to the identification of all persons and parties with access to the equipment responsible for the insertion of fake ring tones, and thus, may reveal potential Doe defendants and co-conspirators"– with the claims and defenses actually at issue in this case and as circumscribed by Plaintiffs' Second Amended Complaint. [ECF No. 247] at 16. The Court therefore will not compel additional production of documents called for by RFP No. 30 at this time.

### G. Calls Impacted by Early Ringtones (RFP Nos. 24-25)

RFP Nos. 24 and 25 both seek to discover how TMUS arrived at its estimates of calls impacted by the LRBT parameter (or calls that could have involved the LRBT

parameter). Although these requests target relevant information, both are, again, facially overbroad as drafted and disproportionate to the needs of this case. *Goldman v. As You Like It Silver Shop, Inc.,* 2019 WL 718739, at *2 (E.D. La. 2019) (…relevance alone does not translate into automatic discoverability under Federal Rule of Civil Procedure 26. An assessment of proportionality is essential."). RFP No. 24 asks for "*all* documents *related to or reflecting* the actual or estimated number of calls impacted by the LRBT parameter…," while RFP No. 25 seeks production of "*all* documents and/or data *used* by T-Mobile to prepare *any* estimate of calls impacted by the LRBT parameter." [ECF No. 199-3] at 22-23. The vague language emphasized above impermissibly (and disproportionately) expands the scope of documents potentially relevant and responsive to RFP Nos. 24 and 25. So too does the language "related to reflecting" place an ambiguous and subjective burden on TMUS to evaluate whether certain documents "reflect" an estimate of calls swept up in the LRBT parameter, or not. To be sure, the subject of these requests – calls that could have been impacted by or involved the LRBT parameters – is relevant to Plaintiffs" claims, but the breadth of the request precludes the Court from enforcing it as drafted. Surely, again, there is a legitimate and proportional request for production buried within. But it is not the Court's role to find or animate it; it is the Plaintiffs' job in the first instance. *Arsberry,* 2021 WL 5232733, at *9; *In re Dealer Mgmt. Sys. Antitrust Litig.,* 2018 WL 6048262, at *4; *Ye,* 2016 WL 950948, at *4.

So, because RFP Nos. 24 and 25 clearly are directed at relevant documents, they too are a subject ripe for further LR 37.2 discussions between the parties. On

that note, although the Court will not re-draft RFP Nos. 24 and 25 to comply with the relevance and proportionality requirements Rule 26, it bears noting that TMUS's offer to produce nonprivileged documents it produced to the FCC (containing an estimate of the number of calls affected by the ringtone issue) likely is not a fulsome response to this request. Plaintiffs are entitled, in the Court's view, to discover the methodology by which TMUS calculated the actual or estimated number of calls involving the LRBT parameter. But, again, the RFPs are overbroad as drafted, and Plaintiffs' refusal to limit them in the face of TMUS's objections dooms Plaintiffs' attempt to have the Court enforce these requests as written.

## III. CONCLUSION

For all the reasons stated above, Plaintiffs' Motion [199] is granted in limited part and denied in large part. The parties are encouraged to continue to meet and confer as required by Federal Rule of Civil Procedure 37 and LR 37.2 regarding the RFPs for which the Court has declined to compel responses from TMUS at this time, especially as it pertains to RFPs that the Court has identified, with more specific parameters, may be relevant and proportional to the needs of this case.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated:   May 12, 2022