**IN THE UNITED STATES DISTRICT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CRAIGVILLE TELEPHONE CO. d/b/a ADAMSWELLS; and CONSOLIDATED TELEPHONE COMPANY d/b/a CTC | ) ) ) | |
| | ) | |
| Plaintiff, | ) | No. 1:19-cv-07190 |
| | ) | |
| vs. | ) | Hon. Sharon J. Coleman |
| | ) | |
| T-MOBILE USA, INC.; and INTELIQUENT, INC. | ) ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| Defendants. | ) | |

**RESPONSE IN OPPOSITION TO THE PLAINTIFFS'**
**MOTION TO COMPEL AGAINST INTELIQUENT, INC.**

John J. Hamill
john.hamill@dlapiper.com
Michael S. Pullos
michael.pullos@us.dlapiper.com
Devin Carpenter
devin.carpenter@us.dlapiper.com
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Tel: 312.368.7036/2176
Fax: 312.251.5809/312.630.6350

*Attorneys for Inteliquent, Inc.*

Inteliquent, Inc. ("Inteliquent") submits this opposition to the plaintiffs' motion to compel (ECF 219) ("Motion") their First Set of Requests for Production (the "RFPs" or "requests"). The motion is replete with inaccuracies, misstates much of what Inteliquent has said, ignores what the plaintiffs have received (and why), sidesteps the actual cause of action, bypasses Rule 37.2—and, to top it off, does not specify what the plaintiffs are seeking, other than (apparently) everything in their extremely overbroad requests. This failure is a complete abdication of their burden and any attempt to cure on reply would be improper. The motion should be denied.[1]

## Overview

The sole remaining claim against Inteliquent is that Inteliquent and T-Mobile USA ("TMUS") supposedly reached an unlawful *agreement* to engage in a "fake ring tone" scheme and "not to remedy call failures" or "refrain from fixing connection issues" for calls to local exchange carrier ("LECs") in rural locations. (ECF 91 at 25.) The plaintiffs may not like the substance of what they have received in discovery, as it disproves their "conspiracy" theory. But Inteliquent's responses have been relevant; proportional; consistent with all requirements, agreements, and commitments; and not cherry-picked. As set forth in each section below:

    A.    The inappropriate "all-or-nothing" Motion does not establish relevance or proportionality for *any* specific request, let alone all of them.

    B.    The produced discovery relates to the actual cause of action brought against Inteliquent—which is about a supposedly unlawful *agreement*.

    C.    Inteliquent produced direct evidence *against* the supposedly unlawful agreement.

    D.    Inteliquent produced relevant discovery on call completion metrics, which goes to whether there was "indirect" evidence of the supposedly unlawful agreement.

    E.    Inteliquent produced discovery on its "trouble ticket" process, which also goes to whether there was "indirect" evidence of the supposedly unlawful agreement.

---

[1] Nothing in this memorandum is intended to suggest any liability of TMUS on the other claims, which appear to lack merit for the reasons that TMUS has separately stated.

F.      Inteliquent produced information on a call completion issue in 2016 that arose with Wisconsin LECs, even though they are not the plaintiffs here.

G.      With respect to considerations of proportionality and need, the documents show the plaintiffs meant to complain about "Incomm" not "Inteliquent."

H.      The requests for additional "high cost" code documents from Inteliquent's anti-fraud efforts are an irrelevant, non-proportional, and misguided fishing expedition.

I.      Looking at the actual RFPs reaffirms the Motion is without merit.

### Background

Inteliquent is an "Intermediate" telecom provider that has supplied nationwide long-distance and numerous other services to TMUS since mid-2015. The plaintiffs served Inteliquent with 39 RFPs on March 19, 2021. Inteliquent responded and objected on April 19, 2021, offering to meet and confer on 17 RFPs. (Ex. A.) We began producing documents in September 2021, right after the confidentiality order was entered. After *seven months* of ignoring the offer to meet and confer, the plaintiffs sent a November 12 letter complaining about the written responses, but without any real explanation of the relevance of most of their RFPs. (Ex. B.) We promptly responded, stating on November 19 that Inteliquent had substantially produced everything we agreed to produce, but again offered to meet and confer. (Ex. C.) We also provided the plaintiffs with a "list of the high cost codes" (discussed below) in response to RFPs 32-38. (Ex. D.)

The parties had a general meet and confer session on November 24. It did not delve into much detail on specific RFPs, though the parties agreed they were at an impasse on the high cost code issue.[2] The plaintiffs proposed compiling a chart as to each party's position on the other specific RFPs—a proposal to which we agreed—and said they would provide that. They never did. Inteliquent received no substantive word from the plaintiffs about the RFPs until this motion.

---

[2] The parties also discussed RFP 10; whether transmittal emails existed for certain data produced; that Inteliquent did not have TMUS Form 480 reports (RFP 22); and the issue of LRBT generally.

The plaintiffs' "summary" of the discovery process is inaccurate.

| The plaintiffs' inaccurate assertion | The truth |
|---|---|
| The plaintiffs say: Inteliquent has created a "false narrative" about the lack of conspiracy. (Mot. at 2.) | Inteliquent certainly submits the claim is meritless, but we have produced documents consistent with the rules and agreements. |
| The plaintiffs say: "Inteliquent has not [] agreed to disclose its custodians or search terms." (Mot. at 5 n.2.) | Inteliquent gave these materials to the plaintiffs months ago. (Ex. D.) The search terms were discussed in the meet and confer without any follow-up from the plaintiffs. |
| The plaintiffs say: They were "deprived" of access to documents relating to Inteliquent's "knowledge of the FCC's investigation into [TMUS'] illegal scheme, and [TMUS'] use of fake ring tones[.]" (Mot. at 14.) | Inteliquent produced hundreds of such documents, including materials showing it neither had knowledge of nor involvement in the FCC investigation or TMUS' implementation, expansion, or disabling of LRBT.[3] We cannot produce documents that do not exist. |
| The plaintiffs say: Inteliquent's November 19 discovery letter closed the door on further productions. (Mot. at 5-6.) | Inteliquent repeatedly invited meet-and-confer sessions, including in *that very letter* and thereafter, and made subsequent productions. |
| The plaintiffs say: Inteliquent's counsel imposed a self-serving limitation on discovery and set forth everything Inteliquent would produce in an October 14 email. (Mot. at 4-5.) | There is no cherry picking. The cited email reiterated a six-month-old offer to meet-and-confer. (Ex. E.) Inteliquent produced the information listed and much more. |

### Legal Standard and Rule 37.2

Discovery is limited to "matter that is relevant to any party's claim or defense and proportional to the needs of the case.'" *Art Akiane LLC. v. Art & SoulWorks LLC*, 2021 WL 5163288, at *9 (N.D. Ill. Nov. 5, 2021) (quoting Rule 26(b)(1)). [4] The movant bears the burden to

---

[3] For these purposes, "LRBT" or "early ACM" also refer to the fake ring tone issues, as other filings have explained. "OCN" is "Operating Company Number," a telecom term designating local exchange carriers.

[4] The plaintiffs state that discovery is "relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." (Mot. at 13.) "But that is an obsolete and…overly broad statement of the law." *Art Akiane*, 2021 WL 5163288, at *9.

meet that standard. *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 2018 WL 4356594, at *3 (N.D. Ill. Sept. 12, 2018). Local Rule 37.2 "requires parties to make 'good faith attempts to resolve differences.'" *Harper v. Cent. Wire, Inc.*, 2021 WL 4472604, at *2 (N.D. Ill. June 11, 2021) (quoting LR 37.2). A party fails to comply when it does not "identify any specific issues" or "cling[s] to the position it began with." *Id.* at *1; *Alight Sols. v. Thomson*, 2021 WL 5119111, at *3 (N.D. Ill. Nov. 3, 2021) (similar).

<u>Argument</u>

**A.    The "all-or-nothing" motion does not establish relevance and proportionality for any specific request, let alone all of them (we go request-by-request in Part I below).**

The plaintiffs apparently are moving for *all* documents for essentially *all* categories. Such a request is improper on its face and ignores the rules that require good faith meet-and-confer sessions. *In re Dealer Mgmt. Sys. Antitrust Litig.*, 2018 WL 6048262, at *2 (N.D. Ill. Nov. 19, 2018). Courts do not revise discovery requests to make them proportional and relevant. *Art Akiane*, 2021 WL 5163288, at *3 (gathering cases). The rules do not allow the plaintiffs' approach to "unbridled, 'any possibility' discovery." *Id.* at *9.

The motion does not identify which RFPs the plaintiffs think generated an insufficient response or why such RFPs are appropriate. That approach ignores reality. Inteliquent handles billions of minutes of telecommunications traffic a week. Its seven-year contract with TMUS involves services far beyond delivering calls to rural LECs. The plaintiffs wrongly assume they are entitled to drive a proverbial truck up to Inteliquent's headquarters and have all documents loaded into it that relate to Inteliquent's myriad services. The motion wrongly asks us and the Court to do all the work in figuring out what they want and why—on *all* thirty-nine requests. They even ask for responses to requests to which they have received documents or have received valid explanations why no more are coming. The Court really need read no further in this response and

4

should deny the motion, given this overarching failure, but we respond in more detail in the sections to follow.   (We discuss this on a request-by-request basis in the final part below.)[5]

## B.    The produced discovery relates to the actual cause of action brought against Inteliquent—which is about a supposedly unlawful agreement.

The sole claim against Inteliquent is for the supposed "conspiracy" with TMUS under Count VIII of the complaint.   The plaintiffs can try to show a conspiracy by direct evidence of the allegedly unlawful agreement or, if direct evidence does not exist, by indirect evidence.   *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 134 (1999).   Discovery from Inteliquent has gone in depth on both ways (direct and indirect).   The plaintiffs wrongly focus on four incorrect substantive points that try to defend their *allegations* and to argue we have created a "false narrative."   (Mot. at 2, 6-12.)   This is a motion on discovery, not summary judgment.   The narrow conspiracy claim is in the case (for now).   The question here is about *relevance* and *proportionality*. In that *discovery* context, we address their four points in the sections to come.

## C.    Inteliquent produced direct evidence *against* the supposedly unlawful agreement.

Inteliquent produced discovery on the direct evidence issue—though, it was direct evidence *against* the conspiracy.   This was not self-selected information.   It was on-point material that Rule 26(a)(1) obligates us to produce and was responsive to **RFPs 3, 17-18, 23**.   For example:

---

[5] The RFPs also seek documents untethered to the class definition and far beyond the relevant period.   The plaintiffs' class definition cabins relevant discovery to January 2017 because it includes only calls "which had fake ring tones."   (ECF 94 ¶ 362.)

§       **Inteliquent was not involved in the Consent Decree.**[6] ████████████████████
████████████████████████████████████[7]

§       **Inteliquent disabled LRBT functions in 2014.** ████████████████████████
████████████████████████████████████████████████████
████████████████████████████████

§       **Inteliquent's call completion record to rural areas was stellar**.  (*Id.* at 21, 32, 36.)  We provided requested reports on call completion and other contemporaneous emails.

§       **Inteliquent worked *with* TMUS to address any issues.**  The documents show that Inteliquent had a call completion problem-fixing "trouble ticket process," which belies the notion of the supposed agreement to *not* complete calls.  Inteliquent and TMUS *resolved* call completion issues.  (Ex. H at Ex. Pages 3, 8, 11).  The parties' productions confirm this.  (Ex. I at Ex. Pages 2-3; Ex. J at Ex. Pages, 5-6, 8, 22-31.)

Responsive material has been produced on those points (in any direction on the merits).  If the plaintiffs had an outlandish notion that these *produced* documents were false or manufactured, then that would be for depositions.  In the end, the documents are what they are.

**D.**     **Inteliquent produced relevant discovery on call completion metrics, which goes to whether there was "indirect" evidence of the supposedly unlawful agreement.**

The presence or absence of indirect evidence is also relevant.  **RFP 27** asked for "all documents related to *any* report" Inteliquent provided to TMUS pursuant to their contract.[8]  The plaintiffs did not ask an interrogatory asking what reports are provided.  We (naturally) objected to the word "all" and produced reports dealing with call completion (the subject of the complaint).  Inteliquent provides monthly "NER" (call completion) reports to TMUS.  We produced those excel spreadsheets for the relevant period.[9]  We withheld none.  We also produced emails showing

---

[6] As other briefing has made clear, the TMUS Consent Decree was between TMUS and the Federal Communications Commission and primarily concerned the LRBT issue.

[7] Inteliquent has used red boxes on the cited information in the exhibits to aid the Court's review.

[8] All emphasis is added.

[9] These documents show various metrics, including the "NER" ("network effectiveness ratio"), which measures successful call deliveries.

Inteliquent's call completion performance. Whether and to what extent Inteliquent has strong call completion metrics would seem relevant to whether there is an agreement to *not* remedy call issues.

The plaintiffs evidently want to dispute the content of these reports (which they had requested we provide). Their motion makes an irrelevant *substantive* argument about the level (percentage) of call completion that Inteliquent should meet. They question whether Inteliquent is meeting its call completion contractual obligations *to TMUS*. (Mot. at 7-9.) But that is a misplaced argument on a *discovery* motion (and in a case about a supposed *agreement*). The plaintiffs again do not specify which of their RFPs is at stake, leaving us to wonder. We certainly plan to argue that the reports *eviscerate* the conspiracy claim—but today the point is that these documents exist, they are relevant, and we produced them.[10] Again they are what they are.

There are some hints from the plaintiffs that they want to argue that there was some federal call completion standard for intermediate providers. (Mot. at 9.) But the plaintiffs had argued in now-dismissed Counts II and III that there is some such standard. Judge Lee dismissed those claims with prejudice and denied a primary jurisdictional referral. (ECF 91 at 26-27; ECF 147 at 10-12.) For *this* motion, the only question here (once again) is whether Inteliquent and TMUS *agreed* to *not* remedy call completion failures and what *discovery* is appropriate on that question. And again, the requested reports were produced. If the plaintiffs want to outlandishly argue that Inteliquent and TMUS somehow dummied up these reports—which would be inexplicable—then they can explore that in a deposition. There is nothing else to do here.

**E.      Inteliquent produced discovery on its "trouble ticket" process, which also goes to whether there was "indirect" evidence supposedly unlawful agreement.**

---

[10] The plaintiffs try to manipulate one month of NER data but their conclusion is wrong and does not warrant more discovery.

Inteliquent (and TMUS) produced substantial volumes of documents showing that it has a "trouble ticket" process to respond if concerns arise about completing calls. The production includes hundreds of communications regarding Inteliquent's responses to TMUS on rural call completion issues. They are relevant to the claim of an "agreement" and happen to work against the cause of action. (After all, it would seem odd for conspirators agreeing *not* to remedy call completion failures to establish and then engage in a process to remedy such failures.) They are also responsive to **RFPs 23** and **29**, which sought communications relating to call completion.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████ We view those documents as patently *exculpatory* to the conspiracy claim (their contents show an obvious lack of agreement to engage in unlawful conduct). The plaintiffs may try to advance some other view, but the point here is about *discovery*. These are *produced* documents. The plaintiffs also say these references to false ringing show that "Inteliquent's production has been purposely *limited* to email traffic it sent to cover its own liability following the Consent Decree." (*Id.* at 10 n.10.) We have no idea what that comment is intended to mean, but it is not true and suggests a level of paranoia. We imposed no such limitation. Yet again, the documents are what they are.

F.   **Inteliquent produced information on a call completion issue in 2016 that arose with Wisconsin LECs, even though they are not the plaintiffs here.**

The plaintiffs mention that the TMUS Consent Decree refers to a call completion issue that (briefly) arose in 2016 with three LECs in Wisconsin. (*Id.* at 7.) It is unclear *why* the plaintiffs are raising that issue, as the Wisconsin LECs are not the plaintiffs. But relevant and proportional documents have been *produced* in response to **RFPs 8 and 29**.

The plaintiffs declare (without citation) that "Inteliquent has *repeatedly represented* that

other carriers, not it, were responsible for the Wisconsin LECs' call completion complaints[.]" (*Id.* at 7.)  That is not true.  We question the word "responsible," but have not made the "repeated representations" that they suggest (not once).  In any event, the *produced* documents show:

§        Inteliquent had stellar rural Wisconsin call completion.



§        Other documents (which the plaintiffs cite) show that the call issues for the Wisconsin LECs involved a mere handful of complaints (out of millions of calls) that were *resolved*.



This would all seem to be the exact opposite of a conspiracy "not to remedy call failures." (ECF 91 at 25.)  But yet again, these documents were *produced* and they say what they say.

## G.        With respect to considerations of proportionality and need, the documents show the plaintiffs meant to complain about "Incomm" not "Inteliquent."

Certain documents reinforce why the "proportionality" and "needs" test must have real bite here in the face of these overbroad demands.  Despite the plaintiffs' rhetoric, the actual complaint —when focused on the allegations as to them (the named plaintiffs)—includes just *two* examples of what they say were call completion issues.  (ECF 94 at ¶¶ 317-33, 339-43.)  The documents produced—including from the plaintiffs—related to those examples call into serious question their claim that there was an unlawful *agreement*.

§        **Craigville example from ECF 94 ¶¶ 317-33.**

§        **CTC example from ECF 94 ¶¶ 339-43.**  Inteliquent had nothing to do with the only supposed call completion issue alleged in the complaint.  It occurred in 2013 before Inteliquent even carried TMUS' long-distance traffic beginning in the summer of 2015.

If the plaintiffs are going to seek *more* documents by motion to this Court, it was incumbent upon them to establish proportionality and need in their opening motion, which they did not do.

**H.      The requests for additional "high cost" code documents from Inteliquent's anti-fraud efforts are irrelevant, non-proportional, and misguided fishing expeditions.**

The motion raises one sideshow that could derail this litigation into a highly expensive and wildly irrelevant detour regarding "high cost" codes.  In **RFPs 32-38**, the motion seeks documents from unrelated litigation about "high cost" codes.  This separate matter has nothing to do with the plaintiffs, their allegations, or this dispute.   (Mot. at 1-2, 12-13.)

Here is the context.  Inteliquent provides a host of services to TMUS under a master contract, including ████████████████████████████████████████████ For example, the Court may be familiar with things like "IRS scams," "social security scams," and unlawful robocalling.  There are places in the country that have higher access charges (meaning companies like Inteliquent have to pay more to deliver calls there).  The lucrative money from these charges can invite all sorts of other types of abusive schemes that aim to siphon some portion of those charges.  The Declaration of Mary Hochheimer of Inteliquent explains ████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████
                ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████



As the FCC has described in orders heavily regulating this type of conduct, access stimulation generates in-bound traffic to costly LECs.

Traffic pumping 'is harmful to consumers and competition in a number of ways[.]" (FCC, *Traffic Pumping*.)

Judge Blakey dealt with these access stimulation issues in separate litigation, where *other* parties (not these plaintiffs) that *were* engaged in access stimulation counter-sued Inteliquent for matters relating to high-cost code issues. *Inteliquent, Inc. v. Free Conferencing Corp.*, 503 F. Supp. 3d 608, 644-49 (N.D. Ill. 2020). They claimed that Inteliquent engaged in torts and unfair competition related to allegedly lawful access stimulation businesses. Judge Blakey disagreed and ruled for Inteliquent—in a *thorough* summary judgment decision that came after years of protracted and hotly contested discovery. *Id.* That case concerned traffic related to 'free conferencing numbers to high cost locations," which is *not* at issue here. *Id.* at 624.

In this case before this Court, given the plaintiffs' reference to high cost code issues in their complaint, *we* sought discovery from *them* to determine if they are engaged in that type of business. *They* responded to *us* that (in their words) they do "not have any [access stimulation] agreements." (Ex. O, Resp. 25; Ex. P, Resp. 29). We accepted their representation, which should end any

---

[11] https://www.fcc.gov/general/traffic-pumping (last accessed Feb. 22, 2022).

discussion on these points. █████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████  ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

---

[12] ████████████████████████████████████████████
███████████████████████████ The Court deserved the full context.

12

The bottom line is (i) the plaintiffs received a copy of the actual list of high cost codes; (ii) they are not on it; (iii) the declarations including from Inteliquent's anti-fraud employee show the purposes of the high cost code issues; (iv) the plaintiffs do not engage in access stimulation; (v) the list related to efforts to combat access stimulation; (vi) the plaintiffs omit material information to the Court; and (vii) matters were addressed in separate litigation before Judge Blakey.

**I.      Looking at the actual RFPs reaffirms the motion is without merit.**

Inteliquent's objections to the RFPs are justified and not boilerplate.

**RFPs 11-18.  Inteliquent was not involved with LRBT.**  Inteliquent produced many documents showing it had nothing to do with LRBT (*i.e.*, fake ring tones) or the Consent Decree. Inteliquent does not have any documents relating to: (i) the number of calls with LRBT (**RFP 11**); (ii) whether LRBT was in service on all routes (**RFP 12**); (iii) communications with TMUS about activating LRBT (**RFP 13**); (iv) the location of LRBT equipment (**RFP 14**); or (v) the deactivation of the alleged LRBT (**RFP 15**).  Inteliquent "cannot produce information that does not exist." *Handy v. Johnson,* 1999 WL 417381, at *1 (N.D. Ill. June 15, 1999).  Inteliquent did not rewrite RFPS 15, 17, or 18.  **RFP 15** seeks "all documents" relating to actions taken by TMUS or Inteliquent to "terminate or deactivate the use of LRBTs in or about 2017."  Inteliquent has nothing.  **RFPs 17 and 18** seek "all documents" concerning the FCC's prohibition of LRBT. Inteliquent produced the documents showing it disabled LRBT on its systems in 2014 immediately upon the FCC's rule.  (Inteliquent produced the limited material it had that related to **RFP 16**.)

**RFPs 32-38.  Documents about "high cost codes."**  This is discussed above.

**RFPs 3-8, 30.  Inteliquent was not involved in the FCC investigation.**  Inteliquent does not have: (i) documents TMUS provided to the FCC or their communications (in **RFPs 3 and 7**); (ii) TMUS' compliance reports or plan; (iii) TMUS' manual or training program (**RFPs 4-5**); (iv) a list of "Covered Employees" as defined by the Consent Decree (**RFP 6**); or (v) TMUS' admission

that it failed to correct problems (**RFP 30**). Inteliquent produced its emails with TMUS after the release of the Consent Decree and information about the Wisconsin LECs (**RFP 3, 8**).

**RFP 22. Inteliquent did not prepare and does not possess TMUS' Form 480 Reports, as we have *exhaustingly* said.** (ECF 180 at 7-8.) There is nothing else to do.

**RFPs 2, 9, 10. Documents relating to Inteliquent's data systems/engineers.**[13] **RFP 10** requests "documents related to the LRBT functionalities of" Inteliquent's servers. It is irrelevant and not proportional. Inteliquent produced documents showing it disabled LRBT in 2014. **RFP 2** seeks documents about Inteliquent's *storage systems* for call detail records. The plaintiffs have the right to take a proper custodian deposition. **RFP 9** requests documents identifying the Inteliquent engineers responsible for its "network" from 2013-2018. The request is nonsense and overbroad. Knowledgeable people can be identified through a proper interrogatory.

**RFPs 19-20, 25-28. Documents in addition to the produced contracts.** Inteliquent produced the contracts and amendments on the traffic at issue (**RFP 19)** and "call completion" information provided under the contract (**RFP 27**). The plaintiffs move to compel "all" or "any" documents related to a litany of reports, negotiation communications, and more relating to the contracts between the defendants. (**RFPs 19-20, 25-28**.) Inteliquent and TMUS have a wide-ranging business relationship that includes more than delivering long-distance traffic. There is no basis or justification for these overbroad, irrelevant, and non-proportional requests.

**RFP 21. The 2013 Rural Call Completion Order. RFP 21** seeks documents on Inteliquent's "implementation" of an FCC 2013 Rural Call Completion Order. Inteliquent produced documents showing it disabled LRBT and this Court ruled it is not a "covered provider."

---

[13] **RFP 1** requests "document retention policies." This request plainly amounts to impermissible "discovery on discovery." *Gross v. Chapman,* 2020 WL 4336062, at *4 (N.D. Ill. July 28, 2020).

**RPFs 23-24, 29. Requests for "all" documents related to call completion.** There are billions of completed calls, so these are impossible requests. **RFP 23** would see irrelevant documents discussing non-rural traffic. **RFP 29** requests "all communications" related to "rural call traffic," which is impossibly overbroad (though we have produced substantial material, as discussed). **RFP 24** seeks documents about a 2013 complaint from CTC customer "Louie's Bucket of Bones." Inteliquent did not carry TMUS long-distance traffic in 2013, so has no documents. Nor does Inteliquent have knowledge of calls to customers of the plaintiffs allegedly impacted by LRBT.

**RFP 31. Inteliquent/TMUS payment records. RFP 31** seeks "all records of payments" between Inteliquent and TMUS. This request has no nexus to the conspiracy claim. The parties have had a contract since 2015 that covers multiple services unrelated to the issues presented here.

**RFP 39. Exchanges with parent company.** There are no responsive documents other than publicly filed documents and privileged communications (which the RFP does not seek).

**J. The Court should grant Inteliquent fees.**

We had to do all the work here. It was considerable. The plaintiffs reneged on obligations and have brought a patently baseless motion. They violated Local Rule 37.2, did not modify any RFPs, stuck with meritless positions, and ignored documents that show their requests are fruitless. Rule 37(a)(5)(A)(i). Inteliquent's responses were justified, as shown above. Rule 37(a)(5)(A)(ii). And the plaintiffs told half-stories (or worse) throughout their motion, also shown above. Rule 37(a)(5)(A)(iii). The Court should award Inteliquent fees for having to prepare this response. Rule 37(a)(5)(B).

### Conclusion

For the reasons above, the Court should deny the plaintiffs' motion to compel in full.

Dated: September 30, 2022                     Respectfully submitted,

                                              By: */s/ John J. Hamill*
                                              John J. Hamill
                                              john.hamill@dlapiper.com
                                              Michael S. Pullos
                                              michael.pullos@us.dlapiper.com
                                              Devin Carpenter
                                              devin.carpenter@us.dlapiper.com
                                              DLA PIPER LLP (US)
                                              444 West Lake Street, Suite 900
                                              Chicago, Illinois 60606
                                              Tel: 312.368.7036/2176
                                              Fax: 312.251.5809/312.630.6350

                                              *Attorneys for Inteliquent, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney, on oath, certifies that on September 30, 2022 he served the foregoing **Response in Opposition in to the Plaintiffs' Motion To Compel Against Inteliquent, Inc.** via the ECF system to all parties that have consented to same in accordance with applicable Federal Rules of Civil Procedure and Local Rules of the U.S. District Court for the Northern District of Illinois.


By: */s/ John J. Hamill*_____
        John J. Hamill