**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CRAIGVILLE TELEPHONE CO. d/b/a | ) | |
| ADAMSWELLS; and CONSOLIDATED | ) | |
| TELEPHONE COMPANY d/b/a CTC | ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:19-cv-07190 |
| | ) | |
| vs. | ) | Judge Sharon Johnson Coleman |
| | ) | Magistrate Judge Jeffrey T. Gilbert |
| T-MOBILE USA, INC.; and | ) | |
| IQ, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY TO DEFENDANT T-MOBILE USA, INC.'S OPPOSITION TO**
**PLAINTIFFS' RENEWED MOTION TO COMPEL**
**PRODUCTION OF CERTAIN DOCUMENTS FROM T-MOBILE USA, INC.**

## **Table of Contents**

I.      INTRODUCTION. ...................................................................................................... 1

II.     NARROWED RFPS 53 – 59. ..................................................................................... 2

      A.      RFPs 53-57:  The Narrowed Revenue Assurance Team ("RAT") RFPs
            Seek Relevant Information About The Alleged Co-Conspirators' Mutual
            Concerns About The Costs Of Traffic To High Cost Codes Imposing
            Negative Margins On Inteliquent, Inc. ("IQ"). ...................................................... 2

      B.      RFPs 58-59: Negotiations To Modify The MSA Are Relevant And TMUS
            Has Not Shown This Narrowed RFP Is Improper. .................................................. 4

      C.      The Court Should Decide This Motion First. ......................................................... 5

III.    RFP 10: EVERY ACTION TMUS TOOK IN RESPONSE TO THE LOI IS
      RELEVANT. ................................................................................................................ 6

IV.     RFPS 36-37: DOCUMENTS SHOWING WHAT TMUS DID TO RESPOND TO
      THE FAKE RING TONE BAN AND FORM 480 REPORTING
      REQUIREMENTS ARE RELEVANT ........................................................................ 7

V.      RFPS 24-25: THE COURT SHOULD ORDER TMUS TO PRODUCE THE
      DOCUMENTS IT IS WITHHOLDING THAT SHOW HOW IT CALCULATED
      THE NUMBER OF CALLS IMPACTED BY FAKE RING TONES AND
      UNDERLYING DATA. .............................................................................................. 10

      A.      TMUS's "Compromise" Was Not Reasonable. .................................................... 11

      B.      TMUS Has Not Met Its Burden To Justify Its Work Product Claims. ................. 12

## Table of Authorities

**Cases**

*Adcock v. Brakegate, Ltd.*,
164 Ill. 2d 54, 645 N.E.2d 888 (1994) ........................................................................... 9

*Appleton Papers, Inc. v. EPA*,
702 F.3d 1018, 1024 (7th Cir. 2012) ............................................................................. 13

*Doe v. Loyola Univ. Chicago*, No. 18-CV-7335,
2020 WL 406771 (N.D. Ill. Jan. 24, 2020) ................................................................... 1

*Domanus v. Lewickis*, No. 08 C 4922,
2011 WL 13268087 (N.D. Ill. Dec. 20, 2011) ............................................................... 3

*Eternity Mart, Inc. v. Nature's Sources, LLC*,
2019 WL 6052366 (N.D. 111. 2019) ............................................................................. 1

*Harris Davis Rebar, LLC v. Structural Iron Workers Loc. Union No. 1, Pension Tr. Fund*,
No. 17-C-6473, 2019 WL 454324 (N.D. Ill. Feb. 5, 2019) ......................................... 13

*In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*,
172 F.R.D. 295 (N.D. Ill. 1997) ................................................................................. 1, 13

*In re Dealer Management Systems Antitrust Litigation*,
335 F.R.D. 510 (N.D. Ill. 2020) ................................................................................... 14

*Jones v. City of Chicago*,
856 F.2d 985 (7th Cir.1988) ........................................................................................ 9

*Martinez v. Cook Cty.*,
2012 WL 6186601 (N.D. Ill. 2012) ............................................................................. 1

*OTR Transp., Inc. v. Data Interfuse, LLC*, No. 21 CV 3415,
2022 WL 296056 (N.D. Ill. Feb. 1, 2022) ................................................................... 14

*Patrick v. City of Chi.*,
111 F. Supp. 3d 909 (N.D. Ill. 2015) ........................................................................... 13

*Ritacca v. Abbot Lab.*,
203 F.R.D. 332 (N.D. Ill. 2001) ................................................................................... 12

*Sapperstein v. Hager*,
188 F.3d 852 (7th Cir. 1999) ........................................................................................ 9

*Sols. Team v. Oak St. Health, MSO, LLC,* No. 17-CV-1879,
2021 WL 3022324 (N.D. Ill. July 16, 2021)................................................................ 1

*Stagger v. Experian Info. Sols*., No. 21 C 2001,
2021 WL 5299791 (N.D. Ill. Nov. 15, 2021) ............................................................. 3

*Stagger v. Experian Information Solutions, Inc.,*
No. 21 C 2001, 2021 WL 5299791 (N.D. Ill. Nov. 15, 2021) .................................. 12

*Surgery Ctr. at 900 N. Mich. Ave., LLC v. Am. Physicians Assurance Corp., Inc.*,
317 F.R.D. 620 (N.D. Ill. 2016)................................................................................. 9

*Tate & Lyle Americas, LLC, v. Glatt Air Techniques, Inc.*, No. 13-2037,
2015 WL 4647561 (C.D. Ill. July 31, 2015) ............................................................ 13

*Venzor v. Gonzalez,*
No. 96 C. 413, 1997 WL 102538 (N.D. Ill. Mar. 5, 1997) ........................................ 9

*Wiginlon v. CB Richard Ellis, Inc.*,
229 F.R.D. 568. 577 (N.D. Ill. 2004)......................................................................... 1

*Williams v. City of Chicago*, No. 06 C 1243,
2007 WL 2713363 (N.D. Ill. Sept. 12, 2007) ............................................................ 9

**Federal Rules**

FED. R. CIV. P. 26(b)(3)(A) ........................................................................................ 14

Craigville Telephone Co. d/b/a AdamsWells and Consolidated Telephone Company d/b/a CTC, on behalf of themselves and a class of similarly-situated companies ("Plaintiffs"), hereby reply to Defendant T-Mobile USA, Inc.'s ("TMUS") Opposition to Plaintiffs' Renewed Motion to Compel Production of Certain Documents from TMUS (the "Motion") (ECF 274).

## I.    INTRODUCTION.

TMUS's Opposition ("Opp.") shows that the primary issue is whether Plaintiffs' narrowed RFPs are relevant. A discovery request should be considered relevant, "if there is any possibility that the information sought may be relevant to the subject matter of the action." *In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 303 (N.D. Ill. 1997). As this Court explained:

> "If relevance is in doubt, courts should err on the side of permissive discovery." *Wiginlon v. CB Richard Ellis, Inc.*, 229 F.R.D. 568. 577 (N.D. Ill. 2004). If discovery appears relevant, the burden is on the party objecting to a discovery request to establish the request is improper. *Eternity Mart, Inc. v. Nature's Sources, LLC*, 2019 WL 6052366, at *2 (N.D. 111. 2019); . . . . "Because discovery is concerned with 'relevant information' not 'relevant evidence' the scope of relevance for discovery purposes is necessarily broader than it is for trial evidence under Federal Rule of Evidence 401." *Martinez v. Cook Cty.*, 2012 WL 6186601, at *2 (N.D. Ill. 2012).

*Doe v. Loyola Univ. Chicago*, No. 18-CV-7335, 2020 WL 406771, at *2-*3 (N.D. Ill. Jan. 24, 2020); *see also Sols. Team v. Oak St. Health, MSO, LLC,* No. 17-CV-1879, 2021 WL 3022324, at *3 (N.D. Ill. July 16, 2021) (summarizing cases showing once the movant makes a preliminary showing that the discovery it seeks is relevant and proportional, the party opposing discovery has the burden of proving the requested discovery should be disallowed). Plaintiffs' Memorandum of Law in Support of their Motion ("Mem.") amply demonstrates that the discovery sought not only "appears relevant," but it is relevant, whereas TMUS has not demonstrated the requests are improper. Therefore, the Court should err on the side of permissive discovery by compelling

TMUS to respond to the narrowed Requests for Production ("RFPs"). And, as to the work product dispute, the Court should find TMUS has not met its burden of demonstrating anything it is withholding qualifies for work product protection and compel its production.

## II.    NARROWED RFPS 53 – 59.

### A.    RFPs 53-57:  The Narrowed Revenue Assurance Team ("RAT") RFPs Seek Relevant Information About The Alleged Co-Conspirators' Mutual Concerns About The Costs Of Traffic To High Cost Codes Imposing Negative Margins On Inteliquent, Inc. ("IQ").

TMUS opposes producing any documents about the RAT meetings because it contends the only focus of those meetings was access stimulation.  (Opp. at 3-4.)  This argument fails because: (1) Plaintiffs narrowed these requests in ways that should substantially avoid production of access stimulation materials; and (2) the Opposition ignores documents that contradict TMUS's assertion that this group only addressed access stimulation.

First, Plaintiffs narrowed these requests to discreet subsets of the team's documents and in ways that focus on the relevant topics of *high cost codes* and *negative margins*.  (*See* Mem. at 2-7; *see also* ECF 94-14 ¶¶ 18, 22.)  As the Court already found, the failing economics of the TMUS/IQ Master Services Agreement ("MSA") arrangement (*i.e.* negative margins) is relevant information because it presents motive for why IQ would try to reduce its costs by using poor quality least cost routers or engage in routing practices that reduced the number of expensive calls it completed to rural or high cost codes, which conduct is in turn the subject of Counts II, III and VIII.  (*See* Mem. at 2-3; *see also* ECF 257 at 8 ("Plaintiffs have established that the 'economics' of the TMUS-IQ relationship generally is relevant.").)  Plaintiffs have also established the relevance of high cost codes: the FCC's 2018 Rural Call Completion Order, which the Court found applicable to TMUS's conduct, expressly protects local exchange carriers operating in rural *or* high cost codes from dominant upstream Covered Providers engaging in the types of call

completion shenanigans that are at issue here. (Mem. at 4.) By limiting these RFPs to materials most likely to address high cost codes and negative margins, Plaintiffs have ensured that the requests are proportional. (*See* Opp. at 3, n.3-4.)[1]

Second, TMUS's untested assurances that the cross-company RAT only "addressed" access stimulation and that their references to high cost codes always referred to access stimulators, is insufficient to carry TMUS's burden of showing these requests are improper.

> [A] lawsuit involves a lot more "show me" than "tell me." "Move along, there's nothing to see here," is simply not a very convincing stance. If plaintiffs simply had to believe defendants' and their attorneys' assurances that defendants had done nothing wrong, there would be a lot of judges looking for other employment. . . . The Court understands that there's a bit of a "pay no attention to the man behind the curtain" . . . . but, in many cases, that curtain has to be pulled back in litigation.

*Stagger v. Experian Info. Sols*., No. 21 C 2001, 2021 WL 5299791, at *3 (N.D. Ill. Nov. 15, 2021) (granting motion to compel); *see also* ECF 236 at 8-9 (citing same).

Mr. Adler's second declaration (ECF 235-3) is insufficient to carry TMUS's burden to show narrowed RFPs 53-57 are *improper* because conclusory declarations unsupported by any specific information carry little, if any, evidentiary value. *See Domanus v. Lewickis*, No. 08 C 4922, 2011 WL 13268087, at *2, *4 (N.D. Ill. Dec. 20, 2011) (finding affidavit defendant submitted in support of non-production "le[ft] many questions unaddressed or unanswered" and ordering production of documents). Mr. Adler's new testimony that by "high cost" in his first Declaration, he actually meant, "high volume" or a catch all for access stimulation, is self-contradictory. (*Compare* ECF 94-14 ¶¶ 18, 22, with ECF 235-3.) Mr. Adler's repeated use of the

---

[1] Even if high cost code and negative margin documents also contain some collateral discussion about other topics, those documents are nevertheless discoverable in full. *See U.S. Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, No. 13-CV-04307, 2015 WL 2148394, at *2 (N.D. Ill. May 5, 2015) (granting motion to compel production of unredacted versions of documents defendant produced redacted for relevance, finding they could be marked confidential, and recognizing that irrelevant information within a document that also contains relevant information may provide context for the relevant information).

term "focus" is also vague and ambiguous, leaving many questions unanswered as to whether topics other than access stimulation were nevertheless addressed by this group, which is what his first declaration indicated. Finally, his insinuation that the RAT never focused on "legitimate calls," is flatly contradicted by documents produced by third party Equinox, a consultant hired by IQ, who, according to Mr. Adler's first declaration, attended some of the RAT meetings. (*See* ECF 94-14 at ¶ 24; ECF 201 at 9-10; ECF 302 at 6-8.) Although IQ has not produced any of this material, the Equinox documents do show that ████████████████████████████████████

████████████████████████████████████████████████ (*See generally id.*) ██████████████

████████████████████████████████████████████████████████

██████████████████ (*See generally id.; see also* ECF 201-4.) Since there are disputed issues of fact as to what the parties to the RAT meetings were referring to when they used the term "high cost codes," the Court should err on the side of permissive discovery and compel TMUS to respond to these narrowed RFPs.[2]

### B. RFPs 58-59:[3] Negotiations To Modify The MSA Are Relevant And TMUS Has Not Shown This Narrowed RFP Is Improper.

Plaintiffs' Motion amply demonstrates the relevance of IQ's attempts to renegotiate the MSA, which, together with the Court's finding that the economics of the deal are relevant, shifts the burden to TMUS to demonstrate this narrowed RFP is improper. (Mem. at 6-7; ECF 257 at 8.) TMUS has not met its burden. Instead, TMUS contends that the invoices of payments between

---

[2] TMUS also argues Plaintiffs are being inconsistent because they objected to producing evidence about access stimulation. (Opp. at 3.) This argument is flawed because (1) it exposes that IQ served discovery asking Plaintiffs about their involvement in access stimulation, showing that IQ ascribes some relevance to access stimulation; and (2) unlike TMUS, Plaintiffs did not withhold any documents pursuant to their relevance objection, they simply did not have any responsive documents because they have not engaged in the practice. (*See* ECF 289-7 & 289-8 at Nos. 25, 29.)

[3] TMUS points out that the Motion references RFPs 58 and 59 in the heading for this topic. (Opp. at 2, n.2) Plaintiffs proposed the same narrowed language for both RFP 58 and 59, so they were collapsed.

TMUS and IQ and a copy of the original MSA should suffice. (Opp. at 4-5.) But the invoices and the original MSA do not reflect any evidence of *why* IQ was experiencing financial distress from the MSA, whereas documents proposing changes to the MSA would.

For example, TMUS has produced a 

an objective way to demonstrate to a jury whether IQ's performance was, as it says, "stellar" or not. (*See* ECF 289 at 6, 9.) In this

contract

negotiations could reveal relevant information Plaintiffs would not otherwise have known about – it shows that

contract negotiations from 2015 or 2016 were produced, during the time when Plaintiffs allege the fake ring tones were masking IQ's poor call completion, they could reveal evidence as to whether TMUS tolerated IQ's poor call completion performance before the FCC investigation

and any other aspect of the MSA that was imposing economic pressures on IQ. Such information would help a jury understand why IQ would be incentivized to engage in degraded call completion practices.

### C. The Court Should Decide This Motion First.

Finally, Plaintiffs agree the Court's decision on these narrowed RFP's can be made in tandem with its ruling on the same topics with respect to IQ, but the Court should decide this Motion first because it is a renewal of Plaintiffs' original motion to compel against TMUS which

was filed before the motion to compel IQ (ECF 216; ECF 286). An Order that the documents sought by narrowed RFPs 53-59 are discoverable from both Defendants would be most efficient.

## III.    RFP 10: EVERY ACTION TMUS TOOK IN RESPONSE TO THE LOI IS RELEVANT.

TMUS's Opposition fails its burden to show these relevant RFPs are otherwise improper. TMUS ignores that these narrowed RFPs are the product of Plaintiffs following the Discovery Order's finding that, "a request directly seeking documents related to any actions T-Mobile took in response to the letter, with perhaps some additional subject limiters, might be more palatable and proportional." (ECF 257 at 10.) TMUS's reference to making "fulsome" or "robust" productions of other documents that it contends can substitute for the materials requested, without proffering those documents to the Court, are mere platitudes that are not persuasive. Boilerplate complaints about producing more documents requiring additional custodians and searches are not persuasive either – that argument could be made with respect to any RFP. Conclusory accusations of "fishing expeditions" are not persuasive – it's yet another platitude. And TMUS's repeated complaint that Plaintiffs are acting like "private attorneys general" is a made-up criticism that it has never supported with any law. It's also not a persuasive argument because the FCC did not have a burden of proof it had to satisfy in conducting its investigation because it never filed a suit. Instead, the FCC negotiated a resolution once it had sufficient evidence to leverage a settlement, which left many open questions that Plaintiffs must answer in order to sustain their claims with sufficient evidence to overcome summary judgment and certify the class. So Plaintiffs necessarily require more discovery than the FCC. And, TMUS has necessitated this discovery. Plaintiffs have asked TMUS to stipulate to the admissibility of the Consent Decree and the factual accuracy of particular factual paragraphs therein, but it has refused to do so, requiring Plaintiffs to secure evidence in discovery to support each of TMUS's damaging admissions in the Consent Decree to

6

guard against TMUS's misguided plan to potentially challenge its admissibility at trial.[4]

The Motion fully briefs the relevance of RFP 10 as narrowed, and since Plaintiffs cured its

overbreadth, the Court should order TMUS to respond to all four parts of it.  (Mem. at 7-10.)[5]

## IV.    RFPS 36-37: DOCUMENTS SHOWING WHAT TMUS DID TO RESPOND TO THE FAKE RING TONE BAN AND FORM 480 REPORTING REQUIREMENTS ARE RELEVANT.

The Opposition shows TMUS has not heeded the Court's ruling on RFPs 36-37, confirming

that TMUS would only produce two versions of a single document, ███████████████████

█████████████████████████████████ in response to these narrowed RFPs.  (*See* Ex.

12 & 13; Mem. at 11, n.10.)  Whereas the Court, "acknowledge[d] that some relevant information

is likely to be swept up in a production responsive to RFP Nos. 36(a) and 36(b)," and issued

guidance for the parties to meet and confer on custodians and search terms:

> RFP Nos. 33 and 35-38 present a perfect opportunity for the parties to meet and
> confer more fulsomely about requests for documents that Plaintiffs may be entitled
> to discover . . . ***The parties might discuss limitations involving time period,
> categories of documents, particular custodians or search terms, or other limiters***
> that the parties and counsel surely are better suited to determine than the Court.

(ECF 257 at 13 (emphasis added).)  But no such conversation happened.  Following this guidance,

Plaintiffs expressed to TMUS that ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ (Ex. 1 at No. 36), but

TMUS ████████████████████████

---

[4] The Consent Decree is admissible as a public document as well as a TMUS business record that contains admissions of a party opponent.

[5] The new uncross-examined declarations of Tim Schneberger and Sukhi Nehra (*see* Opp. Exs. A-B), are, like Mr. Adler's declaration, insufficient to avoid conducting searches for communications between TMUS and IQ.  (*See supra* p. 4.)  These witnesses have not been deposed and neither asserts they know for sure whether anyone other than themselves knew about the LOI or the investigation, which is why TMUS should be required to run electronic searches for such communications.  (*See* Mem. at 9-10.)

██████████████████████████████████████████████

(*Id.*) ████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████ (*Id.*) █████████████████████ ███████

████████████████ (*See* Mem. at 10-11.)

Next, TMUS's assertion that Plaintiffs already know when and how it complied with the FCC's 2013 RCC Order is not accurate. █████████████████ provides no information about what TMUS did to comply with the Form 480 reporting requirements during the time period of April 1, 2015, when the 2013 Order's Form 480 reporting requirement went into effect, and █████████████ shortly after it expanded its use of fake ring tones in September 2015.[6] The gap of information in this time period is significant because Ms. Foster's declaration asserts she and her team were not "consciously aware" of the 2013 Order's ban on fake ring tones and were too overwhelmed with preparing for the reporting requirements for "two years" during which they, "expended considerable time and resources to develop the systems necessary to collect and report such data." (ECF 94-19, ¶ 7.) As shown by Plaintiffs' Motion, and ignored by the Opposition, Ms. Foster's assertion that TMUS was not "consciously aware" of the fake ring tone ban is flatly contradicted by the fact that ██████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████ (*See* Ex. 11 at

---

[6] ████████████████████████████████████ (Ex. 12, TMUS00019613) █████
████████████████ (Ex. 13, TMUS00018394.)

TMUS00004485_U.)[7]    Therefore, the Opposition's tone of offense over Plaintiffs' desire to investigate the scope of the Form 480 compliance efforts during 2014 and 2015, and to evaluate whether TMUS was "consciously aware" of the fake ring tone ban or not, is not based on mere suspicion sparked by Ms. Foster's unusual word choice. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮    Even though intent is not an element of a Communications Act violation, scienter is nevertheless at issue with respect to conspiracy and punitive damages. *See Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 64, 645 N.E.2d 888, 894 (1994) (citing *Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir.1988)) ("civil conspiracy is based upon intentional activity…"); *Venzor v. Gonzalez*, No. 96 C. 413, 1997 WL 102538, at *3 (N.D. Ill. Mar. 5, 1997) (noting punitive damages are available on a conspiracy claim).  Therefore, seeking discovery to test the credibility of Ms. Foster's testimony about TMUS's alleged lack of "conscious awareness" or intent is appropriate.[8]

TMUS's assertions that Plaintiffs already know whether and *how* TMUS complied with the FCC's 2013 RCC Order alters the narrowed RFP which seeks documents showing *when* and whether TMUS implemented compliance plans.  If Ms. Foster is correct, ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ was the product of two years' worth of activity, but ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[7] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[8] *Williams v. City of Chicago*, No. 06 C 1243, 2007 WL 2713363, at *1 (N.D. Ill. Sept. 12, 2007) ("information is relevant if it makes an issue in the case more or less likely, or if it speaks to the credibility of any witnesses."); *Surgery Ctr. at 900 N. Mich. Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 626 (N.D. Ill. 2016) ("An employee of the defendants is not a disinterested witness.  She is subject to their influence, in a sense in their power; and it is not easy to make a credibility determination from the face of an affidavit.") (quoting *Sapperstein v. Hager*, 188 F.3d 852, 857 (7th Cir. 1999)).

███████████ or in relation to the expansion of fake ring tones in September 2015, any particular compliance activities occurred. It also references ████████████████████████ that contradict TMUS's assertions that no other documents on the same topic are relevant.[9] (*See generally* Opp. at 9-10.) ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████ ██████████████████

████████████████████████████████████████ ██

███████████ ████████████████████████████████

████████████████████████████████████████

████████████████████████████ ██

███████████ raises questions about whether there could have been a prior or different method TMUS used to prepare the RCC data in its Form 480s that changed. Without the information sought by the narrowed RFP, Plaintiffs could be misled by ████████████████████ to misread some of the Form 480 data TMUS filed with the FCC ██████████████████ ███████████████ Thus, there is likely other substantively relevant information that Plaintiffs do not yet know about among documents responsive to narrowed RFP 36-37. The Court should order TMUS to produce them.

## V. RFPS 24-25: THE COURT SHOULD ORDER TMUS TO PRODUCE THE DOCUMENTS IT IS WITHHOLDING THAT SHOW HOW IT CALCULATED

---

[9] It is implausible that Plaintiffs already have everything responsive to this topic, when TMUS only searched the ESI of two persons named ████████████████ and the corresponding search terms for those custodians would not capture documents responsive to this RFP. (*See* ECF 301-5.)

[10] ██████████████████████████████████ underscores why it is unreasonable that TMUS has continued to refuse to search WBK's files for responsive materials. (*See* ECF 253 at 18:6-20:3 (discussing the case law in this district that a lawyer's files are deemed in the control of the client).)

**THE NUMBER OF CALLS IMPACTED BY FAKE RING TONES AND UNDERLYING DATA.**

**A.      TMUS's "Compromise" Was Not Reasonable.**

As shown below, it was not unreasonable for Plaintiffs not to capitulate to TMUS's demand that they abandon seeking documents, abandon privilege challenges, and abandon subject matter waiver claims in exchange for only an interrogatory response because TMUS has made no convincing showing that every document it is withholding is privileged in the first place. (*See e.g.*

Ex. 19 ███████████████████████████████████████████████████

TMUS did not disclose during meet and confer that ██████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████  ████████████████████████████ Plaintiffs located only

████  entries on TMUS's 76 page privilege log ██████████████████████████

████████████████████  ██████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████  It is not apparent to Plaintiffs

which other entries, if any, on the August 10, 2022 privilege log purport to correspond to all the other materials TMUS claims work product over in its Opposition.  But, since TMUS did not proffer its privilege log with its Opposition, those entries are not before the Court.

Plaintiffs sent TMUS an email on Thursday October 27, 2022, asking TMUS to clarify

whether this privilege log covers the documents it is withholding as privileged in its responses to Plaintiffs' Second Set of RFPs, which includes a formal RFP for the same information sought by narrowed RFPs 24-25. (Ex. 23, 10/27/22 Gallagher Email; *see also* Ex. 24, TMUS Resp. to Sec. RFPs at No. 56)[11] As of this filing, TMUS has not responded to Plaintiffs' query, so it is not clear whether TMUS contends it has already logged the narrowed RFP 24 materials.

Thus, it was not unreasonable for Plaintiffs not to capitulate to TMUS's requirements, especially since some of the privilege log entries ████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████ or is withholding *factual* information which authorities cited in the Motion show are not entitled to work product protection. (Mem. at 13-15.) TMUS's proposal was also not reasonable because it was an attempt to circumvent its burden of demonstrating entitlement to privilege over a category of information this Court already found discoverable. (ECF 257 at 17.)

### B. TMUS Has Not Met Its Burden To Justify Its Work Product Claims.

The Court should overrule TMUS's work product claim for the simple reason that TMUS has failed to carry its burden to justify them and has engaged in dilatory foot-dragging in the process. *See Stagger v. Experian Information Solutions, Inc.,* No. 21 C 2001, 2021 WL 5299791, at *5 (N.D. Ill. Nov. 15, 2021) ("Tardiness and failure to comply with Fed. R. Civ. P. 26(b)(5) can, in many circumstances, be found to constitute a waiver of the privilege as to the unlogged documents."); *Ritacca v. Abbot Lab*., 203 F.R.D. 332, 335-36 (N.D. Ill. 2001) (finding privilege waived by defendant in discovery due to dilatory foot-dragging and lackadaisical approach to Rule 26(b)(5)). An order merely requiring TMUS to explain how and whether its privilege log justifies

---

[11] The Meet and Confer chart shows ███████████████████████████████████████████
███████████████████████████████████████████████ TMUS has already had plenty of time to do so.

its blanket privilege claim over an entire category of important material would only prolong this dispute and foist another round of costly briefing on Plaintiffs. *See, e.g.*, *Harris Davis Rebar, LLC v. Structural Iron Workers Loc. Union No. 1, Pension Tr. Fund*, No. 17-C-6473, 2019 WL 454324, at * 4 (N.D. Ill. Feb. 5, 2019) (ordering party that failed to provide any information to substantiate its claims of privilege or work-product protection to comply with Rule 26(b)(5) and produce a privilege log). TMUS's Opposition does not identify, "any particular entry in any document [it] claim[s] is protected. Instead, [it] insist[s] that not a single line of any of the materials [withheld] is outside the scope of the . . . work product doctrine. That indiscriminate assertion of privilege is incorrect and simply not sustainable." *Patrick v. City of Chi.*, 111 F. Supp. 3d 909, 917 (N.D. Ill. 2015) (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 395–96 (1981)).

> A party invoking the claim of privilege has the burden of establishing all of its elements. *U.S. v. White*, 950 F.2d 426, 430 (7th Cir. 1991). The discovery opponent must state the claim expressly and describe the nature of the document so withheld in a manner that will enable the other parties to assess the claim of privilege. *AM International, Inc. v. Eastman Kodak Co.,* 100 F.R.D. 255–256 (N.D. Ill. 1981); *von Bulow by Auersperg v. von Bulow,* 811 F.2d 136, 144 (2nd Cir. 1987).

*In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994,* 172 F.R.D. 295, 307 (N.D. Ill. 1997) (finding defendants proceeded improperly in their objection to privilege since they did not identify the documents for which the claim is made nor supply the information required by Fed. R. Civ. P. 26(b)(5)); *see also e.g. Tate & Lyle Americas, LLC, v. Glatt Air Techniques, Inc.*, No. 13-2037, 2015 WL 4647561, at *4 (C.D. Ill. July 31, 2015) (ordering production of alleged work product document where the description in the privilege log is insufficient to support the claim).

TMUS also makes no attempt to distinguish what, among the materials it is withholding, it contends is fact versus opinion work product, ignoring that different standards apply. *Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1024 (7th Cir. 2012). A fact work product claim may be

overcome by Plaintiffs' substantial need for information that could substitute for CDRs TMUS failed to preserve which imposes undue hardship on Plaintiffs to determine a reliable means to identify the calls impacted by fake ring tones for purposes of damages and class discovery. *See id.* and Fed. R. Civ. P. 26(b)(3)(A). But the Opposition's failure to "describe the nature of the documents so withheld" and failure to submit *evidence* of the purpose for which ▮▮▮▮▮▮▮

▮▮▮ has rendered it impossible for the Court to evaluate whether it should compel production of fact work product materials due to substantial need, ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ *See, e.g., OTR Transp., Inc. v. Data Interfuse, LLC*, No. 21 CV 3415, 2022 WL 296056, at \*2-3 (N.D. Ill. Feb. 1, 2022) (finding based on *in camera* review of alleged work product and consultant's engagement letter that plaintiff hired consultant primarily for a business purpose and therefore its materials were not protected work product); *In re Dealer Management Systems Antitrust Litigation*, 335 F.R.D. 510, 516-17 (N.D. Ill. 2020) (stating, "[a] communication is not privileged if the lawyer (or the client) is asking the third-party advisor/consultant to offer its independent assistance, assessment, and opinion separate and apart from the legal advice being provided by counsel," and finding communications with consultant were not protected by privilege or work product).

TMUS could have carried these burdens in its Opposition to Plaintiffs' original motion to compel (ECF 199), but it held back this work product issue until after the Court ordered this topic relevant. (ECF 257 at 17.) The narrowing meet and confer process forced it to a head, but even then, TMUS was not forthcoming over the weeks of back and forth about ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ (*See* Ex. 1 at 24, and Ex. 3 at 2 ▮▮▮▮▮▮

After *months* of meet and confer, we have a renewed motion to compel where TMUS makes sweeping work product claims over an undisclosed volume of information the Court already found

discoverable. TMUS does not deserve another bite at the apple. Enough time has been wasted.

For these and other reasons set forth in the Motion, the Court should find the underlying data and factual information concerning how TMUS estimated the number of calls impacted by fake ring tones is not work product, and it should exercise its discretion to find TMUS has waived claims to privilege and work product over the documents responsive to narrowed RFP 24 by not carrying its burden in the Opposition and order TMUS to produce them. Alternatively, the Court should order TMUS to produce a privilege log for all documents responsive to narrowed RFP 24/25 by a date certain, submit them to the Court in camera, and provide Plaintiffs another opportunity to submit a brief in further response to the complete log.

WHEREFORE, Plaintiffs respectfully request that the Court grant the relief sought by Plaintiffs' Renewed Motion to Overrule T-Mobile's Objections and Compel Production of Certain Documents.

Submitted October 31, 2022

/s/ David T.B. Audley
David T.B. Audley (Bar No. 6190602)
Mia D. D'Andrea (Bar No. 6307966)
**CHAPMAN AND CUTLER LLP**
111 West Monroe Street
Chicago, IL 60603-4080
Tel. 312-845-2971
Email: audley@chapman.com
Email: dandrea@chapman.com

Cathy A. Hinger (*pro hac vice*)
G. David Carter (*pro hac vice*)
Victoria A. Bruno (*pro hac vice*)
Kathleen O. Gallagher (*pro hac vice*)
Jeremy L. Baker (*pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
2001 K Street, NW, Suite 400 South
Washington, DC  20006
Tel.:  202-857-4489
Fax:  202-261-0029
Email:  cathy.hinger@wbd-us.com
Email:  david.carter@wbd-us.com
Email:  victoria.bruno@wbd-us.com
Email:  katie.gallagher@wbd-us.com
Email:  jeremy.baker@wbd-us.com

Kurt D. Weaver (*pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
555 Fayetteville Street, Suite 1100
Raleigh, NC  27601
Telephone:  919-755-8163
Email:  kurt.weaver@wbd-us.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 31st day of October, 2022, I served the foregoing **Plaintiffs' Reply To Defendant T-Mobile USA, Inc.'s Opposition To Plaintiffs' Renewed Motion To Compel Production Of Certain Documents From T-Mobile USA, Inc.** via the ECF system on parties that have consented to the same in accordance with applicable Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Northern District of Illinois.


By:     */s/   David T.B. Audley*