# EXHIBIT 2

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3   CRAIGVILLE TELEPHONE CO. d/b/a      )  No. 19 C 7190
     ADAMSWELLS, and CONSOLIDATED        )
 4   TELEPHONE COMPANY d/b/a CTC,        )
                                         )
 5               Plaintiffs,             )
                                         )
 6           vs.                         )  Chicago, Illinois
                                         )
 7   T-MOBILE USA, INC., and             )
     INTELIQUENT, INC.,                  )
 8                                       )  September 15, 2021
                 Defendants.             )  10:38 a.m.
 9
                    TRANSCRIPT OF PROCEEDINGS
10      BEFORE THE HON. JEFFREY T. GILBERT, MAGISTRATE JUDGE

11   APPEARANCES:

12   For the Plaintiff:      MS. CATHY HINGER
                             MR. G. DAVID CARTER, JR.
13                           MS. VICTORIA A. BRUNO
                             MS. KATHLEEN O. GALLAGHER
14                           Womble Bond Dickinson, LLP,
                             1200 19th Street, NW, Suite 500,
15                           Washington, D.C.  20036

16                           MR. KURT D. WEAVER
                             Womble Bond Dickinson, LLP,
17                           555 Fayetteville Street, Suite 1100,
                             Raleigh, North Carolina  27601
18
                             MR. DAVID T. AUDLEY
19                           MS. MIA D. D'ANDREA
                             Chapman & Cutler LLP,
20                           111 West Monroe Street, Suite 1600,
                             Chicago, Illinois  60603
21

22

23                      PATRICK J. MULLEN
                       Official Court Reporter
24                  United States District Court
             219 South Dearborn Street, Room 1412
25                  Chicago, Illinois  60604
                        (312) 435-5565
```

```
 1  APPEARANCES:  (Continued.)

 2  For Defendant T-Mobile:      MR. MICHAEL T. MERVIS
                                 MR. BALDASSARE VINTI
 3                               MS. TIFFANY M. WOO
                                 Proskauer Rose, LLP,
 4                               11 Times Square,
                                 New York, New York  10036
 5

 6

 7  For Defendant Inteliquent:   MR. JOHN J. HAMILL, JR.
                                 MR. MICHAEL S. PULLOS
 8                               DLA Piper, LLP,
                                 444 West Lake Street, Suite 900,
 9                               Chicago, Illinois  60606

10  Also Present:                MR. RICHARD L. MONTO

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1       (Telephonic proceedings on the record.)

2            THE CLERK:  19 Civil 7190, Craigville Telephone

3  Company, et al., versus T-Mobile USA, Incorporated, et al.

4            THE COURT:  Okay.  Good morning, everybody.  This is

5  Judge Gilbert.  We're doing this remotely.  We are on the

6  record in the courtroom as well.  So I'm going to ask for

7  appearances for everybody, first for plaintiffs and then for

8  defendants.  Then please, please, please try and remember that

9  before you speak, state your name so that if a transcript is

10  prepared of this hearing the court reporter will know who is

11  speaking and can record that in the transcript.  So let's go

12  first with appearances for plaintiffs.

13            MS. HINGER:  Good morning, Your Honor.  This is Cathy

14  Hinger from Womble Bond Dickinson appearing for the plaintiffs.

15  I believe on the line are my co-counsel David Carter, Kurt

16  Weaver, Victoria Bruno, Katie Gallagher, and from the law firm

17  of Chapman & Cutler David Audley and Mia D'Andrea, and I will

18  be addressing the Court this morning.  Thank you.

19            THE COURT:  Okay.  If the other people on plaintiffs'

20  counsels' side want to be reflected as having attended this

21  hearing if a transcript is prepared, you should send or

22  Ms. Hinger should send in an email to Brenda copying the other

23  side just giving those names again so that she can forward them

24  to any court reporter that might be transcribing this.

25            Okay.  On the defense side?

1     MR. MERVIS:  Good morning, Your Honor.  This is
2   Michael Mervis of Proskauer Rose for T-Mobile.  With me on the
3   line are my colleagues Balda Vinti and Tiffany Woo.  I expect
4   that I will do most, if not all, of the talking for us, but
5   there may be particular questions that the Court has that would
6   be better suited for Ms. Woo, and I think it will be the two of
7   us.
8     THE COURT:  Okay, same directive to you.  Also,
9   Mr. Mervis, if you're the one that's going to be doing the
10   speaking, I can barely hear you.  I don't know if you're on a
11   speaker phone or --
12     MR. MERVIS:  Your Honor, I apologize.  I'm on a
13   landline, but let me just take off my headset and do it the
14   old-fashioned way.
15     THE COURT:  Okay.
16     MR. MERVIS:  Your Honor, is this better?
17     THE COURT:  That's much better.
18     MR. MERVIS:  Okay.  Apologies for that.
19     THE COURT:  No, no need to apologize.
20     Then for Inteliquent?
21     MR. HAMILL:  Good morning, Your Honor.  This is John
22   Hamill.  I'll plan to do most of the talking.  Also on the line
23   are Michael Pullos and Richard Monto, and we understand your
24   instruction about the transcript.
25     THE COURT:  Terrific.  Okay.  The only glitch in that

 1   is that if you end up clicking, you know, the link on my web

 2   page to get the transcript, I'm not 100 percent sure that you

 3   will get contacted by a court reporter.  We probably will

 4   because they ask us if we want a copy.  All right.  Never mind.

 5        All right.  So let me just give you a sense of where I

 6   am on this, and then I will hear from you on certain things.

 7   I've read everything that I think I need to read pretty

 8   thoroughly except for the confidentiality orders, the eight

 9   different documents that both sides sent to my proposed order

10   file and to my courtroom deputy yesterday just before 6:00 p.m.

11   I'm prepared to address that, but I have not fully digested

12   everything in all of the documents that you sent that late in

13   the hour.

14        But I am aware of the motion to compel in the WBK

15   case.  I am aware of plaintiffs' suggestion that I hold off on

16   that, but I know the motion to compel is fully briefed.  I'm

17   aware of plaintiffs' suggestion that I hold off on that fully

18   briefed motion for a couple of weeks in order for the parties

19   that are interested in that issue, probably T-Mobile as well,

20   file a status report in two weeks which is September 30th.  I

21   don't recall whether T-Mobile said that was good with them or

22   not.  WBK is not a party to the status report necessarily.  Is

23   WBK on the line as an interested observer?

24        (No response.)

25             THE COURT:  Okay.  But I'm prepared to set September

1    30th per your request for that status report.  Is that okay
2    with T-Mobile's counsel?
3           MR. MERVIS:  Yes, Your Honor.  Sorry.  Michael Mervis.
4    Yes, Your Honor.
5           THE COURT:  Thanks.  Okay, done.  I'm prepared to
6    address the confidentiality orders, too, but let me hold that
7    to the side for a second.  As I said, I looked at them quickly.
8    I'm going to see whether or not you could tell me -- I'm going
9    to have some of those red lines up on my screen.  If you could
10   tell me in short order what the nature of the remaining
11   disputes are, I might be able to address them today.
12   Otherwise, because you sent that at such a late hour, as I
13   characterized that, because you sent that at such a late hour,
14   I'll set another hearing next week to address that if I need to
15   have any more research or inquiry.
16          You had a question in your joint status report about
17   whose case procedures apply here.  My case procedures are going
18   to apply to matters in front of me.  I know Judge Lee ordered
19   you to do joint status reports.  My website, if you've been to
20   it, suggests joint status reports and joint motions, you know,
21   motions to resolve a discovery dispute.
22          Really, let me strike that.  It's really inquiring
23   about the joint motion to resolve a discovery dispute rather
24   than joint status reports.  I like joint motions to resolve
25   discovery disputes.  Sometimes they take longer to put

1     together, but like what you gave me in that omnibus joint
2     status report, at least it gives both sides' positions.  But
3     also like that joint status report you gave me, sometimes
4     there's information missing that you might have had in a
5     separate motion.

6         I would prefer that issues get fronted to me the way
7     you have been fronting them or you have fronted them with Judge
8     Lee, which is a joint motion to resolve a discovery dispute.
9     If that becomes unwieldy or problematic you just can't talk to
10    each other, I can revisit that.  But at present, if you're
11    going to tee something up to me in terms of a discovery
12    dispute, for example, if you have issues after you've met and
13    conferred about the outstanding issues on written discovery, I
14    do like that joint motion.

15        Just the process of putting that together often allows
16    the parties in my experience in the past 11 and a half years to
17    resolve some issues that they would not necessarily have
18    resolved in the traditional motion-response-reply.  What
19    sometimes happens, particularly with voluminous discovery
20    disputes, is I get a motion and then the response says:  Well,
21    we can agree to that, and we can agree to that.  You didn't
22    tell us about this, and it's not an issue.

23        That's a lot of empty noise, so if you can put
24    something together where both sides are exchanging drafts and
25    see what the other side is going to say and you could respond

1    to it, I'd prefer that.  So that's a long -- I think that's a

2    long answer to the question you posed.  I will say in my order

3    that the Court strongly prefers any discovery disputes to be

4    raised with the Court in the form of a joint motion to resolve

5    such disputes.  If that becomes problematic in the future, the

6    parties should bring that to the Court's attention.

7              Is that okay with plaintiff or plaintiffs?

8              MS. HINGER:  Your Honor, this is Cathy Hinger.  Yes, I

9    would also suggest that perhaps to help things along that we

10   could have in that order some kind of timeframe in which one

11   party responds to the other, so the party that raises the

12   discovery disputes.  Some of the challenges that we've had is

13   we'll prepare, you know, a proposed joint filing, and then

14   there's no deadline by which the other side needs to respond

15   with their position, and we are concerned about timing.

16             So perhaps if there could be a five-day limit on the

17   response by the party, or three days if you think that's

18   appropriate, but something that keeps the process moving,

19   because otherwise sometimes I think the joint status report can

20   drag on when we don't have any guideposts for that.

21             MR. MERVIS:  Your Honor, it's --

22             THE COURT:  Well --

23             MR. MERVIS:  Oh, I apologize.  Michael Mervis for

24   T-Mobile.

25             THE COURT:  Three days is too short.  Five days is

1    potentially more reasonable.  This is just emblematic of what I

2    see in this case.  I'm not opposed to doing that.  I would also

3    say, you know, I would say that if I'm going to impose a period

4    of time to respond, you know, we're all used to those in the

5    sense of a confidentiality order and confidentiality

6    designations and all of that.  We're used to a time period to

7    respond, so I would make it mutual.

8         So, for example, when the party raising the dispute

9    feeds it over to the other side, absent agreement of the

10   parties, the other side should respond in five days.  Then I'd

11   say, you know, the first party has five days to respond to what

12   they get from the other side, too, because what's good for the

13   goose is good for the gander.

14        T-Mobile might say it's not necessary to micromanage

15   this, but looking at your docket and the kinds of disputes that

16   have been raised up until now, I think Ms. Hinger's suggestion,

17   because of an inability to agree on anything in this case, is

18   not a bad one.

19        Mr. Mervis?

20        MR. MERVIS:  Yes, Your Honor.  So I'm going to try

21   very hard throughout this conference not to ascribe blame to

22   one party or the other.  I don't think we have a conceptual

23   problem with the idea of time limitations.  I do want to say

24   that I don't believe that that has been an issue on our side at

25   all, but I don't have a conceptual problem with time

1   limitations.  Understanding Your Honor's preference for joint

2   reports, I think it might depend in part on what the nature of

3   the dispute is in terms of what the time limitations should be,

4   but conceptually we don't have an issue with that.

5       THE COURT:  Mr. Hamill, do you want to weigh in one

6   way or the other?

7       MR. HAMILL:  Your Honor, John Hamill speaking.  We

8   agree with Mr. Mervis.

9       THE COURT:  Okay.  Well, we're talking about two

10  different things here.  Okay?  I mean, I will say to you that I

11  don't like resolving disputes like this, but my likes and

12  dislikes are irrelevant here.  If I have to ride herd on a

13  case, then I'll ride herd on the case.  We're talking about two

14  different things here, a joint status report and joint

15  discovery motions, just to be clear.  Okay?

16      I am going to -- and I don't know if we should do this

17  in a minute order, Brenda, or we may have to put this in a

18  separate order.  In fact, we probably should put it in a

19  separate order.  So the first line in the order is, you know,

20  the parties shall file a joint status report on September 30th.

21  Well, let me just say this.  Plaintiff T-Mobile and WBK shall

22  file a joint status report September 30th concerning their

23  efforts to resolve the pending motion to compel in the case

24  that was just moved over to this case.  I don't know what the

25  case number of that is.

1        The second line will be, as the Court said on the

2   record, the Court strongly prefers a joint motion -- strongly

3   prefers joint status reports and joint motions to resolve

4   discovery disputes, if at all possible.  Plaintiff is

5   responsible for preparing the first draft of any joint status

6   report that the Court -- or plaintiffs are responsible for what

7   the Court will require in the future.

8        THE CLERK:  Sorry, Judge.  You're breaking up just a

9   tiny bit.  Sorry.

10        THE COURT:  Can you hear me better now?

11        THE CLERK:  Yes, yes.

12        THE COURT:  Plaintiffs are responsible for preparing

13   the first draft of any joint status reports that the Court will

14   require in the future.  Defendants shall provide their response

15   and proposed additions to plaintiffs' draft within 72 hours of

16   receiving the draft from plaintiff -- plaintiffs.  The parties

17   shall work together in good faith to finalize any joint status

18   report.

19        In the next paragraph or in that one, I don't care,

20   your choice, the Court strongly prefers joint motions -- and

21   this may be duplicative, Brenda, with the other -- joint

22   motions to resolve discovery disputes in the future.  The

23   aggrieved party in that situation will provide a draft of the

24   joint motion to the other side after the parties have complied

25   with Local Rule 37.1 or 37.2, whatever.  I don't know.  I have

1    a block on that.  It's 37.2, I think.  The other side shall

2    provide its portion of the joint motion within five days.  For

3    these purposes, I might say including weekends unless I get a

4    big objection to that, but within five days of receiving the

5    initial draft.  So by 5:00 p.m. on the fifth day so you don't

6    have a dispute what the timing is.  The parties shall work

7    together in good faith to finalize any such joint motion so

8    that it can be filed within seven days of an opposing party's

9    response, absent agreement of the parties to a different

10   schedule.

11           Is that sufficient for you, Ms. Hinger, at this point?

12           MS. HINGER:  Yes.  Thank you, Your Honor.

13           THE COURT:  Is that okay with Mr. Mervis subject to

14   the objection that you don't need this at all?

15           MR. MERVIS:  Well, I'm not sure.  I didn't say we

16   didn't need it.  I think it could be helpful, Your Honor.  But,

17   no, I don't have an objection.  I think the only question --

18   and I understand Your Honor's comments about the weekend.

19           THE COURT:  Let me interrupt you.  I'm fine to say

20   five business days if you want to say that.

21           MR. MERVIS:  Yes, that's where I was going, Your

22   Honor.

23           THE COURT:  Okay.  Fine.

24           MR. MERVIS:  I think it --

25           THE COURT:  Fine, fine, fine, fine, fine, fine.

1  (Inaudible) will be interesting on that.  Fine, five business
2  days.
3            MR. MERVIS:  Thank you, Your Honor.
4            THE COURT:  Mr. Hamill, you're okay with this?  You
5  don't have to agree to it, but you don't have anything further
6  to say on it?
7            MR. HAMILL:  John Hamill.  That's correct, Your Honor.
8            THE COURT:  Okay.  Again, holding aside the
9  confidentiality order, I don't think there's anything more on
10 the case procedures that needed to be discussed.  I mean,
11 basically my case procedures apply to things in front of me.
12 Okay?  Judge Lee's procedures apply to things in front of him,
13 and you should be able to -- and they're probably not that
14 different, but you should be able to figure that out.
15            If there are any questions about that, file something.
16 You know, ask.  I'd prefer frankly things to be filed of record
17 and not inquiries sent to my courtroom deputy or to me via
18 email.  I don't like having to litigate cases via email when
19 they should be litigated on the public record.  So, you know,
20 if you have something you want to raise with me other than, you
21 know, you can't make the telephone conference on this date, you
22 know, you need to file it.  A lot of judges are okay with
23 letters and emails to courtroom deputies and even to them
24 themselves for certain judges, but I'm not big on that.
25            Okay, scheduling issues.  T-Mobile says it will amend

1   its initial disclosures and discovery responses by September
2   22nd.  That's at page 7 of your last joint status report.  It's
3   ECF 150.  I mean, that's fine with me.  To the extent
4   plaintiffs would object and say they want it a week earlier, I
5   wouldn't do that, so I accept that date.

6          My question is:  Should I set the same date for
7   Inteliquent?  I know you have different discovery issues and
8   different responses and also I saw your motion for judgment on
9   the pleadings, but if there's going to be supplementation here
10  I'd like to set a date for that to happen.  Can you live with
11  the T-Mobile date of 9/22, or do you want a different date, Mr.
12  Hamill?

13         MR. HAMILL:  John Hamill speaking.  That date is fine,
14  Your Honor.  I'm not sure we will have any amendment, but that
15  date is fine.

16         THE COURT:  Right, I noticed that.  Okay.  So I'll set
17  that date in the order for defendants to serve any supplements
18  they intend to serve to their initial disclosures and on
19  written discovery.

20         Inteliquent wants sequenced discovery.  I'm not really
21  sure what that means.  I know what you -- I think what you mean
22  is discovery that is aimed at trying to put issues, the
23  case-dispositive issues potentially earlier rather than later.
24  You know, I don't know how I feel about this because I don't
25  have any specifics, and you also have a motion to get yourself

1   out of the case completely.

2          So I guess given my lack of information as to what

3   sequenced discovery means here, I know Judge Lee did not -- I

4   read the transcript of his hearing.  I know he did not

5   bifurcate the class and merits discovery and, therefore, going

6   forward I know Inteliquent has some issues that are different

7   than T-Mobile's, many-slash-most of which have been raised in

8   their motion for judgment on the pleadings.

9          I'm not prepared to say yea or nay about sequenced

10  discovery.  It seems you've got to talk about it and have to

11  see what it is you're looking for.  Obviously Ms. Hinger is

12  going to say she wants to go full bore ahead because we've been

13  delayed from everything I've read in the joint status report.

14  So I would look at any issue that anybody raises in front of

15  me, but I'm not going to say yea or nay on that now.

16          Plaintiffs proposed a three-month extension to all

17  dates that have been set.  That's really a

18  kick-the-can-down-the-road request, but the defendants don't

19  really disagree except for Inteliquent's objection to moving

20  the date to amend pleadings.  That's a date in front of Judge

21  Lee, and I will not move that date.  So if you want to seek

22  relief from that date, that would have to go to Judge Lee

23  because he deals with issues relating to the pleadings.

24          But based on the parties' agreement, I will grant the

25  parties' joint request for a three-month extension to the

1  discovery dates, and that was, I think, in your joint status

2  report.  I'm stressing it and I may even put that in the order,

3  the kick the can down the road.  I normally don't like to just

4  kick cans down the road when I extend discovery dates.  I

5  recognize that, you know, motions are pending.  You know, this

6  would just be -- you don't have any expert disclosure dates

7  yet, do you, Ms. Hinger?

8              MS. HINGER:  This is Cathy Hinger.  No, Your Honor.

9              THE COURT:  Okay.  So it would really just be a

10 closing of fact discovery date, and other expert disclosure

11 dates would be set in a future order.  That's fine with me, you

12 know, but normally in the future when I extend dates, I want to

13 know what's going to happen during that time period, how many

14 depositions does each party want to take, where are we on

15 document production, how much more document production has to

16 happen, where are we on discovery issues and what has to be

17 resolved there.

18             So when I extend a fact discovery date or the date for

19 disclosing experts, I'm doing it advisedly.  I've got the

20 parties telling me they think they can get something done

21 within a period of time, and then I hold you to it.  Until I

22 enter an order saying final extension and no further extensions

23 will be granted in capital letters, I'll entertain good faith

24 extensions or motions for extensions.

25             This one is a freebie because I'm just getting into

1  the case and you've agreed to this, but the fact that you agree
2  in the future doesn't necessarily mean that I will move the
3  discovery close date of 12/15 three months after that to
4  probably March 15th.  But I'm not moving the date to amend the
5  pleadings.  If that date needs to be moved, that motion should
6  be filed before Judge Lee.

7       I'll put that in my order, too, Brenda.  If anyone
8  plans to change the September 30th, 2021 deadline to amend the
9  pleadings, the joint parties' relief or any relief from that
10  order needs to be set by the district court.

11       Plaintiff suggested a discovery status report in 30
12  days.  That would make it about October 15th.  That's okay with
13  me since both defendants are purportedly going to be updating
14  on September 22nd their disclosures and responses to written
15  discovery.  I don't think -- well, defendants take no position
16  on timing, but they don't object to that date.  I'm agnostic.
17  I mean, I think that's fine.  It might be aggressive.  It might
18  be too early.  If it is too early, I would move it.  But as of
19  now, unless T-Mobile and Inteliquent object to that, I would
20  say you could file that status report in 30 days.  I could also
21  push it a week to October 22nd because of this new requirement
22  of five days, three days, midnight, whatever.

23       So with that, too, Mr. Mervis, do you want to weigh in
24  on that?

25       MR. MERVIS:  Yes, Your Honor.  I actually think it

1  would make sense to push it a week.  I mean, you're right.  We

2  basically said we don't have a position on this, that it's

3  really at the Court's discretion.  But I think five weeks is

4  probably more sensible than four.

5          THE COURT:  Do you agree, Mr. Hamill?

6          MR. HAMILL:  John Hamill, Your Honor.  Yes, that's

7  fine, five weeks.

8          THE COURT:  Okay.  Can you live with that, Ms. Hinger?

9  Uh-oh.  Hello?  (Inaudible.)

10         MR. MERVIS:  We hear you, Judge.

11         MR. HAMILL:  We're here.

12         THE COURT:  Oh, so you heard my swear word, too.

13  Okay.  Sorry.  I thought I just got cut off.

14         MR. MERVIS:  We didn't hear that.  You're not the

15  first and you won't be the last during this COVID period.

16         THE COURT:  The (inaudible) wasn't flashing like in

17  the Supreme Court.  Sorry.  I heard beeps on my end, and I

18  thought I had pressed the button to disconnect.  So I guess I

19  hadn't.  I'm connecting through my computer with the new

20  technology, and I'm not that familiar.

21         Okay.  Ms. Hinger, are you okay with the 22nd?

22         MS. HINGER:  This is Cathy Hinger.  Yes, but I'll just

23  note, Your Honor, that I think a lot is going to happen between

24  now and then, and setting a deadline of September 22nd on any

25  changes to the objections that have been raised on document

1  production, sort of the next question is:  When will the

2  defendants start producing documents?

3         So we asked for the 30 days because if we don't start

4  getting documents, we want to have an opportunity to revisit

5  that because I anticipate after the 22nd we'll do a

6  meet-and-confer on the remaining document objections.  Then if

7  we're not starting to get documents within 30 days after these

8  discovery requests have been pending since March, we're just

9  looking to make sure that we have the opportunity to get a

10  production schedule going.  So I'm happy to defer to Your

11  Honor, but those were our concerns.

12         THE COURT:  Okay.  Well, I might suggest to you,

13  good-naturedly I think at this point, that if you -- the

14  production of documents from everybody depends on the entry of

15  a confidentiality order that you've been discussing amongst

16  yourselves for months.  So if you wanted me to be able to enter

17  an order today fully advised, I would have suggested to both

18  parties that I get your proposed language earlier than just

19  before 6:00 p.m. last night.  I was not in chambers.  I

20  actually had an event that I had to attend, so I was not able

21  to look at that stuff.

22         So I hear you.  I will accommodate -- well, number 1,

23  what I was going to say is that if dates that I set don't work,

24  you can always file a motion.  I could also set a status, just

25  a telephone status hearing in the case in the next 30 days on

1    October 15th.  Let me see if that works.  Then you don't have

2    to file a motion if somebody needs more time or you haven't

3    gotten the documents yet.

4            MR. MERVIS:  Your Honor, it's Michael Mervis.  Can --

5            THE COURT:  Yes, you can respond.  Hold on for one

6    second, though.

7            MR. MERVIS:  Yes, sure.

8            THE COURT:  I tend to have or I can have, if I need

9    to, a heavy hand on case management.

10           Mr. Mervis?

11           MR. MERVIS:  Yes, Your Honor.

12           THE COURT:  Go ahead.

13           MR. MERVIS:  I was a little surprised by Ms. Hinger's

14   comment because we told her that we're prepared to produce or

15   to begin our production as soon as the confidentiality order is

16   entered.  I believe that she said the same thing about

17   plaintiffs' production, which would be the first one that

18   actually produces documents that are plaintiffs' as opposed to

19   other parties.

20           THE COURT:  Well, let me interrupt you.  Let me

21   interrupt you.  I'm going to interrupt you because I have an

22   11:15 hearing scheduled on motions.  I hear what you're saying.

23   I don't think she's walking away from that at all, but I don't

24   know when I'm entering the confidentiality order.

25           MR. MERVIS:  Understood.

1    THE COURT: So I think her proposal, her proposal of a
2    status in 30 days was premised on my entering a confidentiality
3    order today and defendants doing what they said they were going
4    to do, which is to immediately produce their documents and
5    plaintiffs immediately producing their documents. Then
6    depending on when I enter my order, that production will occur,
7    but I'm not sure how soon after the order is done. So, you
8    know, I'm happy to provide some landmarks here. Then if they
9    have to change, they're going to change.

10    So I think I've correctly characterized your position,
11    Ms. Hinger? Just a yes or a no.

12    MS. HINGER: Yes, Your Honor. Thank you.

13    THE COURT: Okay. I suppose if it was no, I'd let you
14    say more.

15    Mr. Mervis, I hear what you're saying, but I'd like to
16    set a status hearing on October 14th, just another telephone
17    status. You don't have to file anything ahead of it.

18    MR. MERVIS: Your Honor, that's fine with us. There
19    may be things to talk about on that date, so that's fine with
20    us.

21    THE COURT: Well, you know, I hesitate to give you a
22    free-for-all but, on the other hand, I want to make sure there
23    are no glitches happening either. That's about 30 days from
24    now. I have something at 9:30 that day. Hold on.
25    (Brief pause.)

1          THE COURT:  10:00 a.m. on the 14th, is that okay with
2     counsel, Ms. Hinger?
3          MS. HINGER:  This is Cathy Hinger.  Yes, Your Honor.
4          THE COURT:  Mr. Mervis?
5          MR. MERVIS:  Yes, Your Honor.
6          THE COURT:  Mr. Hamill?
7          MR. HAMILL:  Yes, Your Honor.
8          THE COURT:  Okay.  Unless there is anything you wanted
9     me to address here, we have a couple of minutes.  I do have a
10    hearing scheduled at 11:15.  I may have to push you over on the
11    confidentiality order.  But anything other than the
12    confidentiality order that anybody wants to address here?
13    Ms. Hinger?
14         MS. HINGER:  Not other than the confidentiality order,
15    Your Honor.  Thank you.
16         THE COURT:  Mr. Mervis?
17         MR. MERVIS:  Yes, Your Honor.  Very briefly, I'm only
18    raising this so that it's not -- so that it doesn't become a
19    surprise.  The joint status report lists for all parties issues
20    that are in dispute but not yet ripe for the Court's attention.
21    Since the report was filed, there is one issue that we believe
22    has become ripe for the Court's intervention.  We will
23    certainly give it one more college try with the plaintiffs, but
24    if that's unsuccessful we will proceed to follow the joint
25    discovery motion process that we've talked about today.  I just

1   didn't want that to come as a surprise to the Court.

2        THE COURT:  Okay.  Thank you.

3        I'm hoping that the joint motion process works here.

4   Again, I do find some benefit in it.  If it's not working,

5   somebody needs to let me know that and tell me why, and I'm not

6   saying I wouldn't alter that procedure here.  I get plenty of

7   motions, responses, replies, but, you know, my experience in

8   reading those is many times people are talking past each other.

9   In the joint process of putting together something jointly,

10  it's less likely that people are going to be talking past each

11  other because they actually see what the other side is saying

12  in real time in that document.  You know, but (inaudible) past

13  you (inaudible) either.

14       Mr. Hamill, anything further from you?

15       MR. HAMILL:  John Hamill speaking.  Nothing further,

16  Your Honor.  Thank you.

17       THE COURT:  Okay.  So as I told you, you didn't give

18  me enough time to look at your confidentiality orders, but can

19  you tell me -- I mean, I can't tell what's really the dispute

20  here.  I mean, is it an easy dispute, or is it something --

21  again, I have folks joining for a motion hearing at 11:15, so

22  we may run out of time.  Maybe I'll just need to (inaudible) on

23  this, and I'll set you over to another day next week.  But

24  where's the beef?  What's going on?

25       MS. HINGER:  Your Honor, this is Cathy Hinger.

1           MR. MERVIS:  Your Honor, I'm happy to --

2           MS. HINGER:  If I may.

3           MR. MERVIS:  Sorry.

4           THE COURT:  Okay.  I'll hear from Ms. Hinger first and

5    then from you, Mr. Mervis.

6           MR. MERVIS:  Sure.

7           MS. HINGER:  Your Honor, there are three issues

8    outstanding.  They all relate to the highly confidential

9    provision.  We've worked everything else out.  There's three

10   issues about the highly confidential provision.

11          Number 1, the defendants want to be able to restrict

12   it to use the term disclosure of the information to non-parties

13   as opposed to disclosure of the information to competitors

14   being part of the definition.  The plaintiffs believe that the

15   Global Material Technologies case which we cite in our comments

16   in the last version makes it very clear that an AEO provision

17   is to be very narrowly tailored to protect competitive risk.

18          The second issue is a date range issue.  In the

19   definition of highly confidential, the plaintiffs have added a

20   date range limitation.  April 16, 2018, is the date of the

21   consent decree, so we have tried to limit the scope of certain

22   categories that can be designated as highly confidential to

23   April 16, 2018, forward because in the Global Material

24   Technologies case it discusses information that is old as being

25   competitively stale.

1    Then the third issue is the use of highly confidential

2    information in depositions.  The plaintiffs are not seeking

3    restrictions on the use of highly confidential information in

4    depositions, and we have found one new example of a case that

5    has a confidentiality order with similar language that we've

6    proposed.

7    This is new, Mike, so I'm happy to send you the cite.

8    We were actually going back and forth with these

9    yesterday, Your Honor.  That's why they kind of came in late.

10   We were trying to hammer these out.  But it's International

11   Trading versus Illumina, Northern District of Illinois,

12   1:17-CV-05010 (inaudible) --

13   THE COURT:  Could you slow down?  I'm sorry.  Can you

14   slow that down?  International something?

15   MS. HINGER:  International Equipment Trading versus

16   Illumina, Northern District of Illinois, 1:17-CV-05010.  The

17   overarching issue from the plaintiffs' perspective is that the

18   defendants have not -- they are not competitors with our

19   clients.  So our clients are not competitors with the

20   defendants.

21   The defendants provide wireless service.  Our clients

22   provide local rural wireline service.  So our clients receive

23   wireless calls from T-Mobile, AT&T, Verizon, and they connect

24   them from their switch to the ultimate called party who is our

25   client's customer.  We're not offering the same service.

1           So a lot of the cases that involve AEO provisions

2   involve direct competitors or truly competitive concerns, and

3   we appreciate that Your Honor has noted that the defendants are

4   concerned that our clients do business with their competitors,

5   AT&T and Verizon, but our clients are simply connecting their

6   calls.

7           So the competitive concerns have not been articulated

8   to us, and we have not had a single document or category of

9   documents that defendants have identified would be responsive

10  to the plaintiffs' outstanding document requests that they are

11  concerned needs an AEO designation.  So we're not -- and we

12  don't think that they do because we are looking at a historical

13  business practice that occurred from 2014 predominantly until

14  2017 when it ended.  The consent decree came out in 2018.

15          So the historical nature of the documents we're

16  seeking as well as the documents relating to an illegal

17  practice, which we think by definition should not have much

18  competitive value, if any, makes it very tenuous that there is

19  a serious concern that there would be a tremendous amount of

20  AEO material here.

21          So from the plaintiffs' perspective, our case really

22  does not likely involve a tremendous amount of highly

23  competitive information, so we've tried to come up with

24  language that would assuage the defendants' concern.  I know

25  they see it differently.

1    THE COURT:  Okay.  I was able to follow your argument

2  on the first two points, parties versus competitors, in your

3  red-line of defendants' order and also the date, starting with

4  the date of the consent decree.  I'm not able to find in the

5  order -- I mean, I don't know if you're talking about 6(b),

6  disclosure of deposition.

7    MS. HINGER:  Yes.

8    THE COURT:  The little number 2 there.  I'm not sure

9  how you're -- hold on for one second.

10    (Brief pause.)

11    THE COURT:  So in that document I think what you

12  red-lined defendants', your version starts "during their

13  depositions, witnesses in this action to whom the disclosure of

14  HC information is reasonably necessary," right?  That's your

15  proposed change?

16    MS. HINGER:  Correct, yeah, section 6(b)(2).

17    THE COURT:  Yeah.  I'm not understanding what the

18  difference is between these.

19    MS. HINGER:  So the plaintiffs' language would give us

20  discretion to use a highly confidential document in a

21  deposition with a third party, if there is a third party, who

22  in our good faith we believe is necessary to question about the

23  document and that person has completed the certification to

24  keep it confidential.  There's also other protections in here

25  about them not being able to keep the document.  The defendants

1  want to limit our use of highly confidential documents in
2  depositions only to people who are the author or the recipient
3  or were otherwise already privy to the information.

4          THE COURT:  Okay.  Got you.

5          MS. HINGER:  As a practical matter -- yeah.

6          THE COURT:  Wait.  Sorry.  I got you.  I reread it as
7  you were talking, and I understand that.  So I interrupted you.
8  As a practical matter, what?

9          MS. HINGER:  As a practical matter, the defendants
10  have not identified what competitor or potential third party in
11  this case might be deposed and shown a highly confidential
12  document that might pose a competitive harm to them.  So, for
13  example, they raised, well, if you show it to your own clients.
14  Well, the protective order already says an AEO document cannot
15  be shown to the parties, so we're going to follow that court
16  order if that's the court order.

17          So there's no identification of who the -- most
18  likely, the defendants are going to be the parties that we're
19  deposing about their documents and what they mean.  So, again,
20  it's a very remote possibility that there's going to be an
21  issue, and I think especially with the procedures that you're
22  talking about, if there's an issue, we can come to you with a
23  joint status report.

24          If we decide to depose a third party and the
25  defendants are concerned that there's some category of AEO

1    documents we might show to that third-party witness in a

2    deposition, we can work through that in a meet-and-confer

3    process as opposed to the plaintiffs having to spend extra

4    time, money, disclosure of work product, and going through the

5    hoops of saying:  We're going to depose this witness, and we're

6    going to, you know, ask him these questions.  Are you okay?

7    Can we do that?

8         We don't want to be put in a position where we have to

9    ask the defendants' permission every time we are preparing to

10   address the witness.

11        THE COURT:  Okay.  I know the people in Perez versus

12   K&B Transport are on the line.  Bear with me a little bit.  I'm

13   going to bring this to a close pretty quickly.

14        I know, Mr. Mervis, that defendants -- I believe and

15   you can confirm this for me, but defendants' position is that

16   you disagree with Ms. Hinger that her clients are not

17   necessarily competitors of yours in certain ways.  You

18   characterized it, I believe, in an earlier status report that,

19   you know, you both service customers who want to place calls

20   online.  She doesn't look at it that way.  Not online but, you

21   know, place long distance calls, rural calls.  So I get that

22   you disagree with her characterization of this.

23        Is there a way -- I think I'm going to actually reset

24   you here because I have to look at this stuff more closely, but

25   is there a way for you to very succinctly respond to the

1    parties versus competitors?  I mean, they want to limit it to

2    competitors, or you want to limit it to -- I'm sorry.  They

3    want to limit it to competitors, and you want to say

4    non-parties, right?

5              MR. MERVIS:  Yes, sir.

6              THE COURT:  And your reason for that is?

7              MR. MERVIS:  Your Honor, it's Mike Mervis.  I know

8    you're pressed for time.  Let me try to be really succinct, but

9    I do think I need to frame a couple of things.  The first is

10   that a lot of the concern that we've heard from the plaintiffs

11   during the meet-and-confer is that we're going to

12   overdesignate.  We've read Your Honor's order.  We understand

13   Your Honor's thinking.  We do not think that is going to be an

14   issue, so that's number 1.  The second --

15             THE COURT:  Okay.  Let me interrupt you because you're

16   not going to get this transcribed if you want it.  You're feint

17   again, so just speak more into the phone.

18             MR. MERVIS:  Oh, I'm sorry.  So what I said was a lot

19   of the concerns that have been expressed by the plaintiffs

20   about these wording changes are based on the concern that

21   T-Mobile is going to overuse the AEO designation, and what I

22   wanted to convey is that we do not intend to do that.  We've

23   read Your Honor's order.  We understand the potential

24   implications.  So that's point 1.

25             Point 2 is I think that the scope of what will be

1    designated AEO here is going to be actually very narrow, but

2    let me give you a couple of potential examples.  One would be

3    technical documents, in other words, material that might well

4    qualify as trade secret because they're showing, for example,

5    how calls are routed or what algorithms are used and that sort

6    of thing.

7              THE COURT:  I'm going to interrupt you.  I'm going to

8    interrupt you.

9              MR. MERVIS:  Yes.

10             THE COURT:  I read that portion of your joint status

11   report where you gave me a list of the types of things that

12   would be designated as AEO, so I understand your position is

13   it's going to be quite narrow.  The devil will be in the

14   details.  I want everybody to know that my AEO ruling, the

15   attorneys' eyes only ruling in the order that I issued

16   previously was based on the high level in which the parties

17   addressed this stuff.

18             Plaintiffs' position was there can never be any

19   situation here that allows for an AEO designation.  The parties

20   aren't competitors.  The law in the Seventh Circuit restricts

21   this.  Defendants said:  We're not trying to be overburdensome,

22   but there's some stuff we think we should designate as AEO.

23             I looked at it and said I can't say that there can be

24   no AEO here.  I tried to shoot something over the bough that

25   said if it's over-designated defendants will have to pay for

1 the challenges. Whether before we even get to that plaintiffs

2 will raise that, I don't know what is AEO or not. I don't

3 know, you know, if Mr. Mervis does what he -- in your joint

4 status report where you identified -- I'm sorry. It's the

5 joint motion to resolve discovery disputes, I think, where you

6 identified things that you felt were AEO. I agreed that some

7 of them were, and I'm not sure others were, either. So we'll

8 deal with this.

9          Plaintiffs want the additional level here of that the

10 materials can't be disclosed to a competitor. That requires

11 some type of a subjective determination in some respects as to

12 who's a competitor.

13          MR. MERVIS: It does.

14          THE COURT: So I'm a little leery about that given,

15 you know, your inability to agree on anything. You want it to

16 be that highly confidential can't be disclosed to other parties

17 in the litigation or some non-party. Very broad, competitors,

18 but the janitor in some company, too, right?

19          MR. MERVIS: Not necessarily the janitor, Your Honor,

20 but let me answer the question. First of all, the provision

21 we're looking at, which is provision 2(b), 2(b), this is a

22 non-exhaustive illustrative list of things that can be but

23 aren't necessarily highly confidential.

24          But there's two reasons why we think a non-party is

25 appropriate, and it's set forth is in the draft changes

1    comments that we've provided.  There's actually more than two,
2    but let me focus on the two.  One is --

3            THE COURT:  No, no, no, no, no, no.  If it's set forth
4    in the draft comment changes, I'll read them.  We're going to
5    be out of time here.  We're going to be out of time.

6            MR. MERVIS:  Well, Your Honor, all of our positions
7    are set forth in the draft changes comments.

8            THE COURT:  Okay.

9            MR. MERVIS:  So I don't mean to take up the Court's
10   time with what's in the comments.

11           THE COURT:  No, we're good.  We're good.  I'm going to
12   set you for -- hold on.  I had chosen a date, and now it's not
13   coming up on my computer.  I had written down October -- not
14   October, September 21st, next week, at 10:30 to resolve these
15   particular issues.  Are you or are all the team who need to be
16   here available on that date and time?

17           MR. MERVIS:  Yes, Your Honor.

18           MS. HINGER:  We can be here.

19           MR. MERVIS:  This is Michael Mervis.  We will have
20   appropriate counsel for T-Mobile available at that time.

21           THE COURT:  Ms. Hinger?

22           MS. HINGER:  This is Cathy Hinger.  Plaintiff can be
23   available.

24           THE COURT:  Mr. Hamill?

25           MR. HAMILL:  John Hamill speaking.  Yes, Your Honor.

34

1    THE COURT:  Okay.  Let's just continue this discussion
2    until then.  We may not have to have any more discussion.  I'll
3    have the -- I understand, you know, Ms. Hinger had a chance to
4    say her piece.  She gave me at least a flavor.

5    Ms. Hinger, will you send to everybody and copy my
6    courtroom deputy whatever you want to send from case number
7    17-5010, the International Equipment versus Illumina case?  If
8    there's, you know, a confidential order in that case that has
9    the language you're proposing, will you send it to the other
10   side as well as to Brenda Rinozzi so that I could look at it?

11   MS. HINGER:  Yes, Your Honor.

12   THE COURT:  Okay.  Then we'll pick this up, if
13   necessary, on the 21st.  If for some reason I get to this ahead
14   of time and I can give you a ruling on paper, we won't get
15   together on the 21st, but otherwise we have a date for me to
16   resolve these issues, to get the confidentiality order entered
17   and document production going.  I realize that's a week later,
18   and I appreciate your telling me you were trying to resolve all
19   this stuff up to the last minute but that didn't help.  So all
20   good.  I'm going to break here.

21   MR. MERVIS:  Your Honor, I apologize.

22   THE COURT:  Go ahead.

23   MR. MERVIS:  Just one more question if I could.  Both
24   parties have cited prior protective orders in court, including
25   the one that Ms. Hinger mentioned today for the first time.

1   Would it be helpful to chambers if all parties provided copies

2   of all those protective orders as opposed to just the one that

3   Ms. Hinger responded -- raised for the first time today?

4          THE COURT:  You know, I don't know.  I mean, if you

5   cited these prior, I saw some of them in the joint motion.  No,

6   I don't want you to inundate me with stuff.  If I want stuff,

7   I'll ask for it.  But if you cite it, I don't know that I need

8   to look at all the orders.  Some of this is what I would do in

9   a case pending in front of me, and I'm more familiar with these

10  issues.  So I don't think I need more paper from you.  You

11  know, there's plenty of paper in the case.  If I need anything

12  from you, Brenda will be in contact or I'll be in contact, but

13  we just need to get this thing done and move forward.  So the

14  answer is no.  Thank you for the offer, but if I need it I'll

15  ask you or I'll look at the case myself on CM/ECF.  Okay?

16         MR. MERVIS:  Thank you, Your Honor.

17         THE COURT:  Okay.  Talk to you next week.  Bye-bye.

18      (Proceedings concluded.)

19              C E R T I F I C A T E

20         I, Patrick J. Mullen, do hereby certify the foregoing
    is an accurate transcript produced from an audio recording of
21  the proceedings had in the above-entitled case before the
    Honorable JEFFREY T. GILBERT, one of the magistrate judges of
22  said Court, at Chicago, Illinois, on September 15, 2021.

23                          /s/ Patrick J. Mullen
                            Official Court Reporter
24                          United States District Court
                            Northern District of Illinois
25                          Eastern Division