# EXHIBIT 4

womblebonddickinson.com



**WOMBLE BOND DICKINSON**

**November 14, 2022**

Womble Bond Dickinson (US) LLP

2001 K Street, NW
Suite 400 South
Washington, DC 20006

Michael Pullos
DLA Piper LLP (US)
444 West Lake Street
Suite 900
Chicago, IL 60606-0089

t: 202.467.6900
f: 202.467.6910

Cathy A. Hinger
Partner
Direct Dial: 202-857-4489
Direct Fax: 202-261-0029
E-mail: Cathy.Hinger@wbd-us.com

**Via E-mail [michael.pullos@dlapiper.com]**

**Re:** *Craigville Telephone Co. et al. v. T-Mobile USA, Inc. et al.*, 1:19-cv-07190: CDR Sampling

Dear Michael:

On Monday, November 7, 2022, we had a video/telephonic meet and confer to discuss an agreed plan for Inteliquent's production of a sampling of CDRs. We discussed the following during the meet and confer:

1. Inteliquent has an internal Inteliquent server that runs software developed by Inteliquent that restores its CDR backup tapes. Each backup tape contains a month's worth of CDRs and it can take the system 1-2 weeks to restore a tape. You did not provide a specific number of days or explain any variables that impact how long it takes to restore a single tape. Such information would be helpful in plotting out a production schedule. Hopefully, Inteliquent can provide additional detail on this point.

2. You explained that the system that restores CDRs can restore only one tape at a time and that there is a "queue" of tapes that will have to be restored for other business purposes before Inteliquent will start restoring CDRs for production in this litigation. You mentioned, for example, that Inteliquent sometimes receives requests from regulatory agencies for CDRs. You did state that Inteliquent has already added August 2015 to the "queue" since that was a month we had all already agreed to. You stated that due to this backlog of other CDRs being restored for other purposes, it would be mid-to-late December before Inteliquent will start restoring CDRs for production in this case.

3. You expressed that Inteliquent is willing to produce a sampling of approximately 4 months of CDRs per year.[1] We understand from you that there is no more burden to restoring any particular month's CDRs than another, and that the work and burden is equivalent no matter which month's CDRs are restored. You then proposed that Plaintiffs select approximately 4 months of CDRs per year for Inteliquent to restore as an agreed limited scope of CDRs to be produced by Inteliquent in this case.

---

[1] You previously indicated in a prior meet and confer that Inteliquent would isolate the data from each month's CDRs to T-Mobile traffic only for purposes of the data that will be produced in discovery. Plaintiffs agree that the scope of data from each month's CDRs should be limited to T-Mobile traffic only.

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.



November 14, 2022
Page 2

4. In response to this new information, I raised the following issues: (1) that the timeframes you laid out for the time it will take to restore each tape and the limitations on the system only being capable of restoring one tape at a time is incompatible with the current close of discovery in March of 2023, so an agreed plan along the lines of what Inteliquent is proposing will require all parties to consent to seek an extension of discovery again; (2) that Plaintiffs will need time after CDR production for depositions because they expect the CDRs will provide significant factual evidence necessary to their questioning of Defendants' witnesses; (3) that Plaintiffs would need to consider and discuss these limitations with their expert consultants to determine whether the number of CDRs Inteliquent is willing to produce would be compatible with a statistically significant sample for purposes of their anticipated analysis; and (4) that due to the delays and risks created by the proposal, Plaintiffs would require a stipulation concerning the limited scope of CDRs not being a sufficient sample and that the entire agreement and production plan should be memorialized in a joint status report or other form of court filing.

5. The parties then agreed Plaintiffs should confer with their experts and respond with a formal proposal. Plaintiffs have done so and propose the following compromises.

Plaintiffs appreciate Inteliquent coming forward with this plan to mitigate perceived burden and Plaintiffs are generally amenable to the proposal, provided that the compromise is appropriately documented and agreed to by all parties as constituting an adequate sampling plan.

Plaintiffs propose the following:

**Production Scope and Schedule:** Plaintiffs propose the following months with the following production schedule, which may be adjusted only on a showing of good cause. Plaintiffs also will agree to Inteliquent's rolling production so long as Defendants will consent to Plaintiffs' request that Magistrate Judge Gilbert schedule periodic status hearings on CDR production so that we can keep the schedule on track and avoid further delays. Please note that, if Inteliquent takes two full weeks to restore and produce each tape, it will be mid-April before CDR production is complete. Since you suggested it takes 1-2 weeks to restore a tape, it appears feasible for it to be done within one week. Therefore, we are proposing 1.5-week intervals for productions as follows:

| CDR Month and Year | Production Date (on or before) |
|---|---|
| July 2015 | December 30, 2022 |
| August 2015 | January 10, 2023 |
| September 2015 | January 20, 2023 |
| October 2015 | January 31, 2023 |
| May 2016 | February 10, 2023 |
| December 2016 | February 21, 2023 |
| February 2017 | March 3, 2023 |
| March 2016 | March 15, 2023 |

**Discovery Schedule Extension:** As you can see, Inteliquent's proposal will leave no time before the close of discovery for Plaintiffs to depose any witnesses with the benefit of the data from the CDRs. We reasonably anticipate that the CDRs will reveal things like the volume of calls impacted by fake ring tones, identification and confirmation of putative class members, the prevalence of calls that were not delivered to putative class members' switches, the prevalence of calling party voluntary terminations of calls impacted by fake ring tones after prolonged ringing, and the volume of calls not being delivered to the



November 14, 2022
Page 3

named class members impacting their customer complaints and associated costs and depriving them of terminating access charges. Therefore, in exchange for accommodating Inteliquent's proposal limiting the number of tapes to be restored and produced and timing, Plaintiffs propose that the parties file a Consent Motion to Continue Schedule and for Entry of CDR Sample Production Plan, a proposed form of which is attached, disclosing and explaining to the Court the necessity of another discovery extension and entering the CDR production schedule as an enforceable order to prevent further delays. Plaintiffs also propose that, except for extraordinary circumstances (*e.g.* anticipated future unavailability of a witness), depositions occur on or after April 1, 2023 so that the they may proceed in an orderly fashion that is more likely to avoid disputes and unnecessary motions practice during the time CDR production is underway.

| Event | Current Deadline | Proposed New Deadline |
| --- | --- | --- |
| Deadline to Amend Pleadings and Join Parties | December 26, 2022 | April 28, 2023 |
| Close of Fact Discovery | March 15, 2023 | July 14, 2023 |

**Stipulation Concerning Limited Scope of CDRs:** In exchange for agreeing to Inteliquent's sampling proposal, Plaintiffs require assurances that the Defendants will not challenge the sample size as statistically insignificant. *See, e.g.*, *Quintana v. Claire's Boutiques, Inc.*, No. 5:13-CV-00368-PSG, 2014 WL 234219, at *2 (N.D. Cal. Jan. 21, 2014) ("However, the sampling regime itself may not serve as a basis upon which to challenge the statistical sufficiency of the evidence.") Therefore, we propose the following stipulated language be included in the CDR Production Schedule filed with the Court: !

> In exchange for Plaintiffs agreeing to limit production of CDRs to only 8 months, Defendants will not challenge the validity or admissibility of Plaintiffs' damages calculations on the grounds that they did not use a sufficient number of months of CDRs to prepare their damages calculation or that the sample data lack representativeness. Defendants reserve all rights though to challenge Plaintiffs' damages calculation on any other grounds.

!
Please provide your response to this plan as quickly as possible so that we can avoid further delays. And regardless of any minor negotiations we may have over these details, please add all of these proposed months to Inteliquent's "queue" for CDR restoration immediately in the order proposed above so that no additional time is lost.

Best regards,

**Womble Bond Dickinson (US) LLP**

Cathy A. Hinger
Partner

Enclosure

Case: 1:19-cv-07190 Document #: 320-4 Filed: 11/28/22 Page 5 of 5 PageID #:17892

November 14, 2022
Page 4



cc:     Via email only
Michael Mervis
Baldo Vinti
Jennifer Roche
Om Alladi
John Hamill
Devin Carpenter
Joe Carey
David Audley
Mia D'Andrea
Kurt Weaver
Victoria Bruno
David Carter
Katie Gallagher
Jeremy Baker