IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRAIGVILLE TELEPHONE CO. d/b/a ADAMSWELLS; and CONSOLIDATED TELEPHONE COMPANY d/b/a CTC, ) ) ) ) | |
| Plaintiffs, ) ) | No. 1:19-cv-07190 |
| v. ) ) | Judge Sharon Johnson Coleman<br>Magistrate Judge Jeffrey T. Gilbert |
| T-MOBILE USA, INC.; and INTELIQUENT, INC., ) ) ) ) | |
| Defendants. ) | |

**PLAINTIFFS' UNOPPOSED MOTION TO EXTEND PAGE LIMITS
FOR PLAINTIFFS' SECOND MOTION TO COMPEL
DOCUMENTS FROM DEFENDANT INTELIQUENT, INC.**

Plaintiffs, Craigville Telephone Co. d/b/a AdamsWells and Consolidated Telephone Company d/b/a CTC ("Plaintiffs"), on behalf of themselves and a class of similarly situated companies, respectfully submit this Motion pursuant to Local Rule 7.1 for an order extending the page limit for each party's memorandum of law concerning Plaintiffs' second motion to compel documents from Defendant Inteliquent, Inc. ("Inteliquent") to 30 pages. Inteliquent advises that it takes no position as to the relief sought by this Motion, and will not oppose it. (Ex. 1, 1/12/23 Email from D. Carpenter to V. Bruno.) There is good cause for the relief sought by this Motion because, despite five hours of Plaintiffs meeting and conferring with Inteliquent by video conferences, Inteliquent opposes responding to 62 of Plaintiffs' Second Set of Requests for Production of Documents ("2nd RFPs"). Plaintiffs' 2nd RFPs were served after T-Mobile USA, Inc. ("TMUS") and third parties produced many documents revealing new information about Inteliquent that served as predicates for the 2nd RFPs. Previously, Inteliquent only agreed to produce three categories of information in response to Plaintiffs' 1st RFPs. (*See* ECF 287 at 4-5.)

And now, even with much more detailed and targeted RFPs in the second round, Inteliquent repeats its tactic of withholding almost everything Plaintiffs have requested. It is facially impossible for Plaintiffs to justify the relevance and proportionality of 62 RFPs, and overcome all of the other lengthy objections Inteliquent has asserted, in only fifteen pages. Since Local Rule 7.1 requires a party to first obtain leave to file an overlength brief before doing so, Plaintiffs respectfully request expedited consideration of this unopposed Motion so that they may file their second motion to compel against Inteliquent as quickly as possible, given the March 15, 2023 close of discovery and the substantial prejudice incomplete document production imposes on Plaintiffs' ability to commence deposition discovery. (*See* ECF 330 (requiring a status report by March 6, 2023 advising on, among other things, deposition schedule).)

## RULE 37.2 CERTIFICATION

1. On October 7, 2022, Plaintiffs served their 2nd RFPs on Inteliquent following receipt of substantially more information from TMUS and third parties. The 2nd RFPs propound 66 discrete requests consistent with the Court's guidance in the May 12, 2022 Discovery Order. (*See, generally*, ECF 257.)

2. At Inteliquent's request, Plaintiffs agreed to extend the time to respond to the 2nd RFPs by an additional 15 days. Inteliquent timely served its written objections and responses on November 22, 2022.

3. In its responses to the 2nd RFPs, Inteliquent agreed to produce only five categories of documents partially responsive to 11 of the 66 requests. Of those five categories, Inteliquent agreed to produce only a small handful of responsive documents (in some cases, only a single document), many of which were the same documents that TMUS had already produced. In short, Inteliquent agreed to produce practically nothing new. The scope of documents Inteliquent was

willing to produce were also incomplete responses to those eleven requests.

4. On December 5, 2022, Plaintiffs requested to meet and confer on Inteliquent's responses to all but one of the 66 requests in the 2nd RFPs.[1] Plaintiffs and Inteliquent conducted four video conferences lasting a total of five hours on December 13, 15, 22, and 29, 2022. On December 30, 2022, Plaintiffs sent Inteliquent a confirming letter identifying the areas of follow up from the meet and confers, as well as identifying the objections and specific requests where the parties had reached an impasse. Inteliquent responded to that letter on January 11, 2023, confirming that the parties are now at impasse on 62 of the 66 requests.[2]

5. Despite this extensive meet and confer process, Inteliquent has not agreed to produce any documents beyond the five narrow categories of documents it agreed to produce in response to the entire 2nd RFPs, which were produced on December 7, 2022.

6. On January 10, 2023, Plaintiffs sought Inteliquent's position on an increase in the page limit for their second motion to compel. On January 12, 2023, Inteliquent responded stating that it takes no position, but would not oppose. (Ex. 1.)

---

[1] 2nd RFP 3, concerning call detail records, is the subject of separate, ongoing meet and confer discussions and is not addressed in this Motion.

[2] Plaintiffs submit that it would be helpful to the Court's consideration of this Motion to have before it the 2nd RFPs and Inteliquent's 107-page written responses, showing the 2nd RFPs are meritorious on their face and how voluminous Inteliquent's objections are that Plaintiffs must address in their motion to compel. These documents, however, quote or reference information that Defendants have designated confidential. The parties' meet and confer letters dated December 5, 2022, December 30, 2022, and January 11, 2023, also would be instructive on illustrating Rule 37.2 meet and confer exhaustion, but they, too, reference material that Inteliquent has marked confidential. Plaintiffs do not agree all such material quoted or referenced in the 2nd RFPs, Inteliquent's written responses to them, or the meet and confer letters is entitled to confidential treatment under Seventh Circuit law. Therefore, Plaintiffs cannot publicly file these documents as exhibits to this Motion without undertaking the burden of another motion to seal. At the January 9, 2023 Status Conference, Judge Coleman expressed concerns about the burden sealing motions were imposing on the docket and commented on Seventh Circuit law limiting permissible sealing. (*See* ECF 335 at 8-11.) To avoid filing another sealing motion necessitated by Inteliquent's confidentiality designations, Plaintiffs will only submit these documents under seal with an accompanying motion to seal if the Court wishes to consider them in ruling on this Motion.

**ARGUMENT**

7. Local Rule 7.1 requires prior Court approval to file a memorandum of law in support of, or in opposition to, any motion. *See* L.R. 7.1. Courts have discretion to grant a request to file a supporting memorandum of law that exceeds the 15-page limit, s*ee Pfefferkorn v. PrimeSource Health Grp., LLC*, No. 17-CV-1223, 2019 WL 354968, at *4 (N.D. Ill. Jan. 29, 2019).

8. An additional 15 pages is necessary in this instance because Plaintiffs cannot fully and adequately explain the grounds for moving to compel Inteliquent to produce documents responsive to no fewer than 62 requests within Local Rule 7.1's page limit. Moreover, Inteliquent raised a number of objections common to nearly all of the requests in the 2nd RFPs that raise fundamental disagreements over the scope of permissible discovery from Inteliquent, despite Judge Gilbert previously rejecting Defendants' contention that the scope of discovery was limited. (*See* ECF 148 at 1-2.) Debunking Inteliquent's continued "scope of discovery" objection alone will require several pages of briefing.

9. Even if grouped into categories, as Plaintiffs attempted to do in their first motion to compel against Inteliquent to stay within the page limit, the requests that will be the subject of Plaintiffs' second motion to compel are too numerous to address in only 15 pages. For example, the requests seek documents that, among other things, go to Inteliquent's poor performance, TMUS's failure to oversee Inteliquent's call delivery, Defendants' reasons for entering the conspiracy and actions taken to further the conspiracy, and evidence important to Plaintiffs' damages model and ascertaining the class: Inteliquent's routing practices and changes to those practices at critical junctures when TMUS was under scrutiny by the FCC; Inteliquent's poor performance under its services contract with TMUS; Inteliquent's deviations from the terms of its

services contract with TMUS with respect to call delivery; TMUS's enforcement (or failure to enforce) Inteliquent's compliance with call delivery requirements; agendas, notes, and meeting minutes of TMUS's monthly performance review meetings with Inteliquent; communications between Inteliquent and TMUS discussing suppression of traffic to high cost areas or the financial pressures the services contract put on Inteliquent's profitability; and specific email trails involving Inteliquent's CEO Matt Carter, which Plaintiffs expect will show the severity of the failing economics of the Inteliquent-TMUS services contract.

10. Additionally, Plaintiffs and Inteliquent are at impasse on several, threshold objections that go to the heart of the logjam that Inteliquent has created aimed at preventing Plaintiffs from access to evidence of Inteliquent's role in the conspiracy (Count VIII) and TMUS's failure to oversee Inteliquent's routing of calls (Counts II and III). A key theme of the 2nd RFPs that Inteliquent will not respond to are topics that Plaintiffs expect will debunk Inteliquent's cherry-picked narrative that it was unaware of TMUS's violation of the LRBT ban and its rural call completion rates were "stellar," (which discovery from TMUS and third parties to date has shown are not accurate). The following summary of those objections illustrates their complexity and Plaintiffs' inability to fairly respond to each of them in only 15 pages:

   a. Inteliquent's objections based on the scope of Count VIII's conspiracy claim, which Inteliquent defines narrowly as alleging an "agreement" not to remedy call failures or to refrain from fixing connection issues, as opposed to the broader conspiracy alleged in the Second Amended Complaint;

   b. the relevance of Inteliquent's routing of TMUS-originated traffic to high cost areas, as opposed to only rural areas, to Counts II and III, alleging that TMUS failed to oversee its intermediate provider Inteliquent's call delivery in violation of the Communications

Act, and to Count VIII, alleging a conspiracy between Defendants to, *inter alia*, suppress traffic to rural *and* high cost areas through least cost routing and other call blocking strategies to avoid payment of costly terminating access charges[3];

c. the relevance of Inteliquent's use of downstream carriers and least cost routing to Counts II, III, and VIII;

d. the proportionality of taking class-wide discovery, as opposed to discovery concerning only the two named Plaintiffs, even though the Court ordered that merits and class discovery proceed at the same time (after which the Court will set a schedule for expert discovery and then briefing on Plaintiffs' class certification motion (*see* ECF 116 (Mar. 24, 2021 Hearing Tr.) at 14));

e. the relevance, proportionality, and burden of the defined term "Subject LECs," which Plaintiffs incorporated to narrow the scope of the RFPs and to target documents connected to the putative class; and

f. the relevance and proportionality of Plaintiffs' RFPs seeking application of the Ringtone Search Terms to certain Inteliquent data sources, which search terms Plaintiffs derived from documents produced by TMUS and third party Ericsson, to which Plaintiffs and TMUS have since agreed and, which TMUS is actively applying to its discovery productions.

11. Inteliquent will not be prejudiced by the relief requested because it is mutual and will afford Inteliquent equal space to satisfy its burden to show why the requests are improper. *See Burkybile v. Mitsubishi Motors Corp.*, No. 04 C 4932, 2006 WL 2325506, at *6 (N.D. Ill. Aug.

---

[3] The Court recently acknowledged the relevancy of discovery as to high cost areas, when it ruled that Plaintiffs are permitted to contact TMUS customers who "had issues with being able to compete calls to a landline served by a rural LEC or a LEC serving a high-cost locality." (*See* ECF 326 at 3.)

2, 2006) (citing Fed. R. Civ. P. 34(b) and *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996)).

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and enter an order granting Plaintiffs and Inteliquent each leave to file an initial memoranda of law in support of, or opposition to, Plaintiffs' second motion to compel document from Inteliquent of up to 30 pages.

| | |
|---|---|
| Submitted January 13, 2023 | */s/   David T.B. Audley*  <br>David T.B. Audley (Bar No. 6190602)  <br>Mia D. D'Andrea (Bar No. 6307966)  <br>**CHAPMAN AND CUTLER LLP**  <br>111 West Monroe Street  <br>Chicago, IL  60603-4080  <br>Tel. 312-845-2971  <br>Email:  audley@chapman.com  <br>Email:  dandrea@chapman.com  <br>  <br>Cathy A. Hinger (*pro hac vice*)  <br>G. David Carter (*pro hac vice*)  <br>Victoria A. Bruno (*pro hac vice*)  <br>Kathleen O. Gallagher (*pro hac vice*)  <br>Jeremy L. Baker (*pro hac vice*)  <br>**WOMBLE BOND DICKINSON (US) LLP**  <br>2001 K Street, NW Suite 400 South  <br>Washington, DC  20006  <br>Tel.:  202-857-4489  <br>Fax:  202-261-0029  <br>Email:  cathy.hinger@wbd-us.com  <br>Email:  david.carter@wbd-us.com  <br>Email:  victoria.bruno@wbd-us.com  <br>Email:  katie.gallagher@wbd-us.com  <br>Email:  jeremy.baker@wbd-us.com  <br>  <br>Kurt D. Weaver (*pro hac vice*)  <br>**WOMBLE BOND DICKINSON (US) LLP**  <br>555 Fayetteville Street, Suite 1100  <br>Raleigh, NC  27601  <br>Telephone:  919-755-8163  <br>Email:  kurt.weaver@wbd-us.com  <br>  <br>*Counsel for Plaintiffs* |

7

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of January, 2023, I served the foregoing Plaintiffs' Unopposed Motion to Extend Page Limits for Plaintiffs' Second Motion to Compel Documents from Defendant Inteliquent via the Court's ECF system on all counsel of record.

By: */s/ Mia D. D'Andrea*
*Counsel for Plaintiffs*