**APPENDIX OF UNREPORTED OPINIONS**

**Burkybile v. Mitsubishi Motors Corp., Not Reported in F.Supp.2d (2006)**

2006 WL 2325506

KeyCite Yellow Flag - Negative Treatment

Distinguished by   Hartford Fire Ins. Co., Inc. v. Transgroup Exp., Inc.,
N.D.Ill.,   July 29, 2009

2006 WL 2325506
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Ralph BURKYBILE, Plaintiff,

v.

MITSUBISHI MOTORS CORPORATION, a foreign
corporation, Mitsubishi Motor Manufacturing of
America, Inc., a foreign corporation, Amaki Iron
Works Co., Ltd., a foreign corporation, Defendants.

No. 04 C 4932.
|
Aug. 2, 2006.

**Attorneys and Law Firms**

Robert J. Dargis, Richard F. Mallen, Richard F. Mallen &
Associates, Chicago, IL, for Plaintiff.

Stanley V. Boychuck, Anthony Joseph Monaco, John Paul
Arranz, Swanson, Martin & Bell, LLP, Chicago, IL, for
Defendants.

*MEMORANDUM OPINION AND ORDER*

JEFFREY COLE, United States Magistrate Judge.

**\*1** Mr. Burkybile has moved for entry of an order
compelling defendants to answer supplemental discovery
consisting of requests to admit and requests to produce
documents. The defendants have responded by seeking
a protective order precluding discovery from their non-
testifying expert.

I.

BACKGROUND

On February 17, 2004, the plaintiff was injured when his
1995 Mitsubishi Eclipse GS left the road and struck a utility
pole. The question is whether the left, lower, lateral control
arm ball joint was separated as a result of the collision or
separated causing the collision. Plaintiff filed suit on May
30, 2004, and, after discovery had closed, was granted leave
to amend his complaint to add Count IV, which charged
"Negligent Recall" in connection with the 1995 Mitsubishi
Eclipse and other vehicles, which had as its subject matter
the ball joint and boot device that is the subject of the instant
case. The court also granted plaintiff's motion to reopen and
extend discovery. Then, on March 16, 2006, the court adopted
the plaintiff's proposed new schedule for discovery, ordering
discovery closed by August 25, 2006.

Thereafter, the plaintiff tendered a "Supplemental Request to
Produce and a Request to Admit Certain Facts." The first
of the three categories of requested documents consisted
of warranty claim information for certain recalled vehicles.
(*Motion to Compel,* Ex. 2, ¶¶ 1-3). The second sought
any documentation of comments made by the president
of Mitsubishi and Mitsubishi's quality control officer at a
February 15, 2001 news conference regarding a vehicle recall
campaign that covered front suspension parts. (*Id.,* ¶ 4). The
plaintiff also requested admissions regarding the February
2001 statements of Mitsubishi's president and quality control
officer. (*Motion to Compel,* Ex. 3). The third category
pertained to defendants' retained experts, Tandy Engineering
and Michael Holcomb. (*Motion to Compel,* Ex. 2, ¶¶ 5-7).

Tandy Engineering purchased and, according to plaintiff,
modified a demonstration vehicle, and evaluated engineering
issues regarding the ball joints. Although neither party
elaborates to any extent on this exercise, the idea was
apparently to simulate the wear that plaintiff's Eclipse had
incurred-both the test vehicle and plaintiff's had over 100,000
miles on them. (*Motion to Compel,* ¶ 7; *Defendants' Motion
for Protective Order,* at 1-2, 5). Defendants expert witness-
their *testifying* expert witness-Mr. Holcomb, then utilized the
vehicle in his testing. The document request-as well as a
subpoena to Tandy Engineering-sought information on the
test vehicle's history, the modifications that were made, the
parts that were changed, and any tests that were performed.
The plaintiff also served a subpoena on Tandy Engineering for
documents relating to its work with the test vehicle. (*Motion
to Compel,* Ex. 4).

The defendants objected to all of these the discovery
requests. There was the predictable and inadequate objection
that the requests were "overly broad, unduly burdensome,
unreasonable as to time and scope, and seek information that

**Burkybile v. Mitsubishi Motors Corp., Not Reported in F.Supp.2d (2006)**

2006 WL 2325506

is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence," and that they were "vague, ambiguous, and over broad." The defendants also complained that the requests referred to five-year-old statements made by then-employees. (*Motion to Compel,* Exs. 5-10). Finally, the defendants contended that the requests went "beyond the Court's limited purpose for reopening discovery, which was to allow plaintiff to conduct discovery solely on the issue of the alleged negligent recall and for purposes of rebuttal of defendants' experts." (*Id.*). There was apparently no response to the subpoena to Tandy Engineering, other than the defendants' motion for a protective order.

 **\*2** Under Rule 26(c), Federal Rules of Civil Procedure, a party seeking a protective order must show "good cause." In cases where a party seeks an order precluding discovery from an expert it does not intend to call as a witness, courts have found the moving party's initial showing sufficient where it can demonstrate that the expert was hired in anticipation of litigation but will not be testifying. *See* Rule 26(b)(4)(B). It then falls to the other party to demonstrate exceptional circumstances requiring discovery. *See Eliasen v. Hamilton,* 111 F.R.D. 396, 402 (N.D.Ill.1986); *Brill-Edwards v. Ryder Truck Rental, Inc.,* Nos. 01-915, 01-1768, 2003 WL 23511733, \*2 (D.Conn. Jan.24, 2003); *Industrial Maritime Carriers, Inc. v. PT (Persero) Inka,* 179 F.R.D. 153, 154 (E.D.Pa.1998).

The parties met twice, pursuant to Local Rule 37.2, to attempt to resolve their discovery dispute. Defendants indicated they would stand on their objections in the Request to Produce and the Request to Admit. When plaintiff asked for some support for their position, the defendants y indicated only that their objections were grounded in Rule 26 and the fact that Tandy Engineering was a "consulting expert." (*Motion to Compel,* at 2). Plaintiff then filed his motion to compel, and the defendants filed their response and requested a protective order as to Tandy Engineering.

## II.

## ANALYSIS

### A.

Mr. Burkybile Has Not Demonstrated He Is Entitled To Discovery From Defendant's Non-Testifying Expert

In criminal cases, the government has a constitutional obligation to disclose test results (or any other evidence) favorable to a defendant. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). There is no comparable obligation imposed on parties in civil cases where the evidence would derive from a non-testifying expert. Indeed, Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure "forbids the judge to order disclosure in pretrial discovery of the facts found or opinions formulated by an opponent's non-testifying experts except (so far as relevant to this case) 'upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." ' *Braun v. Lorillard Inc.,* 84 F.3d 230, 236 (7th Cir.1996)(parenthesis in original).[1] There is no dispute that Tandy Engineering was retained as a consulting expert, and no one from that firm will be testifying.[2]

[1]    The Rule provides in pertinent part:
> A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial ... upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

[2]    Whether the results of Tandy Engineering tests were adverse to the defendants' case is of no moment. The protection of the non-testifying expert under Rule 26(b)(4)(B) is an end that the drafters of the Rule concluded justified non-discoverability. *See Braun,* 84 F.3d at 236 ("The underlying rule, that of nondisclosure, invites shopping for favorable expert witnesses and facilitates the concealment of negative test results. That is neither here nor there; the exception is a narrow one."); *Spearman Industries,* 128 F.Supp.2d at 1152 ("perfectly permissible" for

Burkybile v. Mitsubishi Motors Corp., Not Reported in F.Supp.2d (2006)

2006 WL 2325506

party to choose not to use expert because of an adverse opinion)

The party seeking discovery from the non-testifying expert consulted in anticipation of litigation "carries a heavy burden in demonstrating the existence of exceptional circumstances." *Spearman Industries, Inc. v. St. Paul Fire and Marine Ins. Co.,* 128 F.Supp.2d 1148, 1151 (N.D.Ill.2001); 8 Wright, Miller & Marcus, *Federal Practice and Procedure* § 2032 (2d ed.1994). Generally, "exceptional circumstances" will be found to exist when: (1) the condition observed by the expert is no longer observable; or (2) the condition is subject to replication, but the costs would be judicially prohibitive. *See, e.g., Braun v. Lorillard, Inc.,* 84 F.3d 230, 236 (7th Cir.1996).

**\*3** Mr. Burkybile argues that he needs facts regarding the history of the test vehicle, its modifications, and the results of any test performed on it before it came into Mr. Holcomb's possession. There is no dispute that plaintiff had the opportunity to depose Mr. Holcomb, the expert who employed Tandy Engineering's test vehicle in his tests or that the defendants will not be utilizing any of the tests Tandy Engineering performed on the vehicle. Although the defendants have made the test vehicle available for plaintiff's inspection, the plaintiff has inexplicably chosen not to take advantage of that availability. There is no claim that the deposition of Mr. Holcomb was inadequate to reveal what was done by Tandy to the vehicle or was in any other way insufficient to enable Mr. Burkybile's counsel to obtain information about what was done to the test vehicle.[3] Nonetheless, the plaintiff insists that an inspection of the vehicle by experts of his choosing is not an adequate substitute for detailed information on the test vehicle from Tandy Engineering.

[3]     While the defendants are free to invoke Rule 20(b)(4)(B), there may (or there may not) be issues about the admissibility of Mr. Holcomb's testimony at trial should he attempt to rely on what Tandy Engineering told him was done to the vehicle. While Rule 703 was intended to liberalize the rules relating to expert testimony, it was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the "mouthpiece" of the witnesses on whose statements or opinions the expert's opinion necessarily rests. *See Dura Automotive Systems of Indiana, Inc. v. CTS Corp.,* 285 F.3d 609, 613 (7th

Cir.2002); *In re Sulfuric Acid Antitrust Litigation,* 235 F.R.D. 646 (N.D.Ill.2006).

These circumstances are not the kinds of "exceptional" circumstances that require the production of information from the defendants' non-testifying consultant. (*Plaintiff's Reply Memorandum,* at 7). Neither *Eliasen v. Hamilton,* 111 F.R.D. 396, 397 (N.D.Ill.1986) nor *Portis v. City of Chicago,* No. 02-3139 (N.D.Ill. Aug. 24, 2005), an unpublished memorandum opinion and order support the contention. In *Eliasen,* the plaintiff hired two experts, one to testify and one as a consultant. The consultant prepared a report that the testifying export employed. The defendants were able to obtain the report in discovery, but were not able to depose the consultant about his preparation of the report. The court held that Rule 26(b)(4)(B) was designed to prohibit exactly that kind of discovery. 111 F.R.D. at 401-02. The same principle applies here. Plaintiff has access to the vehicle-as the defendant in *Eliasen* had access to the report-and may inspect it as he pleases. Thus, in both instances, there is a "different avenue" to the information used by the testifying expert. 111 F.R.D. 399-400. As a result, "exceptional circumstances" were not demonstrated in *Eliasen* and cannot be demonstrated here.

In *Portis,* the plaintiffs engaged a computer expert to create a computer database of information regarding the arrests of class members in that case. When the defendant sought production of the database during discovery, the plaintiffs objected on work product grounds. The court overruled the plaintiffs' objection and, in so doing, cited several factors that it felt constituted "undue hardship" to the defendant and lack of prejudice to the plaintiffs. As to the defendant, the court noted the cost of recreating the database from scratch would be about $90,000, and that access to the database would significantly ease the task of confirming the class list and materially advance the litigation without significant prejudice to the plaintiffs. *Portis, v. City of Chicago,* No. 02-3139, 2004 WL 1535854, \*4 (N.D.Ill. July 7, 2004). As for the plaintiffs, the court found that, since they originally sought to collaborate with the defendant on the database, they would not be unduly prejudiced by sharing it with the defendant, provided they were fairly compensated for their extensive work. *Id.* The court found that the defendant could not reproduce the database without undue hardship and granted the defendant access to the database provided expenses were shared.

**\*4** As discovery progressed, the defendant sought to depose the computer consultant who had created the database. The

Burkybile v. Mitsubishi Motors Corp., Not Reported in F.Supp.2d (2006)

2006 WL 2325506

plaintiffs did not object to the deposition, but wanted to limit the scope of the questioning. *Portis, Slip op.* at 12. The court found that because the plaintiffs would be using the actual database in their case-in-chief at trial, the defendant was entitled to explore the preparation of the database at the deposition of the computer consultant. *Id.* The court relied upon *Pearl Brewing Co. v. Schlitz Brewing Co.,* 415 F.Supp. 1122 (S.D.Tex.1976) and *Derrickson v, Circuit City Stores, Inc.,* No. 95-3296 (D.Md. Mar. 19, 1999), two other computer databases cases in which courts found that details of the data compilation and formulation of computer systems could not be gained from any other source. *Id.*

What these cases said of the complexity of recreating a computer database cannot be said of the automobile in this case. In *Grindell v. American Motors Corp.,* 108 F.R.D. 94, 95 (W.D.N.Y.1985), the court quashed a subpoena for a non-testifying expert whom the defendant retained to evaluate tests performed on vehicles involved in products liability litigation. In applying Rule 26(b)(4)(B), the court held that the plaintiff had not shown exceptional circumstances and explained that the plaintiffs were free to hire their own experts to examine the vehicles. 108 F.R.D. at 95. Similarly, in *Hermsdorfer v. American Motors Corp.,* 96 F.R.D. 13 (W.D.N.Y.1982), the plaintiffs sought to depose three experts in the field of vehicular testing who, under contract with defendants, performed experiments with the vehicle in question and similar vehicles. The court found that the plaintiffs failed to show exceptional circumstances under Rule 26(b)(4)(B) in part because they had access to models of the vehicle in question with which further tests and studies could be conducted. 96 F.R.D. at 14. That means the material considered by the defendants' testifying expert is sufficiently available to the plaintiff-the scope of discovery allowable under the rule does not go beyond the scope of material considered by the testifying expert. *Eliasen,* 111 F.R.D. at 399. The plaintiff here has the same access that was available in both *Grindell* and *Hermsdorfer.*

Of course, any testing takes time and money. But the plaintiff has not argued that these expenditures would be prohibitive. *See Braun,* 84 F.3d at 236. He simply argues that an inspection will not be as good as simply obtaining the information he wants from the defendants' non-testifying expert. (*Plaintiff's Reply Memorandum,* at 7). Why that is true is not explained. Moreover, Rule 26(b)(4)(B) was designed in part to prevent a party from building his own case by means of his opponent's financial resources, superior diligence, and more aggressive preparation. *Ager v. Jane C. Stormont Hospital and Training*

*School for Nurses,* 622 F.2d 496, 502 (10th Cir.1980); *Sunrise Opportunities, Inc. v. Regier,* No. 05-2825, 2006 WL 581150, *7 (N.D.Ill. Mar.7, 2006); *Eliasen,* 111 F.R.D. at 401.

**\*5** In the instant case, the plaintiff inexplicably has not availed himself of the opportunity to examine the test vehicle about which he claims the urgent need to secure information. Consequently, Mr. Burkybile's argument is unpersuasive. There simply are not exceptional circumstances requiring discovery from the defendants' non-testifying expert regarding the tests it ran on the vehicle that was purchased for evaluative purposes. Of course, as a policy matter, one may take issue with Rule 26(b)(4)(B). But that is the rule in the federal courts and it is not for judges to find ways to circumvent its clear prohibitions. *Compare* Frankfurter, *John Marshall and the Judicial Function,* in Government Under Law, 31 (1956).

## B.

The Plaintiff Is Entitled To Limited
Discovery Of Documents Pertaining To
Defendants' Warranty Claim Information

On March 16, 2006, the parties appeared before Chief Judge Holderman regarding the negligent recall count in the amended complaint, an anticipated motion to dismiss that count, and a possible extension of discovery to address that new count. (*Defendants' Motion for Protective Order,* Ex. A, Transcript of 3/12/06, at 2). Judge Holderman indicated that there had been more than one recall, and that defendant Mitsubishi took it upon itself to engage in the recall. (*Id.*).[4] Judge Holderman then explained his position on additional discovery:

[4]      Count IV charged that there had been three recall campaigns.

I am not saying that all the discovery will be ordered if there is continued objection by defense counsel, and I actually think that defense counsel has been very reasonable in its approach at this point ... but I am going to allow discovery to proceed in connection with this recall, the now pending recall count, until I rule on the motion, because I don't think it is going to be that much of an added burden.
(*Id.* at 3). The parties then agreed that there could be no claim for a failure to recall, but that once a recall was

Burkybile v. Mitsubishi Motors Corp., Not Reported in F.Supp.2d (2006)

2006 WL 2325506

undertaken, as the judge put it, "a different set of rules may apply." (*Id.* at 5).

Defense counsel then expressed his concern that the plaintiff, in fact, had failed to adequately plead that a recall had been undertaken. (*Id.* at 5-6). Judge Holderman, however, reminded defense counsel that notice pleading applied and that if there were any facts that could support a claim the allegations would be adequate. (*Id.* at 6). Thus, if the warranty claims relate to actions taken once the recall was undertaken, they might be relevant. (*Id.* at 6). Defense counsel continued to protest relevance, however, and stated that the plaintiff claimed he never even received a recall notice. (*Id.* at 7). [5] But the court explained:

[5]     Paragraph 16(c) of Count IV charged that Mitsubishi had failed to act reasonably in that it had failed to take steps to insure that the current owners of the recalled vehicles were properly notified of the recall campaign and the consequences of failing to have the lower control arm and ball joint inspected. The amended complaint alleged that Mr. Burkybile had not received notice of the recall.

That may be an issue to be decided at the trial, but in the discovery context, relevance is a little-you know, it is broader. And so the fact that it may not matter at the trial with regard to this plaintiff, it doesn't mean it may not be discoverable.

So given our discussion here, I am going to adopt the plaintiff's schedule. (*Id.* at 7).

**\*6** The court expressed the hope that the parties were now informed of what the proper scope of discovery was, and indicated he would refer the matter here and that any further problems with discovery parameters could be addressed at that time. (*Id.* at 7).

The defendants continue to maintain that the discovery requests are not relevant, although Chief Judge Holderman has already clearly determined they are-at least to some degree. The defendants also argue that the requests are untimely, although Judge Holderman extended discovery, at least in part, for the purpose of discovery into the warranty claims. Finally, the defendants submit that the requests are unduly burdensome.

The defendants maintain the same objections in their combined motion for protective order/response to plaintiff's

motion to compel that they originally interposed to plaintiff's document requests regarding warranty information:

> Objection. This Request is vague, ambiguous, overly broad, unduly burdensome, oppressive and seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence since the Request is not limited to the issues in this case, to a reasonable and relevant time frame, not limited to the model vehicle involved in this case, and not limited to incidents with facts substantially similar to the incident in this case. This Request goes beyond the Court's limited purpose for reopening discovery, which was to allow plaintiff to conduct discovery solely on the issue of the alleged negligent recall and for purposes of rebuttal of defendants' experts. [Defendants] also object[ ] to the extent that this Request seeks documents that are protected by the attorney-client privilege or the attorney work product doctrine. Further, [defendants] object[ ] to the extent Plaintiff seeks claimants' confidential and private information.

(*Defendants' Motion for a Protective Order,* at 8-9).

Rule 34(a), Federal Rules of Civil Procedure, provides that a party may request, among other things, the production of documents that "constitute or contain matters within the scope of Rule 26(b)...." Both the text of Rule 26(b) and the decisions interpreting it attest to the extraordinary breadth of discovery in the federal courts: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Rule 26(b)(1). *See Clark v. Experian Information Solutions, Inc.,* 2006 WL 931677 at \*3 (N.D.Ill.2006)(Holderman, J.).

2006 WL 2325506

If the party from whom the documents are requested objects to their production, that party has the burden to show why a discovery request is improper. *See* Rule 34(b); *Gile v. United Airlines, Inc.,* 95 F.3d 492, 495 (7 [th] Cir.1996). *In re Sulfuric Acid Antitrust Litigation,* 231 F.R.D. 331, 337 (N.D.Ill.2005). That burden cannot be met by a reflexive invocation of "the same baseless, often abused litany" that the requested discovery is "vague, ambiguous, overly broad, unduly burdensome" or that it is "neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Swift v. First USA Bank,* No. 98-8238, 1999 WL 1212561 (N.D.Ill.Dec.15, 1999). Despite court's repeated admonitions that these sorts of "boilerplate" objections are ineffectual, [6] their use continues unabated, with the consequent institutional burdens, *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077 (7 [th] Cir.1987); *Channell v. Citicorp Nat. Services, Inc.,* 89 F.3d 379, 386 (7 [th] Cir.1996), and the needless imposition of costs on the opposing party.

[6]      *See In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994,* 172 F.R.D. 295 (N.D.Ill.1997)(rejecting generic, non-specific, boilerplate objections); *Klein v. AIG Trading Group Inc.,* 228 F.R.D. 418, 424 (D.Conn.2005)(overruling objections that consisting of "the familiar litany that the [requests] are burdensome, oppressive or overly broad"); *American Rock Salt Co., LLC v. Norfolk Southern Corp.,* 228 F.R.D. 426, 432 (W.D.N.Y.2005)("generalized objections that discovery requests are vague, overly broad, or unduly burdensome are not acceptable"); *Athridge v. Aetna Casualty and Surety Co.,* 184 F.R.D. 181, 190-91 (D.D.C.1998) (rejecting general boilerplate objections). Defendants must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each discovery request is not relevant or is overly broad, burdensome or oppressive. *Roesberg v. Johns-Mansville Corp.,* 85 F.R.D. 292, 297 (E.D.Pa.1980); *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 42 (S.D.N.Y.1984); *Klein v. AIG Trading Group Inc.,* 228 F.R.D. 418, 422 (D.Conn.2005).

**\*7** Here, as to plaintiff's warranty claim requests, the defendants discuss only their objections as to relevance,

timeliness, and undue burden. Their remaining objections are overruled as unsupported.

1.

Warranty Claims Relating To Action Taken Once
The First Recall Was Undertaken Are Relevant

The dispute over the relevance of plaintiff's warranty claim document requests stems from their different understandings of Judge Holderman's statements at the March 16, 2006 hearing. Defendants argue that, based on Judge Holderman's comments, plaintiff's request for all documents reflecting claims made under warranty from 1993 until 2004 are irrelevant. The defendants submit that, even under a negligent recall theory, the only arguably relevant warranty claim information would be limited to those claims from the time of the first recall in 1999 until the time of the accident in 2004. (*Defendants' Motion for Protective order,* at 9-10). According to the plaintiff, however, Judge Holderman opened the door to all discovery of warranty claim information. (*Plaintiff's Reply Memorandum,* at 4).

At the hearing, there was no dispute that there could be no claim for a failure to recall, but that once a recall was undertaken, "a different set of rules may apply." (*Id.* at 5). *See Modelski v. Navistar Intern. Transp. Corp.,* 302 Ill.App.3d 879, 890, 236 Ill.Dec. 394, 707 N.E.2d 239, 247 (1 [st] Dist.1999)("a manufacturer is under no duty to issue post-sale warnings or to retrofit its products to remedy defects first discovered after a product has left its control."). [7] Hence, warranty claims preceding the first recall of the vehicles in question in 1999 would not be relevant to plaintiff's negligent recall claim *under Count IV of the amended complaint.* [8] Judge Holderman said as much at the hearing on March 1 [st]:

[7]      Despite Judge Holderman's instruction to the parties that they "cite cases ... on this particular area of the law," neither party has done so. (*Defendants' Motion for a Protective Order,* at 7-12; *Plaintiff's Reply Memorandum,* at 4-6). To paraphrase Judge Easterbrook in a similar context: "What do the [Illinois] courts themselves say on this subject [of negligent recall]? It is not our job to do the legal research that [the parties] ha[ve] omitted. Claims under state law have been forfeited." *Bretford Mfg.,*

Burkybile v. Mitsubishi Motors Corp., Not Reported in F.Supp.2d (2006)

2006 WL 2325506

*Inc. v. Smith System Mfg. Corp.,* 419 F.3d 576, 581 (7th Cir.2005). *Accord Davis v. Carter,* _F.3d_ (June 28, 2006 7th Cir.).

[8]      Documents evidencing complaints by Eclipse owners regarding the particular part involved in the instant case are relevant to other counts of the amended complaint. But discovery on those counts is closed.

So your theory with regard to the warranty claims at this point, the way you have articulated it, if it goes to the reasonableness of having a recall, really aren't relevant; but if they relate to the action taken once the voluntary recall was undertaken, then you might have a theory. (Transcript of 3/12/06, at 6).

Our's is a hierarchical system and the decisions of superior courts are binding on inferior courts. *Reiser v. Residential Funding Corp.,* 380 F.3d 1027, 1092 (7th Cir.2004). Thus, in light of Judge Holderman's observations, the only warranty claims relevant for present discovery purposes are those that relate to actions taken once the recall was undertaken in 1999.

In arguing to the contrary, plaintiff not only ignores Judge Holderman's pronouncement on the issue, but misinterprets his indication that warranty claims might be relevant, even if plaintiff had not received a recall notice. This statement was in response to defense counsel's question of how any warranty claims could be relevant if the plaintiff claimed he never received a notice. (Transcript of 3/12/06, at 7). Given the context of the comment, it cannot be interpreted to mean that warranty claims from any time period are relevant. (*Plaintiff's Reply Memorandum,* at 4-5). That interpretation would be nonsensical and would make the balance of Judge Holderman's observations meaningless. "Judges expect their pronunciamentos to be read in context...." *Wisehart v. Davis,* 408 F.3d 321, 326 (7th Cir.2005)(Posner, J.). *Cf. Penry v. Lynaugh,* 492 U.S. 302, 358, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989)(Scalia, J., concurring and dissenting in part). The rule applies to oral rulings or observations no less than to formal, written opinions.

2.

Plaintiff's Limited Discovery Requests
Are Not Unduly Burdensome

*8 The defendants argue that they have already provided the plaintiff with the warranty information from the period for 1999 on. In response to plaintiff's First Supplemental Requests for Production issued and answered a year ago, in May 2005, the defendants produced Quarterly Non-Compliance Reports submitted to NHTSA. According to the defendants, the information plaintiff seeks is in those Quarterly Reports. (*Defendants' Motion for Protective Order,* at 10; Ex. B).

Beyond that, defendants submit that requiring them to find each and every document during an 11-year time frame "reflecting claims" for in excess of 552,000 Mitsubishi vehicles, would be an undue burden. Over 362,000 vehicles had the lower lateral arm ball joints inspected or replaced under the recall, so even if each warranty claim consists of only one page, over 362,000 pages of documents would exist. In addition, over 700,000 Chrysler vehicles were also affected by the recall, bringing the total number of affected vehicles to well over 1,000,000. (*Defendants' Motion for Protective Order,* at 11-12).

The plaintiff concedes that such a production would indeed be burdensome. He is, nonetheless, unsatisfied with the reports to the NHTSA. Instead, he asks that the defendants produce reports and data compilations which summarize, analyze, or categorize the basic warranty information [Request 2] and any documents that were utilized to compile the quarterly reports submitted to NHTSA for the three recalls at issue [Request 3]. (*Plaintiff's Reply Memorandum,* at 6). As plaintiffs suggest, it is likely that there was some compilation or summarization of information pertaining to the warranty claims, which allowed defendants to compile the quarterly reports. Accordingly, defendants shall produce any such summaries, abstracts, or data compilations for the relevant time period beginning in 1999.

3.

The Plaintiff's Discovery Requests Are Timely

The defendants also argue that the requests for warranty information are untimely because discovery closed on January 31, 2006. (*Defendants' Motion for protective Order,* at 10). But discovery was reopened once plaintiff amended his complaint to add a negligent recall count. Judge Holderman indicated that the scope of that extended discovery included warranty claims relating to actions taken once the 1999 recall

Burkybile v. Mitsubishi Motors Corp., Not Reported in F.Supp.2d (2006)

2006 WL 2325506

was undertaken. (Transcript of 3/12/06, at 6). So the discovery requests here, occurring well before the new deadline of August 25th, are clearly timely. Defendants' reliance on *Lake v. Fairview Nursing Home, Inc.,* 151 F.3d 1033, 1998 WL 446662 (7th Cir. July 15, 1998), is mystifying. Apart from the fact that the citation of the case violates Seventh Circuit Rule 53(e), there was no extension of the discovery deadline in that case.


C.


Defendants Must Respond To Requests To Admit And Document Requests Regarding Statements By Corporate Officers At The February 15, 2001 News Conference

Plaintiff tendered Requests to Admit to the defendants which contained eight separate items regarding statements allegedly made by two high-ranking corporate officers of Mitsubishi Motors Corporation at a news conference on February 15, 2001. (*Plaintiff's Motion to Compel,* Ex. 3). Plaintiff also submitted a separate request for production of any documents or recordings that the defendants may have containing a verbatim rendition of those statements. (*Plaintiff's Motion to Compel,* Ex. 2, request 4). The plaintiff identified the news conference by date, by participants-Takashi Sonobe and/or Akira Okamoto-and by news articles reporting on the conference that plaintiff attached to both the Requests to Admit and the Request to Produce Documents. In those news articles, it was reported that Mr. Takashi, then Mitsubishi Motors CEO, called a second recall of certain vehicles for loose parts on a joint in the front suspension "a truly shoddy setup that deserves criticism." Mr. Akira Okamoto, executive officer in charge of quality, was reported to have said officials checking for defects mistakenly assumed they arose only on the assembly line. (*Plaintiff's Motion to Compel,* Exs. 2(A); 3(A-B)).

**\*9** In response to the Rule 34 document request, defendants indicated they were aware the two gentlemen were employees at that time, but were unaware of any recording or transcription containing a verbatim rendition of their comments at the news conference. They also objected to the request as "overly broad, unduly burdensome, unreasonable as to time and scope, and seek[ing] information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." (*Plaintiff's Motion to Compel,* Exs. 8-10).

In response to the requests to admit, the defendants admitted that the two gentlemen did, in fact, hold the positions of CEO and executive officer in charge of quality control on the date in question. But in response to requests asking whether the statements were made and whether they applied to the recalls at issue here, the defendants again generally objected to the remaining request to admit as "vague, ambiguous, seek[ing] information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." (*Id.*). [9]

[9]   The defendants' essentially boilerplate objections are: "This Request is vague, ambiguous, over broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence since the Request is not limited to the vehicle or issues in this case, or to the reasonable and relevant time frame. [Defendants] also object[ ] to this Request because it is unduly burdensome, oppressive, and harassing since it seeks to have [defendant] verify if statements were made over five years ago, and seeks to have [defendant] verify the specific content of those alleged statements, as well as the context in which the alleged statements were made. Further, this Request goes beyond the Court's limited purpose for reopening discovery, which was to allow plaintiff to conduct discovery solely on the issue of the alleged negligent recall and for purposes of rebuttal of defendants' experts."
   (*Plaintiff's Motion to Compel,* Exs. 5-7, requests 3-8).

The defendants' response to the motion to compel does not elaborate on their boilerplate objections. (*Defendants' Motion for Protective Order,* at 12). Consequently, for the reasons discussed earlier, those objections are overruled. *See also O'Connor v. AM General Corp.,* No. 85-6679, 1992 WL 382366 at *2 (E.D.Pa. Dec.7, 1992)("The court may reject unjustified objections and order answers, and determine that, as to answers deemed non-compliant, either the matter be deemed admitted or an amended answer be served."); *Booth Oil Site Administrative Group v. Safety-Kleen Corporation,* 194 F.R.D. 76, 80 (W.D.N.Y.2000)(same).

Defendants do, however, state that they will review and supplement their answers with regard to the news conference statements. (*Defendants' Motion for Protective Order,* at 12). While it is possible that the defendants do not have any

verbatim recordings or transcripts of the statements at issue, they must provide the plaintiff with a definitive answer as to whether they do. As for the requests to admit, the defendants must respond. Failure to properly respond to those requests to admit will result in them being deemed admitted under Rule 36. *Laborers' Pension Fund v. Blackmore Sewer Const., Inc.,* 298 F.3d 600, 605 (7th Cir.2002); *United States v. Kasuboski,* 834 F.2d 1345, 1350 (7th Cir.1987).

## CONCLUSION

For the foregoing reasons, the plaintiff's Motion to Compel [# 54] is GRANTED in part and DENIED in part. The defendants' Motion for a Protective Order as to Tandy Engineering [# 57] is GRANTED.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 2325506

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Pfefferkorn v. PrimeSource Health Group, LLC, Not Reported in Fed. Supp. (2019)
2019 WL 354968

🚩  KeyCite Yellow Flag - Negative Treatment
Disagreed With by  Calloway v. AT & T Corp.,  N.D.Ill.,  December 27,
2019

2019 WL 354968
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Erin PFEFFERKORN, et al., Plaintiffs,
v.
PRIMESOURCE HEALTH
GROUP, LLC, et al., Defendants.

Case No. 17-cv-1223
|
Signed 01/29/2019

**Attorneys and Law Firms**

Christopher Patrick Wido, Pro Hac Vice, Brian D. Spitz,
Christopher Patrick Wido, The Spitz Law Firm, LLC,
Beachwood, OH, Sharilee Kempa Smentek, Seyfarth Shaw
LLP, Elizabeth Anne Thompson, Saul Ewing Arnstein & Lehr
LLP, Chicago, IL, for Plaintiffs.

Barry Yale Freeman, Pro Hac Vice, Barry Yale Freeman,
Buckingham, Doolittle & Burroughs, LLC, Cleveland, OH,
Michael A. O'Brien, O'Brien Law Offices, PC, Wheaton, IL,
Brianna L. Golan, Laura A. Balson, Neil P. Johnson, Golan
Christie Taglia LLP, Dominick L. Lanzito, Peterson Johnson
& Murray—Chicago LLC, Chicago, IL, for Defendants.

**MEMORANDUM OPINION AND ORDER**

John Robert Blakey, United States District Judge

 **\*1**  Plaintiffs Erin Pfefferkorn and others have sued
Defendants PrimeSource Health Group, LLC, PrimeSource
Health Care Systems, Inc., PrimeSource of Michigan, LLC,
PrimeHealth Group, LLC, Advantage Capital Holdings, LLC,
and three other individuals, alleging that Defendants have
violated the Fair Labor Standards Act (FLSA), 29 U.S.C. §
201 et seq. [141]. Plaintiffs claim that Defendants failed to
fully pay them minimum wage and for overtime hours. Id.
Plaintiffs move to conditionally certify an FLSA collective
action. [116]. They also request equitable tolling of the statute
of limitations as of June 29, 2017 for all Plaintiffs who joined
this case after that date and all opt-in plaintiffs who have not

yet joined. Id. For the reasons explained below, this Court
grants Plaintiffs' motion for conditional certification and their
request for equitable tolling.

**I. Background**

**A. The Complaint's Allegations**
This Court presumes familiarity with, and incorporates by
reference, its prior opinion partially granting and partially
denying Defendants' motion to dismiss [101]. Therefore, this
Court only briefly revisits the relevant facts to this case. [1]

[1]  Plaintiffs filed a Third Amended Complaint
following that order. [141].

Plaintiffs were employed by PrimeSource Health Group,
PrimeSource Health Care Systems, and PrimeSource of
Michigan (together, PrimeSource) as Clinical Assistants,
Clinical Assistant Supervisors, Clinical Assistant Managers,
and/or Patient Assistants. [141] ¶ 74. They worked for
PrimeSource at times during the three years immediately
preceding the commencement of this case. Id.

PrimeSource was a network of linked companies offering
mobile medical services to long-term care facilities, id. ¶¶ 67–
68, but closed its operations on or around December 31, 2016,
id. ¶ 72. Plaintiffs allege that as part of their job duties, they
would travel to different long-term care facilities throughout
Illinois, Indiana, Michigan, and Kentucky. Id. ¶ 75. Their job
responsibilities included: maintaining, inspecting, repairing,
transporting, and cleaning medical equipment, and traveling
to long-term care facilities to assist physicians and patients.
Id. ¶ 78.

Plaintiffs allege that they worked greater than forty hours per
week and were thus entitled to overtime payments of time and
one-half for the hours they worked over forty each week. Id.
¶¶ 80–81. Plaintiffs claim that Defendants violated the FLSA
by failing to compensate them at time and one-half rates for
any hours they worked over forty each work week. Id. ¶ 336.
Plaintiffs also assert that Defendants violated the FLSA by
failing to pay them the proper minimum wage. Id. ¶ 335.

**B. The Proposed Classes**
Plaintiffs seek to certify the following two collective classes,
as follows:

Pfefferkorn v. PrimeSource Health Group, LLC; Not Reported in Fed. Supp. (2019)
2019 WL 354968

1. **Clinical Assistants**: all persons who were employed by PrimeSource Health Care Group, LLC, PrimeSource Health Care Systems, Inc., and/or PrimeSource of Michigan, LLC as Clinical Assistants (to include, but not limited to "senior" Clinical Assistants, "Regional Managers" Clinical Assistant "managers," Clinical Assistant "supervisors," and other variants of "Clinical Assistants") in the states of Illinois, Indiana, Michigan, and Kentucky, at any time during the three years prior and up through the date the order granting conditional certification is entered, any date the Court equitably tolls the statute of limitations to, or the filing of the employee's consent to sue form, whichever date is earliest.

**\*2** 2. **Patient Assistants**: all persons who were employed by PrimeSource Health Care Group, LLC, PrimeSource Health Care Systems, Inc., and/or PrimeSource of Michigan, LLC as Patient Assistants in the states of Illinois, Indiana, Michigan, and Kentucky, at any time during the three years prior and up through the date the order granting conditional certification is entered, any date the Court equitably tolls the statute of limitations to, or the filing of the employee's consent to sue form, whichever date is earliest.

[118] at 13–14.

## II. Legal Standard

FLSA suits cannot proceed as class actions; instead, they proceed as "opt-in representative actions," or collective actions. *Schaefer v. Walker Bros. Enters.*, 829 F.3d 551, 553 (7th Cir. 2016); *see also* 29 U.S.C. § 216(b). Through the conditional certification process, a district court determines whether potential plaintiffs "should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011).

Neither Congress nor the Seventh Circuit has specified exactly how courts should decide FLSA certification issues, but courts in this district generally use a two-step process. *See, e.g.*, *Nicks v. Koch Meat Co., Inc.*, 265 F. Supp. 3d 841, 848 (N.D. Ill. 2017) (internal quotation marks omitted); *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1132 (N.D. Ill. 2017).

First, a plaintiff must make a "modest factual showing" that she and "similarly situated employees" were "victims of a common policy" that violated the FLSA. *Grosscup v. KPW Mgmt.*, 261 F. Supp. 3d 867, 870 (N.D. Ill. 2017). Courts interpret "similarly situated" leniently, meaning plaintiffs need only clear a low bar to meet their burden at step one. *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008). Nonetheless, "a modest factual showing cannot be founded solely upon allegations of the complaint; some factual support must be provided, such as in the form of affidavits, declarations, deposition testimony, or other documents." *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 750 (N.D. Ill. 2011) (quoting *DeMarco v. Nw. Mem'l Healthcare*, No. 10 C 397, 2011 WL 3510905, at \*1 (N.D. Ill. Aug. 10, 2011) ).

During this first stage, courts do not "make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence" from the defendant. *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855–56 (N.D. Ill. 2013). If a plaintiff clears the "similarly situated" hurdle, a court conditionally certifies the FLSA collective action and authorizes the plaintiff to send notice to potential plaintiffs, who may then opt in. *Grosscup*, 261 F. Supp. 3d at 870.

Second, after the opt-in process finishes and discovery closes, the district court must reevaluate its conditional certification to determine whether the named plaintiff and opt-in plaintiffs share enough similarities to allow the case to go to trial as a collective action. *Nicks*, 265 F. Supp. 3d at 849. The second step imposes more demanding requirements on plaintiffs, *id.*, but is not yet relevant at this stage of the proceedings.

### A. FLSA Standard

The FLSA entitles most employees to overtime pay at one-and-a-half times their regular rate for all hours worked beyond forty in a workweek. 29 U.S.C. § 207(a). Employees bear the burden of proving that they performed overtime work without getting proper compensation. *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 173 (7th Cir. 2011). To succeed on an overtime claim, an employee must show that her employer "had actual or constructive knowledge of her overtime work." *Id.* at 177. The FLSA requires an employer to "exercise its control and see that the work is not performed" if the employer does not want the work performed. 29 C.F.R. § 785.13. That duty applies even when the employee fails to officially report overtime hours. *Kellar*, 664 F.3d at 177 (quoting *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir. 2008) ).

Pfefferkorn v. PrimeSource Health Group, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 354968

## III. Analysis

 **\*3** Here, Plaintiffs move for conditional certification and for this Court to approve its proposed notices. [118]. Plaintiffs also request equitable tolling of the statute of limitations to June 29, 2017, for all plaintiffs who joined or will join after that date. *Id.* This Court addresses each request below.

### A. Conditional Certification
In moving for conditional certification, Plaintiffs argue that all Clinical Assistants and Patient Assistants were compensated and misclassified in the same fashion by Defendants, and that all were denied overtime for any work they performed over forty hours a week. [118] at 13.

To establish that they and other potential opt-in plaintiffs are similarly situated and victims of a common policy, certain Plaintiffs submitted declarations that state the following:

• Plaintiffs were all Clinical Assistants or Patient Assistants for PrimeSource. [118-9] ¶ 2; [118-10] ¶ 2; [118-11] ¶ 2; [118-12] ¶ 3; [118-13] ¶ 2; [118-14] ¶ 2.

• Plaintiffs traveled to nursing facilities throughout their respective regions—Illinois, Indiana, Michigan, and Kentucky—to assist doctors, dentists, and optometrist in providing services to residents of nursing facilities. [118-9] ¶ 4; [118-10] ¶ 3; [118-11] ¶ 3; [118-12] ¶ 4; [118-13] ¶ 4; [118-14] ¶ 4.

• Plaintiffs were frequently required to "rideshare," or carpool, with other PrimeSource employees, when they traveled to the various nursing facilities. [118-9] ¶ 6; [118-10] ¶ 5; [118-11] ¶ 5; [118-12] ¶ 6; [118-13] ¶ 5; [118-14] ¶ 6.

• Plaintiffs spent most of their driving time engaged in mandatory, work related discussions, planning, and training. [118-9] ¶ 9; [118-10] ¶ 8; [118-11] ¶ 8; [118-12] ¶ 9; [118-13] ¶ 7; [118-14] ¶ 9.

• Plaintiffs worked greater than 40 hours a week nearly every week they were employed by PrimeSource, but they were paid flat salaries to work 40 hours a week at nursing facilities. [118-9] ¶ 15; [118-10] ¶ 14; [118-11] ¶ 12; [118-12] ¶ 15; [118-13] ¶ 8; [118-14] ¶ 15.

• Other than occasional weekend work that Plaintiffs were paid for, they were never compensated for: (1) hours worked in excess of 40 at nursing facilities; or (2) hours worked outside of nursing facilities, including driving time. [118-9] ¶ 15; [118-10] ¶ 14; [118-11] ¶ 12; [118-12] ¶ 15; [118-13] ¶ 8; [118-14] ¶ 15.

• Clinical Assistants performed substantial amounts of work at home, such as inventorying equipment that PrimeSource delivered, unloading heavy medical equipment from their vehicles, and answering work-related calls, emails and text messages. [118-9] ¶ 12; [118-10] ¶ 11; [118-11] ¶ 10; [118-12] ¶ 12; [118-14] ¶ 12.

• Clinical Assistants personally observed that all other Clinical Assistants maintained the same working conditions; additionally, when they ride-shared with Patient Assistants, they observed that Patient Assistants spent most of their ride-sharing time participating in mandatory work-related discussions. [118-9] ¶ 14; [118-10] ¶ 13; [118-11] ¶ 11; [118-12] ¶ 14; [118-14] ¶ 14.

Thus, Plaintiffs have given sworn testimony that they (1) traveled for work; (2) performed work-related tasks while they drove from their homes to nursing facilities; and (3) were compensated for only a forty-hour work week even though they worked more than forty hours each week they were employed at PrimeSource. Five of the Plaintiffs also stated his or her personal observation that other Clinical Assistants and Patient Assistants spent most of their ride-sharing time participating in mandatory, work-related discussions.

 **\*4** Based upon these declarations, this Court finds that Plaintiffs have made the requisite "modest factual showing" that they and other "similarly situated employees" were "victims of a common policy" that violated the FLSA. *Grosscup*, 261 F. Supp. 3d at 870. Thus, Plaintiffs have passed the step-one test for conditional certification of their classes. *See, e.g.*, *Nicks*, 265 F. Supp. 3d at 853 (conditionally certifying FLSA class where plaintiffs submitted "multiple declarations from workers who worked at multiple locations in which they averred that they were regularly required to work more than 40 hours per week without being paid overtime.").

### B. Defendants' Objections to Conditional Certification
Defendants filed a partial opposition, interposing various objections to Plaintiffs' proposed classes. [135] at 1–4. This Court addresses each in turn below and finds that none of them precludes conditional certification.

Pfefferkorn v. PrimeSource Health Group, LLC, Not Reported in Fed. Supp. (2019)
2019 WL 354968

## 1. Brief Exceeding LR 7.1's Page Limitation

Defendants first argue that Plaintiffs' motion should be denied because their memorandum of law in support of their motion exceeded the 15-page limit set forth in Local Rule 7.1, and Plaintiffs did not obtain leave from this Court to exceed that limit. [135] at 1. This Court disagrees, because should Plaintiffs have requested leave to exceed the 15-page limit in Local Rule 7.1, this Court would have exercised its discretion and granted that request (and would have done the same as to any similar request by Defendants to do likewise). This Court also reminds Plaintiffs to comply with all applicable Local Rules going forward.

## 2. Clinical Assistant Variations

Defendants next argue that Plaintiffs cannot meet their conditional certification burden for "Clinical Assistant Directors," "Clinical Assistant Regional Directors," or "Clinical Assistant Managers." [135] at 2.

Specifically, as to "Clinical Assistant Directors" and "Clinical Assistant Regional Directors," Defendants contend that that no such positions existed at PrimeSource, relying upon the declaration of Bobbie Richey—the former Vice President of Human Resources for PrimeSource—who provided a sworn statement to that effect. [135-2] ¶¶ 1, 2. But Plaintiffs do not specifically reference these two positions in either their proposed notice [118-28], or their motion [118]. Rather, Plaintiffs seek to certify a class of "Clinical Assistants" which they state includes, but is not limited to, "senior" Clinical Assistants, "Regional Managers," Clinical Assistant "managers," Clinical Assistant "supervisors," and other variants of "Clinical Assistants." [118] at 13–14. Thus, as written, the proposed conditional class does not even specifically contemplate "Clinical Assistant Directors" or "Clinical Assistant Regional Directors." This Court therefore finds it unnecessary to specifically carve out "Clinical Assistant Directors" and "Clinical Assistant Regional Directors" from Plaintiffs' class of "Clinical Assistants." If such positions never existed, then no class members holding those positions will opt in.

And, as to "Clinical Assistant Managers," Defendants argue that Plaintiffs offer no evidence that they were similarly situated to Plaintiffs. [135] at 2. Defendants' argument fails at this stage, because "Plaintiffs do not have to show that

the potential class members have *identical* positions for conditional certification to be granted." *Jirak,* 566 F. Supp. 2d at 848–49. Rather, they can be "similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay." *Id.* at 849. Here, Plaintiffs point to the declaration of Lottie Farver, who was a "Clinical Assistant Supervisor" for PrimeSource. [139] at 2. Farver stated in her declaration that she was promoted to the position of "Clinical Assistant Supervisor" from "Clinical Assistant" in 2015, but her job duties did not change, other than gaining additional responsibilities, such as training and overseeing the work of other Clinical Assistants. [118-14] ¶ 16.

**\*5** Thus, at this stage, Plaintiffs have made a sufficient showing that Clinical Assistants—and any variations of Clinical Assistants, such as "supervisors" or "managers"— are similarly situated. Should Defendants wish to present evidence of "disparate factual and employment settings of individual class members," that argument is better reserved for the second stage of the certification process. *See Nicks,* 265 F. Supp. 3d at 855 (noting that "courts typically delay consideration of disparate factual and employment settings of individual class members until the second stage of the certification analysis.") (internal quotation and citation omitted); *Muir v. Guardian Heating & Cooling Servs., Inc.,* No. 16 C 9755, 2017 WL 959028, at \*3 (N.D. Ill. Mar. 13, 2017) ("Concerns regarding a lack of common facts among potential class members and the need for individualized inquiries should be raised at step two, not step one.").

## 3. Patient Assistants in Illinois

Defendants next argue that Plaintiffs cannot conditionally certify Patient Assistants in Illinois because no such individuals existed. [135] at 3. While this might be true, this Court finds it unnecessary to specifically carve out Patient Assistants in Illinois from the conditional class. Simply put, if there were no Patient Assistants in Illinois, none will opt in.

## 4. "Prior Notice" to Clinical Assistants

Next, Defendants contend that all Clinical Assistants should be aware of this action by now, and those who have not yet opted in "should have their wishes respected." [135] at 3.

Defendants' arguments here are unavailing, because they fail to show that all potential opt-in Clinical Assistants actually

Pfefferkorn v. PrimeSource Health Group, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 354968

have notice of this action. For instance, Defendants first argue that Clinical Assistants were given notice of potential claims as part of a 2017 Department of Labor (DOL) settlement because PrimeSource delivered back pay checks to potential class members pursuant to the settlement. *Id.* [2] This Court, however, has already noted in its prior motion to dismiss opinion that PrimeSource's delivery of back pay checks do not mention any settlement with the DOL, nor that a collective action was already pending before this Court. [101] at 9. Accordingly, these back pay checks could not be reasonably construed as notice to any potential class members.

[2]  The DOL's investigation of, and subsequent settlement with, Defendants is discussed in more detail in this Court's prior motion to dismiss order. [101].

Defendants also argue that any potential opt-in Clinical Assistants should already be on notice because this Court in June 2017 ordered PrimeSource to turn over their contact information to Plaintiffs, and Plaintiffs have already provided notice to these individuals. [135] at 3. This argument fares no better, because this case had not yet been conditionally certified as of June 2017. Thus, as of that date, Plaintiffs had not yet been provided an opportunity to issue *court*-authorized notices to the conditional classes. Plaintiffs should be given the opportunity to follow through with Clinical Assistants with the formal opt-in process contemplated by the FLSA; this will ensure that all potential plaintiffs with viable claims have notice.

### 5. DOL Determination Regarding Patient Assistants

Defendants also contend that conditional certification should be denied for Patient Assistants because the DOL found that not a single Patient Assistant was owed back pay. [135] at 4.

Defendants, however, cite no authority for why this Court need adopt the DOL's findings at this stage. Nor do Defendants reconcile the DOL's findings with the declaration of Komeka Thomas, a former Patient Assistant, who stated that she was not paid for overtime work. [118-13] ¶ 8. This Court thus finds no basis to decline conditionally certifying Plaintiffs' proposed Patient Assistants class based upon the DOL determination.

### C. Procedural Considerations Regarding the Opt-In Period

**\*6**  Because conditional certification is proper, this Court next addresses certain procedural considerations raised by the parties regarding the opt-in process.

First, as to the length of the opt-in period, Plaintiffs request 90 days, [139] at 12, while Defendants request 60 days, [135] at 4. Plaintiffs urge that 90 days is appropriate because the potential class members are low-income workers who no longer work for PrimeSource, and thus may be difficult to contact. [139] at 10. Defendants offer no substantive reason as to why they believe the opt-in period should be 60 days, rather than the 90 days that Plaintiffs propose. [135] at 4. Courts in this circuit have approved opt-in periods from 45 to 120 days. *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 764 (N.D. Ill. 2011) (collecting cases). Because (1) 90 days falls in the middle of this range; and (2) Defendants offer no substantive support for why a shorter period is appropriate in this case, this Court will authorize a 90-day opt-in period.

Second, Defendants argue that all parties should be barred from communicating with potential class members during this opt-in period. [135] at 4. Defendants offer no legal authority for this request, and Plaintiffs oppose it. [139] at 11. Thus, this Court rejects this second request.

Third, Defendants request that all counsel should be barred from communicating with class members during the opt-in period, except when responding to inquiries initiated by potential opt-ins; to that end, Defendants also request that this Court order counsel to keep lists of potential opt-ins with whom they have communicated about opting-in. [135] at 4–5. Plaintiffs do not oppose this request, except to argue that it is unnecessary to include a prohibition about solicitation in this Court's order, because soliciting is already prohibited by the Rules of Professional Conduct. [139] at 11. This Court grants Defendants' unopposed request. All counsel should refrain from communicating with class members during the opt-in period, except when responding to inquiries initiated by potential opt-in members. Additionally, all counsel should keep a list of potential opt-ins with whom they communicate regarding opting in.

Finally, Defendants contend that they should not be required to provide their former employees' phone numbers or email addresses to facilitate the opt-in process unless and until regular mail notice is returned as undeliverable. [135] at 5. In response, Plaintiffs do not address whether they require

Pfefferkorn v. PrimeSource Health Group, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 354968

phone numbers, but do argue that Defendants should provide them with email addresses. [139] at 11. This Court finds that Plaintiffs' request for email addresses is reasonable, because "dual postal mail and e-mail distribution is likely to advance[ ] the remedial purpose of the FLSA by increasing the likelihood that all potential opt-in plaintiffs will receive notice." *Boltinghouse v. Abbott Labs., Inc.*, 196 F. Supp. 3d 838, 844 (N.D. Ill. 2016) (internal quotation and citation omitted); *Grosscup*, 261 F. Supp. 3d at 880 (holding that "notice by email is appropriate and enhances the chance that the potential opt-in plaintiffs receive the notice."). Therefore, Defendants must provide Plaintiffs with both the email addresses and postal mail addresses of potential opt-in class members, and Plaintiffs are permitted to send their notices through both methods of communication. [3]

[3]     This Court also grants Plaintiffs' unopposed request that they be allowed to send two reminder notices to potential opt-in plaintiffs. [118] at 15.

### D. Plaintiffs' Proposed Notices

**\*7** This Court next addresses whether Plaintiffs' proposed forms of notice are adequate and appropriate.

Here, Plaintiffs have proposed separate notices for Clinical Assistants and Patient Assistants. *See* [118-28] [118-29]. Ordinarily, absent "reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice." *Kelly v. Bank of Am., N.A.,* 10 C 5332, 2011 WL 7718421, at \*1 (N.D. Ill. Sept. 23, 2011) (quoting *King v. ITT Continental Baking Co.,* No. 84 C 3410, 1986 WL 2628, at \*3 (N.D. Ill. Feb. 18, 1986) ).

Defendants have three proposed revisions to Plaintiffs' notices. They first ask that the notices identify only the following employers: PrimeSource Health Group, LLC, PrimeSource Health Care Systems, Inc., and PrimeSource of Michigan, LLC. [135] at 5. Plaintiffs' proposed notices, meanwhile, identify all Defendants in this action, [118-28] [118-29], and Plaintiffs insist that they remain identified so that potential opt-ins may be made aware that other Defendants cannot retaliate against them, [139] at 12. This Court finds it reasonable that all remaining Defendants be identified in the notices and thus overrules Defendants' objection on this point.

Defendants also object to a 90-day opt-in period and to the inclusion of Patient Assistants in Illinois. [139] at 12. This

Court also overrules these objections, for the reasons stated above.

Lastly, Defendants request that the notices be updated to reflect current defense and local counsel for the parties. [135] at 6. Plaintiffs do not object to this request. [139] at 12. This Court finds this request reasonable and appropriate. Therefore, Plaintiffs should make appropriate edits to the notices to reflect current counsel.

This Court now turns to its own objections to Plaintiffs' proposed notices. The Seventh Circuit has cautioned that district courts should not create the appearance of "apparent judicial sponsorship of the notice, at a stage in the litigation when there has been no determination that the plaintiff's allegations have any merit." *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982). Here, both proposed notices contain the heading: "Authorized by Judge Robert Blakey of the United States District Court for the Northern District of Illinois." [118-28] [118-29]. Plaintiffs must remove this heading from the notices, or alternatively, include the entire caption of the case, so that it is clear that the notice is a routine court document, not a letter from this Court. *See, e.g.*, *Jirak*, 566 F. Supp. 2d at 851 (requiring the plaintiff to remove a similar heading, or alternatively, include the entire case caption). [4] Plaintiffs should also include conspicuous language in the notices instructing potential class members not to contact this Court with any questions about this case. *See id.* Such edits to these notices will eliminate any appearance of judicial sponsorship.

[4]     Plaintiffs should also correct any references to "The Honorable Robert Blakey" to "The Honorable John Robert Blakey."

### E. Equitable Tolling

Finally, this Court addresses Plaintiffs' request that this Court equitably toll the running of the statute of limitations in this case. [116] at 2; [118] at 21–24.

**\*8** FLSA requires that an action "be commenced within two years after the cause of action accrued," unless the violation was willful, in which case the statute of limitations is three years. 29 U.S.C. § 255(a). The FLSA statute of limitations runs until each opt-in class member files a written consent to join the action. 29 U.S.C. § 256. Thus, the statute of limitations for potential class members will continue to run until those members opt in. *Id.*

Pfefferkorn v. PrimeSource Health Group, LLC; Not Reported in Fed. Supp. (2019)
2019 WL 354968

Here, Plaintiffs request that the statute of limitations be equitably tolled as of June 29, 2017 "for all Plaintiffs who joined this matter after that date and for all [opt-in] plaintiffs who have yet to join." [116] at 2. Defendants do not disagree that some degree of equitable tolling is proper in this case. [135] at 5. They argue, however, that "there is no basis for tolling from February 12, 2018," because "Plaintiffs could have moved for conditional certification any time after" that date. [135] at 5.

To give context to Plaintiffs' request—and Defendants' limited opposition—this Court briefly revisits the procedural history in this case. On June 29, 2017, Plaintiffs initially moved for conditional certification. [51]. A few weeks later, this Court denied without prejudice that initial motion as premature and instructed Plaintiffs that it would not rule on any conditional certification request until the final pleadings were on file. [58]. The parties then engaged in briefing on Defendants' motions to dismiss, and this Court ruled on those motions on February 12, 2018. [101]. In May 2018, three months after this Court ruled, Plaintiffs filed the "final" complaint—the Third Amended Complaint, [141]; in the same month, they renewed their motion for conditional class certification, [116].

Given the procedural history of this case and the fact that the statute of limitations continues to run for opt-in plaintiffs, this Court agrees with Plaintiffs that the statute of limitations should be tolled as of the date Plaintiffs filed their initial motion for conditional certification, on June 29, 2017. Moreover, given Plaintiffs' efforts to certify since June 29, 2017, this Court declines to limit the scope of equitable tolling and therein rejects Defendants' argument that tolling should be suspended as of February 12, 2018. Thus, this Court grants Plaintiffs' request that the statute of limitations be equitably tolled as of June 29, 2017 for all Plaintiffs who joined this matter after that date and for all opt-in plaintiffs who have yet to join. [5]

[5] Defendants also argue that there should be no tolling for Clinical Assistants because they have already been provided notice of this action. [135] at 5. This Court rejects this argument for the reasons stated above.

**IV. Conclusion**

This Court grants Plaintiffs' motion for conditional certification. [116]. Accordingly, this case is conditionally certified as a collective action pursuant to Section 16(b) of the FLSA. This Court also grants Plaintiffs' request to equitably toll the statute of limitations as of June 29, 2017 for all Plaintiffs who joined this matter after that date and for all opt-in plaintiffs who have yet to join.

Before the parties issue notice, Defendants shall produce to Plaintiffs two lists (in Microsoft Excel format) of all persons employed by PrimeSource (1) as Clinical Assistants, and (2) as Patient Assistants, from June 29, 2014 through present. The lists should contain each person's name, address, email address, and dates of employment. The lists should be produced to Plaintiffs within 7 days of this order.

**\*9** The parties are directed to meet and confer regarding revised notices that accord with this Court's rulings. The parties should file the revised notices within 7 days of this order. This Court expects to approve the issuance of the revised notices at the next status hearing.

The parties are also directed to meet and confer about case management dates. The parties should file a joint status report with a proposed case schedule—to include deadlines for the close of discovery, dispositive motions, and motions for decertification of the collective action—within 7 days of this order. The parties should be prepared to set final case management dates at the next status hearing.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 354968

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.