IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRAIGVILLE TELEPHONE CO. d/b/a ADAMSWELLS; and CONSOLIDATED TELEPHONE COMPANY d/b/a CTC | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:19-cv-07190 |
| vs. | ) ) ) | Judge Sharon Johnson Coleman Magistrate Judge Jeffrey T. Gilbert |
| T-MOBILE USA, INC.; and INTELIQUENT, INC. | ) ) ) | |
| Defendants. | ) | |

**MOTION FOR APPOINTMENT BY THE DISTRICT JUDGE
OF A PRETRIAL MASTER FOR DISCOVERY**

Craigville Telephone Co. d/b/a AdamsWells and Consolidated Telephone Company d/b/a CTC, on behalf of themselves and a class of similarly situated companies (collectively, "Plaintiffs"), respectfully move this Court to appoint a Pretrial Master to assist the parties to manage discovery for the remainder of this case.

**LOCAL RULE 37.2 CERTIFICATION**

Plaintiffs assert this Motion complies with Local Rule 37.2. Plaintiffs' counsel has on several occasions asked counsel for Defendants if they would enter into a mutual agreement to request appointment of a Special Master. On November 3, 2022, in an email documenting how long certain requests by Plaintiffs for meet and confers had been pending, Plaintiffs wrote:[1]

> This is precisely the sort of delay that has caused me to propose, several times, an agreement that the parties respond to meet and confer requests and schedule dates within five business days. I would like to revisit that proposal again on our next call, in addition to meeting and conferring about the Defendants' position on jointly

---
[1] This email is attached hereto as Exhibit 1.

>requesting appointment of a Special Master to help facilitate resolution of discovery disputes.

In response, TMUS wrote:

>TMUS still does not agree to the proposal you already made. TMUS also does not believe there is any need for a special master. That said, we are, as always, willing to meet and confer.

Inteliquent's counsel was copied on the November 3, 2022 email, but as of this filing did not respond in any way to Plaintiffs' proposals. Plaintiffs raised this issue with TMUS counsel Messrs. Mervis and Alladi again on a November 7, 2022 call and TMUS would not agree. The parties also expressed their disagreement on this issue on the record when Judge Coleman suggested the case may need a special master appointed. (*See* ECF 336; Jan. 9, 2023 Hearing Tr. at 9:13-15:4 (ECF 335).)

WHEREFORE, Plaintiffs respectfully request that the Court grant the relief sought by Plaintiffs' Motion for Appointment by the District Judge of a Pretrial Master for Discovery, the grounds for which are set forth in the accompanying memorandum of law.

Submitted January 26, 2023

/s/ David T.B. Audley
David T.B. Audley (Bar No. 6190602)
Mia D. D'Andrea (Bar No. 6307966)
**CHAPMAN AND CUTLER LLP**
111 West Monroe Street
Chicago, IL 60603-4080
Tel. 312-845-2971
Email: audley@chapman.com
Email: dandrea@chapman.com

Cathy A. Hinger (*pro hac vice*)
G. David Carter (*pro hac vice*)
Victoria A. Bruno (*pro hac vice*)
Kathleen O. Gallagher (*pro hac vice*)
Jeremy L. Baker (*pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
2001 K Street, NW, Suite 400 South
Washington, DC 20006
Tel.: 202-857-4489
Fax: 202-261-0029
Email: cathy.hinger@wbd-us.com
Email: david.carter@wbd-us.com
Email: victoria.bruno@wbd-us.com
Email: katie.gallagher@wbd-us.com
Email: jeremy.baker@wbd-us.com

Kurt D. Weaver (*pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: 919-755-8163
Email: kurt.weaver@wbd-us.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on this the 26th day of January, 2023, I served the foregoing **Plaintiffs' Motion for Appointment by the District Judge of a Pretrial Master for Discovery and Memorandum in Support** via the ECF system on parties that have consented to the same in accordance with applicable Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Northern District of Illinois.

      By:    */s/ David T.B. Audley*
                   David T.B. Audley

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRAIGVILLE TELEPHONE CO. d/b/a ADAMSWELLS; and CONSOLIDATED TELEPHONE COMPANY d/b/a CTC | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:19-cv-07190 |
| v. | ) ) ) | Judge Sharon Johnson Coleman Magistrate Judge Jeffrey T. Gilbert |
| T-MOBILE USA, INC.; and INTELIQUENT, INC. | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
APPOINTMENT BY THE DISTRICT JUDGE
OF A PRETRIAL MASTER FOR DISCOVERY**

Craigville Telephone Co., d/b/a AdamsWells, and Consolidated Telephone Company d/b/a CTC, on behalf of themselves and a class of similarly situated companies (collectively, "Plaintiffs"), submit this Memorandum of Law in support of their Motion for Appointment by the District Judge of a Pretrial Master for Discovery.

**I.      INTRODUCTION**

At the January 9, 2023, Telephonic Status Conference, the District Judge tacitly acknowledged what Plaintiffs have known for nearly two years: this action needs heightened oversight. The Court observed:

> [L]ooking at the docket [ ] velocity in which you all are approaching your presentations on these cases on behalf of your clients is whether or not there is some thought that a special master might be appropriate in this case. . . . You all have a lot going on, and we are not getting very far in nearly 300 documents in resolving what clearly is – it's a complicated case. It's got complicated issues. You've got a lot of documents, as you say, to deal with these phone calls that are in dispute based on the allegations that have been made by the plaintiff. And there's a lot of work to be done on that information.

(Jan. 9, 2023 Hearing Tr. at 10:2-13 (ECF 335).) The clear need for heightened judicial involvement is the result of a multitude of discovery disputes, unproductive meet and confer conferences, and a multiplying number of docket entries. Further, resolution of these disputes is made even more complicated by Defendants' designation of 34,746 out of 34,932 pages produced in this case as "confidential." Defendants' blanket Confidential designations and the Agreed Confidentiality Order's ("ACO" ECF 164) mandatory filing of such information under seal, have forced Plaintiffs to present even more motions to address the impropriety of Defendants' efforts to avoid disclosure of damaging facts to the public.

Contrary to the Court's recognition of the complexities of this action and the remaining work involved, however, Defendant T-Mobile USA, Inc. ("TMUS") boldly asserted "we're coming to an end of fact discovery." (*Id.*, at 10:24-25.) Nothing could be farther from the truth. As detailed more fully below, despite repetitive orders confirming the scope of discovery in Plaintiffs' favor, Defendant Inteliquent has largely refused to produce discovery in the case and just recently proposed a production schedule for call detail records that, if agreed and accepted by the Court, would extend discovery through much of 2023. The appointment of a Special Master is needed in this action for the benefit of all parties and to effectively and timely address the matters that will allow this Court and the parties to advance this lawsuit through class certification and trial. Indeed, the use of a special master in this type of litigation is precisely what the Advisory Committee contemplated when substantial changes were made in 2003 to Fed. R. Civ. P. 53.

## II. STATEMENT OF THE CASE

This November 1, 2019 lawsuit arises out of TMUS's illegal use of fake ring tones on billions of calls placed to rural America and unlawful routing practices that deprived a class of rural and high-cost Local Exchange Carriers ("LECs"), like Plaintiffs, of terminating access charges. The

Federal Communications Commission ("FCC") expressly found that the use of fake ring tones encourages callers to hang up prematurely, preventing calls from completing to their intended destination. (*See* ECF 94 ¶¶ 104, 114–115, 118.) The Second Amended Complaint ("SAC") alleges that the fake ring tones also either caused calls not to complete or masked failures by Inteliquent, Inc. ("Inteliquent"), to complete calls placed to rural and high-cost destinations, all of which violates the Telecommunications Act of 1964 ("Act") (Counts I-III) and amounts to an unlawful conspiracy (Count VIII). (*See generally id*.)

After a period of motions practice, the Court ordered that discovery should proceed on February 22, 2021. (ECF 110.) The parties attempted to negotiate a confidentiality order covering the production of documents, however, the Court needed to decide that matter. (ECF Nos. 125, 127 (referring general discovery supervision to Mag. J. Gilbert), 149, 164.) Another dispute paralyzed the parties over the scope of permissible discovery in view of the Court's ruling (ECF 147) on Defendants' motions to dismiss. A Joint Status Report to Resolve Discovery Disputes (ECF 125) on the scope of discovery resulted in the Court's September 1, 2021, Order (ECF 148). The parties pursued document discovery but it slowed to a crawl because the parties still disagreed over whether the Court had, as Defendants asserted, limited the scope of discovery. On December 21, 2021, Defendant TMUS filed a Motion for Clarification Concerning the Court's Memorandum Opinions and Orders Dismissing in Part Plaintiffs' First and Second Amended Complaints (ECF 195-96). The District Judge held a hearing on the issue on February 15, 2022 (ECFs 225, 227), and held that discovery should "proceed in full," overruling Defendants' scope of discovery objections.

As discovery progressed, this Court has been asked to step in to resolve a variety of other discovery disputes (the below is not exhaustive):

1. Plaintiffs' Motion to Compel against Third-party Wilkinson Barker Knauer, LLP seeking TMUS's Federal Communications Commission documents [No. 1:2021-cv-4569, filed Aug. 26. 2021 (ECF 1), resolved Mar. 25, 2022 (ECF 253- Hearing Tr.)];
2. Plaintiffs' Motion to Compel against Third-party Ericsson, Inc. [No. 2022-cv-1595, filed Mar. 28, 2022 2022 1:19-cv-7190 (ECF 5), resolved Dec. 16, 2022, (ECF 325)];
3. Joint Motion to Resolve Discovery Dispute regarding Customer Contact, filed Oct. 20, 2021 (ECF 169), Mar. 25, 2022 (ECF 252);
4. T-Mobile's Motion for Entry of Protective Order Regarding Plaintiffs' Amended Notice of 30(B)(6) Records Custodian Deposition), filed Nov. 16, 2021 (ECF 176), resolved Mar. 25, 2022 (ECF 252);
5. Inteliquent's Opposed Motion for Protective Order Regarding the Plaintiffs' Notice of Records Custodian Deposition, filed Dec. 1, 2021 (ECF 179), resolved Mar. 25, 2022 (ECF 252);
6. Plaintiffs' Motion to Compel against TMUS regarding document request objections, filed Dec. 30, 2021 (ECF 199), resolved May 12, 2022 (ECF 257);
7. Plaintiffs' Motion to Compel against Inteliquent seeking documents, filed Feb. 14, 2022 (ECF 216), ***unresolved***;
8. Plaintiffs' Renewed Motion to Compel TMUS responses to First Set of Requests for Production (as narrowed in accordance with May Discovery Order), filed Sept. 19, 2022 (ECF 274), and Motion to Supplement with Related Interrogatories, filed Dec. 12, 2022 (ECF 323), ***unresolved***;
9. Motion to Consider Whether to Seal Select Text regarding TMUS, filed Sept. 19, 2022 (ECF 278), ***unresolved***;
10. Plaintiffs' Motion for five-day deadline to respond to meet and confer requests, filed Nov. 28, 2022 (ECF 320), resolved Dec. 8, 2022 (ECF 322);
11. Second Joint Motion to Resolve Discovery Dispute regarding customer contact, filed Oct. 6, 2022 (ECF 299), resolved Dec. 19, 2022 (ECF 326)[2];
12. Motion to Consider Whether to Seal Select Text regarding Inteliquent, filed Oct. 11, 2022 (ECF 303), ***unresolved***;
13. Various Motions for extensions of deadline to amend pleadings/join parties (ECF 131, 160, 197, 228, 259, 266, and 328); and

---

[2] Despite being ordered to produce names and addresses of customers for Plaintiffs to contact about dropped calls on December 19, 2022 (ECF 326), TMUS was asked three times when it expects to produce such names and addresses and only produced them after a four week delay without explanation.

    14.  Numerous Motions to Seal (ECFs 200, 218, 232, 237, 244, 278, 303, 310, 316).

With the exception of Item 10 above, these motions have taken anywhere from 2.5 months to nine months to resolve (and Items 7, 8, 9, and 12 remain outstanding), which is understandable in light of the Court's increasingly crowded docket and the lingering impact of Covid. The complicated and technical nature of the claims and evidence, and the parties' adversarial nature to date, have added to an already overtaxed Court.[3]

 Defendants' first document productions occurred in late September 2021 and, through January 13, 2023, TMUS has produced approximately 4,604 documents totaling 22,325 pages and Inteliquent has produced 1,171 documents totaling 3,025 pages. Considerably more documents are being withheld due to overbroad and unsupported objections, questionable claims of privilege, and allegations that documents "no longer exist" (despite Plaintiffs having a good faith belief they should have been part of litigation holds), and other positions taken by Defendants that block access to relevant information. A sampling of the extensive meet and confer letters is attached collectively as Exhibit 2.[4] (*See*, *e.g.,* 6/7/22 C. Hinger Ltr. to M. Mervis; 6/14/22-7/8/22 Emails Between C. Hinger and O. Alladi; 6/8/22 D. Carter Ltr. to M. Mervis and M. Pullos; 6/24/22 M. Pullos Ltr. to D. Carter; 7/5/22 D. Carter Ltr. to M. Pullos; 7/7/22 M. Mervis Ltr. to D. Carter;

---

[3] Again, the facts demonstrate the increasing number of cases and related motions being filed in the Northern District of Illinois. Even a cursory review of the Federal Court Management Statistics reveals that the Northern District of Illinois has ranked 10th in number of pending cases for the last two years of all 94 federal district courts. *See generally* Federal Court Management Statistics, June 2022, available at https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-june-2022, last accessed Jan. 17, 2023.

[4] In order to avoid filing another contested motion to seal, Plaintiffs have redacted material referencing information marked Confidential by Defendants that Plaintiffs do not believe is material to the outcome of the instant motion, but will submit to the Court unredacted versions upon request.

7/17/22 D. Carter Ltr. to M. Mervis; 7/26/22 M. Mervis Ltr. to D. Carter; 10/7/22 C. Hinger Ltr. from to M. Pullos; 10/10/22 M. Pullos Ltr. to C. Hinger; 10/10/22 C. Hinger Email to M. Pullos; 11/4/22 C. Hinger Ltr. to M. Mervis; 11/18/22 M. Mervis Ltr. to C. Hinger; 11/14/22 C. Hinger Ltr. to M. Pullos and M. Mervis; 11/23/22 M. Mervis Ltr. to C. Hinger; 11/23/22 M. Pullos Ltr. to C. Hinger; 12/9/22-1/10/23 Emails Between C. Hinger and O. Alladi; 12/30/22 V. Bruno Ltr. to D. Carpenter and J. Carey; 1/11/23 D. Carpenter Ltr. to V. Bruno).

Consequently, although Defendants may sound in self-congratulatory tones for their productions to date, the truly relevant documents are those subject to an extended unresolved tug of war between the parties. A special master would alleviate the need for this Court to mire itself in the minutiae of telecommunication data and documents and permit the parties to efficiently move forward with necessary discovery in a timely manner.

Moving forward, unfortunately, additional motions are already contemplated by all parties based on documents omitted from production and numerous unproductive meet and confer conferences. These forthcoming motions include:

1. TMUS's motion to compel supplemental responses to Plaintiffs' initial disclosures regarding Plaintiffs' damage calculations;
2. Plaintiffs' motion to compel TMUS to respond to certain of their Second Set of Requests for Production ("RFPs") to TMUS regarding communications concerning TMUS's expansion of the fake ring tones and communications concerning service credits to which TMUS was entitled for sub-par call routing performance under the Inteliquent-TMUS Master Services Agreement;
3. Plaintiffs' motion to compel TMUS to respond to certain interrogatories (some negotiations still in process);
4. Plaintiffs' motion to compel Inteliquent to respond to over 60 of Plaintiffs' Second Set of RFPs (Inteliquent asserts that seven (7) hours of meet and confer meetings is insufficient), including,
   a. Discovery referring to routing to high-cost areas,
   b. Discovery regarding least cost routing and Inteliquent's use of least cost routing, and
   c. Discovery regarding scope of conspiracy issues;

6

5. Inteliquent's motion to compel changes to Plaintiffs' interrogatory responses (some negotiations still in process);
6. Plaintiffs' motion to compel Inteliquent to respond to certain interrogatories;
7. Joint oversight of Call Detail Record[5] production and discovery, relating to restoring those records from backup tapes,[6] an issue on which negotiations have been ongoing since June 8, 2022;
8. Joint Administration (and possible modification, if necessary) of Customer Contact Order (ECF 326) which permits Plaintiffs to contact 100 TMUS customers impacted by its use of fake ring tones in writing, but return to the Court for further relief if they have a poor response rate;
9. Plaintiffs' motion regarding CDR discovery and possible preservation issues, including discovery of litigation hold information, and possible related motion regarding spoliation of CDRs against TMUS;
10. Plaintiffs' motion regarding the overdesignation of material as "Confidential" by Defendants and/or a modification of the ACO (ECF 164);
11. Plaintiffs' motion to resolve privilege log disputes and related redactions where no attorney names are present;
12. Plaintiffs' opposed motion to extend the March 15, 2023, discovery deadline resulting from TMUS's refusal to agree to extend the discovery cut off during a meet and confer on November 7, 2022, and which refusal is consistent with TMUS counsel's statement at the January 9, 2023, Status Hearing that "we're coming to an end of fact discovery."

Defendants also say that they intend to produce massive amounts of CDRs that have been sought by Plaintiffs since June 8, 2022, and the maintenance of which was a primary subject of record custodian depositions that proceeded the discovery request. (*See supra*, fn.2; *see also* Ex. 2, 6/8/22 Ltr. from D. Carter to M. Mervis and M. Pullos.) With the appropriate fields populated,

---

[5] A call detail record ("CDR") is a data record produced by telecommunications equipment that documents the details of a telephone call. The record contains various attributes of the call, such as time, duration, completion status, source number, and destination number. More sophisticated carriers, including TMUS and Inteliquent, record the disposition or results of the call, indicating, for example, whether the call was connected, whether a ring tone was generated, the identification of the telephone exchange or equipment writing the record, the route by which the call entered and left the exchange, and any fault condition encountered.

[6] *See* Jan. 9, 2023 Hearing Tr. at 5:8-6:3; 14:10-19.

the CDRs should permit Plaintiffs to identify specific calls that TMUS routed through Inteliquent connections were either dropped, interfered with, and/or fake ring tones were present. As the FCC highlighted in the TMUS Consent Decree, noted in the SAC, and admitted by TMUS, billions of calls were affected by the actions of TMUS and its intermediaries like Inteliquent. (*See* ECF 94 ¶¶ 104, 114–115, 118.)

Again, TMUS's statement at the recent Telephonic Status Conference that "we're nearing the end of fact discovery" was inaccurate and uninformed. (Jan. 9, 2023 Hearing Tr. at 10:24-25.) Substantial discovery work remains in this action.

### III.    LAW AND ARGUMENT

On multiple occasions, Plaintiffs made proposals to Defendants for a consent pretrial master to assist the parties with the recurring disagreements over the scope of discovery, the objections lodged by each side in attempting to either narrow or broaden discovery, and related matters. (*See* Jan. 9, 2023 Hearing Tr. at 11:25-12:21.) Each time, TMUS rejected the proposal. In fact, Plaintiffs encouraged Magistrate Judge Gilbert to consider a special master in their Motion for Five-Day Deadline to Respond to Meet and Confer Requests (ECF 320) because it was taking an inordinate number of weeks to merely schedule a discovery meet and confer conference between the parties. Magistrate Judge Gilbert denied the five-day deadline (without needing a response) but did not express any opinion on the appointment of a special master, presumably because a formal motion had not been made and because "District judges bear primary responsibility for the work of their courts." (Fed. R. Civ. P. 53(a)(1) advisory committee's note to 2003 amendment.) The time has come for a formal motion, the District Judge having raised the issue sua sponte, and both the law and facts support the appointment of a pretrial master to manage discovery.

### A. A District Judge May Appoint A Pretrial Master Where the Need is Clear and Matters Cannot Be Effectively And Timely Addressed.

"Federal Rule of Civil Procedure 53 authorizes a district court to appoint a master to 'address pretrial and post-trial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district.'" *E.E.O.C. v. Aaron Rents, Inc.*, No. 3:08-CV-683 MJR-DGW, 2009 WL 4068008, at *6 (S.D. Ill. Nov. 24, 2009) (*quoting* Fed. R. Civ. P. 53(a)(1)(C)).

> The rule, which previously required exceptional circumstances for appointment of a master, was significantly revised in 2003, to recognize the "changing practices" in using special masters, and to "confirm the authority to appoint-and to regulate the use of-pretrial masters." Fed R. Civ. P. 53 advisory committee's notes. As relevant here, the committee reported that "courts have gained experience with masters appointed to perform a variety of pretrial and post-trial functions." *Id.* *See also Cordoza v. Pacific States Steel Corp.*, 320 F.3d 989, 995 (9th Cir. 2003) (special masters may "perform a broad range of judicial functions," including supervising discovery).

*Id*. "A pretrial master should be appointed only when the need is clear." Fed. R. Civ. P. 53(a)(1) "Pretrial Masters" advisory committee's note to 2003 amendment. "Beyond the provisions of [Fed. R. Civ. P. 53] for appointing and making references to Masters, a federal district court has the inherent power to supply itself with this instrument for the administration of justice when deemed by it essential." *H.B. by Bartolini v. Abbott Labs., Inc.*, Case No. 15-CV-702-NJR-SCW, 2017 WL 2868424, at *1 n.1 (S.D. Ill. July 5, 2017).

This District as well as other courts have routinely embraced the efficiencies achievable with the use of special masters. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18-cv-864, 2018 WL 6048262, at *5 (N.D. Ill. Nov. 19, 2018) ("If these parties continue to argue at length and in detail about search terms, the Court will appoint a special master to work with the parties in this area, resolve disputes, and make recommendations to the Court."); *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637, ECF 491 (N.D. Ill. Oct. 2, 2017) (appointing a special master in complex

class action); *ASIS Internet Servs. v. Active Response Grp.*, No. 07-cv-6211, 2008 WL 2129417, at *5–6 (N.D. Cal. May 20, 2008) (finding "[a] discovery master is necessary to avoid wasting judicial resources and preventing a timely resolution of this case."); *Perez v. Sw. Fuel Mgmt., Inc.*, Case No. CV 16-4547 FMO (AGRx), 2017 WL 10574066, at *1-2 (C.D. Cal. Feb. 13, 2017) (appointing special master where discovery disputes are predicated on defendants' refusal to provide discovery, alleged spoliation of evidence, and assertion that numerous additional discovery disputes would occur); *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 112 (D. N.J. 2006) (The "extraordinary drain on the Court's resources" stemming from the "extensive and unprecedented amount of judicial time spent on managing and adjudicating [a] matter" necessitated the use of a Special Master to monitor discovery compliance); and 9C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 2602.1 (Apr. 2022 Update).

  **B.** **A Pretrial Master Is Needed In This Action Because Its Complexities And The Level Of Disagreement Between The Parties Result In A Clear Need For Enhanced Oversight And Dispute Resolution.**

In the 15 months during which documents were produced by Defendants, there have been 12 substantive discovery motions (four which remain pending), seven extensions of the amendment of pleadings and joinder of additional parties, and nine motions to seal documents. The motions to seal are particularly onerous on Plaintiffs (and the Court) since anytime a discovery dispute involves a produced document, Defendants have ensured that Plaintiffs will have to file them in secret because essentially all Defendants' documents are "Confidential."[7] Plaintiffs have

---

[7] Plaintiffs note that their original concern was that Defendants would over-designate using the "Attorney's Eyes Only" label. (*See* ECF 149, Sept. 8, 2021.) Defendants have achieved the same result, to complicate filings and maintain secrecy, through its blanket designation of all documents as "Confidential." Of course, Defendants' retort will be that Plaintiffs have yet to challenge any document, but such challenges would necessitate even more motion practice. And when Plaintiffs did request that the Court decide whether sealed documents should be sealed (ECFs 278, 303), Defendants objected arguing that a different remedy should be pursued. (*See* ECF 309, 311.)

10

identified no less than 12 possible future discovery disputes that may require judicial involvement and resolution. And these discovery motions have all been before the parties have sought to commence substantive deposition practice, since document and written discovery remains too incomplete for commencement of deposition discovery to be efficient.

Because of the protracted discovery to date, mound of brewing discovery disputes on the horizon, the Court's understandably overburdened docket, and the complexity of the technical evidence involved in this case, it is clear that substantial efficiencies could be gained, and costs could be saved if there were a pretrial master to "ride herd" on discovery. (ECF 320-2, Sept. 15, 2021 Hearing Tr. at 10:12-13; *see also Cary v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 19 C 3014, 2021 WL 678872, at * 4 (N.D. Ill. Feb. 22, 2021) (noting in discovery order that a defendant's refusal to engage in certain meet and confer discussions was likely driving up the plaintiff's cost of prosecuting the case as illustrated by the motions practice and long letters counsel wrote to each other for months before the plaintiff's motion was filed).)

TMUS argued at the recent Status Conference that "we're coming to an end of fact discovery" and that "we don't think a special master is warranted because there is a lot of background" in the case. (Jan. 9, 2023 Hearing Tr. at 10:17-11:11.) In essence, TMUS asserts that the Court is better positioned to rule on disputes and that a special master would cause delay.

*Luppino v. Mercedes Benz USA, LLC*, No. 2:09-cv-5582, 2013 WL 5025229 (D. N.J. Sept. 11, 2013), is instructive and involved a putative class action with respect to allegedly defective wheels on Mercedes-Benz vehicles. In *Luppino*, the assigned Magistrate Judge ordered the parties to submit position letters to the District judge regarding the appointment of a special discovery master. The District judge noted that the matter had been "riddled with disputes." *Id.*, at *1. At the time, several prior discovery motions had already been decided and the parties' active disputes

11

related to defendants' designation of documents as "confidential," whether motions to seal were appropriate, and various other issues. *Id.*, at *1-2. The District Judge noted that discovery remained outstanding and that "[e]ven with the Court's involvement, the rigor of the parties' dispute has prevented the exchange of discovery . . . ". *Id.*, at *4. Defendants opposed the appointment and, *inter alia,* argued that plaintiffs had "not shown diligence," no discovery issues remained for a master to address, and there was no "clear need" for the appointment "because the Court is better positioned to rule on the contours of any discovery requests" and "the appointment of a special master would cause unnecessary delay." *Id.*, at *2. The District judge rejected defendants' arguments noting that discovery remained outstanding and/or would continue to be "hotly disputed." *Id.*, at *4. "It is apparent to the Court that without frequent and intense monitoring, this case will only further languish due to the parties' incessant disputes, to the detriment of all parties involved." *Id.*

The same outcome as in *Luppino* is warranted here. No prejudice or harm will result to any Defendant and as noted at the Status Conference Hearing, the cost of a special master will actually mitigate costs long term because there are so many discovery disputes. (*See* Jan. 9, 2023 Hearing Tr. at 12:2-4.)

## IV. CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that a Rule 53(a)(1)(C) pretrial Master be appointed to manage discovery under such terms and conditions as this Court deems appropriate.

Submitted on this 26th day of January, 2023.

/s/   David T.B. Audley
David T.B. Audley (Bar No. 6190602)
Mia D. D'Andrea (Bar No. 6307966)
**CHAPMAN AND CUTLER LLP**
111 West Monroe Street
Chicago, IL  60603-4080
Tel.  312-845-2971
Email:  audley@chapman.com
Email:  dandrea@chapman.com

Cathy A. Hinger (*pro hac vice*)
G. David Carter (*pro hac vice*)
Victoria A. Bruno (*pro hac vice*)
Kathleen O. Gallagher (*pro hac vice*)
Jeremy L. Baker (*pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
2001 K Street, NW, Suite 400 South
Washington, DC  20006
Tel.:  202-857-4489
Fax:  202-261-0029
Email:  cathy.hinger@wbd-us.com
Email:  david.carter@wbd-us.com
Email:  victoria.bruno@wbd-us.com
Email:  katie.gallagher@wbd-us.com
Email:  jeremy.baker@wbd-us.com

Kurt D. Weaver (*pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
555 Fayetteville Street, Suite 1100
Raleigh, NC  27601
Telephone:  919-755-8163
Email:  kurt.weaver@wbd-us.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 26th day of January, 2023, I served the foregoing **Memorandum of Law in Support of Plaintiffs' Motion for Appointment by the District Judge of a Pretrial Master for Discovery** via the ECF system on parties that have consented to the same in accordance with applicable Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Northern District of Illinois.


By: */s/ David T.B. Audley*
David T.B. Audley