UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRAIGVILLE TELEPHONE CO. d/b/a ADAMSWELLS; and CONSOLIDATED TELEPHONE COMPANY d/b/a CTC ) ) ) ) Plaintiffs, ) ) v. ) ) T-MOBILE USA, INC.; and ) INTELIQUENT, INC. ) ) Defendants. ) | Case No. 19-cv-07190<br><br>Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Inteliquent, Inc.'s ("Inteliquent") motion for judgment on the pleadings [282]. After two rounds of motions to dismiss, only one count remains against Inteliquent: the civil conspiracy claim. Inteliquent now argues that plaintiffs Craigville Telephone Co. d/b/a/ Adamswells ("Craigville") and Consolidated Telephone Co. d/b/a CTC ("CTC") failed to state a civil conspiracy claim under the applicable state law (which, according to Inteliquent, is either Minnesota or Indiana). For the following reasons, the Court grants Inteliquent's motion.

**Background**

The Court assumes familiarity with Judge Lee's prior opinions in this matter and the facts set forth in those orders. This case centers upon three telecommunications service providers which, together, execute phone calls to individuals living in rural areas. Defendant T-Mobile USA, Inc. ("T-Mobile") is a mobile carrier who accepts calls from customers and relies on intermediate providers, such as Inteliquent, to route these calls to local exchange carriers, like Craigville and CTC, who complete the call.

1

According to the complaint, T-Mobile and Inteliquent contracted to make Inteliquent the near-exclusive provider of "out-of-network" calls to rural communities. As part of this agreement, Inteliquent, operating out of Illinois, allegedly helped route calls, maintained data about these calls, and prepared call reports. Plaintiffs maintain that this agreement was a conspiracy, where defendants agreed to take cost-saving measures to execute these calls, resulting in call delivery failures and low-quality call service. To mask these problems, defendants (specifically T-Mobile) used fake ring tones to fool customers into believing their calls had been connected to the intended recipient, even though defendants had yet to complete the call. The use of these fake ring tones is prohibited by the FCC. *See* 47 C.F.R. § 64.2201(a). Throughout their complaint, plaintiffs provide some examples of customers, based in Minnesota, who faced call completion issues. And as Judge Lee identified in his November 16, 2020 order, Craigville (which operates out of Indiana) and CTC (which operates out of Minnesota) alleged that defendants' practices resulted in harm, including depletion of plaintiffs' customer service resources.[1]

In their amended complaint, plaintiffs brought eight counts against T-Mobile, Inteliquent and 100 Doe Defendants. These charges were premised on violations of the Communications Act of 1934, RICO, the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), tortious interference, and civil conspiracy. On November 16, 2020, Judge Lee issued an order on parties' first motions to dismiss. Judge Lee determined that plaintiffs' claims that T-Mobile unlawfully used false ring tones in violation of 47 U.S.C. § 201(b), failed to take corrective action to remedy call failures in violation of 47 U.S.C. § 201(b), and engaged in unjust discrimination by failing to remedy such failures in violation of 47 U.S.C. § 202(a) (collectively the "Communications Act

---

[1] The Court notes that this is not the only harm alleged in the Second Amended Complaint. At a subsequent hearing, Judge Lee found that plaintiffs' claim that "early ring tones caused callers to prematurely terminate their calls, thereby resulting in decrease[d] [] access fees to the plaintiffs" is "viable." (Dkt. 227, 28:21–25.) Therefore, contrary to Inteliquent's assertion that depletion of customer service resources is the only alleged harm, plaintiffs have also alleged harm in the form of lower access fees. Nonetheless, this harm would similarly be felt by plaintiffs where they operate (in Minnesota and Indiana).

claims") could proceed against T-Mobile. However, he dismissed the RICO, tortuous interference, and ICFA claims against T-Mobile without prejudice. Judge Lee then dismissed all claims against Inteliquent without prejudice except for plaintiffs' civil conspiracy claim against both T-Mobile and Inteliquent. Applying Illinois law, Judge Lee held that plaintiffs sufficiently alleged an agreement not to remedy call failures by maintaining that "Inteliquent assumed responsibility for terminating calls placed by T-Mobile subscribers, reviewed information about completion rates, and realized economic rewards" from T-Mobile's apparent refusal to fix call completion issues. (Dkt. 91 at 24–25.)

In response to Judge Lee's order, plaintiffs filed a second amended complaint. T-Mobile moved to dismiss the RICO, tortious interference, and ICFA counts, and Inteliquent moved to dismiss all counts except the civil conspiracy count, which it instead answered. Judge Lee subsequently dismissed, with prejudice, the RICO Counts, tortious interference count, and ICFA counts against T-Mobile and all counts (except civil conspiracy) against Inteliquent. After this decision, the following claims remain pending in the suit against named defendants: the Communications Act claims against T-Mobile and the civil conspiracy claim against T-Mobile and Inteliquent. As Magistrate Judge Gilbert recently noted, it is unclear whether the conspiracy claim against Inteliquent survives the dismissal of the other claims. This Order seeks to clarify this question.

**Legal Standard**

Rule 12(c) states: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The "only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same." *Federated Mutual Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). "To survive a motion for judgment on the pleadings, 'a complaint must state a claim to relief that is plausible on its

3

face.'" *Bishop v. Air Line Pilots Assoc., Int'l*, 900 F.3d 388, 397 (7th Cir. 2018) (citation omitted). When determining if a complaint states a plausible claim for relief, courts draw all facts and reasonable inferences in favor of the non-moving party. *See ADM Alliance Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 746 (7th Cir. 2017).

**Discussion**

Although it requires several analytical steps, Inteliquent's motion for judgment on the pleadings comes down to one central argument: plaintiffs did not allege a civil conspiracy claim under the applicable state law. As to which state law should apply, Inteliquent does not provide a conclusive answer; instead, Inteliquent contends that the applicable law should be Minnesota or Indiana and that Illinois law does not apply to the civil conspiracy claim. This Court is required to undertake choice of law analysis to determine if plaintiffs stated a civil conspiracy claim. For the following reasons, the Court finds that Illinois law does not apply to the civil conspiracy claim and that plaintiffs have failed to state a claim under the applicable state law (Minnesota or Indiana). As a result, the Court grants Inteliquent's motion.[2]

The Court first turns to whether the Communications Act of 1934 provides for a civil conspiracy claim. The Seventh Circuit has explained that "[n]ormally federal courts refrain from creating secondary liability that is not specified by statute." *Doe v. GTE Corp.*, 347 F.3d 655, 658–59 (7th Cir. 2003) (suggesting that liability may be implicitly established). Plaintiffs contend that 47

---

[2] The parties disagree as to whether Inteliquent's motion is procedurally proper. Plaintiffs contend that Inteliquent's motion is, in effect, a motion for reconsideration of Judge Lee's initial ruling on the civil conspiracy claim, and that it was improper for Inteliquent to bring such a motion. However, as Inteliquent makes clear, it is appropriate for Inteliquent to bring a 12(c) motion at this juncture. As mentioned above, Rule 12(c) motions are appropriate "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Here, Inteliquent filed this motion after filing its answer, which is appropriate under the rules. Furthermore, although plaintiffs argue that this Court should look at Inteliquent's choice-of-law argument with suspicion because it was not raised in either of the prior motions to dismiss, the federal rules do "not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion." *Ennega v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). Therefore, the Court declines to read Inteliquent's motion as a motion for reconsideration and reviews the motion pursuant to the legal standard described above.

U.S.C. § 206 provides for secondary liability by attributing liability to common carriers who "cause or permit to be done" any act made unlawful under the Act. Furthermore, plaintiffs argue that the Communications Act provides for agency liability, *see* 47 USC § 217 ("[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person."), and thus conspiracy liability. It is not apparent that either provision provides for secondary liability, but even if they did, it is far less clear how they provide a basis for civil conspiracy, and what the elements of such a claim would be. Therefore, the Court follows Seventh Circuit guidance and declines to read conspiracy liability into the Communications Act.

Because plaintiffs have not pointed to federal law as a basis for their civil conspiracy claim, the question remains whether plaintiffs have stated a claim for relief under state law. When, as here, a federal court assesses a state law claim using supplemental jurisdiction, it "appl[ies] the forum state's choice of law rules to select the applicable state substantive law." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). Therefore, in this case, Illinois choice of law rules apply. Illinois "applies forum law unless an actual conflict with another state's law is shown." *Gunn v. Continental Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020). Because Inteliquent moved for this Court to make a choice-of-law determination, Inteliquent "bears the burden of demonstrating a conflict, *i.e.*, that there exists a difference in the law that will make a difference in the outcome." *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905, 381 Ill. Dec. 493, 496 (2014).[3]

---

[3] As plaintiffs point out, Inteliquent's initial briefing appears to have skipped this step, and instead jumped directly to the next one: which jurisdiction has a more significant relationship to the underlying occurrence and parties. However, as Inteliquent notes in its reply, the motion itself is premised on the relevant conflict. The Court thus considers the arguments Inteliquent made in its opening brief, and reply brief, when evaluating whether Inteliquent demonstrated an actual conflict of laws.

5

This Court finds that Inteliquent has demonstrated a conflict of law between Illinois law and Minnesota or Indiana law. Plaintiffs argue that there is no conflict because each state defines civil conspiracy as a combination of persons to accomplish an unlawful purpose or a lawful purpose by unlawful means. *See Dunbar v. Wells Fargo Bank, N.A.*, 853 F. Supp. 2d 839, 848 (D. Minn. 2012); *K.M.K. v. A.K.*, 908 N.E.2d 658, 663 (Ind. Ct. App. 2009); *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258, 241 Ill. Dec. 787, 803 (1999). Inteliquent maintains, however, that each jurisdiction has different requirements for what is needed to establish a civil conspiracy claim.

The elements for civil conspiracy claims in Illinois were discussed in Judge Lee's November 26, 2020 order.[4] Illinois courts broadly construe which underlying acts can support a conspiracy claim, such that there need not be an alleged underlying tortious act. *See, e.g., Freedom Mortg. Corp. v. Burnham Mortg. Inc.*, 720 F. Supp. 2d 978, 1000 (N.D. Ill. 2010) (Gettleman, J.); *Fiala v. Bickford Sr. Living Gp., LLC*, 43 N.E.3d 1234, 1250, 398 Ill. Dec. 324, 340 (2d Dist. 2015) (establishing that the elements of civil conspiracy in Illinois are "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or *unlawful* act") (emphasis added).

On the other hand, as Inteliquent argues, both Indiana and Minnesota appear to take a more restrictive view on the conduct that can support a civil conspiracy claim. In Indiana, a civil conspiracy claim "must be alleged with an underlying tort." *Birge v. Town of Linden*, 57 N.E.3d 839, 846 (Ind. App. Ct. 2016); *Best Chair Inc. v. Factory Direct Wholesale, LLC*, 121 F. Supp. 3d 838, 839 (S.D. Ind. 2015) (discussing how civil conspiracy is "an alternative way of asserting concerted action in the commission of a tort"). As plaintiffs point out, two opinions have suggested that it is possible

---

[4] Because the parties did not argue that another state law should apply in their initial motion to dismiss briefing, it was proper to apply forum law (Illinois law) when considering whether the civil conspiracy claim should proceed. *See, e.g., ForteCEO Servs., Inc. v. Terra Contracting, LLC*, No. 11 CV 5179, 2014 WL 4376299, at *3 (N.D. Ill. Sept. 4, 2014) (Gottschall, J.).

that one could "successfully allege a civil conspiracy" upon a legal theory other than tort, *K.M.K.*, 908 N.E.2d at 664 n.4; *see also Carter v. State Farm Fire and Cas. Co.*, 850 F. Supp. 2d 946, 952 (S.D. Ind. 2012) (discussing how defendants did not point to authority requiring a tort for a civil conspiracy claim). Nonetheless, plaintiffs have not provided any example, nor has the Court seen an example, affirmatively supporting a broader theory of liability. Instead, the cases seem to cut to the chase: "a claim of conspiracy must be considered together with an underlying alleged tort." *Holland v. Ketcham*, 181 N.E.3d 1030, 1039 (Ind. Ct. App. 2021) (internal citation omitted).

Minnesota also appears to limit civil conspiracy liability, although not as much as Indiana. Defendants argue that Minnesota requires that a conspiracy claim rest on a tort alleged against all defendants. Although defendants point to some district court case law suggesting that the tort must be alleged against all defendants, *see Strategic Energy Concepts, LLC v. Otaka Energy, LLC*, Civ. No. 16-463 (MJD/BRT), 2016 WL 7627040, at *18 (D. Minn. Nov. 18, 2016) ("Because civil conspiracy is a vehicle for vicarious liability, rather than an independent cause of action, there must be an underlying intentional tort for which all Defendants might be found vicariously liable."), the Court did not notice this requirement when it reviewed state court cases. Nonetheless, Minnesota, like Indiana, appears to require that a civil conspiracy claim rest on a narrow set of underlying claims: specifically a tort or a criminal act. *D.A.B. v. Brown*, 570 N.W.2d 168, 172 (Minn. Ct. App. 1997) ("[T]he conspiracy count fails because it is not supported by an underlying tort"); *SICK, Inc. v. Motion Control Corp.*, No. Civ. 01-1496 JRTFLN, 2003 WL 21448864, at *10 (D. Minn. June 19, 2003) ("[C]ourts have held that civil conspiracy must be based upon a criminal act or an underlying intentional tort.").[5]

---

[5] The Court notes one recent case it discovered, where the Minnesota appellate court simply stated "a civil conspiracy claim must accompany a claim alleging a substantive wrong." *Hansen v. Teleplus Consulting, Inc.*, A20-0629, 2021 WL 1604006, at *6 (Minn. Ct. App. Apr. 26, 2021). But this civil conspiracy claim was also dismissed, and it is unclear how broadly this Court should interpret the term "substantive wrong." Given the

7

Therefore, Minnesota and Indiana appear to take a more restrictive view on what is required to allege a civil conspiracy claim than Illinois. But to determine whether this is an outcome determinative conflict depends on how the jurisdictions would review the alleged Communications Act claims. The Court has not found a case in Illinois, Indiana, or Minnesota where courts considered whether a Communications Act violation is a tort, nor have parties pointed to any such cases. Courts in other jurisdictions are split as to whether Communications Act claims constitute independent tort claims. *Compare Aventure Comms. Tech., LLC v. Sprint Comms. Co. L.P.*, 224 F. Supp. 3d 706, 782 (S.D. Iowa 2015) (suggesting Communications Act claims are independent tort claims) *with Walsh v. America's Tele-Network Corp.*, 195 F. Supp. 2d 840, 851 (E.D. Tex. 2002) (finding that a Communications Act violation could not support a civil conspiracy claim because it was not a tort) *and Sancom Inc. v. Qwest Comms. Corp.*, 643 F. Supp. 2d 1117, 1132 (D. S.D. 2009) (dismissing a civil conspiracy claim, even though a Communications Act claim remained pending, because "no underlying tort claim" remained).

The Court finds that the alleged Communications Act violations do not constitute tortious conduct. Here, Judge Lee has dismissed the claims plainly sounding in tort. The remaining Communications Act claims are premised on the use of fake ring tones and failure to take corrective action to fix call completion problems, in violation of 47 U.S.C. § 201(b) and § 202(a). But the Court does not see, nor have plaintiffs shown, how these allegations constitute tortious conduct. Plaintiffs conclusorily argue that this conduct amounts to fraud, but the Court views these allegations as simply unlawful practices, outlawed by statute and FCC rules. Similarly, although these may be prohibited practices, they are not criminal acts. The Court finds that Indiana and Minnesota courts would conclude that the underlying Communications Act claims would be insufficient to support a civil conspiracy claim, whereas Illinois courts would likely sustain a civil

---

other cases the Court has reviewed, the Court finds that Minnesota law restricts civil conspiracy claims to cases with underlying torts or criminal acts.

conspiracy claim based on these allegations. Therefore, Inteliquent has established that an outcome determinative difference exists between the jurisdictions.

Because this case presents an outcome determinative conflict, the Court must determine which state law applies. As both parties admit, Illinois applies the "most significant relationship test," where the local law of the state of injury governs unless Illinois has a more significant relationship to the occurrence and parties. *See Foodcomm Int'l v. Barry*, 463 F. Supp. 2d 818, 829 (N.D. Ill. 2006) (Der-Yeghiayan, J.). Which state has the most significant relationship depends on "(1) where the injury occurred; (2) where the injury causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered." *Id.*

The Court does not find that Illinois has a more significant relationship to the occurrences and parties in this case. First, the alleged injury resulting from defendants' conduct (including, as Judge Lee identified, resources expended to account for increased calls to customer service and decreased access fees) is in Minnesota or Indiana because that is where plaintiffs are located. Indeed, plaintiffs claim other entities have been harmed, and that such harm (and where it occurred) will be revealed over discovery. But at this stage, the Court is bound to the complaint. And based upon the Court's reading of the complaint, the injury occurred in Minnesota and Indiana.[6]

Plaintiffs argue that the place where the alleged conduct occurred should be given particular weight in this analysis. *See* The Restatement (Second) of Conflict of Laws § 145 cmt. e ("When the injury occurred in two or more states . . . the place where the defendant's conduct occurred will usually be given particular weight."). But even if the Court gives such weight to the place where the injury causing conduct occurred, that does not mean Illinois has the most significant relationship to this dispute. As Judge Lee noted when evaluating the ICFA claim, the complaint lacks many

---

[6] Plaintiffs vaguely reference alleged harm in Wisconsin, as they allege that Wisconsin local exchange carriers have filed complaints with the FCC. But the scope of that injury is unclear and those LECs are not named plaintiffs. And further still, no party argues Wisconsin law applies.

9

Illinois-centric allegations. Indeed, Inteliquent allegedly operates out of Illinois, and several allegations surrounding the conspiracy are connected to Illinois. But T-Mobile, the other party to the conspiracy, is not domiciled in Illinois, and instead operates out of Washington. The parties are thus domiciled across several states. The Court also takes this to mean that the actions behind the alleged conspiracy must have taken place across several states. Lastly, the complaint indicates that calls were routed through Illinois, which perhaps weighs in favor of viewing Illinois as a center point for the relationship between the parties. Therefore, the Court sees that Illinois has some interest in this suit. But upon weighing the four factors, it does not conclude that Illinois has the *most* significant relationship to the dispute. *C.f. Foodcomm*, 463 F. Supp. 2d at 829–830 (applying Illinois law when the conspiracy allegations occurred in Illinois, three defendants were domiciled in Illinois, and the relationship between plaintiff and defendant was centered in Illinois). Instead, the state law of the place of injury – Minnesota or Indiana – governs.

Because Minnesota or Indiana law governs, the Court assesses the conspiracy claim in light of the state law of each jurisdiction. And for the reasons explained above, the Court holds that neither jurisdiction would maintain a civil conspiracy claim based upon the alleged Communications Act violations. Therefore, the Court finds that plaintiffs have failed to state a civil conspiracy claim under the appropriate state law and dismisses the civil conspiracy claim against Inteliquent.[7]

---

[7] The Court notes plaintiffs' frustration that Illinois law applied to *Inteliquent's* civil conspiracy claim in *Inteliquent, Inc. v. Free Conferencing Corp.*, 503 F. Supp. 3d 608 (N.D. Ill. 2020). But choice of law determinations are case specific and will not always be applied uniformly across cases, even if the same party is involved.

**Conclusion**

For the reasons discussed above, the Court grants Inteliquent's motion for judgment on the pleadings [282]. Given the stage of current proceedings, the Court denies plaintiffs' request in its response brief to amend their allegations to address the choice of law argument. The civil conspiracy claim against Inteliquent is dismissed and no pending claims remain against Inteliquent.

**IT IS SO ORDERED.**

Date: 2/9/2023

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge