IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRAIGVILLE TELEPHONE CO. d/b/a ADAMSWELLS; and CONSOLIDATED TELEPHONE COMPANY d/b/a CTC | ) ) ) ) | |
| Plaintiffs, | ) ) ) | No. 1:19-cv-07190 |
| vs. | ) ) | Judge Sharon Johnson Coleman Magistrate Judge Jeffrey T. Gilbert |
| T-MOBILE USA, INC. | ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' AMENDED SECOND MOTION TO COMPEL PRODUCTION OF CERTAIN DOCUMENTS AGAINST T-MOBILE AND MOTION TO COMPEL SUPPLEMENTAL RESPONSE TO ONE RELATED INTERROGATORY[1]**

Craigville Telephone Co. d/b/a AdamsWells and Consolidated Telephone Company d/b/a CTC, on behalf of themselves and a class of similarly-situated companies (collectively, "Plaintiffs"), respectfully move the Court for an Order Compelling T-Mobile USA, Inc. ("TMUS") to respond to the following of Plaintiffs' Second Requests for Production of Documents ("2nd RFPs") and to supplement one related Interrogatory:

(1) Plaintiffs' Second Set of RFPs Nos. 1-2 which seek a limited scope of email and Skype communications regarding TMUS's expansion of its use of fake ring tones; and

---

[1] Plaintiffs amend this Motion to adapt it to the changed circumstances resulting from the Court's dismissal of Count VIII against Inteliquent (ECF 354) after this Motion was filed. Plaintiffs incorporate here by reference the same Exhibits attached to the original version of this Motion and Memorandum and link this amendment to the same related sealing motion. Plaintiffs note, however, that Count VIII for conspiracy remains against TMUS. While TMUS filed a Motion to Dismiss Count VIII on February 24, 2023, Plaintiffs are in the process of attempting to negotiate a briefing schedule and intend to oppose that motion. As will be shown by Plaintiffs opposition, when filed, the issues with respect to analysis of the conspiracy claim are different as to TMUS. Therefore, the Court should not presume the conspiracy claim will be dismissed as to TMUS. But, as shown in the attached Memorandum, even if it were, all the discovery at issue in this Motion is relevant to other issues, claims, or defenses.

>   (2) Plaintiffs' Second Set of RFPs Nos. 25, 26, & 28, and Interrogatory No. 18, which seek certain documents and information about communications between TMUS and Inteliquent, Inc. ("Inteliquent") concerning the service credits TMUS was entitled to request from Inteliquent if Inteliquent failed to satisfy contractually required service quality levels (*see* ECF 94-13 § 12).

As set forth in the accompanying Memorandum, the information sought by these requests is relevant, narrowly tailored, and not any more burdensome on TMUS than searching for and producing other categories of information it has already produced.

### Local Rule 37.2 Certification

This Motion complies with Local Rule 37.2. On November 4, 2022, Plaintiffs sent TMUS a deficiency letter concerning TMUS's responses to Plaintiffs' Second Set of Request for Production of Documents, as well as its Interrogatory responses. (Ex. 1.) Plaintiffs and TMUS attended a video meet and confer on December 1, 2022 to discuss the matters raised by Plaintiffs' letter, which included discussion about the 2nd RFPs that are the subject of this Motion. On December 5, 2022, Plaintiffs sent TMUS an email communication outlining some record cites that Plaintiffs raised during the meet and confer with respect to 2nd RFPs 25-28. (Ex. 2.) On December 8, 2022, TMUS wrote Plaintiffs a letter following up on the December 1, 2022 meet and confer, confirming that it would not respond to 2nd RFPs 1-2 at all. (Ex. 3.) With respect to 2nd RFPs 25-28, TMUS reiterated numerous objections, but stated it would investigate the points raised by Plaintiffs' December 5, 2022 email discussing TMUS's records custodian deponent's testimony that Plaintiffs asserted identified custodians and sources for the information sought by these 2nd RFPs. (*Id.*) On December 9, 2022, Plaintiffs responded with another letter confirming that the parties were at an impasse as to 2nd RFPs 1-2, and responding to the other points in TMUS's

December 8th letter. (Ex. 4.) Separately, on December 13, 2022, undersigned counsel participated in a video meet and confer with counsel for TMUS concerning numerous interrogatory deficiencies, including TMUS's response to Interrogatory No. 18 concerning service credit communications. TMUS advised it was still investigating based on the issues raised by Plaintiffs' December 5, 2022 email. On December 28, 2022, TMUS's counsel sent undersigned counsel an email advising that it would not amend its response to Interrogatory No. 18. (Ex. 5.) On January 9, 2023, having received no amended responses or other follow up from TMUS in response to Plaintiffs' December 9, 2022 letter, Plaintiffs emailed TMUS and asked for responses on the outstanding issues identified in their December 9, 2022 letter. (Ex. 6.) TMUS responded on January 10, 2022 confirming that the parties are at an impasse on the 2nd RFPs that are the subject of this Motion. (*Id.*)

In Magistrate Judge Gilbert's September 15, 2021 Order (ECF No. 158), the Court expressed a preference for joint motions to resolve discovery disputes if possible, and noted that if a party wanted to use a different procedure for discovery motions it should inform the Court. On December 9, 2022, TMUS refused to participate in the joint status report format with respect to Plaintiffs' Motion to Supplement their Renewed Motion to Compel because Plaintiffs' portion of the Joint Status Report Plaintiffs allegedly contained statements and rhetoric TMUS did not agree with. (*See* ECF 323 at LR 37.2 Certification.) Given that Plaintiffs' portion of a Joint Status Report with respect to this motion to compel would rest almost exclusively on statements and arguments with which TMUS does not agree, Plaintiffs assert that preparing a draft joint status report for this contentious motion would be futile.

WHEREFORE, Plaintiffs respectfully request that the Court grant the relief sought by their Amended Second Motion to Compel Production of Certain Documents Against TMUS and Motion

3

to Compel Supplemental Response to One Related Interrogatory.

Submitted on this 27th day of February, 2023.

       */s/ David T.B. Audley*
       David T.B. Audley (Bar No. 6190602)
       Mia D. D'Andrea (Bar No. 6307966)
       **CHAPMAN AND CUTLER LLP**
       111 West Monroe Street
       Chicago, IL 60603-4080
       Tel. 312-845-2971
       Email: audley@chapman.com
       Email: dandrea@chapman.com

       Cathy A. Hinger (*pro hac vice*)
       G. David Carter (*pro hac vice*)
       Victoria A. Bruno (*pro hac vice*)
       Kathleen O. Gallagher (*pro hac vice*)
       Jeremy L. Baker (*pro hac vice*)
       **WOMBLE BOND DICKINSON (US) LLP**
       2001 K Street, NW, Suite 400 South
       Washington, DC 20006
       Tel.: 202-857-4489
       Fax: 202-261-0029
       Email: cathy.hinger@wbd-us.com
       Email: david.carter@wbd-us.com
       Email: victoria.bruno@wbd-us.com
       Email: katie.gallagher@wbd-us.com
       Email: jeremy.baker@wbd-us.com

       Kurt D. Weaver (*pro hac vice*)
       **WOMBLE BOND DICKINSON (US) LLP**
       555 Fayetteville Street, Suite 1100
       Raleigh, NC 27601
       Telephone: 919-755-8163
       Email: kurt.weaver@wbd-us.com

       *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 27th day of February, 2023, I served the foregoing **Plaintiffs' Amended Second Motion to Compel Production of Certain Documents Against T-Mobile and Motion to Compel Supplemental Response to One Related Interrogatory** via the ECF system on parties that have consented to the same in accordance with applicable Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Northern District of Illinois.

By: /s/ David T.B. Audley

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRAIGVILLE TELEPHONE CO. d/b/a ADAMSWELLS; and CONSOLIDATED TELEPHONE COMPANY d/b/a CTC | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:19-cv-07190 |
| vs. | ) ) ) | Judge Sharon Johnson Coleman Magistrate Judge Jeffrey T. Gilbert |
| T-MOBILE USA, INC.; | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' AMENDED SECOND MOTION TO COMPEL PRODUCTION OF CERTAIN DOCUMENTS AGAINST T-MOBILE AND MOTION TO COMPEL SUPPLEMENTAL RESPONSE TO ONE RELATED INTERROGATORY**

Craigville Telephone Co., d/b/a AdamsWells, and Consolidated Telephone Company d/b/a CTC, on behalf of themselves and a class of similarly-situated companies (collectively, "Plaintiffs"), submit this Memorandum of Law in support of their Amended Second Motion to Compel Production of Certain Documents Against T-Mobile ("Motion").

## ARGUMENT

**I.  The Court Should Compel T-Mobile To Respond To Plaintiffs' 2nd RFPs 1-2.**

Plaintiffs' 2nd RFP No. 1 states:

For the period of 7/15/2015 to 10/1/2015, emails, including attachments, that:

a. were sent to or from, or otherwise received by any of the following individuals: Adrian Lazar Adler, Taruna Ranjan, Dinko Dinkov, Kathleen Foster, Pranav Bhatia, Rajib Bashir, Anthony Impala, Keith Foong, Daniel Samborski, Sukhi Nehra, Christoper Brady, Sarah Epps, Toby Manuele, Mark Natale, Cesara Natale, or Nelson Ghogomu; *and*

b.include any of the Ringtone Search Terms set forth in Exhibit A.²

(Ex. 9 at No.1 (emphasis added).) Second RFP No. 2 is the same except it seeks Skype instant messaging communications. (*See id*. at No. 2.)

The purpose of these RFPs is to gather communications by or among the persons that knew about T-Mobile's ("TMUS") 2015 expansion of the fake ring tones during the time when TMUS was expanding them. Identifying the complete universe of witnesses who knew about the expansion of the fake ring tones and what they said or were told about it is relevant and proportional for several reasons:

- First, TMUS has identified the employees who knew about, had notice of, or received a copy of the 2013 Rural Call Completion Order ("2013 RCC Order") that banned the use of fake ring tones. Responses to these RFPs will allow Plaintiffs to cross reference the employees who knew about the 2013 RCC Order against the universe of employees who knew TMUS was expanding its use of fake ring tones, establishing evidence of knowledge and intent that is relevant to rebut the anticipated testimony of Kathleen Foster, as to Count VIII for conspiracy, and punitive damages. The evidence is also relevant to respond to TMUS affirmative defenses including unjust enrichment of the Plaintiffs, that injuries were caused by third parties, and that "all conduct of TMUS alleged in the Complaint was conducted in good faith." (ECF 102 at 176.)

---

² The Ringtone Search Terms are a list of search terms Plaintiffs created after receiving documents from TMUS in response to Plaintiffs' First RFPs, and after receiving documents from third party Ericsson who participated in TMUS's enabling and disabling of the fake ring tones. Plaintiffs learned from these documents that there were many acronyms, references to signaling codes, and terms that TMUS and Ericsson used to refer to fake ring tones that were not used by TMUS in the search terms it created and used to respond to Plaintiffs' First RFPs. (Ex. 7, TMUS custodian and search term list.) Plaintiffs attached the Ring Tone Search Terms to their 2nd RFPs as Exhibit A and requested application of these search terms to numerous data sources throughout their 2nd RFPs. (Ex. 8, Exhibit A Ringtone Search Terms.) The parties successfully negotiated a few minor revisions to these search terms, and TMUS has agreed to apply these search terms with respect to other RFPs. (*See* Ex. 4, 12/9/22 Hinger Letter.)

- Second, TMUS has produced minimal communications concerning its 2015 expansion of the fake ring tones. The who, what, where, when, why, and how of TMUS's expansion of the fake ring tones is not yet clear. (*See* ECF 325 at 6-7 ("Ericsson Order").) Emails TMUS has produced on this subject identify the custodians in these RFPs as people who were told about TMUS's use and expansion of the fake ring tones. (*See*, *e.g.,* Ex. 10, TMUS 00003255-57; 3490-93.) Thus, there is a very high probability that any other communications these people had with anyone referencing any of the Ring Tone Search Terms at the time the expansion was underway will complete the story of how the fake ring tone expansion was accomplished. Discovery of such communications is necessary to respond to TMUS's affirmative defense that it acted in good faith. (*See* ECF 102 at 176.) Responses to these RFPs will also confirm whether there were third parties (such as Ericsson, software vendors, consultants, or intermediate providers) with whom any of these employees communicated about the fake ring tone expansion, which is relevant to identification of Doe defendants and conspiracy.
- Third, these RFPs seek information the Court's Ericsson Order indicated it expects Plaintiffs to obtain from TMUS. (*See* ECF 325 at 9-10.) In response to an interrogatory asking TMUS to explain each action TMUS and Ericsson took to cause the fake ring tone expansion, TMUS identified no actions taken by Ericsson, even though documents produced by the FCC under FOIA show TMUS told the FCC that Ericsson implemented the fake ring tones at TMUS's direction, and other documents produced in discovery show TMUS issued a work order to Ericsson and worked with Ericsson on implementing a revision to the initial LRBT parameter in 2014. (*See* ECF 94 ¶ 282 and ECF 94-19 ¶ 7; *but see* Ex. 11, TMUS Resp. to Pl. Interrog. No. 4.) TMUS has also produced evidence that

3

███████████████████████████████████

█████████.³  (Ex. 12, TMUS00021810; Ex. 13, Blanchard Dep. 14:11 – 16:22.) Plaintiffs' subpoena to Ericsson sought similar information from it, but Ericsson contended much of its ESI from the relevant time was no longer available and the Court denied Plaintiffs' motion to compel Ericsson to conduct further electronic searches, explaining though that the Court expects such information to be produced by TMUS. (*See* ECF 325 at 9.) Therefore, responses from TMUS to these RFPs have a high probability of confirming whether and the extent to which Ericsson had a hand in TMUS's expansion of the fake ring tones.⁴

TMUS took an everything and the kitchen sink approach to its objections to 2nd RFPs 1-2, refusing to produce any responsive documents based on broad brush relevance and burden objections.⁵ (*See* Ex. 9 at No. 1 & 2 Objections.) None of TMUS's objections have any merit.

First, as shown, the information sought is highly relevant, and TMUS has already produced some documents on the subject of its expansion of the fake ring tones in 2015.

Second, the short three-month date range is aimed at capturing communications in the immediate vicinity of TMUS's expansion of its use of the fake ring tones. Three months of

---

³ "LRBT=1" is a reference to fake ring tone signaling.

⁴ Plaintiffs need not add Ericsson as a defendant for evidence of Ericsson's agreement to help TMUS engage in an unlawful practice to be relevant to the conspiracy claim against TMUS, identify Doe Defendants, or respond to TMUS's "good faith" defense. It would not be unusual in a conspiracy for the defendant to have agreements with multiple co-conspirators that a trier of fact may consider, even if all co-conspirators are not parties.

⁵ No boilerplate objections excuse production. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7ᵗʰ Cir. 2015) (affirming overruling of boilerplate "relevance" and "vague and ambiguous" objections). "Court after court has rejected these unadorned boilerplate 'objections' as tantamount to no objections at all." *Extended Care Clinical v. Scottsdale Ins.*, No. 20-C-7132, 2021 WL 2894163, at *2 (N.D. Ill. July 8, 2021) (collecting cases); *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, No. 15-C-10340, 2017 WL 5890923, at * 2 (N.D. Ill. Nov. 29, 2017) (internal citations omitted).

4

communications among key witnesses limited to precisely crafted search terms about the core illegal activity at issue in this case is not burdensome nor disproportional, especially since TMUS intends to put on a "good faith" defense at trial. TMUS has only identified two TMUS employees in its initial disclosures as witnesses it may rely on at trial, and one of them is Kathleen Foster. Ms. Foster's Declaration is attached to the Second Amended Complaint and embodies TMUS's strategy for its "good faith" defense, wherein she attested to the FCC, "That neither I nor anyone on my team became consciously aware of the RCC Order's early ringtone ban after it went into effect in 2014 was the result of a good-faith mistake." (ECF 94-19 ¶ 10.) The information sought is narrowly tailored to test this position.

TMUS has provided no information concerning the volume of material that the application of the Ring Tone Search Terms to three months of these custodians' emails and instant messages would yield to support its burden or proportionality objections, as it must. An "unduly burdensome" objection is ineffectual unless it "adequately demonstrate[s] the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly burdensome." *Rawat v. Navistar Int'l Corp.*, No. 08-C-4305, 2011 WL 3876957, at * 8 (N.D. Ill. Sept. 1, 2011) (internal citation and quotations omitted); *see also Baxter Int'l. Inc. v. AXA Versicherung*, 320 F.R.D. 158, 166 (N.D. Ill. 2017).

Third, these search terms are presumptively relevant and proportional, given that TMUS has negotiated them and has already applied them to other data sources. (*See supra* n.1.)

These RFPs are also particularly poignant because Kathleen Foster received a copy of the 2013 Rural Call Completion Order which banned fake ring tones and had notice of its contents, as did Dinko Dinkov. (Ex. 14, Alladi 1/7/23 Email with Attached Proposed Stipulation.) Determining whether there are any other employees with whom these custodians communicated

5

about the fake ring tone expansion, and who may also be among those that TMUS admits knew about the 2013 Rural Call Completion Order, would allow Plaintiffs to discover the breadth and scope of employees with knowledge of both the ban and the expansion, which is in turn relevant to the plausibility, sincerity, and credibility of TMUS's "good faith" defense.

Finally, the Court recently ruled that the "who, what, where, when, why, and how" of TMUS's implementation of the fake ring tones "falls within the scope of the complaint and is relevant and proportional to the needs of this case." (ECF 325 at 6-7.) Therefore, any relevance objections TMUS may assert are undermined by this prior ruling. The Court should compel TMUS to respond to Plaintiffs' 2nd RFPs 1 and 2.

**II. The Court Should Compel TMUS To Electronically Search For Documents Responsive To Plaintiffs' 2nd RFPs 25, 26 & 28, And Supplement Its Response To Interrogatory No. 18**.

Plaintiffs' 2nd RFPs 25-28 (*see* Ex. 9 at 25-28) and Interrogatory No. 18 (*see* Ex. 11 at No. 18) seek certain documents and information about communications between TMUS and Inteliquent, Inc. ("Inteliquent") concerning the service credits TMUS was entitled to request from Inteliquent if Inteliquent failed to satisfy contractually required service quality levels. (*See* ECF 94-13 § 12). Communications concerning service credits are directly relevant to Count II for Violation of Section 201(b) of the Communications Act of 1934 for failure to ensure delivery of calls, which is premised on TMUS's admission in the Consent Decree that it, "did not correct problems with its Intermediate Providers' delivery of calls to consumers in certain rural OCNs." (ECF 94-1 ¶ 17.) These communications are also relevant to TMUS's agreement to engage in and tolerate poor call routing practices by Inteliquent while TMUS's use of fake ring tones was in place to mask it with respect to Count VIII for conspiracy against TMUS. (*See* ECF 91 at 29 (finding a plausible inference to support Plaintiffs' conspiracy claim is that "Inteliquent's

6

extensive involvement in routing T-Mobile's calls is evidence that Defendants agreed not remedy call failures").

A. **Background Concerning Service Credits.**

The PSTN Services Attachment to TMUS's contract with Inteliquent includes a Service Level Agreement establishing quality of service requirements Inteliquent was obligated to meet, and a process by which TMUS was entitled to receive or request service credits from Inteliquent if it failed to comply with the contractual performance criteria. (*See* ECF 94-13 § 12.) This agreement included an annual review of the service levels TMUS and Inteliquent were required to conduct (*see id*. § 12(A)(ii)(2)), and a process for Inteliquent to award Service Credits to TMUS either because Inteliquent determined TMUS was entitled to a Service Credit, or because TMUS emailed Inteliquent a Service Credit Request to noc@inteliquent.com (*see id*. § 12(B)(ii)(2)(B)). The service level requirements included performance metrics for Network Effectiveness Ratio ("NER"), which "measures the ability of a network to deliver a call to the called terminal, with busy signals and other call failures due to user behavior counted as successful call delivery", and Answer Seizure Rate ("ASR"), which is "the ratio of successfully answered calls to total number of calls attempted on outbound calls, where busy signals and other rejections count as failures." (*Id*. at § 12(C)(iv) and (viii).) Whether Inteliquent's NER and ASR during the time of the fake ring tone scheme were satisfactory or not is a hotly contested issue in this case.[6]

TMUS has produced three invoices from September, October, and December 2017, (long after it disabled the fake ring tones in January 2017), reflecting ███████████

---

[6] For further discussion about the significance of NER, ASR, and the quality of Inteliquent's call routing performance in this litigation, see the under-seal versions of Plaintiffs' Memorandum in Support of Motion to Compel against Inteliquent, Plaintiffs' Reply thereto, and Plaintiffs' Response to Inteliquent's Surreply. (*See* ECF 287 § IV, ECF 290 § II(E)(2), ECF 301 § III(C).)

██████████  ████████████████████████████████████████████████████

████████████████████████████████████████████  TMUS's records custodian

identified ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████  (See Ex. 13,

Blanchard Dep. 84:14-87:7.)  She also indicated that ████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████  (Id. at 87:16-88:16.)

Plaintiffs advised TMUS that electronic searches of these communications were necessary to determine whether, ████████████████████████████████████████, TMUS was entitled to Service Credits that it waived each year during the fake ring tone period.  (Ex. 2, 12/5/22 Hinger Email.)  Plaintiffs also pointed out that TMUS has produced evidence showing that

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████  (See e.g. Ex. 16,

TMUS00006424; see also supra n.5.)

     **B.**    **The Court Should Compel TMUS To Complete Its Answer To Interrogatory No. 18.**

In response to the foregoing points, TMUS advised, with respect to Interrogatory No. 18 only, that it had, "consulted with the custodians and other data sources identified by" Plaintiffs' December 5, 2022 email discussing Ms. Blanchard's testimony and that it would not be amending its response to Interrogatory No. 18.  (Ex. 5, Alladi 12/28/22 Email.)  TMUS did not identify the particular custodians with whom it consulted, did not indicate whether it had actually run electronic

8

searches on these custodians for the term noc@inteliquent.com and other Service Credit related search terms, and did not provide a reason why those consultations justified its refusal to provide the information requested by Interrogatory No. 18. (*See id*.) Interrogatory No. 18 asks TMUS to state *whether* it ever requested Service Credits from Inteliquent, and if so, to identify the persons involved in those communications. TMUS is refusing to respond to that simple question in a response verified under oath. But its position is inconsistent with counsel Om Alladi informally telling Plaintiffs' counsel in their meet and confer that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*see* Ex. 2, 12/5/22 Hinger Email), which strongly suggests the response to Interrogatory No. 18, should be ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ TMUS has no good faith basis for refusing to provide a verified response to this question.

      **C.**     **The Court Should Compel TMUS To Conduct Electronic Searches For Service Credit Information Responsive To RFPs 25, 26 and 28.**

TMUS's December 8, 2022 letter asserts that Plaintiffs have not made a showing that information sought by these RFPs is relevant. (Ex. 3, 12/8/22 Alladi Letter at 3-4.)[7] TMUS's position ignores that it is TMUS, not Plaintiffs, who bears the burden. "Relevancy [ ] is broadly construed at the discovery stage of the litigation, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 303 (N.D. Ill. 1997). On motions to compel, "[o]nce the moving party has made a preliminary showing that the discovery it seeks is relevant to the case and proportional to the needs of the case, the party

---

[7] After this letter, TMUS provided no further explanation as to whether it conducted electronic searches of the ESI of the custodians Ms. Blanchard identified – TMUS only says ▇▇▇▇▇▇▇▇▇▇▇▇▇ (Ex. 17, Alladi 1/10/23 Email.)

9

opposing discovery has the burden of proving that the requested discovery should be disallowed." *The Sols. Team v. Oak St. Health, MSO, LLC*, No. 17-CV-1879, 2021 WL 3022324, at *3 (N.D. Ill. July 16, 2021).

These RFPs are unquestionably relevant. This Court ruled that Count VIII for conspiracy may proceed in part because the pleading plausibly alleges a theory that, "Inteliquent's extensive involvement in routing T-Mobile's calls is evidence that Defendants agreed not to remedy call failures." (ECF 91 at 25.) It also recognized a conspiracy claim may be premised upon inferences of mutual understanding. (*See id*. at 24.) These RFPs are on point with these findings, seeking to confirm whether TMUS turned a blind eye to poor call completion service Inteliquent provided to rural or high-cost codes while TMUS was using the fake ring tones, or whether it engaged in any Service Credit communications or annual service review discussion with Inteliquent, and if so what those communications show.

These requests are just as relevant to Count II, premised on failure to correct problems with Inteliquent's delivery of calls. If TMUS requested Service Credits due to Inteliquent failing to satisfy the contractual service requirements with respect to rural or high cost codes, then that would show TMUS knew and understood Inteliquent had poor call completion performance and failed to correct the known problems with Inteliquent's delivery of calls. But, if TMUS requested little or no service credits or waived them in the annual service review (if the annual service review happened at all), TMUS's failure to enforce its service level expectations would show TMUS tolerated sub-standard routing practices. Either way, the Service Credit communications are patently relevant to TMUS's admission to the FCC that it failed to correct rural call completion problems by its Intermediate Providers, which is the basis for Count II. Plaintiffs have amply

10

satisfied their burden to make a preliminary showing that the discovery it seeks is relevant to the case.

TMUS's relevance objection has no merit, and, as with 2nd RFPs 1-2, it also makes no specific showing as to how merely conducting electronic searches for the requested documents would be particularly burdensome. *See Rawat*, 2011 WL 3876957, at * 8.

The Court should therefore order TMUS to conduct electronic searches for documents responsive to 2nd RFPs 25, 26 and 28 on ESI of the custodians Ms. Blanchard identified pursuant to appropriate search terms.[8]  And, if the searches yield no responsive documents whatsoever, then TMUS should have no issues with providing a sworn, verified response to Interrogatory No. 18 confirming that it did nothing during the entire time it was using fake ring tones to encourage Inteliquent to improve its call routing practices by demanding Service Credits.

**III.   Conclusion.**

Wherefore, Plaintiffs respectfully request that the Court issue an Order ordering the following relief:

1. Compelling TMUS to respond to Plaintiffs' 2nd RFPs Nos. 1-2 by a date certain;

2. Compelling TMUS to conduct electronic searches for documents responsive to Plaintiffs' 2nd RFPs Nos. 25, 26, & 28; and

3. Compelling TMUS to supplement its response to Plaintiffs' Interrogatory No. 18 to state whether TMUS ever requested service credits from Inteliquent as a result of Inteliquent failing to perform in accordance with the MSA, and if TMUS did make such requests, to identify the persons to whom those requests were made.

---

[8] To avoid further delays, the Court should order TMUS to meet and confer with Plaintiffs about its proposed search terms prior to applying them as the Court recently Ordered with respect to other discovery. (*See* ECF 344 at 10.)

Submitted on this 27th day of February, 2023.

                                                  */s/ David T.B. Audley*
David T.B. Audley (Bar No. 6190602)
Mia D. D'Andrea (Bar No. 6307966)
**CHAPMAN AND CUTLER LLP**
111 West Monroe Street
Chicago, IL 60603-4080
Tel. 312-845-2971
Email: audley@chapman.com
Email: dandrea@chapman.com

Cathy A. Hinger (*pro hac vice*)
G. David Carter (*pro hac vice*)
Victoria A. Bruno (*pro hac vice*)
Kathleen O. Gallagher (*pro hac vice*)
Jeremy L. Baker (*pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
2001 K Street, NW, Suite 400 South
Washington, DC 20006
Tel.: 202-857-4489
Fax: 202-261-0029
Email: cathy.hinger@wbd-us.com
Email: david.carter@wbd-us.com
Email: victoria.bruno@wbd-us.com
Email: katie.gallagher@wbd-us.com
Email: jeremy.baker@wbd-us.com

Kurt D. Weaver (*pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: 919-755-8163
Email: kurt.weaver@wbd-us.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 27th day of February, 2023, I served the foregoing **Memorandum of Law in Support of Plaintiffs' Amended Second Motion to Compel Production of Certain Documents Against T-Mobile and Motion to Compel Supplemental Response to One Related Interrogatory** via the ECF system on parties that have consented to the same in accordance with applicable Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Northern District of Illinois.

By: /s/ *David T.B. Audley*