IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRAIGVILLE TELEPHONE CO. d/b/a ADAMSWELLS; and CONSOLIDATED TELEPHONE COMPANY d/b/a/ CTC<br><br>Plaintiffs,<br><br>v.<br><br>T-MOBILE USA, INC.,<br><br>Defendant. | No. 19 CV 7190<br><br>Magistrate Judge Jeffrey T. Gilbert |

### ORDER

Presently before the Court is Plaintiffs' Amended Second Motion to Compel Production of Certain Documents Against T-Mobile and Motion to Compel Supplemental Response to One Related Interrogatory [ECF No. 370] ("Plaintiffs' Motion"). For the reasons discussed below, Plaintiffs' Motion [ECF No. 370] is denied.

A party seeking discovery may file a motion to compel under Federal Rule of Civil Procedure 37 if another party fails to respond to a discovery request or when its response is insufficient. FED. R. CIV. P. 37(a); *see also Belcastro v. United Airlines, Inc.*, 2019 WL 1651709, at *2 (N.D. Ill. April 17, 2019). "Courts have broad discretion in resolving such disputes and do so by adopting a liberal interpretation of the discovery rules." *United States Gypsum Co. v. Ectek Int'l, Inc.*, 2022 WL 1155155, at *2 (N.D. Ill. April 19, 2022) (citing *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018)). To that end, Rule 26(b)(1) provides in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1). As the 2015 amendments to Rule 26 emphasize, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." FED. R. CIV. P. 26, Advis. Comm. Notes for 2015 Amendments. The Court's analysis and rulings as to the requests for production ("RFP") and one interrogatory at issue in Plaintiffs' Motion are set forth below.

**RFP Nos. 1 and 2.** These requests for production ask T-Mobile USA, Inc. ("TMUS") to run searches of 30-plus previously agreed terms in the electronic files of 16 mostly new custodians covering a 2.5-month period and to produce relevant emails and Skype instant messages about TMUS's local ring back tone ("LRBT") expansion plan. Memorandum of Law in Support of Plaintiffs' Motion [ECF No. 370], at 1-2. Plaintiffs contend that these electronic searches and TMUS's production of all relevant documents is necessary to identify "the complete universe of witnesses" who knew about the LRBT expansion plan, with whom they communicated, and "what they said or were told about it." Memorandum of Law in Support of Plaintiffs' Motion [ECF No. 370], at 2. Plaintiffs argue these searches will help them learn the "who, what, where, when, why, and how of TMUS's expansion of the fake ring tones." Memorandum of Law in Support of Plaintiffs' Motion [ECF No. 370], at 3. Plaintiffs

also contend that discovery of this additional information would tend to undermine TMUS's assertion that it acted in good faith when it expanded the LRBT in 2015. The Court disagrees with Plaintiffs that the discovery they seek is proportional to the needs of this case.

Plaintiffs quote the Court's December 16, 2022 Order [ECF No. 325] for the proposition that information about "the who, what, where, when, why, and how" of TMUS's implementation of the LRBT plan is relevant to the case. Memorandum of Law in Support of Plaintiffs' Motion [ECF No. 370], at 3. That is true. But TMUS already has produced a great deal of that information as explained in detail in its response to Plaintiffs' Motion. TMUS's Opposition Brief [ECF No. 374], at 6-7. The balance, therefore, now shifts to Plaintiffs to establish that the additional information they seek is more than tangentially relevant to their claims, proportional to the discovery needs of the case, and not unduly burdensome on the responding party, here TMUS. *See Hills v. AT&T Mobility Services, LLC*, 2021 WL 3088629, at *4 (N.D. Ind. 2021) (holding that "when the discovery request is overly broad, or relevancy is not apparent, the requesting party must establish relevancy").

Plaintiffs argue TMUS has not shown that producing the information they request would be unduly burdensome. The Court, however, agrees with TMUS that Plaintiffs have not met their threshold burden to show the information they seek is sufficiently relevant and proportional to the needs of Plaintiffs' case that TMUS should be put to any burden it would incur to search for and produce the additional information Plaintiffs now seek. Moreover, the Court also agrees with TMUS that the

3

dismissal of Plaintiffs' remaining conspiracy claims against TMUS seriously undercuts Plaintiffs' justification for the discovery they are seeking. (Plaintiffs filed their instant Motion before the conspiracy claims were dismissed.)

The Court is not persuaded by Plaintiffs' argument that the additional information they are seeking is relevant to TMUS's "good faith" defense to certain of Plaintiffs' claims. Plaintiffs already have a good deal of information about the LRBT expansion. Plaintiffs do not need TMUS to identify everyone who knew anything about the LRBT expansion, who they communicated with, and what they said to be able to rebut TMUS's good faith defense. There is no indication, for example, that expanding the search for information in this way will provide any material insight into the reasonableness of TMUS's actions or the state of mind of TMUS's decisionmakers beyond what Plaintiffs already know. *See Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055, at *2 (N.D. Ill. 1994) ("The discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. Parties are entitled to a reasonable opportunity to investigate the facts—and no more.").

Plaintiffs say they want to discover "the complete universe of witnesses who knew about the expansion of the fake ring tones and what they said or were told about it." Plaintiffs' Motion [ECF No. 370] at 2. However, it is not clear to the Court why "the complete universe" is necessary for Plaintiffs to discover or prove their case and thus why it is proportional to the needs of this case. Plaintiffs appear to be fishing here and, as noted above, ground this discovery in large part on conspiracy theories

4

that have been dismissed from this case. Plaintiffs' Motion [ECF No. 370], at 3 ("Responses to these RFPs will also confirm whether there were third parties (such as software vendors, consultants, or intermediate providers) with whom any of these employees communicated about the fake ring tone expansion, which is relevant to identification of Doe defendants and conspiracy."). Identification of "Doe defendants" in this 2019 case also is not a legitimate basis for this discovery.

Plaintiffs' plan seems to be to leave absolutely no stone unturned in written discovery, but that approach is not proportional to the needs of this case. If Plaintiffs could show that information not yet produced in the hands of specific individuals is likely to be important to the development of the relevant facts and legal theories in this case, the Court might view Plaintiffs' discovery requests differently. But the broad approach Plaintiffs have taken with RFP Nos. 1 and 2 encompassing 16 custodians (13 of whom apparently are new custodians) is not proportional to the needs of this case at this time in the Court's view. To paraphrase a quote attributed to Voltaire, but which simply may have been an old French proverb, Plaintiffs seem to be in search of perfect discovery when what they already have obtained appears to be very good within the context of this case. In the Court's view, no more is required at this juncture.

**RFP Nos. 25, 26, and 28 and Interrogatory No. 18.** These requests for production seek communications between TMUS and Inteliquent relating to the service credits TMUS was entitled to request from Inteliquent under the parties' Master Service Agreement if Inteliquent failed to achieve its contractually required

5

service quality levels, and Interrogatory No. 18 asks TMUS to state whether it ever requested a service credit from Inteliquent and, if so, to identify the persons involved in those communications. Memorandum of Law in Support of Plaintiffs' Motion [ECF No. 370], at 6. Plaintiffs argue that this discovery is relevant to Count II of their complaint, which alleges a violation of Section 201(b) of the Communications Act of 1934 for TMUS's failure to ensure delivery of calls.

It is not disputed that TMUS already has produced some, and perhaps a great deal of, information about Inteliquent's performance and the service credits TMUS actually received from Inteliquent. Plaintiffs, however, argue that the information they have received to date relates to service credits Inteliquent awarded to TMUS after it disabled the fake ring tones and they now seek information about whether TMUS exercised its right under the Master Service Agreement to request service credits while the fake ring tones were in effect. Plaintiffs' Reply [ECF No. 379], at 7.

In response, TMUS says it already has produced "evidence concerning Inteliquent's call completion performance, TMUS's oversight of Inteliquent as its intermediate carrier, and what steps TMUS took to correct rural call completion issues." TMUS's Opposition Brief [ECF No. 374], at 12. TMUS also says it has produced "information concerning the economic relationship between TMUS and Inteliquent, including the [Master Service Agreement] and its amendments, and documents showing payments TMUS made to Inteliquent." *Id.* In addition, TMUS represents it has "searched for documents relating to how LRBT affected that relationship (although none were found)." *Id.* TMUS also says that Plaintiffs "have

6

received evidence of Inteliquent's actual performance metrics" and yet they "do not identify any evidence they claim demonstrates that Inteliquent's performance dipped in a way to suggest TMUS was entitled under the MSA to service credits it did not receive." *Id.* In other words, TMUS seems to be arguing that Plaintiffs have not pointed to any evidence that would suggest additional service credits were owed to justify the supplemental discovery they are seeking.

The Court agrees with TMUS and is not persuaded that the additional information Plaintiffs seek is relevant or proportional to the needs of this case. The case as it presently stands after the conspiracy claims have been dismissed appears to be more about TMUS's implementation of the LRBT plan than it is about TMUS's relationship with Inteliquent, or about TMUS asking for or receiving service credits from Inteliquent for its purported service failures and deficiencies, or not doing so. Whether TMUS asked for or was entitled to ask for service credits from Inteliquent is a step removed from the underlying information about Inteliquent's actual performance. The Court agrees with TMUS that "[i]n the absence of a cognizable conspiracy claim, plaintiffs' main justification for further discovery on these topics evaporates." TMUS's Opposition Brief [ECF No. 374], at 3.

Plaintiffs do not dispute that TMUS already has responded to discovery on the service credits TMUS actually received from Inteliquent during the relevant time period and how the service credits were calculated, and has produced evidence reflecting Inteliquent's performance and how TMUS responded to the call completion issues. The additional information that Plaintiffs now seek about whether TMUS

7

requested service credits while the LRBT system was in effect is not so relevant to Plaintiffs' remaining claims that TMUS should be required to supplement its prior productions.

The Court also is not persuaded by Plaintiffs' argument that whether TMUS requested service credits or it did not do so, which is the point of Interrogatory No. 18, is as relevant to the claims or defense in this case as is Inteliquent's actual performance under the Master Service Agreement about which TMUS apparently has produced a fair amount of information. The Court does not see how the question Plaintiffs now want to probe – "whether TMUS ever exercised its right to enforce service requirements through imposition of monetary penalties [on Inteliquent] while the fake ring tones were in effect" – is so important that Plaintiffs need that information given the dynamics of the case as it now stands. Plaintiffs' Reply [ECF No. 379], at 8. TMUS's relationship with Inteliquent overall is not as important as it was when Plaintiffs were charging TMUS and Inteliquent with conspiring with each other. Inteliquent's actual performance in the context of the LRBT plan may be relevant, but Plaintiffs already have that information.

Nor does the Court see why any waiver of TMUS's right to service credits, if it occurred, would be relevant to Plaintiffs' existing claims after the dismissal of the conspiracy claims. TMUS had the ability to request service credits under the Master Service Agreement for a variety of issues beyond those related to LRBT. The potential tangential value of the information Plaintiffs are seeking for the purpose of rebutting TMUS's potential good faith defense does not outweigh, in the Court's view, the

8

burden on TMUS in producing it. Although Plaintiffs argue that it would not be burdensome for TMUS to respond further to Interrogatory No. 18 or RFP Nos. 25, 26, and 28, the Court does not see the point in TMUS doing so given the likely minimal, if any, incremental relevance of the information to Plaintiffs' current claims and TMUS's defenses.

Accordingly, for all these reasons, Plaintiffs' Amended Second Motion to Compel Production of Certain Documents Against T-Mobile and Motion to Compel Supplemental Response to One Related Interrogatory [ECF No. 370] is denied in its entirety.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: June 27, 2023