IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRAIGVILLE TELEPHONE CO. d/b/a ADAMSWELLS; and CONSOLIDATED TELEPHONE COMPANY d/b/a/ CTC, <br><br>                 Plaintiffs, <br><br>               v. <br><br>T-MOBILE USA, INC., <br><br>                 Defendant. | Case No. 19 C 7190 <br><br>Magistrate Judge Jeffrey T. Gilbert |

## ORDER

      This matter is before the Court on Plaintiffs' Motion for Appointment by the District Judge of a Pretrial Master for Discovery [ECF No. 347]. For the reasons discussed below, Plaintiffs' Motion [ECF 347] is granted.

      "Federal Rule of Civil Procedure 53 authorizes a district court to appoint a master to 'address pretrial and post-trial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district.'" *E.E.O.C. v. Aaron Rents, Inc.*, 2009 WL 4068008, at *6 (S.D. Ill. Nov. 24, 2009) (quoting FED. R. CIV. P. 53(a)(1)(C)). "A pretrial master should be appointed only when the need is clear." FED. R. CIV. P. 53(a)(1).

      During a hearing on January 9, 2023, Judge Coleman, the assigned district judge, observed that this is a "complex case" with "complex issues," and she raised *sua sponte* whether a special master would be appropriate in this case. *See* 1/9/2023 Hearing Tr. [ECF No. 335], at 10:2-13. The state of affairs that prompted Judge Coleman to make that observation, the parties' continued discovery disputes resulting in serial motion practice, has not improved since that January 9, 2023, hearing. This Court has resolved several discovery disputes in the interim, additional discovery disputes have arisen, and the docket entries continue to multiply. Currently pending before the Court are the following discovery disputes:

      (1) the parties' briefs addressing Defendant T-Mobile USA, Inc.'s ("TMUS") confidentiality designations for the documents it has produced to date [ECF Nos. 406, 413, 425], an issue which has been percolating for a while;

      (2) Plaintiffs' Motion to Challenge Confidential Designations [ECF No. 415];

(3) Defendant's Motion to Compel Rule 26(a)(1)(A) Damages Information [ECF No. 432];

(4) Plaintiffs' Motion to Compel Supplemental Responses to Certain Interrogatories [ECF Nos. 440]; and

(5) Yet another dispute relating to confidentiality designations and whether a document should be filed under seal [ECF No. 464].

In addition, Plaintiffs have identified multiple additional motions that potentially are on the horizon. *See* Joint Status Report [ECF No. 418], at 2-6. The parties, it seems, can resolve no disagreement, large or small, without court intervention.

Plaintiffs argue that discovery has been made more complicated in this case by TMUS's designation of 34,746 out of 34,932 pages produced in this case as "confidential." Plaintiffs' Motion and Memorandum [ECF No. 347], at 6. The Court agrees that TMUS's blanket confidential designations and the mandatory filing of such information under seal pursuant to the parties' Agreed Confidentiality Order [ECF No. 164] has created additional motion practice. At the most recent hearing, however, counsel for TMUS reported that TMUS had reviewed some documents and that it will be removing the confidential designations on some of its documents so that some documents could be unsealed on the Court's docket. Counsel for TMUS, however, also represented that TMUS would be retaining the confidential designations on many other documents. This issue is ripe for decision, a delay in issuing that decision potentially results in numerous documents being filed under seal or in redacted form, an exercise that may be completely unnecessary if Plaintiffs are correct that TMUS is grossly overusing confidentiality designations.

The Court, however, does not have the time or judicial resources to review hundreds or thousands of documents to determine if TMUS properly has designated its documents as confidential. This is an example of a task more appropriate for a special master. *See Luppino v. Mercedes Benz USA, LLC*, 2013 WL 5025229 (D. N.J. Sept, 11, 2013) (holding that "utilization of a mater is appropriate to 'perform some other time consuming or detailed tasks that the district judge or a magistrate judge would be less efficient in accomplishing'") (citation omitted). Other courts have appointed special masters to resolve disputes between the parties regarding document designations. *See Eisai Inc. v. Sanofi–Aventis U.S., LLC*, 2012 WL 1299701, *11 (D.N.J. Apr.16, 2012) ("In order to expedite the timely resolution of any existing or prospective disputes regarding the designation of discovery under the Confidentiality Order, the Court will appoint a Special Master."). Further, the sheer number of discovery disputes the parties have placed before the Court, a consistent theme or drumbeat since the case was referred to this magistrate judge for discovery supervision in June 2021 [ECF No. 127], indicates the parties need a dedicated

2

resource to resolve or help them resolve discovery disputes that arise with startling regularity if they are to move this case forward productively and in a timely way.

    The Court has considered TMUS's objection to the appointment of a special master and its arguments that a special master is not necessary because there are no exceptional conditions in this case. The Court disagrees with TMUS's position. Courts in this district as well as others routinely have embraced the efficiencies achievable with the use of special masters.[1] Because of the multifaceted discovery served to date and reasonably anticipated in the future including what may be protracted deposition practice, the parties' inability to resolve their disagreements about discovery without court intervention, and the discovery disputes currently pending and likely on the horizon, substantial judicial and case-specific efficiencies will be gained if a pretrial special master is appointed to "ride herd" on discovery. *See* 9/15/21 Hearing Tr. [ECF 320-2], at 10:12-13; *see also Cary v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 2021 WL 678872, at * 4 (N.D. Ill. Feb. 22, 2021) (noting in a discovery order that a party's refusal to engage in certain meet and confer discussions was likely driving up the opposing party's litigation costs as illustrated by the motion practice and long letters counsel wrote to each other for months before the a motion to compel was filed). In the Court's view, the need is clear in this case, and the time has come to appoint a special master to resolve the existing discovery disputes and to work with the parties to complete written and oral discovery in a timely and efficient manner.

    One of the fundamental underpinnings of Federal Rule 53, which authorizes the appointment of special master, is to "address pretrial and post-trial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." FED. R. CIV. P. 53(a)(1)(C). It is apparent that this case needs much more time and attention than this Court reasonably can give it at this time. A special master will be better positioned to monitor this case, to resolve disputes in a more timely fashion, to meet with the parties regularly and help them

---

[1] *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 2018 WL 6048262, at *5 (N.D. Ill. Nov. 19, 2018) ("If these parties continue to argue at length and in detail about search terms, the Court will appoint a special master to work with the parties in this area, resolve disputes, and make recommendations to the Court."); *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637 [ECF 491] (N.D. Ill. Oct. 2, 2017) (appointing a special master in complex class action); *ASIS Internet Servs. v. Active Response Grp.*, 2008 WL 2129417, at *5-6 (N.D. Cal. May 20, 2008) (finding "[a] discovery master is necessary to avoid wasting judicial resources and preventing a timely resolution of this case."); *Perez v. Sw. Fuel Mgmt., Inc.*, 2017 WL 10574066, at *1-2 (C.D. Cal. Feb. 13, 2017) (appointing special master where discovery disputes are predicated on defendants' refusal to provide discovery, alleged spoliation of evidence, and assertion that numerous additional discovery disputes would occur); *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 112 (D. N.J. 2006) (The "extraordinary drain on the Court's resources" stemming from the "extensive and unprecedented amount of judicial time spent on managing and adjudicating [a] matter" necessitated the use of a Special Master to monitor discovery compliance); and 9C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 2602.1 (Apr. 2022 Update).

not only resolve their recurring disagreements over the scope and nature of discovery but perhaps also to prevent those disputes from arising with close management of the discovery meet and confer process, all with less impact on the progress of other pending cases on the Court's docket and the Court's ability to manage all of its cases effectively and efficiently. *Cf. Otto v. Variable Annuity,* 134 F.3d 841, 854 (7th Cir. 1998); *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077 (7th Cir. 1987). In the Court's view, the appointment of a special master in this case will help the parties advance this lawsuit, which was filed three and half years ago, through the completion of written discovery, so that the parties then can complete oral discovery, and Plaintiffs finally will be able to file their motion for class certification and both parties ultimately prepare this case for trial, if necessary, much sooner than without a special master to help shepherd the case.

Consistent with Federal Rule of Civil Procedure 53(b)(1), the Court has given the parties notice and an opportunity to be heard on the appointment of a special master, and the parties have expressed their respective positions. [ECF Nos. 347, 358, 378]. Also as required by 53(a)(3), the Court has considered whether it is fair to impose the expense of a special master on the parties, and the Court has concluded both that it is fair to do so and that Plaintiffs and Defendant TMUS should share the cost fifty-fifty between them. The Court cannot justify a different or disproportionate way to allocate the expense of a special master based on its knowledge of the case at this juncture. If it becomes obvious, however, that one side or the other is more responsible for the fees and expenses incurred by the appointment of a special master, the special master, in the first instance, and ultimately the Court can upon a motion consider reallocating those expenses in the future. As of now, however, the parties will be billed and pay the special master's fees and expenses equally on a monthly basis.

The Court is considering appointing Maura R. Grossman to serve as special master in this case. Professor Grossman is an extremely well-qualified and highly experienced special master who has been appointed and successfully served as a special master in numerous other cases, including in the *In re Broiler Chicken Antitrust Litig.,* No. 16-cv-8637 [ECF No. 491] (N.D. Ill. Oct. 2, 2017) over which this magistrate judge has presided for almost six years. Professor Grossman has a particular expertise in electronic discovery but also is well-versed in all aspects of federal discovery practice, and she is particularly good at assisting the parties in resolving complicated disputes themselves without the need for extended, expensive, and time-consuming motion practice. Separately, the Court's courtroom deputy will forward to the parties Professor Grossman's curriculum vitae and a recent order appointing Professor Grossman as a special master in this District. The Court proposes to enter a similar order in this case encompassing all discovery disputes. Professor Grossman's current hourly rate is $900 for matters such as this.

4

The Court is aware that TMUS's counsel in this case, Proskauer Rose LLP ("Proskauer"), hired Professor Grossman in 2022 to assist it in finding candidates for an internal eDiscovery position the law firm was seeking to fill. The Court understands that position was filled in 2022 and the Court further understands that Professor Grossman's engagement for that project then ended. The Court consulted with Professor Grossman before entering this Order for the purpose of checking conflicts and Professor Grossman shared that she does not feel her limited work on this project for Proskauer would impair her ability to be fair and impartial in this case. Preliminarily, the Court does not see this as a reason that should prevent it from considering Professor Grossman for the role of special master in this case. If any party objects to the appointment of Professor Grossman on this or any other basis, the Court will of course consider any such objection within the context of Federal Rule 53(a)(2) and 18 U.S.C. § 455.

Therefore, for the reasons discussed above, and pursuant to Federal Rule of Civil Procedure 53, the Court finds that it is reasonable and appropriate to appoint a special master in this case to address and resolve pretrial discovery issues and disputes between the parties in relation to all written and oral discovery, and for the parties to share the expense of such a special master equally between each side, Plaintiffs and Defendant. The Court grants Plaintiffs' Motion for Appointment by the District Judge of a Pretrial Master for Discovery [ECF No. 347]. A status hearing is set for Friday, August 11, 2023, at 10:00 a.m. via telephone to discuss potential candidates. The call-in information for that status hearing will be posted via the CM/ECF system.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 2, 2023