# EXHIBIT 2

| | |
|---|---|
| **From:** | Gallagher, Katie |
| **To:** | Maura Grossman |
| **Cc:** | Hinger, Cathy; Weaver, Kurt; Bruno, Victoria; Ames, Lela; Baker, Jeremy; Mervis, Michael T.; Vinti, Baldassare; Roche, Jennifer L.; Alladi, Om V.; Gordon, Amy B. |
| **Subject:** | Plaintiffs Proposed Priority Listing of Outstanding Motions to Complete Discovery |
| **Date:** | Monday, March 4, 2024 9:12:11 PM |
| **Attachments:** | image921447.png |
| | image874454.png |
| | image788136.png |
| | image607721.png |
| | Plaintiffs Proposed Priority Listing of Outstanding Motions to Complete Discovery.pdf |

Dear Dr. Grossman,

As Ms. Hinger is currently traveling, I am writing to present Plaintiffs' position on the order of priorities for outstanding motions, which are set forth in the attached summary document prepared by Ms. Hinger. Ms. Hinger provided this list to TMUS on Sunday March 3, 2024, and Mr. Michael Mervis for TMUS and Ms. Hinger for Plaintiffs met and conferred about it by phone. TMUS will provide its list of proposed order of priorities separately. The following is a cover email for Plaintiffs' list prepared by Ms. Hinger:

The primary area of disagreement is whether TMUS's Motion to Compel Plaintiffs to Amend their Initial Disclosures concerning damages should be addressed first as TMUS asserts, or deferred until after all other deposition related motions are resolved and in connection with Plaintiffs' spoliation motion, as Plaintiffs assert. Plaintiffs assert TMUS's motion should not be considered first for the following reasons, which Plaintiffs discussed with TMUS:

1. Plaintiffs have served 4 subpoenas on Inteliquent for depositions the week of March 11th to preserve their rights to complete discovery within the current deadline (Rule 30(b)(6), John Bullock, Tim Schneberger, Mary Hochheimer). Assuming Inteliquent will seek additional time to schedule these depositions after a ruling on Plaintiffs' Motion to Compel against Inteliquent, these depositions are a primary impediment to Plaintiffs' completion of fact discovery depositions. The sooner we can resolve the scope of these necessary depositions and schedule them, the sooner we can ascertain a firm close of discovery date.

2. As Plaintiffs have explained to TMUS, Plaintiffs require discovery from Inteliquent concerning certain information before they can determine the damages methodologies Plaintiffs' experts will use to calculate the aggregated class wide damages for terminating access charges and other types of damages. Plaintiffs require, among other things, clarifying testimony from Inteliquent about what certain signaling codes in its CDRs mean, information about Average Length of Call ("ALOC") information found within Inteliquent documents, information about the volume and percentages of TMUS direct long distance traffic Inteliquent carried at different points in time during its migration, and other information that may help Plaintiffs' experts with their methodologies. Inteliquent is refusing to produce any witnesses on anything without being ordered to do so by the Special Master.

3. Next, had TMUS not destroyed its CDRs, as explained in Plaintiffs' pending spoliation motion, Plaintiffs likely could have developed their damages methodologies with less burden and delay. If we had TMUS CDRs, Plaintiffs would not have had to engage in the type of piecemeal fact gathering they have been undertaking in search of substitute data sources to account for the calls *not* captured by Inteliquent's CDRs due to the traffic TMUS handed off to other providers. Further to this point, Plaintiffs served Interrogatories on TMUS last fall asking it to identify its total call volumes and call volumes it handed off to intermediate providers other than Inteliquent to help fill this gap resulting from TMUS not preserving its CDRs. TMUS's sworn interrogatory responses repeatedly asserted that TMUS does not have data that would enable it to determine that information. However, in the recent depositions of TMUS employees Sukhi Nehra and Satish Pachalla (Mr. Pachalla's deposition was just last Friday, 3/1/24), both employees confirmed that certain documents in TMUS's production could be used to estimate certain scopes of call volumes carried by other intermediate providers, and in particular the volume of domestic long distance calls TMUS handed off to all intermediate providers other than Inteliquent in 2016, rendering TMUS's interrogatory responses inaccurate. Plaintiffs' counsel, Ms. Hinger discussed this point specifically with TMUS counsel, Mr. Mervis in a

    meet and confer on 3/3/24, asserting that TMUS's inaccurate information in its interrogatory responses makes it impossible for Plaintiffs to establish a methodology for its aggregated class wide damages for loss of terminating access charges until the fact discovery concerning the call volumes carried by other intermediate providers is complete.

4. Thus, the Inteliquent discovery and resolution of disputes, if any, over TMUS's inaccurate interrogatory responses about call volumes are necessary predicates to Plaintiffs' development of the very damages methodology TMUS's preferred first motion seeks to compel Plaintiffs to provide without the benefit of the factual information they need to develop a methodology.

Finally, TMUS's representations in the document it is sending to you that it has "not been able to obtain discovery about the basis for Plaintiffs' damages claims" is not true. TMUS has deposed Plaintiffs' 30(b)(6) witnesses and employees at length about factual information known to them about their damages, Plaintiffs have already amended their initial disclosures to describe the damages sought, TMUS recently served another set of interrogatories in response to which Plaintiffs will be producing additional factual information, and Ms. Hinger told Mr. Mervis in their 3/3/24 meet and confer that Plaintiffs would be producing more factual evidence concerning damages associated with their porting of numbers, which caused them to lose terminating access charges. TMUS is also deposing a former CTC employee next week who is expected to have additional information about CTC's damages. Therefore, TMUS has not been deprived of any discovery on damages, what has not been disclosed is the firm and final methodology for calculation of aggregated class wide terminating access charge damages, which would be impossible for Plaintiffs to do now anyway due to the predicate fact discovery concerning potential elements of the methodology not yet being complete. Rather, as Plaintiffs' list proposes, TMUS's motion should be considered in tandem with Plaintiffs' spoliation motion because they go hand in hand.

Best Regards,

## Katie Gallagher

**Katie Gallagher**
She/Her
Of Counsel
Womble Bond Dickinson (US) LLP

**d:** 202-857-4451
**m:** 301-520-2878
**e:** Katie.Gallagher@wbd-us.com

2001 K Street, NW
Suite 400 South
Washington, DC 20006



**womblebonddickinson.com**

  

This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

**Plaintiffs' 3/4/24 Proposed Priority Listing of
Outstanding Motions to Complete Fact Discovery**

Plaintiffs propose this Motion be resolved first with hearing on 3/8:
1. Plaintiffs' Motion to Compel Rule 30(b)(6) Deposition Testimony from Inteliquent, Inc.
   Pending Since: Jan. 31, 2024

Plaintiffs assert 2 and 3 should be considered together at same hearing as 4 and 5:
2. TMUS's Motion to Compel Rule 30(b)(6) Deposition Testimony from Plaintiff Craigville Telephone Co. d/b/a AdamsWells on Topic 7
   a. Pending Since: Feb. 2, 2024
3. TMUS's Motion for Additional Time to Depose Craigville
   a. Pending Since: Feb. 16, 2024

Plaintiffs assert 4 and 5 should be resolved together at same hearing as 2 and 3:
4. Plaintiffs' Motion to Compel Rule 30(b)(6) Deposition Testimony from TMUS (remaining Matter 64 – Authenticity and Admissibility of Documents Produced by Parties)
   a. Pending Since: Dec. 4, 2023 initial Hearing; Feb. 9, 2024 Hearing and Feb. 14 – Feb. 19 emails
5. Plaintiffs' Motion to Restore Rule 30(b)(6) Time and to Compel TMUS to Reproduce Prepared Rule 30(b)(6) Witnesses on Matters 12(a) and 41
   a. Briefing Will Close on Mar. 12, 2024

Plaintiffs assert 6 and 7 should be resolved together at the same hearing:
6. TMUS's Motion to Compel Deposition of CTC on Revised Topics 22-23
   a. Pending Since: Feb. 16, 2024
7. TMUS's Forthcoming Motion to Compel Responses to Interrogatories in Lieu of Deposition on Rule 23(a) Topics (Not Yet Briefed)

8. Plaintiffs' Forthcoming Motion to Compel Supplemental Responses to Second Set of Interrogatories regarding Call Volumes (Not Yet Briefed – Plaintiffs will initiate M&C this week)
9. Plaintiffs' Motion on Privilege Issues (Not yet briefed).
10. TMUS's Forthcoming Motion to Compel Further Amendments to Initial Disclosures (Not Yet Briefed)

Plaintiffs assert 11 and 12 should be considered together:
11. TMUS's Opposed Motion to Compel Rule 26(a)(1)(A)(III) Damages Information and Supplement
    a. Pending Since: Feb. 13, 2024
    b. TMUS submitted its "Supplemental Brief" on Jan. 10, 2024
    c. Plaintiffs submitted opposition to the Supplemental Brief on Feb. 13, 2024
12. Plaintiffs' Spoliation Sanctions Motion
    a. Plaintiffs submitted their Reply on Feb. 16, 2024
    b. TMUS submitted a Surreply on Feb. 29, 2024

      c. Plaintiffs will submit Opp. to Surreply on Mar. 11, 2024
13. Plaintiffs' Motion to De-Designate Confidentiality of William Rowe Deposition Transcript
      a. Pending Since: Jan. 4, 2024